1446WULC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

SHERYL WULTZ, et al.,

                    Plaintiffs,

          v.                              11 CV 1266 (SAS)

ISLAMIC REPUBLIC OF IRAN, BANK
OF CHINA,

                    Defendants.

------------------------------x
                                          New York, N.Y.
                                          April 4, 2011
                                          2:30 p.m.

Before:

                    HON. SHIRA A. SCHEINDLIN,

                                          District Judge

                         APPEARANCES

BERKMAN LAW OFFICE
     Attorney for Plaintiff
ROBERT TOLCHIN
MARK SALEM

PATTON BOGGS LLP
     Attorney for Defendant Bank of China
MITCHELL R. BERGER

K&L GATES LLP
     Attorney for Defendant Bank of China
WALTER P. LOUGHLIN
SARAH KENNEY

Also present:  Mr. and Mrs. Wultz

1446WULC

```
 1              (Case called; in open court)

 2              THE COURT:  Good afternoon, Mr. Tolchin.

 3              MR. TOLCHIN:  Good afternoon, your Honor.

 4              THE COURT:  I can't read the next one.

 5              MR. TOLCHIN:  Mark Salem, S-a-l-e-m.

 6              THE COURT:  That's your chicken scratches?

 7              MR. TOLCHIN:  Yes.

 8              THE COURT:  Not acceptable.  The Court and the court

 9    reporter has to read this.  If you can't print clearly, ask

10    somebody else to do it.  There are more people in the front

11    table.

12              MR. TOLCHIN:  Your Honor, with us today are Mr. and

13    Mrs. Wultz.

14              THE COURT:  Thank you.

15              Plaintiffs.

16              MS. WULTZ:  Please to meet you.

17              THE COURT:  Nice to meet you.

18              Mr. Berger.

19              MR. BERGER:  Yes.  Good afternoon.

20              THE COURT:  Mr. Loughlin, good afternoon.

21              MR. LOUGHLIN:  Good afternoon.

22              THE COURT:  And?

23              MS. KENNEY:  Sarah Kenney with K & L Gates, your

24    Honor.

25              THE COURT:  What is the last name?
```

1446WULC

1        MS. KENNEY:  Kenney, K-e-n-n-e-y.

2        THE COURT:  We had a conference on March 16th, 2011.

3    At that conference I addressed the submissions made by the

4    parties, in particular defendants' March 1, 2011 letter asking

5    to move to dismiss and for this Court to consider the issue de

6    novo because it already had been decided by the transferor

7    court, which later decided that it didn't have personal

8    jurisdiction over the defendants.  There was a response letter

9    at that time, March 16th, from the plaintiffs' lawyer and at

10   that time I also had in front of me the amended complaint and

11   the District Court's decision on the motion to dismiss out of

12   D.C.

13       I held the conference and the counsel for the

14   defendants made a number of arguments, claimed to cite cases

15   that maybe I wasn't fully up to date on.  I said, Well, I would

16   revisit in a couple weeks and look everything over again.  So

17   here it is almost exactly a couple weeks later, two and a half

18   weeks later.  I have had the chance to look at everything that

19   you cited, Mr. Berger, at the oral argument.  I have to say I

20   come out exactly the same way.  Even more firmly because I went

21   to your citations.

22       So I start by pointing out that you rely on Menowitz

23   which should have been familiar to me because I decided any

24   number of times in my MTB litigation.  Now I remember of course

25   it is a transfer under 1407 because it is a multi district

1446WULC

```
1    litigation.  It is not 1406 transfer.  It is a different

2    consideration in those cases and I don't think it has much to

3    say about this situation.  With respect to this situation, you

4    also cited In Re Terrorist Attacks, a decision written by Judge

5    Casey of this Court, but he replied on Menowitz and other cases

6    which were all MDL transfers.

7         In fact, when you look at transfers in this area, the

8    transferor court having lacked jurisdiction and then it goes to

9    a transferee court, the courts have gone both ways.  That is

10   the bottom line.  I can find citations declining to treat the

11   transferor court decision as law of the case and I can find

12   decisions going exactly the other way, which extend deference

13   to pretransfer rulings even after the transferor court has

14   turned out to lack subject matter or personal jurisdiction.

15        So I am absolutely convinced that it is a

16   discretionary call and the Court should weigh a lot of issues

17   such as judicial economy, finality against the possibility of

18   manifesting justice, a clearly erroneous pretransfer ruling,

19   the availability of new evidence or superceding law, which

20   means the law in the two circuits differ.  So after that after

21   I convinced myself that it was discretionary and under 1406

22   transfer and I could go the other way, I then looked whether

23   the law in the D.C. Circuit is applicable with the law in the

24   Second Circuit and ended up convinced absolutely that it is the

25   same.  There is no difference that you can point to that gives
```

1446WULC

1    me any concern.

2              With respect to the active state doctrine, the law of

3    the D.C. Circuit and the Second Circuit, as well as the Supreme

4    Court for that matter, holds that it is not judicial inquiry

5    into the act itself that invokes the doctrine, but judicial

6    inquiry into the act's validity.  So here Judge Lambert says

7    that these allegations don't require inquiry into the validity

8    or the underlying reasons for any acts of the People's Republic

9    of China but more clearly whether the event occurred, not

10   whether it was valid, but whether it occurred.  So this case

11   does not seem to challenge an act of a foreign country as valid

12   or not valid.

13             So I don't think there is any big difference at all in

14   the Second Circuit law with respect to act of state.  With

15   respect to political question it is really clear.  It is also

16   Supreme Court precedent, not local precedent.  Judge Lambert

17   relied on Baker v. Carr, which is always the controlling case

18   in these political question cases.  I cited it myself any

19   number of times.  He also relied on Japan Whaling Association

20   1986 Supreme Court case.  So there is no real difference that I

21   see in how one analyzes the political question doctrine.  I

22   didn't see anything there.

23             Then we turn to the question of whether the transferor

24   court decision was clearly erroneous.  I spent a good deal of

25   time this time around looking at that decision and again I

1446WULC

 1    can't find that it is clearly erroneous.  It seems to me that

 2    with respect to the ATA, which is Anti Terrorism Act, it

 3    defines international terrorism as activities that appear to be

 4    intended to intimidate or coerce a civilian population or the

 5    policies of the foreign government.  So if that is the language

 6    then that comes right out of the statute.

 7            Plaintiffs are only required to plead that it

 8    objectively appeared as if the Bank of China intended to coerce

 9    a civilian population or foreign government policy, not whether

10    it actually intended to do so.  According to Judge Lambert

11    plaintiffs pled this sufficiently by pleading that the Bank of

12    China permitted the PIJ to transfer money through the bank's

13    accounts after the People's Republic had informed that the PIJ

14    was used to fund terrorism.  The allegations only required the

15    Court to inquire into whether as a faucal matter the People's

16    Republic informed the Bank of China not the intended use of the

17    accounts.  They don't require the Court to make a determination

18    about the People's Republic's antiterrorism policies, etc.

