UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

SHERYL WULTZ, et al.

        Plaintiffs,

        v.                                          Civ. No. 11-01266 (SAS)

THE ISLAMIC REPUBLIC OF IRAN, et al.

        Defendant.

## DECLARATION OF DR. BOAZ SHNOOR

I, Dr. Boaz Shnoor of Jerusalem, Israel, declare pursuant to 28 U.S.C. § 1746 as follows:

## INTRODUCTION

1.    I am a faculty member at the Academic Center of Law and Business in Ramat Gan, Israel. During the past eight years I held positions teaching law at the Faculty of Law of the Hebrew University in Jerusalem, Israel, at the College of Management (Academic Studies Division) in Rishon Letzion, Israel, and at the Shaarei Mishpat College, in Hod HaSharon, Israel.

2.    Last year I was a visiting scholar at the Cornell Law School in New York, where I researched behavioral aspects of tort law, especially causation.

3.    My teaching and research focus primarily on Israeli tort law and environmental law. I am author of the book <u>Torts and Pollution</u> (2011, Sacher Institute) (Hebrew), co-author of the book <u>Libel Law - *De Lege Lata* and *De Lege Ferenda*</u> (2005, Sacher Institute) and have authored numerous other academic and professional papers on Israeli tort law and other legal topics.

4.    I hold LL.B, LL.M and LL.D degrees from the Hebrew University. My doctoral dissertation dealt with Israeli and comparative tort law.

5. I am a member of the Israeli Bar and licensed to practice law in the State of Israel.

6. A copy of my curriculum vitae is attached hereto as Exhibit A.

7. I have been asked by counsel for the plaintiffs in the above-captioned matter to provide my professional opinion regarding the state of mind that is required by Israeli law for imposition of tort liability under the Fourth, Fifth and Sixth Counts set forth in the First Amended Complaint in this action ("FAC").

8. The basis of my opinion as set forth herein is my professional and academic legal studies, research, teaching and publishing over the course of many years, as well as the statutes, case law and authorities cited below.

9. In preparing this opinion I have examined the FAC, the Declaration of Peter Gad Naschitz, executed on March 1, 2009, which was submitted by defendant Bank of China ("BOC") in support of its motion to dismiss this action, the Declaration of Professor Ariel Porat, executed on May 18, 2009, which was submitted by the plaintiffs in opposition to the motion to dismiss, and the Supplemental Declaration of Peter Gad Naschitz, executed July 24, 2009, submitted by BOC in further support of its motion.

## OPINION

### Fourth Count – Negligence

1. The Fourth Count of the FAC is a claim for Negligence under § 36 of Israel's Civil Wrongs Ordinance ("CWO").

2. As explained by Professor Porat in his Declaration, under Israeli law the main focus of any negligence analysis is on foreseeability; the defendant will be found liable in negligence if the court determines that he <u>could</u> and should have foreseen the relevant facts. Thus, under Israeli negligence law, actual knowledge is unnecessary; the defendant will be liable

if he <u>could</u> and should have known – i.e., if he had "constructive" knowledge. Mr. Naschitz does not dispute that constructive knowledge is sufficient to impose negligence liability in Israel, but argues that the liability of banks toward third parties constitutes a special case, and that policy arguments militate against imposition of liability on a bank in the circumstances of this case.

3.      But as Professor Porat shows, based on Supreme Court precedents and the policy considerations that generally guide the Israeli courts (including a strict approach to terrorism), if this case were heard in Israel defendant BOC would not enjoy any special status as a bank, and would be found liable in negligence if it had actual or constructive knowledge of the facts.

4.      In my professional opinion Mr. Naschitz's restrictive construction is unfounded and Professor Porat's analysis and conclusions (both generally and in respect to the constructive knowledge issue) are clearly correct and I endorse them.

5.      While there would be little profit in rehashing Professor Porat's thorough discussion, I believe that it would be useful to note some additional case law dealing with the question of the negligence liability of banks to third parties that post-dates Professor Porat's Declaration and strongly supports the proposition that BOC would be liable in negligence in this case even if it had only constructive knowledge of the relevant facts.

