UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

SHERYL WULTZ, et al.

            Plaintiffs,

                                     Civil No. 11-01266(SAS)

v.

BANK OF CHINA LTD.,

            Defendant.

## FURTHER DECLARATION OF PETER GAD NASCHITZ

I, Peter Gad Naschitz, hereby declare:

1.     I have been requested by counsel for the Defendant Bank of China ("Bank") to render my professional opinion on a further question under Israeli law that has arisen in the above-captioned matter of *Wultz v. Bank of China Ltd.*: On the assumption that the Bank did not have actual knowledge that the customer mentioned in the FAC was connected with a terrorist organization - but instead could and should have observed allegedly suspicious patterns in the customer's account as described and alleged to be indicia of illegal purposes in paragraphs 78-81 of the FAC ("the subject allegations") - did the Bank have a duty in the Israeli law of negligence to take steps to protect members of the public at large from the financing of anti-Israeli terrorist organizations, such as by closing down the account? Further, do the subject allegations disclose the requisite mental state - knowledge or intent - to establish a reasonable cause of action for Aiding and Abetting of a Tort under S. 12 of the Civil Wrongs Ordinance or for Breach of Statutory Duty (S. 63) based on the Israeli statutes set forth in the FAC?

For the purpose of rendering my opinion, reference is made to my two previous declarations in these proceedings, and any terms, abbreviations and references to legal sources used and defined therein, will bear the same meanings in this Further Declaration. I have also reviewed the Declaration of Dr. Boaz Shnoor and the Supplemental Declaration of Professor Emanuel Gross, both dated October 6, 2011, and perused the decision by Chief Judge Lamberth of October 20, 2010. Passages from Israeli judgments that are provided in this Declaration have been translated from Hebrew to English and I confirm the correctness of the translations.

Framing the Issue in the Context of Israeli Tort Law

2. As previously stated, in Israel the tort of negligence is codified under Civil Wrongs Ordinance S. 35-36, and those provisions are authoritatively construed in precedents of the Supreme Court. The duty of care component of negligence liability is considered on two levels pursuant to the *Vaknin* formula (C.A. 145/80): First, a court considers whether there is a notional duty of care of a class of actors in the position of the defendant vis-à-vis a class of persons to which the plaintiff belongs, with respect to a given danger; second, if there is a notional duty of care, the court considers whether there was a duty of care in fact (also called the "concrete duty of care" in Israeli jurisprudence), i.e. whether a duty of care was owed as between the specific defendant and the specific plaintiff in the concrete circumstances of the case. The duty of care, on both levels, is examined by application of a two-tier foreseeability test defined as whether the defendant could and should have foreseen the danger to the plaintiff that would ensue in the ordinary course of events in consequence of defendant's action or inaction (also called "technical foreseeability" and "normative foreseeability" respectively). Whereas in *Vaknin* it was

said that a finding of technical foreseeability leads to a finding of normative foreseeability and a duty of care unless there are grounds of policy to negate such normative finding, the later case of C.A. 915/91 *State of Israel v. Levy* ("*Levy*") discussed and clarified *Vaknin* by ruling that the duty of care is never derived automatically from technical foreseeability, but rather the determination of a duty of care always requires a judicial conclusion that the defendant was subject to a "*neighbor*" relationship with the plaintiff and that it is "*just, lawful and reasonable to find a duty of care in the circumstances.*"[1] If the parties are remote and not "neighbors" in terms of the neighbor principle, then the duty of care does not crystallize, even if the relevant danger was foreseeable or foreseen. Moreover, as Prof. Porat agrees, there is no Israeli precedent for an affirmative duty of care of a bank in negligence to close down an account based on an allegation that funds being transferred through the account are being used to support terrorists. As stated, my opinion is that the imposition of a notional duty of care on banks vis-à-vis the public at large in respect of dangers to public safety and security associated with use of transferred funds by recipients of banking services, together with the requisite powers of banks to take such measures and the definition of the measures to be taken, are matters that are appropriate for the legislature to enact prospectively, not for the courts to formulate and enforce retrospectively in a negligence trial.

