UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------ X

SHERYL WULTZ, individually, as
personal representative of the Estate of
Daniel Wultz, and as the natural
guardian of plaintiff Abraham Leonard
Wultz, YEKUTIEL WULTZ,
individually, as personal representative
of the Estate of Daniel Wultz, and as the
natural guardian of plaintiff Abraham
Leonard Wultz, AMANDA WULTZ, and
ABRAHAM LEONARD WULTZ, minor,
by his next friends and guardians
Sheryl Wultz and Yekutiel Wultz,

                      Plaintiffs,

        - against -

BANK OF CHINA LIMITED,

                  Defendant.

------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/9/12

**OPINION AND ORDER**

11 Civ. 1266 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.   INTRODUCTION

      This suit arises out of the death of Daniel Wultz and the injuries of

Yekutiel Wultz, suffered in a 2006 suicide bombing in Tel Aviv, Israel.  Four

members of the Wultz family brought suit against Bank of China ("BOC" or "the

Bank") and other defendants, alleging acts of international terrorism and aiding and

1

abetting international terrorism under the Antiterrorism Act ("ATA"),[1] as well as

negligence, breach of statutory duty, and vicarious liability under Israeli law.

Plaintiffs have filed a motion requesting that the Court determine the state of mind

required for the imposition of tort liability under Israeli law.

## II.   BACKGROUND

The complaint contains the following factual allegations:  On April

17, 2006, the Palestinian Islamic Jihad ("PIJ") carried out a suicide bombing in Tel

Aviv, Israel,[2] severely injuring sixteen-year-old Daniel Wultz and his father,

Yekutiel Wultz, both Florida residents.[3]  Daniel Wultz died of his injuries on May

14, 2006.[4]  The attack killed ten others and injured many more.[5]

The PIJ, an organization founded in the Gaza Strip in the early 1980s,[6]

seeks "the creation of an Islamic state in the territory of Israel, the West Bank and

the Gaza Strip, and the destruction of the state of Israel and the murder or

---

[1]     *See* 18 U.S.C. § 2333.

[2]     *See* First Amended Complaint ("FAC") ¶¶ 1-2.

[3]     *See id.* ¶ 3.

[4]     *See id.*

[5]     *See id.* ¶ 85.

[6]     *See id.* ¶ 26.

2

expulsion of its Jewish residents."[7]  Since its founding, the PIJ has killed numerous American and Israeli civilians.[8]  Consequently, the PIJ had been designated by the United States Government as a Foreign Terrorist Organization continuously since 1997 and as a Specially Designated Global Terrorist continuously since 2001,[9] and is therefore subject to stringent economic sanctions.[10]

The American-imposed sanctions regime seeks to "prevent PIJ from conducting banking activities and thereby limit its ability to plan, prepare and [ ] carry out terrorist attacks."[11]  According to plaintiffs, however, the Bank has not complied with those regulations.[12]  Between 2003 and the 2006 attack, BOC facilitated dozens of wire transfers, totaling several million dollars, for the PIJ.[13] Most of the transactions were initiated at a BOC branch in Guangzhou, China, in the name of "S.Z.R[.] Alshurafa," from an account owned by a PIJ leader named

---

[7]     *Id.* ¶ 27.

[8]     *See id.* ¶¶ 28-30.

[9]     *See id.* ¶ 31.

[10]    *See id.* ¶ 63.

[11]    *Id.* ¶ 64.

[12]    *See id.* ¶ 68.

[13]    *See id.* ¶ 69.

Said al-Shurafa.[14]  Other transfers were made by way of BOC's branches in the

United States to another of al-Shurafa's accounts.[15]  Plaintiffs allege that these

transfers were instrumental in helping the PIJ to plan and execute terrorist

attacks.[16]

        In April 2005, Israeli security officers told Chinese security and bank

officials why the PIJ transfers were being made and described the impact the

transfers had on the PIJ's terrorist activities.[17]  Later that month, Chinese officials

alerted BOC's leadership that Israeli officials had requested that the Bank halt the

transfers.[18]  Plaintiffs claim that the Bank ignored these warnings and demands.[19]

Plaintiffs allege that "[a]t all times, BOC had actual knowledge that the PIJ

transfers were being made by the PIJ for the purpose of carrying out terrorist

attacks."[20]  Further, plaintiffs contend that regardless of the warning from Israeli

officials, BOC "knew or should have known that the PIJ transfers were being made

---

[14]    *Id.*

[15]    *See id.*

[16]    *See id.* ¶ 74.

