UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
                                                        :

SHERYL WULTZ, individually, as
personal representative of the Estate of
Daniel Wultz, and as the natural
guardian of plaintiff Abraham Leonard
Wultz, YEKUTIEL WULTZ,
individually, as personal representative
of the Estate of Daniel Wultz, and as the
natural guardian of plaintiff Abraham
Leonard Wultz, AMANDA WULTZ, and
ABRAHAM LEONARD WULTZ, minor,
by his next friends and guardians
Sheryl Wultz and Yekutiel Wultz,

                    Plaintiffs,

      - against -

BANK OF CHINA LIMITED,

                    Defendant.
------------------------------------------------------- X

**OPINION AND ORDER**

11 Civ. 1266 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.    INTRODUCTION

       This suit arises out of the death of Daniel Wultz and the injuries of Yekutiel Wultz, suffered in a 2006 suicide bombing in Tel Aviv, Israel. Four members of the Wultz family bring this suit against Bank of China ("BOC" or "the Bank"), alleging acts of international terrorism and aiding and abetting

1

international terrorism under the Antiterrorism Act[1] as well as negligence, breach of statutory duty, and vicarious liability under Israeli law.  Last year, the Bank moved to apply New York law, rather than Israeli law, to plaintiffs' non-federal claims.  On August 3, 2011, I denied the Bank's motion, holding that although there were strong arguments favoring the application of New York law, there were slightly stronger arguments favoring the application of Israeli law.[2]  This March, in *Licci v. Lebanese Canadian Bank*, the Second Circuit was presented with facts similar to the ones here and held that New York common law, not Israeli law, should apply.[3]  Because *Licci* governs this case, I must reconsider my earlier decision.

## II.   BACKGROUND

The facts of this case were laid out in *Wultz I* and familiarity with them is assumed.  In short, the Palestinian Islamic Jihad ("PIJ") carried out a suicide bombing in Tel Aviv, Israel in 2006, killing Daniel Wultz and severely injuring Yekutiel Wultz, both Florida residents.[4]  The Wultz family sued the Bank,

---

[1]   *See* 18 U.S.C. § 2333.

[2]   *See Wultz v. Bank of China, Ltd.*, 811 F. Supp. 2d 841 (S.D.N.Y. 2011) (*Wultz I*).

[3]   *See Licci v. Lebanese Canadian Bank*, 672 F.3d 155 (2d Cir. 2012).

[4]   *See* First Amended Complaint ("FAC") ¶¶ 1-3.

along with other defendants, alleging that between 2003 and the 2006 attack, the Bank facilitated dozens of wire transfers, totaling millions of U.S. dollars, for the PIJ.[5]  Most of the transactions were initiated by the PIJ leadership in Iran, Syria, and elsewhere in the Middle East, executed by and through the Bank's branches in the United States, and received at one of the Bank's branches in Guangzhou, China.[6]  The money was then transported to the PIJ in Israel, the West Bank, and Gaza through routes that are irrelevant to this case.  Plaintiffs allege that the wire transfers were instrumental in helping the PIJ plan and execute terrorist attacks, including the 2006 suicide bombing.[7]

Plaintiffs allege that based on the suspicious nature of the transfers and on warnings that it received from Israeli officials, the Bank "knew or should have known that the PIJ transfers were being made for illegal purposes."[8]  Under Israeli negligence law, the Bank would be liable for facilitating these wire transfers if the facts established that it could have and should have known that the money

---

[5]     *See id.* ¶ 69.

[6]     *See id. See also* Plaintiffs' Memorandum of Law in Response to Order to Show Cause Issued March 6, 2012 ("Pl. Mem.") at 4-5 and n.1.

[7]     *See* FAC ¶ 74.

[8]     *Id.* ¶¶ 74-80.

would be used to fund terrorist attacks.[9]

In order to determine whether plaintiffs' non-federal claims could survive, I instructed the parties to submit "a motion on whether Israeli law or New York law applies."[10] The parties submitted briefs, comparing the relative interests that Israel and New York had in this litigation. Plaintiffs argued that Israeli law should apply; the Bank argued that New York tort law should apply and added that "China has a more significant interest in regulating BOC's conduct than does Israel" and that "among the three interested jurisdictions [China, United States, Israel], Israel has the least significant connections with the claims."[11]

I found that "meaningful considerations" favored both Israeli and New York law and that "the interest analysis does not conclusively point in favor of only one choice."[12] I noted that "China too has an interest in having its law applied,"[13] but concluded that "the weight of the particular precedent [] suggests that when conduct-regulating rules are at issue, and when the suit arises out of

---

[9] *See Wultz v. Bank of China*, No. 11 Civ. 1266, 2012 WL 70341, at *6 (S.D.N.Y. Jan. 9, 2012).

[10] 4/4/11 Conf. Tr. at 35:21-22.

[11] Memorandum in Support of Bank of China's Motion Concerning the Choice of Law Governing Plaintiffs' Non-Federal Claims [Docket No. 111] at 22.