19            So the political question seems to be separate from

20    the plaintiffs' claims, but none of this is final.  It is basis

21    for the motion to dismiss and it is not clearly erroneous.  I

22    know that in your discovery letter some of this you hope to

23    revisit on summary judgment after there is some discovery.  So

24    it is not the end of the case or end of the world.  It is where

25    I think the motion to dismiss should come out.

1446WULC

```
 1          So in short I exercise my discretion not to reconsider
 2   the decision rendered by the D.C. District court.  I think it
 3   would be a waste of resources and a waste of time.  The three
 4   reasons I gave I think it is a discretionary call on my part
 5   and I think the law does not differ between the D.C. Circuit
 6   and the Second Circuit and I don't find the decision clearly
 7   erroneous.  So for all those reasons I accept and adopt so to
 8   speak the decision of the District of Columbia District Court
 9   with respect to any motion to dismiss.
10          That takes us to the issue of discovery.  I have had
11   two submissions on that.  I have a April 1 letter which I
12   received around noon on Friday by fax from the defense counsel
13   and therefore had time to read it over the weekend with some
14   care, but today at this has a time it says 14:29.  That is
15   2:00.  It wasn't that late.
16          MR. TOLCHIN:  I think the fax machine put the time
17   stamp Greenwich Mean Time.
18          THE COURT:  That's right.
19          MR. TOLCHIN:  England time, 2:00.
20          THE COURT:  That's right.
21          MR. TOLCHIN:  It was transmitted at 9:00 something
22   this morning.  There was a problem with the fax.
23          THE COURT:  Anyway I got it this morning.  I received
24   a letter this morning from the plaintiffs as I said in the last
25   case is always a problem because, A, I didn't have a lot of
```

1446WULC

```
1    time to study it and you, Mr. Berger, didn't have any time to
2    respond to it.  So I think we should start with you,
3    Mr. Berger, to see how you would respond to the April 4th
4    letter of plaintiffs, which just to summarize to some extent
5    says, Well, first of all, the case is staying here no matter
6    what.  It is not going to state court.  You are inviting them
7    to go state court, but you cannot get them there because there
8    is diversity jurisdiction over the nonATA claims.  I think
9    discovery is better.  He has a right to stay and he is going to
10   stay.  Any motion in between is not going to close this case.
11        He also says we're not going to have this problem you
12   worry about with respect to compelling a foreign government to
13   do anything because I can't.  He recognizes that.  He wants to
14   make his request in letters rogatory and the Hague Convention
15   and he will get what he will get or he won't get.  Then as he
16   says it is not his problem.  It is not a political question
17   because I don't have the authority to compel them to do it.  He
18   at least accepts that.  He isn't going to ask me to do any such
19   thing.  I am not going to do it.  If I don't have the power and
20   if I am not asked then it is both.  So there is not a problem
21   there with political questions.  I am not going to be asking
22   the foreign government to do anything.
23        Then he says something else.  He says he needs to get
24   account information to prove the actual knowledge.  Then
25   finally he says you are invoking bank secrecy laws by having
```

1446WULC

1    told me anything about China's Bank secrecy laws.  So right now

2    it is kind of a vague argument and even if China does have a

3    bank secrecy law, which I haven't seen and I don't know what it

4    says, in an ATA action the Court have tended to override them

5    most significantly in the Strauss v. Crédit Lyonnais case,

6    which I am familiar with.  Of course you wrote that there was

7    something pending in the Second Circuit on this very issue in

8    the Linde case out of the Eastern District of New York.

9             Is that related to the Strauss case?

10            MR. BERGER:  It is, your Honor.  The Strauss case is a

11   lagging action.  Linde is one of the leading actions.  The one

12   where the bank secrecy issue has been crystalized more than it

13   has in Strauss.

14            THE COURT:  Strauss was a very thorough decision.  Is

15   it by the same judge, the Linde decision?

16            MR. BERGER:  No.  Judge Gershwin has the Linde case

17   and all the other Arab bank cases and the Strauss case has been

18   I think through a couple of judges.

19            THE COURT:  The Strauss was written by Magistrate

20   Judge Motsomoto who became a district judge, but I think she

21   wrote the opinion for the District Court when she was a

22   magistrate judge.

23            Who wrote Linde?

24            MR. BERGER:  The Judge Gershwin.

25            THE COURT:  Does this have some of the issues of bank

1446WULC

```
 1   secrecy laws?

 2           MR. BERGER:  Not with China's banks --

 3           THE COURT:  Of course not.  Swiss Banks.

 4           MR. BERGER:  Linde is dealing with Jordanian, Lebanese

 5   and Palestinian.  But what is common to this case and this

 6   case, your Honor -- and then I would like to address three or

 7   four points you asked me to address -- is that the comity

 8   analysis and how it applies in an ATA action is the issue

 9   before the Second Circuit.

10           THE COURT:  I understand.  That is why I said up until

11   now bank second secrecy laws have not been deferred to, but

12   that is the very issue there.  I am looking forward to their

13   decision for a whole host of reasons.  Anyway all I really was

14   doing was summarizing the letter that I received this morning

15   and I think that those are the main points.

16           MR. BERGER:  Those are the main points.

17           THE COURT:  Mr. Tolchin, did I do justice to the main

18   points?

19           MR. TOLCHIN:  You did that justice.

20           THE COURT:  Mr. Berger's your response?

21           MR. BERGER:  Yes, your Honor.  First the motion we

22   propose to make after limited discovery would be fully

23   dispositive notwithstanding diverse jurisdiction.

24           THE COURT:  How is that?

25           MR. BERGER:  Because I start with where your Honor
```

1446WULC

```
1    ended, which is your Honor's deferring to Judge Lambert's

2    opinion.  Judge Lambert's opinion makes clear that at the heart

3    the two ATA claims and at the heart of the three Israeli law

4    claims, in other words the sufficiency of those claims as pled

5    according to Judge Lambert all depend on the actual knowledge

6    allegation that your Honor summarized in paragraph 77.  So what

7    we propose is to argue first after limited discovery that there

8    is no triable issue of fact with respect to paragraph 77

9    because plaintiffs cannot prove --

10           THE COURT:  But to get there to see if they can prove

11   it they say they need to first of all have some discovery about

12   the accounts.

13           MR. BERGER:  They are wrong, your Honor.

14           THE COURT:  How do you know?  You already said

15   somewhere in these papers that the bank doesn't have any

16   knowledge of these alleged April meetings.

17           MR. BERGER:  Correct.  We don't.

18           THE COURT:  So what is he supposed to do accept your

19   word and go home?

20           MR. BERGER:  No.  If I might lay it out because I

21   think your Honor we did two things in making this proposal:

22   One, we started with the premise which your Honor told us was a

23   likelihood last time you will deny our request for de novo

24   briefing and we should therefore work within the four corners

25   of Judge Lambert's decision.  So that is what we did.  What we
```

1446WULC

1    did is we said is there an issue that is rooted in all five of

2    the claims he has against Bank of China for which we can make a

3    fully dispositive motion after limited discovery and the answer

4    is yes.