6.      In Civil Appeal 2142/07 *Tziring v. Mishkan* (not yet published), which was given by the Supreme Court in February 2010 (i.e. after Professor Porat submitted his declaration) and involved a loan fraud that affected the rights of a third party, Justice Danziger stated:

> I believe that the circumstances of the case should have raised question marks and lit "warning lights" for the bank: did it not occur to [the bank] to check how in such a short time, and without being presented with a court order, Mendelson succeeded in bringing about a change in the ownership of the property? Did it not occur to the bank to compare the documents … Did it not find it proper to demand to see the court order

> which authorized the change in the registration in the land deed? ….
>
> [T]aking the precautions that were required, indeed demanded, in the circumstances of the case, would have resulted, almost certainly, in exposing Mendelson's act of fraud and in its being cut short at the outset.
>
> … [B]anking entities should know that their failure to take steps to check, investigate and inquire in the proper circumstances may prove a stumbling block when a court comes to determine whether they have the rights they claim. True, each case must be examined in light of its special circumstances and taking into account the conduct of the various parties involved; but <u>as a matter of policy I believe that banking entities also have a notional duty of care towards non-customers</u>, and this duty can, in the appropriate cases (and if a concrete duty of care is recognized), <u>obligate them to take active steps such as those mentioned above</u>. This is due to the banks' special status in commercial life and in the eyes of the public, the trust the public places in them and the disparities in power and knowledge that generally obtain between [the banks] and the wider public.

*Id*. at pp. 17-18 (Danziger, J., concurring) (emphasis added).[1]

7. In other words, when the bank could have seen that something was amiss – where there are "question marks" or "warning lights," as Justice Danziger put it – the bank has a notional duty of care toward a third-party to "take active steps" to "check, investigate and inquire" and if it fails to do so it will be liable to that third party.

8. Likewise the decision in Civil Case 4738-08-07 (Central District Court) *Bank Mizrahi v. Cohen* (Nevo), also issued in February 2010, stated this principle sharply and clearly:

---

[1] I am fluent in Hebrew and English and I confirm that the translations contained herein are accurate English translation of the original Hebrew.

> A bank owes an <u>enhanced</u> duty of care not only to its clients, but also to third parties, in cases where it <u>could have foreseen</u> that a third party would be harmed if the bank did not take reasonable precautions (Leave for Civil Appeal 5379/95, *Sahar Insurance Co. Ltd. v. Israel Discount Bank Ltd.*, P.D. 51 (4) 464, 477-478 (1997)).
>
> The greater the probability that the risk will come to pass and the greater the bank's ability to prevent that risk at low cost, the more the liability of the bank will be expanded (Civil Further Hearing 1740/91, *Barclays Discount Bank Ltd. v. Frost*, P.D. 47(5) 31, 85 (1993)).

*Id.* at p. 16 (emphasis added).

9. Thus, the recent decision in *Bank Mizrahi*, too, directly supports the conclusion that BOC will be liable in this case if the plaintiffs can demonstrate that BOC "<u>could</u> have foreseen" – i.e. if it had constructive knowledge of – the relevant facts.

10. While it is true that *Bank Mizrahi* was not given by the Israeli Supreme Court (but by a district court, which is one level below the Supreme Court), and so does not constitute binding precedent, it is valid and persuasive authority because the judges of the Israeli district courts are experienced observers and interpreters of the decisions of the Supreme Court (since they are obligated to follow the precedents of the Supreme Court and do not want to be overturned) and therefore their decisions should generally be credited as an accurate barometer of the Supreme Court's jurisprudence and of what the Supreme Court itself would likely rule.

11. Indeed, *Bank Mizrahi* cites and relies on two of the Supreme Court cases relied on by Professor Porat, *Sahar Insurance* and *Barclays Discount Bank*, thereby indicating that the correct understanding of those cases is that of Professor Porat, not that of Mr. Naschitz.

12. In sum, I agree with Professor Porat that BOC will be liable to plaintiffs in Negligence under Israeli law if it had actual or constructive knowledge.