Distinction between Foreseeability and Allegations of Constructive Knowledge

3.  To clarify the conceptual framework of how foreseeability analysis operates in Israeli law in terms of the mental state of the actor, it should be observed that my prior

---

[1] The coexistence of these two key rulings has been discussed and reiterated in recent years: C.A. 5586/03 *Dr. Freimont v. Doe et. al.*(2007) (Nevo); C.A. 1617/04 *Chim Nir Aviation Services Ltd. et. al. v. Tel Aviv Securities Exchange Ltd.*, (2008) (Nevo); C.A. 4241/06 *Y. Levy v. State of Israel* (2009) (Nevo).

declaration is incorrectly characterized by Dr. Shnoor as stating the law in a manner that "does not dispute that constructive knowledge is sufficient to impose negligence liability in Israel" [paragraphs 2, 9]. Such statements of Dr. Shnoor appear to confound the conceptual foreseeability principle, as discussed in my declarations, whereby the defendant can be found liable in negligence if the court determines the defendant "could and should have foreseen" the relevant danger to the plaintiff, with the issue of underlying facts to which the principle has to be applied by an adjudicator in the given case. In this case, the subject underlying allegations of fact, whereby the Bank could and should have observed allegedly suspicious patterns in the customer's account, may be characterized as imputing "constructive knowledge" of such "indicia of illegality" to the defendant as opposed to "actual knowledge" of the relevant danger of terrorism. The question then becomes whether such constructive knowledge suffices to disclose a case for foreseeability of the relevant danger of terrorism. Such issue must not be equated to or confused with the framework principle of technical and normative foreseeability itself, within which the sufficiency of the alleged facts is being considered. Once this conceptual distinction is appreciated, it will be obvious that my previous declarations, dealing with the tests of technical and normative foreseeability, do not deal with a proposition that "constructive knowledge is sufficient to impose negligence liability in Israel" in this case or anything of the sort.

Having said that, my analysis of the negligence count now proceeds to the material question, i.e. whether the subject allegations suffice to state a case for foreseeability in support of negligence liability in Israeli law.

The Knowledge Requirement

4. In my opinion, the weight of Israeli law and precedent in cases of alleged secondary liability indicates the proposition that the defendant's actual notice of facts that are pertinent to the material danger of injury to the plaintiff's protected interests by reason of an intentional act of a third party gives rise to a finding of reasonable foreseeability (in the technical and physical sense) of the relevant danger; but constructive notice of facts giving rise to a suspicion of unspecified illegality being committed by the third party does not. Thus, in the present case, because the subject allegations lack the element of prior notice and forewarning regarding the willful unlawful actions of the bank account holder in support of terrorism, they do not disclose a reasonable case of foreseeability in the meaning of the Israeli law of negligence.

5. The statutory basis for these propositions is that sections 35-36 of the Civil Wrongs Ordinance, in providing the general principle of negligence, postulate that reasonable persons can foresee the consequences of their own acts "in the usual course of things:" S. 36 of the Civil Wrongs Ordinance.

6. The foreseeability principle applies in negligence to both duty of care and causation, and has been well elucidated by the Supreme Court in the relevant type of cases where the direct cause of the damage or injury is the crime or other willful act of another actor or actors. The general rule is that a reasonable person is not deemed able to foresee the intentional crime of another person, that not being part of "the usual course of things." The exception is where the defendant has been put on notice of specific indications for the type of behavior and damage that occurred in fact, so that the intentional tortious conduct was foreseeable.