[17]    *See id.* ¶¶ 74, 77.

[18]    *See id.* ¶ 77.

[19]    *See id.*

[20]    *Id.*

4

for illegal purposes because BOC had and has statutory duties,"[21] specifically to follow rules promulgated by the United States' Financial Action Task Force.[22]

      The Wultz family originally filed suit in the United States District Court for the District of Columbia, against the Islamic Republic of Iran and several of its leaders, the Syrian Arabic Republic and several of its leaders, as well as the Bank.[23]  That court denied BOC's motion to dismiss,[24] but on reconsideration, acknowledged that it lacked personal jurisdiction over BOC, severed the claims against BOC from the others, and transferred the case here.[25]  I denied the Bank's request to reconsider its motion to dismiss[26] and later held that it is appropriate to apply Israeli tort law to this action.[27]  Plaintiffs seek construction of that law.

## III.   APPLICABLE LAW

---

[21]    *Id.* ¶ 80.

[22]    *See id.*

[23]    *See generally* FAC.

[24]    *See Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1 (D.D.C. 2010) ("*Wultz I*").

[25]    *See Wultz v. Islamic Republic of Iran*, 762 F. Supp. 2d 18, 20 (D.D.C. 2011).

[26]    *See* Transcript of 4/04/11 Conference ("4/04/11 Tr.") at 7, 36.

[27]    *See Wultz v. Bank of China*, No. 11 Civ. 1266, — F. Supp. 2d —, 2011 WL 3423792 (S.D.N.Y., Aug. 03, 2011).

"Foreign law, though formerly treated as an issue of fact, is now recognized as an issue of law, to be established by any relevant source, including testimony."[28]   In *Wultz I*, Chief Judge Royce C. Lamberth presented a thorough explication of Israeli tort law in order to adjudicate the Bank's motion to dismiss. With the exception of a jurisdictional question not at issue here, neither party claims that his ruling was clearly erroneous or that there has been a change in governing law.  Therefore, his interpretations are law of the case.

Plaintiffs allege that the Bank had actual knowledge that the al-Shurafa transfers were facilitating PIJ's terrorist acts.  In the alternative, plaintiffs argue, the Bank had "constructive knowledge" – i.e., it could have and should have made inquiries regarding al-Shurafa's suspicious transactions, and those inquiries would have given it actual knowledge.  Because he was ruling on a motion to dismiss in *Wultz I*, Chief Judge Lamberth assumed the veracity of plaintiffs' allegations, including the allegation that BOC actually knew the nature of the al-Shurafa transactions.  The Bank argues that "the D.C. Court relied exclusively on the 'actual knowledge' allegations because plaintiffs and their Israeli law experts

---

[28]     *United States v. Peterson*, 812 F.2d 486, 490 (9th Cir. 1987).  Federal Rule of Civil Procedure 44.1 establishes that "[t]he court's determination [of foreign law] must be treated as a ruling on a question of law."  Except where noted otherwise, my quotations of Israeli case law come from unofficial translations provided by the parties.

argued for the sufficiency of their Israeli law claims for Negligence, Breach of

Statutory Duty, and Vicarious Liability based *solely* on those 'actual knowledge'

allegations."[29]  I therefore reiterate Chief Judge Lamberth's rulings and expand

upon them as necessary to fill in the gaps regarding liability based on constructive

knowledge.

### A.     Construction of Israeli Negligence Law

The basic elements of negligence – duty of care, breach, causation,

and injury – are the same under New York and Israeli law.[30]  Israel's law of

negligence is codified its Civil Wrongs Ordinance (CWO).[31]  The parties have not

sought construction of the law regarding breach, causation, and injury, but instead

focus their briefs on the scope of the duty of care.  Under Israeli jurisprudence,

---

[29]     Memorandum of Bank of China Limited in Opposition to Plaintiffs' Motion Concerning the State of Mind Required for Imposition of Liability Under Israeli Law ("Def. Mem.") at 4.