[12] *Wultz I*, 811 F. Supp. 2d at 852.

[13] *Id.* at 852 n.76.

4

personal injury, the locus of the tort controls."[14] I therefore chose to apply the law of Israel. Although the Bank had not conducted any activity in Israel, the terrorist attack that caused plaintiffs' injuries occurred there. Under the doctrine that the law of the place where the tort occurred should govern – *lex loci delicti* – I applied Israeli law because Israel was the location of the last event necessary to create liability.

The plaintiffs in *Licci* were injured (or were the family members of people injured or killed) by rockets launched by the Lebanese organization Hizballah at targets in northern Israel in July and August of 2006. The *Licci* plaintiffs sued American Express Bank Ltd. ("AmEx") and other defendants. Plaintiffs alleged that AmEx, serving as a correspondent bank for the Lebanese Canadian Bank, had facilitated wire transfers on behalf of a Hizballah affiliate and that the transfers had helped fund the rocket attacks. As in this case, *Licci* presented the question of whether Israeli or New York negligence law should apply to AmEx's conduct. The Second Circuit held that

> [t]he alleged conflict [of law] in this case concerns a conduct-regulating rule: the scope of a bank's duty to protect third parties against intentional torts committed by the bank's customers. "'If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in

---

[14] *Id.*

regulating behavior within its borders.'" [*GlobalNet Financial.com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 384 (2d Cir. 2006) (quoting *Cooney v. Osgood Mach. Inc.*, 81 N.Y.2d 66, 72 (1993)).]

Applying the interest-analysis test, we conclude that New York has the greatest interest in this litigation. All of the challenged conduct undertaken by AmEx occurred in New York, where AmEx is headquartered and where AmEx administers its correspondent banking services. Although the plaintiffs' injuries occurred in Israel, and Israel is also the plaintiffs' domicile, those factors do not govern where, as here, the conflict pertains to a conduct-regulating rule. *Cf.* GlobalNet, 449 F.3d at 384-85. We conclude that New York, not Israel, has the stronger interest in regulating the conduct of New York-based banks operating in New York. *See, e.g.*, [*Schultz v. Boy Scouts of Am.*, 65 N.Y.2d 189, 198 (1985)] (noting the "locus jurisdiction's interests in protecting the reasonable expectations of the parties who relied on it to govern their primary conduct").[15]

### III.   DISCUSSION

The facts of *Licci* are not identical to those here. As plaintiffs argue,

> the essence of the plaintiffs' allegations against BOC is that BOC <u>in China</u> failed to exercise due care with respect to wire transfers received at a branch <u>in China</u>, thus enabling a customer <u>in China</u> to receive funds from Syria and Iran and transfer it to terrorist operatives <u>in Israel, the West Bank, and the Gaza Strip</u> who used the funds to carry out acts of terrorism <u>in Israel</u>.[16]

In contrast, in *Licci* AmEx "was simply a correspondent bank that received funds in New York" from the Lebanese Canadian Bank, followed

---

[15]   *Licci*, 672 F.3d at 157.

[16]   Pl. Mem. at 5-6 (emphasis in original).

6

instructions regarding what to do with those funds, had no contact with the originator or beneficiary of the transfers, "and did nothing at all outside of New York."[17] Although New York had the strongest interest in *Licci* because all of AmEx's conduct occurred in New York, plaintiffs argue, New York has no interest in seeing its law apply in this case because BOC's conduct occurred primarily in China. "Perhaps Chinese law might have been an option," plaintiffs argue, "but BOC did not plead Chinese law in its Answer" or argue for it in its choice of law motion, and that argument has been waived.[18]

The Bank responds with the following arguments: *First*, plaintiffs have repeatedly asserted the importance of the Bank's presence and actions in New York in processing the wire transfers, particularly in their nearly-identical state court action.[19] *Second*, plaintiffs' arguments about the Bank's actions in fact suggest that *China*, not Israel, has the strongest interest in seeing its law apply to this case. Because the parties did not submit evidence regarding Chinese law, the

---

[17] *Id.* at 6.

[18] *Id.* at 8.

[19] *See* Reply of Defendant Bank of China Ltd. to Plaintiffs' Response to Order to Show Cause ("Def. Mem.") at 2 (citing to FAC and to arguments of plaintiffs' counsel in *Elmaliach v. Bank of China*, No. 102026/09 (Sup. Ct. N.Y. Co.)).

Bank argues, the Court should apply the law of the forum state, *i.e.*, New York.[20]  *Third*, and most importantly, the Bank argues that New York has an "'overriding and paramount interest' in litigation involving banking transactions processed in New York.'"[21]  Like AmEx in *Licci*, the Bank has relied upon the laws of New York in conducting its affairs and has never sought to do any business in Israel.  It should therefore not be held liable because its third-party customer committed violent crimes in Israel using money that was withdrawn from its Chinese branches.