5            THE COURT:  I have to interrupt you.  The limited

6    discovery is what you want.  Plaintiffs wants some discovery,

7    too.  The plaintiff has a right to oppose your motion.  We

8    don't do things with one side getting discovery.  I know what

9    you want in terms limited discovery.  The plaintiff has to be

10   heard, too.

11           MR. BERGER:  Of course, your Honor.  I get that.

12   We're talking about not who gets to ask for discovery.  We're

13   talking about what the issues will be that will be the scope of

14   discovery.

15           THE COURT:  It is where you get the evidence that

16   might support that issue one way or another.

17           MR. BERGER:  Your Honor, I said we have two things

18   that guided our letter.  One was Judge Lambert's opinion on the

19   assumption that we would be deferring to it and Judge Lambert's

20   opinion makes it clear that paragraph 77 is the "but for"

21   lynchpin of all these findings.  The second one is your Honor

22   had given some analysis.

23           THE COURT:  I know.  You put it in your letter.

24           Mr. Tolchin, do you agree actual knowledge is required

25   for all of the claims?

1446WULC

1           MR. TOLCHIN:  No.

2           THE COURT:  Not the Israeli law claims.

3           MR. TOLCHIN:  Not the Israeli law claims.  That is the

4    short answer.  The short answer Israeli short claims can be

5    established based on constructive notice that they should have

6    known on the pattern of transactions and the nature of the

7    transactions.

8           THE COURT:  That was not briefed to Judge Lambert.  He

9    didn't have an expert on Israeli law telling him whether you

10   have to have actual knowledge versus constructive knowledge.

11          MR. TOLCHIN:  I wouldn't go as far to say that.

12   Rather in the analysis he said plaintiffs have alleged actual

13   knowledge that would certainly stay a claim --

14          THE COURT:  For sure.  That is why I am asking the

15   question I am asking.  Was there a hearing on foreign law?  Was

16   there an expert on Israeli law?  Did he get a full education

17   whether constructive knowledge could be sufficient on an

18   Israeli law claim?

19          MR. TOLCHIN:  There were competing declarations of

20   Israeli lawyers and Judge Lambert did his own library research.

21          THE COURT:  Did he reach a definitive conclusion on

22   whether Israeli law requires actual acknowledge?

23          MR. TOLCHIN:  No.  He said the plaintiffs can

24   establish their claims based on actual knowledge and he didn't

25   go beyond that.

1446WULC

| | |
|---|---|
| 1 | THE COURT:  Did he say constructive knowledge could |
| 2 | not be sufficient? |
| 3 | MR. TOLCHIN:  No.  Correct. |
| 4 | THE COURT:  There has to be a hearing on foreign law. |
| 5 | I would have to decide that.  I don't believe he decided that |
| 6 | because he would have to say it is actual knowledge or nothing. |
| 7 | What he said is actual knowledge would be sufficient.  I don't |
| 8 | know if he ruled out constructive knowledge.  There I don't |
| 9 | think I would defer without a hearing. |
| 10 | MR. BERGER:  Your Honor, we're happy to address that. |
| 11 | What Judge Lambert did before he issued his dispositive opinion |
| 12 | is he rejected the Israeli law declarations that were tendered |
| 13 | to him.  He said, I don't need them because I can read Israeli |
| 14 | law myself and make my own decision -- |
| 15 | THE COURT:  Really? |
| 16 | MR. BERGER:  -- dispositive motion of that day.  He |
| 17 | denied Mr. Tolchin's request to take the depositions of our |
| 18 | Israeli law experts.  He said it is sufficient under that is |
| 19 | Seventh Circuit case of Judge Poser or Easterbrook that said I |
| 20 | can read foreign law myself.  And he said I am going to do an |
| 21 | analysis of Israeli law and I will make a decision as to what |
| 22 | is sufficient. |
| 23 | Your Honor, the part that I feel like I am being |
| 24 | pulled in two -- |
| 25 | THE COURT:  Right.  I am deferring on the motion to |

1446WULC

1    dismiss and Lambert's interpretation of Israeli law?

2            MR. BERGER:  Your Honor has said you are going to

3    accept for present purposes Judge Lambert's assessment of the

4    sufficiency of his claims.

5            THE COURT:  Right.  For a motion to dismiss

6    perspective.  That is true.

7            MR. BERGER:  His claims are not sufficient unless they

8    pass the test that Judge Lambert applied and said they are

9    sufficient for the --

10           THE COURT:  Now I am feeling whipsawed.  I am

11   accepting the outcome of the motion to dismiss.  The case

12   proceeds.  When and if I have to decide whether constructive

13   knowledge is sufficient under Israeli law, I think that is an

14   issue that I have to decide.  Unless you show me the

15   sentence -- I didn't know about the other opinion.  Show me the

16   sentence that says constructive knowledge is not enough.  I

17   know the sentence that says actual knowledge is sufficient.  I

18   understand that, but I don't know he definitively said

19   constructive knowledge does not.

20           MR. BERGER:  But, your Honor, what he does do, and I

21   am happy to give your Honor the citations, I think it is very

22   important obviously neither a claim for negligence nor

23   vicarious liability nor statutory liability have elements

24   besides constructive knowledge in order to lead to liability.

25           THE COURT:  I don't in understand what you said.

1446WULC

1    Elements other than constructive?

2            MR. BERGER:  Right.  There are essential elements of

3    all three Israeli tort claims beyond constructive knowledge.

4    Even if he could prove constructive knowledge that would not be

5    sufficient under Judge Lambert's analysis of Israeli law

6    because there has to be issue of duty and there has to be

7    issues of foreseeability and there has to be issues of

8    causation, all of which Judge Lambert analyzed and concluded

9    that the only way that the plaintiffs satisfy those elements is

10   by the allegations of paragraph 77.

11           THE COURT:  I cannot understand it, but I haven't read

12   it so I cannot argue with you.  It seems to me when you are

13   construing a pleading, you decide whether the pleading is

14   sufficient.  So he is certainly saying, Well, actual knowledge

15   is sufficient.  I am not going to throw out the pleading.  He

16   doesn't set the law record of the bar.  He said the pleaing of

17   actual knowledge is enough.  That would satisfy these three

18   claims.  I don't know that means if you can't prove actual

19   knowledge and you have only constructive knowledge that that

20   also isn't enough.  He said pleading was sufficient.  The

21   pleading pled actual knowledge.