### Fifth Count – Breach of Statutory Duty

13.     The Fifth Count of the FAC is for Breach of Statutory Duty under CWO § 63.

14.     Neither Professor Porat nor Mr. Naschitz address the state of mind necessary to impose tort liability under CWO § 63. That may be because the cause of action for Breach of Statutory Duty under CWO § 63 does not have any inherent state of mind requirement. Rather, as the Israeli courts have explained on many occasions, the state of mind that will give rise to tort liability under CWO § 63 depends on the underlying statutory obligation that was breached. If the underlying statute has a state of mind requirement, then tort liability under CWO § 63 will arise only if that state of mind requirement is satisfied; If the underlying statute does not have a state of mind requirement, then tort liability under CWO § 63 will exist irrespective of the defendant's state of mind. The reason for this rule is simple: if the state of mind required by the underlying statute is not present, then there was no statutory violation and so, in turn, no tort. Thus, for example, if the plaintiff alleges that the defendant breached a criminal provision that includes malice as an element of the crime, the plaintiff must prove that the defendant had the requisite malicious intent – since otherwise there is no crime. Similarly, if the underlying criminal statute alleged to have been breached contains no state of mind requirement at all – i.e. if it is a strict liability statute – then tort liability under CWO § 63 will attach based solely on the defendant's <u>conduct</u>, wholly irrespective of his state of mind, because such conduct standing alone violates the underlying criminal prohibition. And where the criminal statute does not have any special (i.e. stricter or more lenient) state of mind requirement and is subject to the regular rules governing "criminal intent" under Israeli law, then civil liability under CWO § 63 will arise (assuming that the other elements of the tort are shown) provided that the defendant acted with a

state of mind meeting the definition of "criminal intent."[2] *See e.g.* Civil Appeal 145/80 *Vaknin v. Bet Shemesh,* 37(1) P.D. 113, 138-139; Civil Case (Jerusalem District Court) 6424/04 *Aharon v. Clalit Health Services* (Nevo) at ¶ 151, 153.

15. Because § 63 has no state of mind requirement of its own, the policy considerations that may sometimes limit the imposition of negligence liability – what Professor Porat refers to as a notional duty of care and normative foreseeability – are irrelevant to § 63.

16. This fact is highly significant in the instant case, because the entire debate between Professor Porat and Mr. Naschitz regarding the imposition of liability on banks for the acts of third parties revolves around policy considerations <u>unique to the negligence context</u>: the former maintains (correctly, in my view) that Israeli courts would impose a notional duty of care and normative foreseeability on the bank in the instant case (as they have in many other cases involving far less serious conduct) and the latter argues that they would not. But in the context of CWO § 63, where these judicial policy considerations play no role, this debate becomes moot: if the defendant breached a statutory obligation he will be liable under § 63 (provided that the other elements of the tort are satisfied) even if policy considerations negate imposition of negligence liability. As the Israeli Supreme Court has explained:

> The tort of negligence is based on the foreseeability test and the level of care demanded is therefore determined by the criterion of the reasonable person. By contrast, in the tort of breach of statutory duty the level of care

---

[2] While a Breach of Statutory Duty claim based an alleged breach of a criminal statute (such as the instant case) requires the plaintiff to prove that the defendant had the *mens rea* and *actus rea* necessary for a violation of the underlying crime, the level of proof demanded is the same as in any other civil case – i.e. preponderance of the evidence. Civil Case (Jerusalem District Court) 8206/06 *Captain R. v. Dayan* (Nevo) at ¶ 195.

>demanded is determined in the [underlying] statute itself and may be stricter than, identical to or less than that demanded by the reasonable person.

Civil Appeal 4597/91 *Kibbutz Afikim v. Cohen*, P.D. 50(2) 111, 121 (quotation marks omitted).

Similarly:

>Not every breach of statutory duty automatically gives rise to a breach of a duty of care. The standard set by the statute is not necessarily identical to the level of care demanded by the tort of negligence. In respect to the former, it is possible that the legislature set a stricter standard, and it is possible that it set a standard that is lower than the level of conduct that is demanded in the tort of negligence, which is determined by the reasonable person in light of the circumstances of the case. <u>The former is a standard set by the legislature, which imposes it on the public, and the latter is the fruit of [a process of] judicial legislation that balances the different interests and takes into account legal policy considerations</u>, at the conclusion of which a court determines the existence of the duty of care and the level of conduct demanded in the circumstances of the concrete case. In negligence there is an element of fault and in breach of statutory duty the liability is absolute.