In C.A. 350/77 *Kitan Ltd. v. Weiss et. al.*, 33 (2) P.D. 785 (1979), a manufacturing company issued a gun to a security guard, and the guard used the gun to murder his lawyer. The employer was exonerated for lack of foreseeability: In the absence of specific information which would have indicated an intention or tendency of the employee to use the gun for violent personal purposes, the type of damaging event – the unauthorized personal use of the gun to commit violence – was not foreseeable. Justice M. Shamgar (as he was then, later he was President of the Supreme Court) provided what remains the leading summary of the case law on the nature of foreseeability in the law of negligence, at 802-803 [most references removed; underlining and emphases added unless stated otherwise]:

> "The foreseeability has to relate to <u>the type of damage that occurred in fact</u> and the manner in which it occurred ...
> That is to say, <u>the foreseeability – is not in the nature of prophetic prescience in the air, but rather wears the clothing of a normative determination, which is founded on a reference to the entirety of the circumstances of a defined set of factual information</u> ... That is to say, the framework of the foreseeability is delineated with reference to a person who in the contemplation of a prudent person is likely in the circumstances of the matter and in the usual course of things in the matter to be injured by the action or inaction of the injuring party (Section 36 of the Ordinance). In this context, Flemming has said (Law of Torts, 4th ed., p. 139):
>> 'It is axiomatic that English <u>law does not recognise a duty in the air</u>, so to speak; that is, a duty that no one shall suffer from one's carelessness. To be liable for an injury he has caused, <u>the defendant's carelessness must not only have been in breach of a duty to exercise care, but the duty must have been owed to the plaintiff</u>.'
>
> It is understood, however, that it is not a condition for the duty, as defined above, that it be directed towards the specific person who suffered the damage, and indeed the wrongdoer might not know him at all. Rather it is

sufficient that he be one of a class or group of persons which the foresight of a reasonable person ought to have discovered was likely to be injured (Section 36 of the Ordinance and compare Flemming, ibid., p. 141).

Furthermore, <u>the requisite foreseeability is but the foresight of the type of damage that actually occurred</u>. In the words of my distinguished colleague, Justice Witkon, in C.A. 378/62 *Ringer v. Leon*, 17 (3) P.D. 1662, 1683:

> 'The foreseeability test comprises the premise that a person, who is not reckless and light-headed, would not conduct himself as the wrongdoer did, if he would have contemplated that his conduct was likely to cause damage to another – **of the type that was incurred in fact.**' [emphasis by Shamgar J. in original].

"To summarize this point, as apparent from Section 36 of the Ordinance, the foreseeability must relate to the general manner of occurrence and process of causation of the type of damage incurred (as opposed to the particulars of these), inasmuch as that is the meaning that should be attributed to the expression 'in the usual course of things' cited above."

7.   C.A. 576/81 *Ben Shimon v. Barda et. al.* 38 (3) P.D. 1 (1984) dealt with a case of teenagers breaking into a paramilitary youth clubhouse where guns were stored, playing games with the guns and seriously injuring one of their friends. Reasoning on the dismissal of the claim against the proprietors for lack of foreseeability, A. Barak, J.(later the President) stated on pp. 8-9:

"Indeed, the case law rule is that the foreseeability does not have to refer to all particulars of the event, as they occurred in fact, but to <u>its general character, according to its main characteristics</u>.  As Flemming says:

> 'The tendency is thus to define the risk, or rather harm within the scope of the risk, somewhat broadly – insisting on foreseeability not so much of the "particular" injury as of "<u>harm of a like *general* character</u>" [italics in original] – and paying heed neither to the extent nor the precise manner of its occurrence (J.G. Flemming, *The Law of Torts* (Sydney, 6th ed., 1983) 188).'

- 7 -

Justice Barak there went on to illustrate the difference between the general character of the damage (for which foreseeability is required) and the particulars thereof (which do not have to be foreseen), saying inter alia:

> "Take an employer, who gives a firearm to one of his employees for the purpose of his employment. Let us further assume that he has no basis to suspect that the employee will use the firearm to settle personal accounts. In these circumstances, the employer is not liable to the employee's lawyer (C.A. 350/77) or to his wife's lover (C.A. 755/76), who the employee harms by use of the firearm. The general conduct of the employee – <u>use of the firearm for forbidden personal needs</u> – *is unforeseeable*, and therefore the causative connection is severed" [italics in original].