[30]     *See* Declaration of Professor Ariel Porat ("Porat Decl.") in support of Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss ¶ 20.

[31]     *See Wultz I*, 755 F. Supp. 2d at 57-58, (citing Civil Wrongs Ordinance (New Version) § 35, 2 LSI (New Version) 14-15 (1972)) ("When a person does some act which in the circumstances a reasonable prudent person would not do, or fails to do some act which in the circumstances such a person would do, . . . then such act or failure constitutes carelessness and a person's carelessness as aforesaid in relation to another person to whom he owes a duty in the circumstances not to act as he did constitutes negligence. Any person who causes damage to any person by his negligence commits a civil wrong.").

according to BOC's expert on tort law, determining whether a duty of care exists is

a two-step process:

> First, a court considers whether there is a notional duty of care of a class of actors in the position of the defendant vis-a-vis a class of persons to which the plaintiff belongs, with respect to a given danger; second, if there is a notional duty of care, the court considers whether there was a duty of care in fact (also called the 'concrete duty of care' in Israeli jurisprudence), i.e., whether a duty of care was owed as between the specific defendant and the specific plaintiff in the concrete circumstances of the case.[32]

As explained by one of the plaintiffs' tort law experts, "[t]he test

regarding both the notional duty of care and the duty of care in fact is one of

foreseeability. Two questions must be asked regarding each of these duties: the

first concerns 'technical' foreseeability, and the second concerns 'normative'

foreseeability."[33]  In essence, in order to find liability under Israeli law, the court

must be able to answer "yes" to the following four questions: (1) Could this

category of defendant have foreseen the type of damage suffered by this category

of plaintiff? (2) Should this category of defendant have foreseen the type of

damages suffered by this category of plaintiff? (3) Could this specific defendant

have foreseen the damages suffered by this specific plaintiff? (4) Should this

---

[32]     Further Declaration of Peter Gad Naschitz ("Third Naschitz Decl.") ¶ 2.

[33]     Porat Decl. ¶ 26, (citing to CA 125/80 *Vankin v. Local Council of Bet Shemesh*, 37(1) PD 113 [1982]).

specific defendant have foreseen the damages suffered by this specific plaintiff? The "could" questions are technical and largely fact-based; the "should" questions are normative and driven by questions of fairness, justice, and policy, including:

> "the freedom of activity of potential defendants; the protection of both the personal integrity and the property of potential plaintiffs; the financial burden that would be imposed upon potential defendants if a duty of care were to be imposed; the possible influence of the court's decision on social behaviour; the extent to which the risk that resulted in the damage was unusual and unreasonable; the relative ability of the parties to spread the losses; the fear of burdening the courts with excessive litigation; and the fear of groundless or fraudulent claims."[34]

There is a presumption that where injury *could* have been foreseen, the injury also *should* have been foreseen.[35]  However, the existence of notional duty "'is never derived automatically from a finding of technical foreseeability,' . . . . Rather, the presumption of notional duty can be 'negated when there are reasons to do so as a matter of legal policy.'"[36]

Thus, as Chief Judge Lamberth explained, "the Court will not extrapolate a general rule of Israeli negligence jurisprudence that banks will never

---

[34]   *Wultz I*, 755 F. Supp. 2d at 59 (quoting Ariel Porat, *Tort Law*, in *Introduction to the Law of Israel* 127, 128-32 (Amos Shapira & Keres C. DeWitt-Arar eds., 1995).

[35]   *See* Porat Decl. ¶ 27 (quoting CA 243/83 *The City of Jerusalem v. Gordon* 39(1) PD 113, 129 [1983]).

[36]   *Wultz I*, 755 F. Supp. 2d at 59 (quoting CA 915/91 *State of Israel v. Levy* 48(3) PD 45, 65-66 [1994]).

be placed under a notional duty in a case with facts such as the ones pled here . . .
To the contrary, a close analysis . . . implies that Israeli courts *would* entertain such
a claim."[37]