In *Licci*, the Second Circuit held that "[a]lthough the plaintiffs' injuries occurred in Israel, and Israel is also the plaintiffs' domicile, those factors do not govern where, as here, the conflict pertains to a conduct-regulating rule."[22]  Rather, the applicable law is that of the place where the conduct occurred.  Although the rocket attacks and terrorist bombing in these cases took place in Israel, as plaintiffs acknowledge "the relevant conduct of BOC took place in

---

[20] *See Vishipco Line v. Chase Manhattan Bank*, 660 F.2d 854, 860 (2d Cir. 1981) (stating that "the law of the forum may be applied . . . even though the forum's choice of law rules would have called for the application of foreign law" when parties did not submit evidence on the substance of foreign law).

[21] Def. Mem. at 5 (quoting *J. Zeevi & Sons, Ltd. v. Grindlays Bank (Uganda) Ltd.*, 37 N.Y.2d 220, 227 (1975)).

[22] *Licci*, 672 F.3d at 157.

Guangzhou, China": a Chinese bank in China received multiple wire transfers from abroad and its customer in China repeatedly withdrew the transferred money in cash.[23]  Furthermore, according to plaintiffs' allegations, Israeli government officials traveled to China, told Chinese government officials that these transfers were sponsoring terrorism, and demanded that the Bank stop the transfers.  The Chinese officials then conveyed the information and the demands to the Bank of China.  According to plaintiffs' allegations, Bank of China officials in China made the choice to ignore Israeli demands that they stop the transfers.[24]  Thus, according to the allegations, both the decision to continue processing the transfers and the bulk of the actual banking services occurred in China.  In contrast, only a small fraction of the relevant banking conduct occurred in New York: the wire transfers to China "may have incidentally passed through BOC's branch in New York"[25] and were "executed" by BOC's branches in the United States, although it is not clear which of the three United States BOC branches (two of which are in New York) were responsible for that execution.[26]  None of the banking conduct occurred in

---

[23]     Pl. Mem. at 7.

[24]     *See* FAC ¶ 77.

[25]     *Id.* at 6.

[26]     *See* Def. Mem. at 3.

Israel.

My earlier decision to apply Israeli law turned on the notion that "the locus of the tort controls."[27] The Second Circuit held that in this context, the location of the injury does not control; instead, it is the location of the defendant's conduct that controls.[28] The majority of the Bank's conduct occurred in China. In *Licci*, New York's interest in regulating AmEx's conduct within its borders was dispositive of the choice of law question; similarly, here, China's interest in regulating bank conduct within its borders is dispositive. It outweighs the interest of New York, through which the wire transfers passed only briefly, and the interest of Israel, where no conduct by the defendant took place.

Defendant asserts that plaintiffs' negligence claims cannot survive

---

[27] *Wultz I*, 811 F. Supp. 2d at 852.

[28] In arguing that the location of the injury controls, plaintiffs point to *Hunter v. Derby Foods, Inc.*, 110 F.2d 970 (2d Cir. 1940), which explained that "[t]he fact that the defendant's conduct occurred in New York does not oust the law of Ohio. It sent the food into Ohio, where the harm was done. The case is like that of shooting a firearm across the state line, starting a fire which passes the line, or owning a vicious animal which strays over the line." But *Hunter* and the examples listed therein all involve the direct consequences of the defendants' actions, with no intervening criminal act by a third party. The Second Circuit in *Licci* held that the facts are materially different when a bank provides standard banking services to a person who then transports money over international borders and uses it to fund terrorist activities.

under Chinese law,[29] but neither of the parties has submitted to the Court evidence on that question.[30] If plaintiffs agree with the Bank, then their fourth, fifth, and sixth claims will be dismissed. If plaintiffs disagree, then further briefing on the substance of Chinese tort law will be necessary.[31] Plaintiffs' federal Antiterrorism Act claim is not affected by this ruling.

## IV.  CONCLUSION

For the reasons stated above, this Court's August 3, 2011 ruling is withdrawn. Plaintiffs are instructed to inform the Court, by June 12, 2012, whether briefing on Chinese tort law is necessary.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
         May 25, 2012

---

[29] *See* Def. Mem. at 1.

[30] Plaintiffs argue that the Bank has "waived" its right to argue for the application of Chinese law. But the Bank *did* argue that China has a greater interest than Israel in the litigation and, in light of *Licci*, the Bank should in any event be permitted to take that position now.

[31] It would not make sense to simultaneously apply non-Israeli negligence law and Israeli breach of statutory duty law, as plaintiffs' alternative argument proposes. *See* Pl. Mem. at 10; Def. Mem. at 7-10. Because the claims apply to the same facts, doing so would eviscerate the non-Israeli negligence law in favor of Israeli breach of statutory duty law, precisely the outcome that the Second Circuit rejected in *Licci*.

11

- **Appearances** -

**For Plaintiffs:**

Robert J. Tolchin, Esq.
The Berkman Law Office, LLC
111 Livingston Street, Suite 1928
Brooklyn, NY 11201
(718) 855-3627

**For Defendant:**

Mitchell R. Berger, Esq.
Patton Boggs LLP
2500 M Street, N.W.
Washington, D.C.  20037
(202) 457-5601