22           MR. BERGER:  Right.  In the ordinary course, your

23   Honor, before we embarked on discovery on these issues, the

24   Court would have looked at them on a motion to dismiss.

25           THE COURT:  Looked at what?

1446WULC

```
 1          MR. BERGER:  The issue of whether constructive
 2    knowledge is sufficient?
 3          THE COURT:  Why?  He pled actual knowledge and the
 4    Court said actual knowledge was sufficient.
 5          MR. BERGER:  Which is why we would like -- because we
 6    believe the theory of the case as given to your Honor by Judge
 7    Lambert, as given to your Honor by plaintiffs is that actual
 8    knowledge is required.
 9          THE COURT:  Required is a different word than
10    sufficient.  When you do a motion to dismiss, which I do every
11    day for 20, you judge the sufficiency of the allegation.  Is
12    that sufficient?  Yes, it is sufficient.  You don't decide
13    necessarily parameters and scope of foreign law and what could
14    satisfy.  You look at this pleading and you say this pleading
15    turns out to be true, that surely does it.
16          MR. BERGER:  That raises, your Honor, an issue that I
17    think is important to put before the Court because Judge
18    Lambert rejected our assertion that Israeli law shouldn't
19    apply.
20          THE COURT:  Shouldn't?
21          MR. BERGER:  Israeli law doesn't govern.
22          THE COURT:  What law governs?
23          MR. BERGER:  Well, given Bank of China is here in New
24    York and given that is the theory being pursued also across the
25    street, under New York law which we have already argued would
```

1446WULC

1   govern, this is an issue pending before New York State Supreme

2   Court as well, constructive knowledge is clearly not

3   sufficient.

4               THE COURT:  Under New York law.

5               MR. BERGER:  One of the things pending before the New

6   York State Supreme Court is that Mr. Tolchin has conceded to

7   Judge Kapnic that if New York applies, he loses.  Israeli

8   claims has to be dismissed.  For example, Judge Rakoff and

9   Judge Daniels have considered similar claims pled by

10  Mr. Tolchin against other banks one is in the Leechie case

11  which is mentioned in our March 1st letter, to which he says

12  Israel law doesn't apply and New York law does apply.

13

14              THE COURT:  Who said this, one of the judges?

15              MR. BERGER:  Judge Daniels.  Under New York law the

16  theory, the same theory giving constructive knowledge is enough

17  wouldn't be sufficient.  And Judge Rakoff considered a similar

18  argument made under --

19              THE COURT:  Let's back up.  Under New York law?

20              MR. BERGER:  Under New York law for Leechie.  My only

21  point is --

22              THE COURT:  Have either Judge Rakoff or Judge Daniels

23  construed Israeli law?

24              MR. BERGER:  Judge Daniels declined to construe

25  Israeli law because he said New York law controls.

1446WULC

```
 1              THE COURT:  And Judge Rakoff?

 2              MR. BERGER:  He said there was no material difference

 3    in his view between New York law and Israeli law.

 4              THE COURT:  That was dicta because he didn't look --

 5              MR. BERGER:  Right.  What Judge Rakoff looked at was

 6    the concept of proximate cause for standing and dismissed the

 7    case on that basis finding that the theory of causation based

 8    on constructive knowledge in that case was too far -- stretched

 9    thinly too far and dismissed that case both initially and after

10    remand from the Second Circuit.  So I am saying your Honor --

11              THE COURT:  Did you make the standing argument in

12    Washington, too?

13              MR. BERGER:  We did make a standing argument.

14              THE COURT:  What happened to that?

15              MR. BERGER:  He rejected.  Lambert rejected it.

16              So my only point, your Honor, is we believe that this

17    issue is worthy of briefing to your Honor.

18              THE COURT:  Oh, I think that is probably right.  The

19    issue of rather Israeli law or New York controls or also

20    whether Israeli law would allow constructive knowledge?

21              MR. BERGER:  Both.

22              THE COURT:  I agree.

23              MR. BERGER:  The way we would propose to do that is

24    wash the issue of actual knowledge out of the case because we

25    don't think there is a trial issue of fact.  I don't expect Mr.
```

1446WULC

1    Tolchin to take my word.

2            THE COURT:  He wants some discovery as to actual

3    knowledge.

4            MR. BERGER:  Right.  Actual knowledge there has been a

5    shift in his letter from actual knowledge as pled in the

6    complaint to actual knowledge as it is now in the letter, which

7    is actual knowledge as it exists in the complaint.

8            THE COURT:  I have the complaint in front of me.

9    Paragraph 77 is in front of me.

10           MR. BERGER:  That is the only thing he pled.

11           THE COURT:  I know.  What does the letter say that is

12   different.

13           MR. BERGER:  The letter says one he is not sure he

14   needs to prove actual knowledge that way and second that he is

15   not sure he needs to prove actual knowledge at all.

16           THE COURT:  Of course not.  He says under Israeli law

17   constructive knowledge is enough.

18           MR. BERGER:  He also says, your Honor, that the actual

19   knowledge allegations -- this is on pages 2 to 3 of his letter,

20   your Honor.

21           THE COURT:  Okay.

22           MR. BERGER:  Discovery from the PRC and Israel is not

23   crucial to Israeli claims under Israeli law.

24           THE COURT:  Where are you?

25           MR. BERGER:  Page 2, your Honor.

1446WULC

 1          THE COURT:  I am too.

 2          MR. BERGER:  Under A and starting at the second

 3    paragraph.  What he is saying there, your Honor, is that he

 4    doesn't need to prove actual knowledge and then he goes on to

 5    say in the second sentence, which is the carryover paragraph

 6    page 2 to 3, moreover when he says that it is possible

 7    plaintiffs will be able to show actual knowledge through

 8    discovery from BOC itself or third parties or from others with

 9    requisite knowledge of the facts.  So what I am saying since I

10    believe we could brief the --

11          THE COURT:  Where is the change in position?

12          MR. BERGER:  Your Honor, I read that as saying he

13    doesn't need to prove actual knowledge as it is alleged in

14    paragraph 77.

15          THE COURT:  No.  I don't see as it is alleged.  He is

16    making a simple position and it is in his view Israeli law does

17    not require actual knowledge.  That is his view.  There is a

18    parenthetical in the District Court opinion in Washington which

19    says, In Israeli law negligence requires only foreseeability

20    not actual knowledge.  I don't know if this is a fair

21    parenthetical.  His position is if Israeli law applies, his

22    view is Israeli law does not require actual knowledge.  He goes

23    on to say, however, if I get lucky and can prove it, there is

24    no doubt.  If I have actual knowledge, all the better.  If I

25    don't, I think I am still okay because I think Israeli law

1    applies and Israeli law only requires constructive knowledge.

2    I don't see a change of position.  He pled actual knowledge in

3    the complaint.  Now he says if I prove it up, great and makes

4    life easier.  If I can't, though, I am not out of court.  That

5    is his position.