Civil Case (Jerusalem District Court) 1212/96 *Representatives of the Heirs of Yariv Rotem v. Wutzberger* (Nevo) at ¶ 20 (citation omitted) (emphasis added).

And in the same vein:

>Negligence requires examining how a reasonable person would act in the circumstances of the case – does he have a duty of care to the person harmed and should he have foreseen the harm in the circumstances of the case, considerations that are not part of the tort of Breach of Statutory Duty. Because the tort of breach of Statutory Duty does not give expression to the special circumstances of the case, which are important in negligence, but rather sets a uniform behavioral norm for all cases.

Criminal Case (Haifa District Court) 713/00 *State of Israel v. Pinchasi*, P.M. 5761(1)145, 174.

17.     Here, the plaintiffs allege that BOC violated § 4 of Israel's PREVENTION OF TERRORISM ORDINANCE, 5708 – 1948, §§ 145 and 148 of Israel's PENAL LAW, 5737 – 1977 and § 85 of Israel's DEFENSE REGULATIONS (EMERGENCY PERIOD) – 1945. Thus, if the plaintiffs show that BOC had the state of mind necessary to impose criminal liability under one of these three criminal statutes, BOC will be liable for Breach of Statutory Duty under CWO § 63 (provided, of course, that BOC's conduct constituted a violation of the criminal statute) assuming that the other elements of the tort are shown.

18.     I am not an expert on criminal law and therefore I will not opine on the state of mind requirements of the three criminal prohibitions on which the plaintiffs base their claim for Breach of Statutory Duty. I am informed that the plaintiffs are submitting an opinion from an expert on Israeli criminal law, which addresses this issue.

**Sixth Count – Aiding and Abetting**

19.     The Sixth Count of the FAC is a claim under CWO § 12. While plaintiffs have captioned this count "Vicarious Liability" the cause of action created in § 12 is more analogous to, and more accurately referred to, as "Aiding and Abetting."

20.     Professor Porat noted in his Declaration that the case law interpreting the state of mind necessary for § 12 liability was sparse, but concluded that actual knowledge was sufficient for imposition of liability under § 12 and that intent was not required.

21.     For his part, Mr. Naschitz argued in his Declaration that under § 12 the defendant "must have a subjective intent to commit the same act as the principal wrongdoer." *Id*. at ¶ 30.

22. This dispute has been settled in Professor Porat's favor by the recent Israeli Supreme Court decision in Civil Appeal 5977/07 *Hebrew University v. Schocken Publishing House Ltd.*, (June 12, 2011) (not yet published).

23. In *Schocken*, the Supreme Court expressly held that the state of mind necessary to impose liability under § 12 is actual knowledge. Thus, constructive knowledge is insufficient but intent is unnecessary under § 12. The Court further held that § 12 requires only actual knowledge regarding the tortious behavior in general, and that knowledge regarding each specific incident of tortious behavior is unnecessary. *Id.* at ¶ 25.

24. Thus, BOC will be liable under § 12 if the plaintiffs show that it had actual knowledge of the relevant facts in general; BOC's intent is irrelevant under § 12.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

October 6, 2011

*B. Shnoor*
Dr. Boaz Shnoor

# Curriculum Vitae - Boaz Shnoor

Name:           Boaz Shnoor
Address:        4/4 David Goitein St., Jerusalem 97782, Israel
e-mail:         shnoor10@gmail.com
Home phone:     972–2–5858092

## Education

1997 - 2004    LL. D (direct track), Law faculty, Hebrew University, Jerusalem
               Doctoral advisor: Prof. Israel Gilead.
               Dissertation topic: "Torts as a Means of Preventing Environmental Pollution"
               (submitted 2004, approved 2005)

1996 - 1999    LL.M., Law faculty, Hebrew University, Jerusalem (as part of accelerated doctoral program)

1991 - 1995    LL.B., (*magna cum laude*), Law faculty, Hebrew University, Jerusalem

## Awards and Prizes

2002           Birk Prize for Academic Excellence in Law or Agriculture

1995           The Law Faculty (Hebrew University) Academic Excellence Scholarship

1994           Krip Prize for scholastic excellence of undergraduate law student

1993           Dinsky Prize for scholastic excellence of undergraduate law student

1992, 1993     Dean`s list

## Work Experience

2010 – 2011   Visiting Scholar, Cornell University Law School

2005 -         Founder and Academic Supervisor of the Environmental Law Clinic, Academic Center of Law and Business, Ramat-Gan (previously – The Ramat-Gan Law School)