8. C.A. 4241/06 *Y. Levy v. State of Israel, Israel Police* (2009) (Nevo): Although notionally responsible for the prevention of suicide of prisoners in their custody, prison guards in this case were held not liable for negligence when a prisoner in their custody committed suicide. Foreseeability was held lacking since specific indications of suicidal intent of the prisoner had not been received.

9. C.C. (Central District) 6413-11-08 *Eshbal Estate v. Azrieli Towers et. al.* (2011) (Not Published, Pending on Appeal) was a recent District Court case of suicide committed by visitors to a high-rise office building and mall, from the third floor. Applying the case law rules, the court held that the owners of the high-rise could not foresee that out of millions of visitors, someone would commit suicide from the third floor.

10. C.A. 4473/93 *Yaar Zeev Ltd. and another v. HaSneh Israeli Insurance Company Ltd.*, 50 (1) P.D. 866 (1996). In a fire case where an act of arson against an actor's own property also endangered adjoining neighbor's property, it was held that the willful attack by another on the actor's property will be considered unforeseeable and not

giving rise to a duty of care to protect the neighbor's property, unless the actor had <u>specific and actual notice</u> <u>of the impending danger of an act of arson against actor's own property</u>.

In other words, foreseeability of intentional violent conduct of another party such as murder or suicide is not speculation by one actor as to what the conduct of a different actor could possibly be: anything is possible in theory, but in the context of negligence liability, indications of the specific danger of violence from willful criminal acts of third parties have clearly to be received by the defendant so to be considered as foreseen or foreseeable.

11. Applying these principles of law to the subject allegations, it is clear that they do not state a reasonable case for foreseeability of the danger that the bank transfers would be used to fund terrorist organizations imperiling the plaintiffs: In the absence of particular notice of the terrorist activity a bank would not be able to foresee terrorist activity associated with one of the multitude of accounts and bank transfers. The subject allegations postulate constructive knowledge of suspicious transfers indicating illegality that a reasonable banker supposedly should pay attention to. But the alleged indication of general illegality is not tantamount to an indication of terrorist activity or that a reasonable banker knew, should have known, or could have known on inquiry in the circumstances, that the account owner was supporting terrorism. To impute such knowledge to the Bank based on the subject allegations would be to impute to it, effectively, the investigative means, capacity and skill of government anti-terrorist forces so that the Bank personnel – who allegedly knew nothing of the terrorism in fact - will be "deemed" to know more about the terrorist activity than the Israeli government did at the time, and that is an unreasonable premise. On the

pleading, the reasonable premise is that the Bank personnel did not have any information indicating use of the account to support terrorism, and a banker's inquiry regarding facially suspicious transfers of money can not reasonably be expected to have extracted a confession of terrorism from the account owner so as to put the Bank on notice of the terrorism. Thus, even to the extent the inaction of the Bank is alleged to be careless with respect to a general suspicion of illegality arising from the use of the account, such pleading does not *prima facie* establish a duty of care to protect the plaintiffs from terrorist money transfers, and thus does not disclose a case for careless violation of a protected interest of the plaintiffs in Israeli law.[2]

On The Law of Torts in General

12. My opinion is based on the law as it is embodied in statute and binding precedent and not on an attempt to predict or speculate as to what the law might become based on certain liability expanding trends, as Prof. Porat and Dr. Shnoor have suggested. I believe my approach is correct when testifying on Israeli law before the courts of another nation. Beyond this, the principles of the law of negligence which I have indicated have