The Bank argues that the Court's ruling was based only on plaintiffs'
allegation of actual knowledge and did not address whether and when an Israeli
court would impose liability on the basis of constructive knowledge.  The Bank
argues that "[a] bank's knowledge of questionable, and therefore suspicious,
banking transactions does not give rise to a duty of care under Israeli law to protect
non-customers from the intentional torts of a bank customer,"[38] but the cases that it
cites contradict that generalization: for example, in *Ayalon Insurance Co. v. The
Executor of the Estate of Haya Ofelger*, which dealt with allegations of
embezzlement by an executor, the Israeli Supreme Court ruled that a bank could
have an obligation to know that an account holder is violating her fiduciary duties
to a third party, but only in the limited circumstances

> where suspicious, unusual and exceptional circumstances exist to such
> an extent that the bank cannot remain indifferent to them, cannot turn a
> blind eye. In such cases, the bank is subject to the obligation of
> investigating the matter, provided that the means which the bank shall be
> required, as a "reasonable bank," to take in these circumstances shall be

---

[37]     *Id*. at 60.

[38]     Def. Mem. at 8.

10

simple and clear.[39]

Thus, banks *will* have a duty of care to protect third parties against the torts of account holders if sufficient suspicious, unusual, and exceptional circumstances exist to warrant a reasonable investigation of the matter by the bank. As Chief Judge Lamberth explained, *Ayalon Insurance* stands for the proposition that a "'bank is subject to the duty of foreseeing that its negligence would cause damage to a third party, even if said third party is not its customer'" but that "'the boundaries of the duty [to third parties] should be extremely limited.'"[40]  Other statements of the Israeli Supreme Court reiterate this general principle:   "A bank owes an enhanced duty of care not only to its clients, but also to third parties, in cases where it could have foreseen that a third party would be harmed if the bank did not take reasonable precautions;"[41] "As a matter of policy I believe that banking entities also have a notional duty of care towards non-customers, and this duty can, in the appropriate cases (and if a concrete duty of care is recognized),

---

[39]     CA 8068/01 *Ayalon Ins. Co. v. The Executor of the Estate of Haya Ofelger*, 59(2) PD 349, 372-75 [2004] (quoted in Def. Mem. at 8).

[40]     *Wultz I*, 755 F. Supp. 2d at 61 (quoting *Ayalon Insurance*, 59(2) PD at 371, 372.)

[41]     CA 5379/95 *Sahar Ins. Co. v. Israel Discount Bank*, PD 51 (4) 464, 477-78 [1997].

obligate them to take active steps. . ."[42]   The Bank attempts to distinguish these cases by arguing that they dealt with the third parties' property interests related to the bank account in question,[43] but it does not point to evidence that Israeli courts have imposed a categorical prohibition on liability not related to property interests. Rather, it points out the novelty of this case: no Israeli precedent has imposed a duty of care such as the one plaintiffs seek here.[44]   Plaintiffs do not dispute that there is no on-point authority.[45]   Rather, they argue that "the clear principles of existing case law," when applied to the facts of this case, would impose liability on the Bank "if it is shown to have had constructive knowledge."[46]   The Bank's legal expert comes close to conceding that liability is possible *if* "a reasonable banker knew, should have known, or could have known on inquiry in the circumstances, that the account owner was supporting terrorism."[47]

---

[42]   CA 2142/07 *Tziring v. Mishkan* at 17-18 (not yet published) [2010] (Danziger, J., concurring) (quoted in Declaration of Dr. Boaz Shnoor ("Shnoor Decl."), in support of plaintiffs, ¶ 6).

[43]   *See* Def. Mem. at 8 n. 12.

[44]   *See id*. at 9.

[45]   *See* Porat Decl. ¶ 49; Reply Declaration of Dr. Boaz Shnoor ("Shnoor Rep. Decl.") ¶ 21.

[46]   Shnoor Rep. Decl. ¶ 22.

[47]   Third Naschitz Decl. ¶ 11.

The core of the Bank's argument is not that constructive knowledge will *never* suffice to establish liability, but rather that in order to be liable in a case such as this one, a bank must have constructive knowledge of the fact that al-Shurafa "was providing funds to a terrorist organization in the Middle East, using money wired to his BOC accounts in China."[48]  Plaintiffs cannot establish liability, the Bank argues, simply by showing that it had "generalized notice" of "suspicious activity by a customer."[49]  Rather, it argues, Israeli case law consistently holds that the "'requisite foreseeability is . . . foresight of the type of damage that actually occurred'"[50] or "'of harm of a like *general* character.'"[51]  The Bank's argument boils down to this: "[R]easonable foreseeability of the relevant danger requires that a bank 'could and should' have foreseen that its account-holder was providing funds to support terrorist activity."[52]

Plaintiffs' expert Professor Boaz Shnoor disagrees, arguing that "it is sufficient if the defendant could have foreseen that his conduct will enable some

---

[48]     Def. Mem. at 10.