6              MR. BERGER:  On pain page five of his position --

7              THE COURT:  For summary judgment?

8              MR. BERGER:  Yes.  Under the paragraph that is marked,

9    "First" when he is trying to explain why he needs account

10   record discovery to satisfy the actual knowledge pleading in

11   paragraph 77 that is contrary to what paragraph 77 actually

12   alleges in terms of actual knowledge.

13             THE COURT:  Why?

14             MR. BERGER:  Because paragraph 77 says nothing about

15   the account.  Paragraph 77 talks about two events.  It talks

16   about a meeting between Israeli government and the Chinese

17   government.

18             THE COURT:  You know I think you have a strange view

19   of pleading.  You seem to think the pleading is a little akin

20   to a trial transcript.  It is not.  This is how he pleads

21   actual knowledge.  That wouldn't preclude evidence at trial of

22   actual knowledge proved by other means.  The plea doesn't have

23   to lay out the entire case.  It has to lay out enough to be

24   sufficient to pass the test of motion to dismiss.  So he must

25   have pled on some good-faith basis that these meetings

1446WULC

1    occurred.  Somebody must have told him about these meetings.

2    That satisfies actual knowledge.  If he proves acknowledge

3    another way, you are saying the complaint precludes him because

4    he didn't put that evidence into the complaint.  We will have

5    very long pleadings if you are right.  People will have to put

6    in all of their proof.  I never heard that theory.  This is not

7    a preclusion issue.

8         MR. BERGER:  Well, your Honor, what we had is a theory

9    Judge Lambert spent a lot of time looking at it.  Dependent on

10   paragraph 77 we're prepared to say that there is no triable

11   issue of fact.

12        THE COURT:  No.  What paragraph 77 is about is actual

13   knowledge.  If there is a triable issue of fact about actual

14   knowledge, don't bother making the motion.  All you are saying

15   is it may not be a triable issue of fact with respect to these

16   meetings.  I don't know discovery will tell us.  If he has

17   prove of actual knowledge another way, you are saying that is a

18   summary judgment for you because it is not in the complaint?

19        MR. BERGER:  Well, your Honor, I am happy to work

20   within the parameters you are suggesting.  What I am saying I

21   think there is a meaningful distinction between actual

22   knowledge, which is clearly required from ATA claim and which

23   as pled and as Judge Lambert ruled is part of the Israeli law

24   claims.  The question which your Honor says has not been

25   briefed or decided to your satisfaction is constructive

1446WULC

1      knowledge alone sufficient.

2              THE COURT:  There is two different issues.  Even on

3      actual knowledge, I am also saying he is not limited to proving

4      it by the allegations in paragraph 77.  He can prove it anyway

5      that he can.  So if discovery develops evidence of actual

6      knowledge that creates a triable issue of fact, that is that

7      and no summary judgment anyway.  It does not have to be limited

8      to was it plead in paragraph 77 or people would have to put in

9      their pleadings their entire proof, which they don't.  We have

10     two recent decisions that affirm that.  One by Justice Souter

11     writing in the First Circuit and one by Judge Posner writing in

12     the Seventh Circuit.  You don't have put into your pleadings

13     your case.

14             So if he proves actual knowledge another way, better

15     yet.  Now, if he doesn't is your point, can you full back on

16     constructive knowledge?  I don't know the answer yet.  I don't

17     know precisely what Judge Lambert said.  I don't know what I

18     think of Israeli law.  I don't know what the experts say.  I

19     don't know those answers yet.  His first line of defense is

20     that he hopes to prove actual knowledge.  If not, he falls

21     back.

22             MR. BERGER:  Fair enough.  What I am saying, your

23     Honor, is except for the hypothetical circumstance that

24     Mr. Tolchin put into his letter that Bank of China has an

25     account for the PIJ, actual knowledge and constructive

1446WULC

knowledge one way to approach this, and we would respectfully

suggest this is the way to do it, is to limit discovery to the

actual knowledge issue both as pled and as however your Honor

decides on a request—by—request basis actual knowledge is

presented.  But to table the issue of constructive knowledge,

because we haven't seen concrete requests of course from

Mr. Tolchin, and that raises the issue of Chinese laws.  He

cited two cases, which don't describe the mechanism by which we

would raise the Chinese law issue.  Even the rationale in this

case that he is citing simply says this stage we have to give

notice generally that we're going to rely on Chinese law.

            THE COURT:  You are talking about the bank secrecy

law?

            MR. BERGER:  Yes.

            THE COURT:  I have to see what the bank secrecy law

says and of course the comity analysis is often overwritten

anyway.

            MR. BERGER:  Right.  In Strauss, for instance, one of

the earlier decisions 242 F.R.D. 199 207 it is clear that the

foreign bank secrecy law, the objection, doesn't have to be

fleshed out until there has been a motion to compel made on

that issue.  We would expect to certainly develop any response

to discovery request.  But my point, your Honor, if you --

            THE COURT:  All he is saying is at this stage for me

to say that certain discovery shouldn't occur because China has

1446WULC

1    a bank secrecy law would be wrong.  I don't know what that law

2    is and I don't know where the comity analysis would come in.

3              MR. BERGER:  All I am saying, your Honor, is it is

4    pretty clear from Strauss and Linde from the Second Circuit

5    there is a detailed analysis of comity that is required and

6    therefore we --

7              THE COURT:  It has been around a long time.  It

8    predates Strauss.

9              MR. BERGER:  Right.  So we're suggesting phase

10   discovery as a way to defer.

11             THE COURT:  Why defer it?  I will have to get there no

12   matter what.

13             MR. BERGER:  Because we don't believe your Honor that

14   account record discovery is necessary for actual knowledge

15   under any circumstance.

16             THE COURT:  You have no basis for that.  Mr. Tolchin

17   to some extent is speculating but hopeful that account

18   discovery may reveal something to actual knowledge.  I don't

19   know that you know that it won't.

20             MR. BERGER:  Your Honor, if the notion is that actual

21   knowledge is going to focus the request, I am pretty

22   comfortable that there will not be any evidence on the actual

23   knowledge issue.  What I am suggesting because we don't know

24   and your Honor hasn't decided the constructive knowledge --

25             THE COURT:  I certainly haven't.

1446WULC

1          MR. BERGER:  -- that we ought to brief that issue in

2     the context of a motion for summary judgment after discovery

3     focuses solely on the actual knowledge issue so we can defer

4     the--

5          THE COURT:  You lost me.  There should be a motion on

6     actual knowledge at which time I haven't even thought about

7     constructive knowledge and then if you win that we start all

8     over again and have discovery and/or legal briefing whether

9     constructive knowledge could be enough?