2004 -         Lecturer - Academic Center of Law and Business, Ramat-Gan
               Courses: Tort Law, Environmental Law, Libel and Privacy Law, Causation in Tort, Uncertainty in Tort Law

2002 -            Adjunct Lecturer, Law faculty, Hebrew University, Jerusalem – Tort Law, Environmental Law and Causation in Tort Law

2008 - 2009   Adjunct Lecturer, School of Law, The College of Management, Academic Studies Division, Rishon LeZion – Tort Law

2007 – 2008   Adjunct Lecturer, Sha'arei Mishpat College, - Tort Law

2002 - 2008   Adjunct Lecturer, School of Law, The College of Management, Academic Studies Division, Rishon LeZion –Causation in Tort Law

2003 - 2004   Adjunct Lecturer, Academic Center of Law and Business, Ramat-Gan - Environmental Law

2002 - 2004   Student advisor, Law faculty, Hebrew University, Jerusalem

1999 - 2002   Assistant student advisor, Law faculty, Hebrew University, Jerusalem

1997 - 1999   Teaching assistant in Corporate Law, Law faculty, Hebrew University, Jerusalem

1996 - 2001   Teaching assistant in Tort Law, Law faculty, Hebrew University, Jerusalem

1996 - 2000   Teaching assistant in Tort Law, Academic Center of Law and Business, Ramat-Gan

1994 - 1997   Ephraim Abramzon & Co., Law Offices (student, intern, lawyer)

1994 - 1996   Teaching assistant in Criminal Law, Law faculty, Hebrew University, Jerusalem

1993 - 1996   Research assistant for Prof. Israel Gilead

1993 – 1994   Editor in Chief "Mishpatim" Law Review

1992 - 1993   Research assistant for Prof. Yoram Shahar

1992 – 1993   Member of the Editorial Board "Mishpatim" Law Review


**Professional Positions & Memberships**

2010 -            Member, The Society for Empirical Legal Studies

2008 –            Member, The Society for the Protection of Nature in Israel

2002 -            Member, Israel Society for Ecology & Environmental Quality Sciences

1998 -     Member, Adam Teva V'din - Israel Union for Environmental Defense

1996 -     Member, Israeli Bar

# **Boaz Shnoor – List of Publications**

Books

TOXIC TORTS (613 pages, 2011, Nevo Publishing and The Sacher Institute, Hebrew University, Heb.)

LIBEL LAW - DE LEGE LATA AND DE LEGE FERENDA (487 pages, 2005, The Sacher Institute and The Israel Democracy Institute, Heb.) (with K. Genaim, M. Kremnitzer)

Articles

"On the Relationship between Setting the Legal Rule and Adjudicating the Concrete Case" forthcoming 10 *Alei Mishpat* (2011-2012)

"Between Civility and Reputation, Following C.A. 1104/07 Kheir v. Gil" 15 *Hamishpat* 71 (2010, Heb.) (with Eyal Katvan)

"Loss of Chance: A Behavioral Analysis of the Difference Between Medical Negligence and Toxic Torts" 33(1) *American Journal of Trial Advocacy* 71 (2009)

"Consequences of Ignoring Uncertainty – 'Probability of Causation' in Radiation Cases 39(1) *Environmental Policy and Law* 70 (2009) (with Talma Izak-Biran, Richard Laster, Tamar Berman)

"The Theoretical Foundation of Proportional Liability in Israel" 37 *Mishpatim Law Review* 177 (2007). (Heb.)

"Causation in Fact in Toxic Torts", 23(2) *Law Studies* 559 (2007) (Heb.)

"Volenti Non Fit Injuria: Theory and Reality", *1 Alei Mishpat* (2000), pp.327-354 (Heb.)