---

[2] cf. on allegations of foreseeability based on alleged constructive knowledge: C.A. 5586/03 *Dr. Freimont v. Doe* (2007), where a plastic surgeon was exonerated on appeal from a tort claim alleging that a hair transplant gave the plaintiff schizophrenia. The surgeon was in fact found to have breached the standard of care requiring a plastic surgeon to include questions on the patient's psychiatric background in a pre-operation questionnaire, and where such questions would have elicited information leading to further psychiatric diagnostic tests. Applying *Kitan v. Weiss*, the Court held, inter alia, that "even if we assume that the outbreak of schizophrenia of the respondent was caused as a consequence of the operation, it was not proven that an examination of the Respondent by a psychiatrist would have led to the conclusion that it was impossible to do the operation. The Respondent had to prove that the existing concrete information regarding his mental state prior to the operation would have led a psychiatrist to the conclusion that the operation should not be done (cf. C.A. 350/77 *Kitan v. Weiss)*" (E. Arbel, J. paragraph.21; Hayut, J. and Riblin, VP concurring).

withstood the test of time and have not been changed or eroded. Some recent reminders of this are: i) the decision dated 13 July 2011 by a panel of five justices in the tobacco case of C.A. 7547/99 *Maccabi Health Services v. Dubek Ltd. et. al.* (2011) (Nevo), where the notions of "expansion" of liability for "mass torts" by relaxing burdens of proof of benefactors and imposing something akin to market share liability on cigarette manufacturers and marketers, were rejected authoritatively by the Supreme Court, instead upholding all requirements of proof in the tort law and referring any attempt at reform to the legislature. ii) In Civil Further Hearing (CFH) 4693/05 *Carmel Hospital and another v. Malul* (2010) (Nevo), adjudicated on by a panel of nine justices, the Supreme Court overturned the attempted case law enactment of "probabilistic recovery" theory into the tort law, upholding the principle that the plaintiff has to establish the fault and liability of the defendant on the balance of probability, e.g. a plaintiff cannot be awarded 20% damages if there was a 20% probability that the defendant was liable. iii) Finally, as mentioned, the Court has consistently upheld the *Levy* ruling whereby negligence law does not create a "prima facie duty of care" based on technical foreseeability that has to be rebutted by policy grounds to be argued by the defendant, clarifying that a new notional duty of care can be recognized only based on an authoritative judicial decision finding that it is reasonable, lawful and just to do so.

The Additional Banking Cases

13.     The precedents cited in the Declaration of Dr. Boaz Shnoor do not change the law on the subject of bank negligence liability in any material aspect. None of them refer to the danger of terrorist funding through a bank account or when a bank has to know or contemplate that its facilities are being exploited by terrorists. They do not establish a precedent that a bank has a notional duty of care that extends to the investigation and

discovery of international terrorist networks for the protection of the public at large in the bank's jurisdiction or in other jurisdictions, or anything of the sort. The cases deal primarily with disputes over the contractual requirement of good faith when securing loans with home mortgages.

14.     Thus, the Supreme Court case Dr. Shnoor cites, C.A. 2142/07 *Tziring v. Mishkan Bank HaPoalim Mortgage Bank and another* (2010) (Nevo), involves the invalidating of a mortgage registration that had been entered into the land register on the title of the appellant and her daughter to their apartment, as security for a loan given to appellant's ex-partner to enable the conveyance of the apartment to him. The daughter was a minor. Both the mother and the daughter signed an undertaking in favor of the bank to enable the mortgaging of the apartment as security for the ex-partner's loan. The ex-partner was notified by the bank that because the daughter was a minor, there was a need for court approval of the mortgage transaction concerning her registered rights. The ex-partner, to evade that requirement, procured a forgery of the deed (land registry extract), now representing to the bank only the mother as the title-holder of the rights in the apartment. The operative judgment (Hayut J., with Naor J. concurring without an opinion) strikes down the transaction based on good faith principles in Israeli contract law and the interpretation of the written undertaking. In a reasoned concurrence, Justice Y. Danziger added obiter dicta opining that the bank was also culpable in negligence due to the manner in which the bank registered the mortgage without comparing the deed that was presented with that which was originally presented, and for failing to inquire how the ex-partner procured the change of title so quickly. As a matter of policy, he opined, negligent disregard of a bank of the rights of persons in a transaction, even though non-customers of