[49]     *Id.* at 11.

[50]     Naschitz Third Decl. ¶ 6 (quoting CA 350/77 *Kitan Ltd. v. Weiss*, 33(2) PD 785, 802-03 [1979]).

[51]     *Id.* ¶ 7 (quoting CA 576/81 *Ben Shimon v. Barda*, 38(3) PD 1, 8-9 [1984]).

[52]     *Id*.

13

sort [of] criminal conduct by a third party; there is no requirement that the defendant be able to foresee the specific type of crime ultimately committed or the specific type of harms ultimately caused."[53]   Plaintiffs cite to two cases for this proposition: *Ben Shimon v. Barda*[54] and *Wallace v. Egged*.[55]

In *Ben Shimon*, the Supreme Court held that the operator of a pre-army training club was liable for injuries sustained by the plaintiff after two teenagers broke into the club, stole weapons and ammunition, and several days later used them to shoot the plaintiff in the head.[56]   The Court held that the club operator was liable for not adequately securing the weapons.  *Ben Shimon* primarily stands for the proposition that the intentional criminal conduct of another person does not break the chain of causation and relieve the defendant of liability, if that conduct was foreseeable by the defendant.[57]   Plaintiffs have not explained how the case supports their argument that "it is sufficient if the defendant could have foreseen that his conduct will enable some sort [of] criminal conduct by a third party."  The risk that weapons will be misused to injure somebody is not just

---

[53]     Shnoor Reply Decl. ¶ 10.

[54]     CA 576/81 *Ben Shimon*, 38(3) PD 1.

[55]     CA 3510/99 *Wallace v. Egged*, 45(5) PD 826 [2001].

[56]     *See* Shnoor Reply Decl. ¶ 7.

[57]     *See* Porat Decl. ¶ 61.

"some sort of criminal conduct."  It is precisely the type of foreseeable criminal act that would impose on the weapons' owner a duty to secure them.

In *Wallace*, the Supreme Court held that a bus operator was liable for the injuries sustained by the plaintiff when he was randomly beaten up while waiting in the defendant's Jerusalem bus station.  *Wallace*, which has been officially translated by the Supreme Court into English, provides a thorough explication of how the intentional criminal actions of third parties impact liability under Israeli tort law and how that liability is broader than under American law. The Court explained that liability exists "in those cases where *the* criminal act was within the bounds of foreseeable risk."[58]  When determining whether a duty of care exists, the Supreme Court will inquire "whether the defendant was aware of the impending occurrence of the criminal act . . . whether in the past similar incidents occurred at the place of the incident . . . whether the criminal act that occurred is a common event or exceptional in its character."[59]  What must be foreseeable, therefore, is not simply criminality in general, but the specific risk of a particular type of crime.  Thus, in *Wallace*, the question for trial was "whether the risk *of attack without prior provocation* at the Central Bus Station is a reasonable risk,

---

[58]     *Wallace*, 45(5) P.D. 826 at 12 (emphasis added).

[59]     *Id.* at 14.

which is to be accepted as an integral part of said activity, or whether it is a risk which society views with a heightened sense of severity, in a manner that it requires that reasonable precauctionary measures must be taken to prevent it."[60] The specific nature of the criminal act matters.

      As the Israeli Supreme Court put it in *Kitan Ltd. v. Weiss*, "the foreseeability has to relate to the type of damage that occurred in fact and the manner in which it occurred."[61]  And, as explained in *Ben Shimon*, "the case law rule is that the foreseeability does not have to refer to all particulars of the event, as they occurred in fact, but to its general character, according to its main characteristics."[62]  For this proposition, the Supreme Court cited to J.G. Flemming, *The Law of Torts*, which explains that common law jurisdictions require foreseeability "not so much of the 'particular' injury as of 'harm of a like *general* character' – and paying heed neither to the extent nor the precise manner of its occurrence."[63]

      Plaintiffs' first tort law expert, Professor Ariel Porat, indicated

---

[60]    *Id*. at 15 (emphasis added).