10          MR. BERGER:  No.  We would brief, your Honor, the

11     legal question -- part of the reason I guess we had hoped to

12     brief on a de novo basis the motion to dismiss if Mr. Tolchin

13     is now saying actual knowledge means something considerable

14     more or --

15          THE COURT:  Considerably more?

16          MR. BERGER:  Considerably more than the events pledged

17     in paragraph 77 which your Honor said he is entitled to

18     explore.

19          THE COURT:  Of course.

20          MR. BERGER:  We haven't briefed the issue because

21     Judge Lambert didn't rest his decision on constructive

22     knowledge.  If we're going to decide the legal sufficiency of

23     the claims based on constructive knowledge, we ought to be

24     briefing that issue before we embark on what is going to be

25     difficult discovery involving constructive knowledge issues

1446WULC

1     which is going to be the account records.  I don't now of any

2     account record discovery that will actually support the actual

3     knowledge issue.

4               THE COURT:  I don't know either, but it seems to me

5     that letters rogatory and request under the Hague Convention

6     are notoriously slow.  Anybody who has been doing this for a

7     long time knows that.  There is no reason not to start the

8     process.  If you want to make a motion about whether

9     constructive law could ever satisfy Israeli law or if you want

10    to rebrief whether it is Israeli law or New York law controls,

11    that is fine.  That is not part of the motion to dismiss as far

12    as I am concerned.  It is a different issue.  I haven't

13    reviewed the decision.  I don't know why I would defer to it.

14    It is a different thing.  All I focused on was the motion to

15    dismiss and the law on whether I had to do it de novo.  This is

16    different.  I am still waiting for you to show me a sentence

17    that says constructive knowledge cannot be enough.  I know he

18    said actual knowledge would be sufficient and they pled.  That

19    is what he said.  You have a sentence saying under Israeli law

20    constructive knowledge cannot be enough.

21              MR. BERGER:  I am happy to point your Honor to it.

22    First of all, he says the constructive knowledge allegations of

23    the complaint do not support the ATA claims.

24              THE COURT:  That's right.  ATA, he is not arguing.  He

25    argues Israeli law.

1446WULC

1          MR. BERGER:  Right.  They are pled only in support of

2     the Israel law.  It is 50 pages of the decision.  I am happy to

3     give you the citations to it, your Honor, whether it is the

4     West Law or the original one.  He says beyond constructive

5     knowledge, which is not enough to base a complaint under

6     Israeli law.

7          THE COURT:  He says constructive knowledge is not

8     enough.

9          MR. BERGER:  He doesn't say the words.  What he is

10    saying is here are the elements required.  Knowledge is one and

11    duty is another and causation is another.  He looks at every

12    one of those elements, your Honor, and in that he says the only

13    reason that he cites for why that is satisfied is the actual

14    knowledge allegations of paragraph 77.

15         THE COURT:  Of course he is handling a motion to

16    dismiss to see if the complaint is pled.

17         MR. BERGER:  So, your Honor, what I guess I would like

18    to do is taking up on your suggestion because I do believe

19    account record discovery will present problems, perhaps your

20    Honor thinks those are not going be the ones that will stand in

21    the way.  We haven't litigated those issues.  I do believe it

22    will be useful at this stage given the Israeli laws claims

23    cannot go forward because New York law governs or constructive

24    law is not sufficient and because we know that the ATA claims

25    require actual knowledge, I would like to brief the issues,

1446WULC

```
 1    your Honor, of constructive knowledge and whether constructive

 2    knowledge is sufficient under Israeli law and I would like to

 3    brief the predicate issue, your Honor, which also pending

 4    before the New York Supreme Court of whether in fact New York

 5    State law should apply because Mr. Tolchin has conceded

 6    expressly in the Supreme Court that if New York State law

 7    applies, his Israeli laws must be dismissed.

 8            THE COURT:  Correct.  But you argue they are, I

 9    assume, in state court and New York case law doesn't govern,

10    right, Mr. Tolchin?

11            MR. TOLCHIN:  That is correct, your Honor.  Under

12    Schultz v. Boys Scouts of America New York the place where the

13    last element of the tort damages happened is the law that

14    governs.

15            THE COURT:  But judge Daniels held the opposite?

16            MR. TOLCHIN:  Judge Daniels declined to reach the

17    issue.  He superficially said the New York law and Israeli law

18    are the same because you have -- negligence is the duty of

19    breach and damages.  He didn't delve into it beyond that and

20    that issue as we discussed last time I believe is on appeal.

21            THE COURT:  That one, too?

22            MR. TOLCHIN:  Yes.

23            THE COURT:  What did you tell me about Judge Rakoff?

24            MR. TOLCHIN:  Judge Rakoff, the Israeli law claims --

25    there are no Israeli law claims that were decided by Judge
```

1   Rakoff.

2            THE COURT:  What do you mean no Israeli law claims?

3            MR. TOLCHIN:  The case before Judge Rakoff did not

4   include Israeli law claims.

5            THE COURT:  The case didn't have any Israeli law.  So

6   he couldn't decide whether it was New York law or Israeli law?

7            MR. TOLCHIN:  Right.  There were some Israeli law

8   claims asserted initially in that case but they dismissed.  So

9   he never decided them and they were not part of the appeal that

10  went up and they were not part of the remand and not part of

11  the appeal.

12           THE COURT:  His was an ATA case?

13           MR. TOLCHIN:  Correct.  By the way, Judge, as far as

14  the difficulty of getting discovery about the account records,

15  I am not entirely sure it is going to be so difficult.  These

16  were dollar transfers.  It is quite they were transferred

17  through Bank of China's New York branch.

18           THE COURT:  I noticed you wrote them.

19           MR. TOLCHIN:  Right.  So I don't know where things are

20  going to wind up.  Some of the difficulties that Mr. Berger

21  imagines may in fact occur and we may be in quandary as to some

22  of the issues.  I am not prepared to say at the outset that we

23  are going to wind up there and we'll deal with it when we get

24  to that point.  We will see if there is a way to address it.

25           I call your attention, your Honor -- everyone talks

1446WULC

about paragraph 77 but there is also paragraph 78 and 79 and

80.  These talk about -- these allegations say that the

defendants knew or should have known because of these

enumerated factors and it may be that whether we can prove

these meetings or not, it may be that someone in the compliance

department did know and somebody in the management department

said never mind that and act like you don't know.

As far as doing discovery without having proof of the

transactions, I was imagining it this morning and as I went

through it in my mind how it would play out it seemed like a

Laurel and Hardy act.  I would ask a hypothetical witness from

the Bank of China, Did you know about these transactions?  He

would say to me, What transactions?  I would say, I heard there

were some transactions, but I cannot show you the paper.  He

would say, I don't know about any transactions.  We can go

around like that all day if I am deprived of the ability to

discover are the transactions before I have to get to that

point.