Book Chapters

"Ringworm, Irradiation, and Compensation: The International Legal Aspects" in *Ringworm, Irradiation, and History*, (Theodore M. Brown, Shifra Shvarts , Siegal Sadetzki, Eds., The University of Rochester Press and Boydel & Bruer inc., 2012) with Eyal Katvan

"Pure Economic Loss in Israel" in PURE ECONOMIC LOSS 186 (Mauro Bussani, Vernon Palmer, Eds., Routledge-Cavendish publishing, 2009)
A revised version of this chapter was published in ISRAELI REPORTS TO THE XVII INTERNATIONAL CONGRESS OF COMPARATIVE LAW (The Sacher Institute, 2009) (with Tamar Gidron)

"Libel Law" in DEFENDING FREEDOM OF SPEECH IN THE DEMOCRATIC STATE (M. Kremnitzer ed., 2003, The Israel Democracy Institute, Heb.) pp. 179 – 233 (with K. Genaim, M. Kremnitzer)

## Boaz Shnoor - Conference Papers

"Terms of Betrayal – Legal and behavioral aspects of ringworm treatment in Israel", Association for Israeli Studies, Boston, June 2011

"Behavioral Analysis of the Ringworm Law", Conference on New Research Aspects of the Ringworm Disease in the Mass *Aliya* in Israel and Abroad The Gertner Institute for Epidemiology and Health Policy, the National Center for Compensation of Ringworm Victims, Tel-Hashomer, January 2010 (Heb.) (with Eyal Katvan)

"Environmental Claims against Governmental Authorities" the Attorney's General institute for in-service training, Ma'aleh- Hahamisha, May 2009 (Heb.)

"Toxic Torts" Conference on Tort Law, The Ozma"t Institute Yad Hashmonah, April 2009 (Heb.)

"Non-Pecuniary Damages" The Israeli Bar and Tel-Aviv University, Tel-Aviv, March 2009 (Heb.)

"Environmental Tort Law" The Israeli Bar and Tel-Aviv University, Tel-Aviv, January 2009 (Heb.)

"Loss of Chance: A Behavioral Analysis of the Difference Between Medical Negligence and Toxic Torts" Department Seminar, Academic Center of Law and Business, Ramat-Gan, December 2008 (Heb.)

"Loss of Chance: A Behavioral Analysis of the Difference Between Medical Negligence and Toxic Torts" The Yuval Levy & Co. Law & Environment Workshop, The Law Faculty, Tel Aviv University, November 2008 (Heb.)

"Economic Incentives and Pollution: Goal and Methods", Conference on Economic Incentives in Environmental Law, Academic Center of Law and Business, Ramat-Gan, June 2008 (Heb.)

"Loss of Chance: A Behavioral Analysis of the Difference Between Medical Negligence and Toxic Torts" Departmental Seminar, Law School, The College of Management, Academic Studies Division, Rishon LeZion, May 2008 (Heb.)

"Evidence Law and Uncertainty in Tort Law", Conference on Evidence Law, Haifa University and The Institute of Advanced Judicial Studies, Haifa, May 2008 (Heb.)

"Environmental Tort Law" Conference on Environmental Law, The Israeli Bar and Tel-Aviv University, Tel-Aviv, February 2008 (Heb.)

"Remedies in Libel Law", Conference on Libel Law, The Institute of Advanced Judicial Studies, Neve-Ilan, October 2007 (Heb.)

"Libel law – Theory and Reality" Conference on Libel Law in The Israel Democracy Institute, Jerusalem, March 2007 (Heb.)

"Pure Economic Loss in Israel", the 17th Congress of the International Academy of Comparative Law, Utrecht, The Netherlands, July 2006 (with Tamar Gidron)

"Non-Pecuniary Damage" The Israeli Bar and Tel-Aviv University, Tel-Aviv, June 2006 (Heb.)

"Pets, Torts and Animal Rights", Conference on Animal Rights and Biodiversity, Ramat-Gan, Israel, May 2006. (Heb.)

"Environmental Law: From Public to Private Enforcement", the 8th International Conference of the Israel Society for Ecology and Environmental Quality Sciences - Living with Global Change: Challenges in Environmental Sciences, Rehovot, Israel, May - June 2005

"The Causal Connection in the Shamgar Committee Report on the Kishon River", the 13th annual conference of the Rationality Center of the Hebrew University, Ein Gedi, Israel, December 2003 (Heb.)

"Causation in Environmental Tort", the annual convention of the Israel Society for Ecology and Environment, Tel Aviv, Israel, December 2002 (Heb.)