the bank (such as the appellant), ought to be weighed against a bank when it seeks to obtain or enforce rights. It should be observed that the appellant, though a non-customer of the bank, came into a direct and proximate relationship with the bank when she signed the undertaking affecting her property rights. As with obiter dicta generally, the obiter dictum of Danziger J. has to be read in the context of the case or type of case in which it was written. I see nothing in such a dictum that broadens the notional duty of care of banks beyond that already discussed in view of *Ayalon*, namely, the duty of care can extend to non-customers of banks but its extended application will be considered cautiously and on a case-to-case basis. *See* the discussion of *Ayalon* in my original Declaration at pages 7-8, and in my Supplemental Declaration at page 6.

15. The second case, C.C. (Central District) 4738-08-07 *Mizrachi v. Cohen* (2010) (Nevo), is a District court case that also deals with negligent registration of a mortgage; and thus is neither authoritative nor in point. The parts of the judgment dealing with bank negligence concern a finding that the bank was liable to a damaged party for conducting an application to register a mortgage without complying with the duty to append the land registry extract to the application, where if it had done so, the true information about the mortgages would have been disclosed to the Registrar and to the public at large via the registration. This case is again dealing with standard banking procedures and banking negligence in the usual course of bank business. The notional duty of care to prevent damage to property owners by fraudulent or deficient registrations of mortgages is not in dispute.

16. In summary, the cases cited by Dr. Shnoor stand for the proposition that a bank will be found liable in negligence within the scope of its duty of care where simple

measures of routine examination in the usual course of the bank's business would have uncovered injurious irregularities or fraud likely to damage non-customers who are connected in one way or another to the property transaction. In the present matter, by contrast, there is no alleged duty of a reasonable bank to initiate interrogation of bank account holders on suspicion of supporting terrorism and there is no allegation that bank personnel would have extracted a confession from the account holder that he was transferring funds in support of PIJ. To frame a bank's duty of care in a manner that imposes the burden on banks to interrogate their customers regarding money transfers based on an unrealistic expectation that bank personnel could have extracted confessions from those who in fact have later proven to be members of terrorist cells or networks - in the same way that mortgage bank tellers are expected to receive confirmation of the authenticity of signatures on documents and verify the correctness of land deeds – would not be reasonable, lawful or just. Therefore such framing of the duty of care would be inappropriate and in contravention of Israeli law.

Aiding and Abetting Liability

17. It is correctly pointed out by Dr. Shnoor that in *Hebrew University v. Shocken Publishing et. al.* (2011) [C.A. 5977/07 and now with petition for further hearing denied in CFH 5004/11 in September, 2011), the Supreme Court ruled that <u>actual knowledge</u> of the tortious activity was required of the appellant in order to establish aiding and abetting liability under S. 12 of the Civil Wrongs Ordinance.

It should be clarified that this case is primarily a precedent concerning the doctrine of contributory infringement of copyrights and the alleged liability of a University for acts of copyright infringement committed on campus by student groups. The doctrine was

considered as both a corollary of copyright law and as a form of aiding and abetting liability under S. 12. The analysis of the Supreme Court clearly states that <u>the actual knowledge required under S. 12 had to be specifically related to the infringement of the publishers' copyrights</u>, whereas knowledge of a general practice of students to make illegal copies of copyrighted material would not give rise to a right of claim of the publisher to the effect that the University had joined in the infringement of its rights. In the absence of actual knowledge, the defendant University could not have prevented the alleged wrongdoing. The case against the University was dismissed, inter alia on that basis, but also on the ground that it had not materially and substantially contributed to the infringing acts as is required in the doctrine of contributory infringement.[3]