[61]    *Kitan Ltd.*, 33(2) P.D. 785, 802-03 (quoted in Naschitz Third Decl. ¶ 6).

[62]    *Ben Shimon*, 38(3) P.D. 1 at 8-9 (quoted in Naschitz Third Decl. ¶ 7).

[63]    J.G. Flemming, *The Law of Torts* 188 (1983).

16

agreement with this proposition in his 2009 declaration, in which he wrote that "the only question remaining for determining whether a duty of care existed is whether, as a *normative* matter, the BOC should have foreseen that allowing the PIJ Transfers would enable terrorist attacks of the type that harmed the plaintiffs."[64]  Plaintiffs are thus incorrect in their view that constructive knowledge of unspecified criminal activity will suffice to create liability.[65]  Rather, to establish liability, Israeli law requires that the Bank have constructive knowledge of the risk of the type of injury that in fact occurred: that the money in al-Shurafa's account would be used to fund terrorist attacks and that injury and death were reasonably foreseeable results of that funding.  Plaintiffs may be able to show that the facially suspicious nature of al-Shurafa's transactions obligated BOC to make further inquiry into his purposes, and that such inquiry would have established his support for terrorism.  That, however, is a fact-specific question for summary judgment and/or trial.

### B.    Construction of Israeli Breach of Statutory Duty Law

Chief Judge Lamberth held that plaintiffs had adequately pled that the

---

[64]    Porat Decl. ¶ 33.

[65]    Nor is it correct to say, however, that defendants would only be liable if they had constructive knowledge of the particulars of the event – that Daniel and Yekutiel Wultz would be attacked at a restaurant in Tel Aviv.

Bank breached its statutory duties under § 85 of the Defense (Emergency) Regulations, § 4 of the Prevention of Terrorism Ordinance, and §§ 145 and 148 of the Penal Law.[66]  Breach of statutory duty is codified in the Civil Wrongs Ordinance § 63.  Unlike in the negligence context, there is no independent state of mind requirement for breach of statutory duty.  Rather, "the state of mind that will give rise to tort liability under CWO § 63 depends on the underlying statutory obligation that was breached."[67]  According to plaintiffs' criminal law expert, Professor Emanuel Gross, "in order to prevail on their Breach of Statutory Duty claim, the plaintiffs will need to demonstrate that defendant Bank of China acted with 'criminal intent,' as that term is defined in § 20 of the Penal Law."[68]

---

[66]   *See Wultz I*, 755 F. Supp. 2d at 67-80.

[67]   Shnoor Decl. ¶ 14.

[68]   Supplemental Declaration of Professor Emanuel Gross ("Gross Decl.") ¶ 6.  According to Professor Gross' translation, Section 20 reads:

> 20.(a)   Criminal intent – awareness of the character of the act, of the circumstances that constitute the particulars of the offense, and of the possibility that the act will cause consequences that constitute particulars of the offense and, in respect to the consequences, also one of the following:
>
> (1) Intent – with the goal of causing those results;
>
> (2) Recklessness, which consists of one of the following:
>
> (a)   Apathy – by indifference to the possibility that the

18

Defendant's criminal law expert, Professor Kenneth Mann, agrees with this description of the law, and explains that criminal intent requires either actual awareness (under §20(a)) or willful blindness (under §20(c)).[69]  According to Professor Mann,

> willful blindness is a subjective standard by which the prosecution (or, here, a civil plaintiff) must establish that the defendant actually and rationally suspected that the prohibited (criminal) act might occur. Suspicion judged by the objective standard of what a reasonable person could or should conclude from any given set of facts is insufficient, and cannot serve as a substitute for actual awareness.[70]

---

aforesaid consequences will be caused;

(b)   Incaution – by taking an unreasonable risk as to the possibility that the aforesaid consequences will be caused, with the hope of succeeding to prevent them.

(b) For the purposes of intent, foreseeing the occurrence of the consequences as a close to certain possibility is equivalent to intent to cause them.

(c) For the purposes of this section –

(1) a person who suspects the character of the conduct, or the possibility that the circumstances exist, is deemed to have been aware of them, if he refrains from clarifying them.