THE COURT:  Again, I don't think this severe

bifurcation that the defense proposes makes sense.  This

discovery is lengthy.  Always full of delays as I said.  When

you see the request, you will have a better idea anyway of the

application of the bank secrecy laws.  As Mr. Tolchin said some

of this material might be right here in New York.

MR. BERGER:  Well, your Honor, let me start with that

1446WULC

```
 1    first.  It is really something that has been dealt with in the

 2    Eastern District cases.  Just because there is a branch here in

 3    New York only adds a layer of legal obligation to the New York

 4    branch.  It still has to operate under Chinese law.  Judge

 5    Gardephe remanded the Amalia case to Supreme Court because it

 6    had been in this court noted Bank of China is not a citizen of

 7    the United States for purposes diversity jurisdiction.  But

 8    what you have for example in the Eastern District is Crédit

 9    Lyonnais.  Well, they have a branch in the United States.  And

10    out West they have a branch here.

11              THE COURT:  That's true.

12              MR. BERGER:  So it didn't solve the problem.  U.S. law

13    was an additional requirement on top of foreign law

14    requirements.  So that is not the solution.  Your Honor, there

15    was a decision -- I am happy to hand it up -- in Leechie where

16    Judge Daniels decided 704 F.Supp 2d 403 contrary to Mr.

17    Tolchin's argument in that case he says there is no distinction

18    between New York law and Israeli law and Israeli law doesn't

19    impose a duty sufficient to support a negligence claim.  So I

20    am asking for permission alongside whatever your Honor is going

21    to order that we would like to brief both the choice of law

22    issue because I think that is fully dispositive on the Israeli

23    law claims and the constructive knowledge.

24              THE COURT:  I think that will be helpful.

25              MR. BERGER:  The mechanism for that, your Honor, and I
```

1446WULC

```
 1      hate to mention the word motion, I know of no real mechanism
 2      other than a motion to dismiss the Israeli law claims on those
 3      two bases.
 4              THE COURT:  It wouldn't work because his first line of
 5      defense.  So there has to be another mechanism.
 6              MR. BERGER:  Well, the mechanism that I have proposed
 7      and prepared to expand this in our proposal is we would move
 8      for summary judgment on the actual knowledge issue after
 9      discovery focused on that issues and as a matter of law we
10      would move to dismiss the Israeli law claims upon the choice of
11      law and constructive knowledge issue because those are legal
12      questions that don't require discovery.  Alongside that, your
13      Honor --
14              THE COURT:  Yes and no.  I don't know that I will be
15      able to determine Israeli law.  Apparently Judge Lambert
16      thought he could.  I may need to have a hearing on foreign law.
17              MR. BERGER:  We have witnesses as does Mr. Tolchin on
18      that issue.  It would not be complicated to have those
19      witnesses appear for a living hearing.  I hear what your Honor
20      says.  Discovery requests don't happen instantaneously, nor
21      objections, nor litigation of those objections.  It would
22      inform the process on discovery, whatever your Honor is going
23      to order on that, if we could make our motion for summary
24      judgment on the actual knowledge issue.  If we made it today,
25      your Honor, I seen your Honor cases --
```

1446WULC

1          THE COURT:  You cited them.

2          MR. BERGER:  These are other cases that say if I move

3    today on actual knowledge, he would have to file Rule 56(f)

4    affidavit explaining how he is going to prove it.  Frankly, I

5    haven't heard how is he going to prove it.  He says we hope to

6    prove it out of the bank's files and the government's files.  I

7    don't hear any witness that he has on actual knowledge.  And

8    Rule 56(f) would require that of him if we made a motion for

9    summary judgment and if we moved at the same time on the

10   constructive knowledge and choice of law issues, your Honor, I

11   think you would have the benefit of briefing on these important

12   points.

13         THE COURT:  I wouldn't allow a summary judgment before

14   discovery.  So that is that.  The Court cannot design the right

15   to make a summary judgment, but it can control the timing.  I

16   am not going to allow 56(f) and all the rest of it because

17   we're going to have discovery.  Then we can talk about summary

18   judgment at the end of discovery.

19         The other two issues I don't know why we feel so bound

20   to find a procedural way to do this.  We can title our own

21   motions.  I think we should have a motion on whether Israeli

22   law or New York law applies and then we should have a motion on

23   if Israeli law applies is constructive knowledge sufficient.

24   We'll think of a name.  Who is going to tell me I can't?  They

25   sound like good motions to me.

1446WULC

```
 1            MR. BERGER:  Certainly not me.

 2            THE COURT:  We'll make them up.  We should do both

 3       those motions.  We can call one of them Choice of Law Motion

 4       and you can call the other one Construction of Foreign Law

 5       Motion.  How is that?

 6            MR. BERGER:  They sound terrific.

 7            THE COURT:  Do them.  I think they don't take any

 8       discovery.  I would like to know more about it.  Make a

 9       decision on knowledge and what Israeli law requires and

10       doesn't.  I will look at Judge Lambert's decision on both

11       issues if he reached both and apparently he did.  He wrote the

12       choice of law and he said Israeli law governed Israeli law

13       claims.  They may become dispositive.  I will also look at what

14       he said the other way because your adversary seems to think you

15       ruled out constructive knowledge already.  You will look when

16       you respond to these two briefs.

17            When do you want to file these two briefs?

18            MR. BERGER:  I would like --

19            THE COURT:  They are legal issues.  You are ready.

20            MR. TOLCHIN:  I am not sure there are no discovery on

21       the choice of law issue.

22            THE COURT:  We know the last --

23            MR. TOLCHIN:  Expert affidavits.

24            THE COURT:  You said the last act where the damages

25       occurred is what controls under Schultz.
```

1446WULC

1           MR. TOLCHIN:  Not under choice of law.  I am sorry if

2   I misspoke.

3           THE COURT:  You did say choice of law.

4           MR. TOLCHIN:  I apologize.  I meant on the

5   constructive notice under Israeli law.

6           THE COURT:  You have a record that you can transmit

7   here.  You apparently had expert affidavits.

8           MR. TOLCHIN:  For sure.  There was never deposition or

9   opportunity to cross-examine those witnesses.

10           THE COURT:  That I understand.

11           MR. TOLCHIN:  That's the caveat.

12           THE COURT:  That's true.  That is limited.  I may want

13   that.  I may want you to do those depositions.  I may want a

14   live hearing.  I would like to start by seeing what they

15   submitted.

16           MR. BERGER:  To be clear for the record, I think your

17   Honor's title explains my position when you say Construction of

18   Foreign Law.  What we're talking about is one element.

19   Obviously it is not enough to make a cause of action.  So

20   constructive knowledge, plus foreseeability, plus duty, plus

21   breach those are issues that we would be briefing in that

22   context of that motion.  That is what the Israeli law predicts

23   from both sides to address, what elements are required to

24   support the three claims.

25           THE COURT:  If there is no disputes on some of those

1446WULC

1    elements, why would you brief them?