18. I also disagree with the general comments made on this judgment by Dr. Shnoor and believe that this judgment leaves intact the statements of the case law regarding other S. 12 situations whereby the defendant "must have a subjective intent to commit the same act as the principal wrongdoer." It may be correct to say that the ruling means that it is possible, in some circumstances, for there to be aiding and abetting liability in the absence of "subjective intent to commit the same act as the principal wrongdoer," but I think that this is dependent on how to construe the requirement (not mentioned by Dr.

---

[3] Three conditions have to be satisfied: i) the existence of a direct infringement; ii) the secondary infringer has actual notice of the direct infringement; iii) the secondary infringer materially and substantially contributes or joins in the infringement by one of the various modes set forth in Sec. 12. Citing U.S. case law, the court noted that this ordinarily means that the secondary infringer defendant "induces, causes or materially contributes to the infringing conduct of another": Gershwin Publishing Corp. v. Columbia Artists Management Inc., 443 F2d 1159, 1162 (2d Cir. 1971). The publisher in the Hebrew University case alleged that the University had contributed to the infringement by omission, by failure to exercise effective supervision over the students. The Court held that the University did not have such effective supervision as to be able to monitor the copying activities of each and every student group on campus.

Shnoor) that there be a material and substantial contribution to the principal tort. On the whole, it is still valid to say that the tortious aider and abettor is someone who joins in the tortious activity and "knows where it is headed:" C.A. 269/82 *Hilman v. Carmi*, 41(4) P.D. 1, 6 (1987); C.A. 6871/99 *Rinat v. Rom* (2002), paragraph 9 (Nevo Publishing).

19.     The situation is quite different in the subject allegations, where the Bank does not have actual knowledge of the specific illegal activity or the type of damage that such activity was likely to cause, nor the power to investigate and supervise use of funds that parties make when they transfer money through the Bank. The Bank not having supervisory power over the use of transferred funds, subjective intent to enable the use of the account for funding of anti-Israeli terrorist organizations would have to be present to establish the aiding and abetting count. The aiding and abetting liability is not established by merely facilitating transfers of money in the course of business through the bank, or by constructive knowledge of a suspected undefined illegality.

Carelessness, Specific Knowledge or Intent, Criminal Intent

20.     In my view, the actual knowledge of the specific harmful activity that is required in aiding and abetting liability under Sec. 12 of the Civil Wrongs Ordinance goes beyond foreseeability of the type of damaging event that is the requisite state of mind for negligence of the secondary actor. In both cases, the absence of actual knowledge of the terrorist activity is the salient factor to be considered in this analysis of the subject allegations. Without such knowledge the Bank could not reasonably foresee that inaction would result in the use of the account to support terrorists; and without knowledge of the specifically anti-Israeli terrorist activity, the Bank cannot be deemed to have aided or abetted the bank account holder's terror network.

21.     For the purpose of the allegations under the heading of the breach of statutory duty count, I defer to the opinions of the criminal law experts, Prof. Emanuel Gross and Prof. Kenneth Mann, whereby the required state of mind is criminal intent to achieve the consequences of the act – this going beyond the mental state required in negligence as well as in aiding and abetting of a tort.

22.     I conclude that in the absence of an allegation of actual knowledge of the use of the account to fund terrorists' activity, there is no reasonable basis pleaded to find any of the following in Israeli law: foreseeability for the purpose of negligence liability; actual knowledge, awareness or intent to establish aiding and abetting liability; criminal intent as the basis of the alleged breaches of statutory duty. Thus the subject allegations in support of constructive knowledge do not disclose a reasonable cause of action in Israeli law.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: November 11, 2011, at Tel-Aviv, Israel

_____
Peter Gad Naschitz
Naschitz, Brandes & Co., Advocates