(2) It is immaterial whether the act was performed in respect to a person or property different from than that [sic] in respect to whom or which it was meant to have been performed.

[69]   *See* Supplemental Declaration of Kenneth Mann ("Mann Decl.") ¶ 4.

[70]   *Id.* ¶ 5 (emphasis removed).

19

Professor Gross does not dispute this construction and the parties agree that "proof of awareness may be accomplished by charging and proving circumstantial facts from which a court [i.e., a factfinder] could conclude that the defendant must have suspected that its customer was a terrorist organization or representative."[71]

Professor Mann reiterates his opinion, made earlier in support of the Bank's motion to dismiss, that the constructive knowledge allegations in Sections 78 through 81 of the FAC, even if proved, "would not be sufficient to allow an Israeli court to conclude that the defendant was aware that its account holder al-Shurafa was a representative or an agent of a terrorist organization."[72]   But plaintiffs have clearly alleged actual knowledge in a separate paragraph of their complaint.[73]   Whether they are able to establish actual knowledge or willful blindness is a question for summary judgment and/or trial.

---

[71]   Reply Declaration of Professor Emanuel Gross ¶ 5 (quoting Mann Decl. ¶ 10).

[72]   Mann Decl. ¶ 11.   Similarly, defendants argue that "[p]laintiffs' constructive knowledge allegations cannot support extraterritorial application of Israeli criminal law because the facts alleged in FAC ¶¶ 78-81 cannot establish the requisite actual suspicion by BOC that al-Shurafa engaged in banking transactions with the goal of injuring Israelis or Jews." Def. Mem. at 22.

[73]   See FAC ¶ 77.

C.      **Construction of Israeli Vicarious Liability Law**

Plaintiffs' Sixth Count, which they label "Vicarious Liability," alleges that the Bank is liable for aiding and abetting al-Shurafa under § 12 of the Civil Wrongs Ordinance.  The parties agree that in a recent decision, the Israeli Supreme Court clarified that actual knowledge is necessary for liability under this section.[74] The parties' experts appear to disagree about just how specific that knowledge must be: Professor Shnoor argues for the plaintiffs that the law "requires only actual knowledge regarding the tortious behavior in general, and that knowledge regarding each specific incident of tortious behavior is unnecessary,"[75] and Mr. Naschitz argues for the Bank that the law requires "knowledge of the specific harmful activity."[76]  This disagreement, however, may be more semantic than substantive.  Defendants conceded that the relevant tortious behavior by al-Shurafa is "his alleged financial support for terrorist activity,"[77] a position that appears to correspond approximately to plaintiffs' argument that liability can be found based

---

[74]    *See* Shnoor Decl. ¶ 22 and Naschitz Decl. ¶ 17, discussing CA 5977/07 *Hebrew Universty v. Schocken Publ'g House Ltd.* [June 12, 2011] (not yet published).

[75]    Shnoor Decl. ¶ 23.

[76]    Naschitz Decl. ¶ 20.

[77]    Def. Mem. at 24.

on "actual knowledge regarding the tortious behavior in general." For the moment, these areas of agreement create sufficient clarity regarding the scope of Israeli aiding and abetting liability. If additional construction is necessary, it can be done at a later stage in the litigation when the Court is presented with facts rather than general allegations and denials.

## IV.  CONCLUSION

The Court will apply Israeli law as construed above. The Clerk of the Court is directed to close this motion [Docket No. 132].

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           January 9, 2012

**- Appearances -**

**For Plaintiffs:**

Robert J. Tolchin, Esq.
111 Livingston Street, Suite 1928
Brooklyn, NY 11201
(718) 855-3627

**For Defendant:**

Mitchell R. Berger, Esq.
Patton Boggs LLP
2500 M Street, N.W.
Washington, D.C.  20037
(202) 457-5601

David T. Case, Esq.
K&L Gates LLP
1601 K Street, NW
Washington, D.C. 20006
(202) 778-9100

Walter P. Loughlin, Esq.
Sarah P. Kenney, Esq.
K&L Gates LLP
599 Lexington Avenue
New York, NY 10022
(212) 536-3900

Siubhan J.E. Magee, Esq.
Hughes, Hubbard, and Reed LLP
One Battery Park Plaza
New York, NY 10004
(212) 837-6409