2             MR. BERGER:  Because we actually do dispute, other

3    than paragraph 77, how plaintiffs can satisfied those elements.

4             THE COURT:  Each of those elements?

5             MR. BERGER:  Yes.

6             THE COURT:  Each?

7             MR. BERGER:  Yes, your Honor.  Judge Lambert therefore

8    focused on the duty, causation, foreseeability and breach by

9    looking at paragraph 77.  He had a long explanation of what the

10   Israeli law required; but then when he applied the law to the

11   complaint as alleged, he didn't talk about anything besides for

12   those elements that I mentioned -- I am happy to give you the

13   cites -- the fact that paragraph 77 satisfied those elements.

14   We'll brief that, your Honor.

15            THE COURT:  We're not redoing the motion to dismiss.

16   If the pleading is sufficient that is not what I am talking

17   about.  I am talking about construction of foreign law.  What

18   does that mean under Israeli law, what do those standards mean,

19   no longer whether paragraph 77 is a sufficient pleading.

20            MR. BERGER:  Understood.  There are extensive

21   affidavits on Israeli law both from our side and the

22   plaintiffs' side and we would be referring to those sources of

23   the law in briefing this motion.  I respectfully submit it will

24   help inform some of the positons we will take as we litigate.

25            THE COURT:  Your adversary on the choice of law issue

1446WULC

1    no further discovery needed is a legal issue?

2             MR. TOLCHIN:  That's correct.

3             THE COURT:  Ready to go.  That is easier of the two

4    motions anyway.  If you were to win the New York law point, we

5    would never turn to that construing Israeli law motion.

6             MR. BERGER:  Right.

7             THE COURT:  We should make them serially.  Make the

8    choice of one law first and fast.  If you win under New York

9    law, we're out of the problem.

10            MR. BERGER:  All right, your Honor.  I would like

11   because I have to run my draft by my client in China and I have

12   to explain to them some of the things we're doing, it doesn't

13   happen instantaneously so I would like a little bit of time.  I

14   agree we're happy to make the choice of law motion first.

15            THE COURT:  Let's do it.

16            MR. BERGER:  If I could have 21 days for that we will

17   work as fast as we can and allows us to take account of our

18   need to communicate overseas.

19            THE COURT:  April 25th.

20            Response, Mr. Tolchin, choice of law, you said it is

21   controlled by one New York case.

22            MR. TOLCHIN:  Schultz is the seminal case.

23            THE COURT:  It should be a pretty short brief.  How

24   long do you need?

25            MR. TOLCHIN:  21 days.

1446WULC

| | |
|---|---|
| 1 | THE COURT:  Why?  What are you going to do with all |
| 2 | that time?  Schultz, is that New York Court of Appeals. |
| 3 | MR. TOLCHIN:  New York State Court of Appeals. |
| 4 | THE COURT:  How are you going to distinguish Schultz? |
| 5 | MR. BERGER:  Well, Schultz, your Honor, as I recall, |
| 6 | and Mr. Tolchin addressed this, that is old law in New York and |
| 7 | it the alternate site of the injury test.  New York has moved |
| 8 | on from that.  We now have an interest analysis and that is |
| 9 | what drives choice of law.  I am sure your Honor has applied |
| 10 | that interest analyst before.  So Schultz may be a great case |
| 11 | but it is not the law of New York anymore. |
| 12 | MR. TOLCHIN:  I am very sorry but Schultz is the case |
| 13 | that established the choice of law, the interest analysis |
| 14 | doctrine.  I feel a proprietorship in the case because Schultz |
| 15 | was actually my old firm's case. |
| 16 | THE COURT:  Which firm was that? |
| 17 | MR. TOLCHIN:  Droscowitz and Jarros. |
| 18 | THE COURT:  Oh, my.  Don't give me a headache.  I |
| 19 | don't want to think about that case. |
| 20 | Mr. Loughlin, What do you want to say about Schultz? |
| 21 | MR. LOUGHLIN:  I think it is best if we brief it. |
| 22 | THE COURT:  Neither one of you want to say anything |
| 23 | more about Schultz. |
| 24 | What year was Schultz? |
| 25 | MR. TOLCHIN:  1980. |

1446WULC

1        THE COURT:  Do you really want 21 days?

2        MR. TOLCHIN:  What concerns me is that their 21

3   days --

4        THE COURT:  He has to communicate with China.  That's

5   far away.

6        MR. TOLCHIN:  Yes.  I have a little trip to Mt. Sinai

7   because of Passover.

8        THE COURT:  His brief isn't coming to the 25th.

9        MR. TOLCHIN:  It is the middle of Passover.

10       THE COURT:  The last day.  It is the very last day.

11   Trust me.  I know.  I didn't have to cook anymore because the

12   last meal is Monday night.

13       MR. TOLCHIN:  I have to get back from Florida.

14       THE COURT:  21 days from the 25th if that is what you

15   really want.

16       MR. TOLCHIN:  I can possibly do it.

17       THE COURT:  May 16th.  If you get it in earlier, you

18   get it in earlier.

19       Let's fix your date by the number of days.  You need

20   10 days to reapply?

21       MR. BERGER:  14 probably is what works out to be

22   anyway.  Two weeks.

23       THE COURT:  If he really takes to the 16th of May then

24   the 30th of May.  I will try to get a ruling fast so we can

25   proceed to stage two.

1446WULC

```
 1              In the meantime let's get a discovery schedule.  We
 2    didn't even get your main work done.  Get these letters
 3    rogatory and Hague Convention requests out the door and that
 4    you should be able to take discovery that will lead to your
 5    obtaining information on either actual or constructive
 6    knowledge at this point.  Why shouldn't it be limited to the
 7    knowledge issues.  That is for sure.
 8              MR. TOLCHIN:  As opposed to what else?
 9              THE COURT:  Damages and stuff.
10              MR. TOLCHIN:  You mean --
11              THE COURT:  Damages.
12              MR. TOLCHIN:  Liability as opposed to damages?
13              THE COURT:  Yes.  Right.  I said damages.  Then you
14    said damages.  We're in full communication.  It is that Laurel
15    and Hardy analogy.  You are stuck there.
16              MR. TOLCHIN:  I didn't know whether your Honor thought
17    there were other issues in the liability part.
18              THE COURT:  Do you?
19              MR. TOLCHIN:  Probably not.
20              THE COURT:  So we're together.  Now that I have given
21    all this guidance, the parties should be able to negotiate the
22    schedule.  They really should.  You are welcome to use my jury
23    room.  Mr. Berger comes in from Washington.  You are here and
24    he is here.  Why don't you sit in the jury room and see what
25    all this guidance what can go forward and focusing liability
```

1446WULC

1     and knowledge.  That is the key to this.  Why can't you sit

2     down and see if you can get a schedule.  I am here.

3                  Thank you.

4                                    o0o

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25