UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

SHERYL WULTZ, individually, as personal
representative of the Estate of Daniel Wultz,
and as the natural guardian of plaintiff
Abraham Leonard Wultz; YEKUTIEL
WULTZ, individually, as personal
representative of the Estate of Daniel Wultz,
and as the natural guardian of plaintiff
Abraham Leonard Wultz; AMANDA
WULTZ; and ABRAHAM LEONARD
WULTZ, minor, by his next friends and
guardians Sheryl Wultz and Yekutiel Wultz,

                Plaintiffs,

            - against -

BANK OF CHINA LIMITED,

              Defendant.

------------------------------------------------------- X

**OPINION & ORDER**

**11 Civ. 1266 (SAS)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/29/12

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.     **INTRODUCTION**

        This suit arises out of the death of Daniel Wultz and the injuries of

Yekutiel Wultz, suffered in a 2006 suicide bombing in Tel Aviv, Israel. Four

members of the Wultz family brought suit against Bank of China ("BOC" or "the

Bank"), alleging acts of international terrorism and aiding and abetting

1

international terrorism under the Antiterrorism Act ("ATA"),[1] as well as negligence, breach of statutory duty, and vicarious liability.  Plaintiffs filed this action in the U.S. District Court for the District of Columbia on August 8, 2008.[2] The general facts and procedural history of the case were laid out in previous opinions[3] and familiarity with them is assumed.

Before the Court is plaintiffs' motion to compel BOC to produce documents under its control.  Some of these documents are the subject of an outstanding Letter of Request from this Court to the Ministry of Justice of China under the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Convention").  BOC's opposition to plaintiff's motion encourages this Court to wait for a response to the Letter of Request, and argues that plaintiffs' discovery requests should be narrowed and made more specific.  For the reasons stated below, plaintiffs' motion is granted with certain limitations.

---

[1]    *See* 18 U.S.C. § 2333.

[2]    *See Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1 (D.D.C. 2010).

[3]    *See Wultz v. Bank of China Ltd.*, — F. Supp. 2d —, 2012 WL 1901194 (S.D.N.Y. May 25, 2012) ("*Wultz III*"); *Wultz v. Bank of China Ltd.*, 860 F. Supp. 2d 225 (S.D.N.Y. 2012) ("*Wultz II*"); *Wultz v. Bank of China Ltd.*, 811 F. Supp. 2d 841 (S.D.N.Y. 2011) ("*Wultz I*"), *overruled by Wultz III*, 2012 WL 1901194.

## II.    BACKGROUND

On June 16, 2011, plaintiffs made their first set of requests to BOC for the production of documents.  The requests included:  *first*, documents concerning bank accounts related to Said al-Shurafa, an alleged leader of the terrorist organization responsible for the bombing, the Palestinian Islamic Jihad ("PIJ"); *second*, documents concerning investigations of BOC or sanctions imposed on BOC by any governmental agency, domestic or foreign; *third*, documents concerning communications with any governmental agency about BOC's anti-money laundering procedures; and, *fourth*, documents identified by BOC in its initial disclosures.[4]  BOC's response argued that the bank secrecy laws of the People's Republic of China prohibited BOC from producing requested documents.[5] In response to BOC's request for guidance, BOC's Chinese regulator, the People's Bank of China ("PBOC"), directed BOC to "act in accordance with the Hague Evidence Convention" and stated:

> As long as the demands submitted by the U.S. judicial authorities are in compliance with . . . the Hague Evidence Convention, and do not violate fundamental principles of law of the People's

---

[4]    *See* Plaintiffs' First Set of Requests for Production of Documents to Defendant Bank of China Limited ("First Requests"), Ex. A to 8/24/12 Declaration of Olav A. Haazen, counsel for plaintiffs ("Haazen Decl.").

[5]    *See* 8/10/11 Letter from Mitchell R. Berger, counsel for BOC, to the Court ("Berger Letter"), Ex. C to Haazen Decl., at 4.

Republic of China, China's judicial authorities and relevant financial management departments will take them seriously and provide reasonable assistance.[6]

Based on PBOC's response, BOC asked this Court to issue a request to Chinese authorities under the Hague Convention.[7]  Plaintiffs did not object.[8]  On August 31, 2011, pursuant to the Hague Convention, this Court issued a Letter of Request to the International Legal Cooperation Center of the Ministry of Justice of the PRC.[9]  The letter described the subject matter of the present case and requested that the Ministry grant BOC permission to disclose the relevant documents to plaintiffs, or, if necessary, to the Ministry itself, which could then transmit the documents to this Court.[10]

As of the date of this Opinion — more than thirteen months later — this Court has received no response to the Letter of Request.  On February 20,

---

[6]     8/3/11 Reply to Bank of China's Request for Instructions concerning the Cross-Border Submission of Evidentiary Material, Ex. 2 to 9/4/12 Declaration of Mitchell R. Berger, counsel for BOC ("Berger Decl.").

[7]     *See* Berger Letter at 4.

[8]     *See* 8/29/11 Letter from Robert J. Tolchin, former counsel for plaintiffs ("Tolchin Letter"), to the Court, Ex. 5 to Berger Decl.

[9]     *See* 8/31/11 Letter of Request for International Judicial Assistance Pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, Ex. E to Haazen Decl., at 1.

[10]     *Id.* at 9.

4

2012, BOC emailed the Ministry to inquire into the status of the request.[11]  The Ministry responded on the same day that the request had been forwarded on September 29, 2011 to the Foreign Affairs Bureau of the Supreme People's Court of China, and that "[a]ccording to usual practice," this Bureau "will arrange for execution by relevant local courts and return the execution results" to the Ministry, which "will reply to the requesting party . . . as soon as possible."[12]

A September 3, 2012 circular from PBOC to BOC concerning the status of the Letter of Request stated that on March 26, 2012, the Bureau requested PBOC's assistance with the Letter of Request; that PBOC "conducted a review" of the request, which has now been completed; and that "[f]ollowing the completion of domestic approval procedures, the Supreme People's Court will, through the Ministry of Justice . . . submit relevant evidentiary materials to the United States Department of Justice in the near future."[13]  BOC's counsel has stated, without

---

[11]     See 2/20/12 Email from Yuanyuan Zhu, PRC counsel for BOC, to Zhiying Li, International Legal Cooperation Center, Ministry of Justice of China, Ex. F (tab 1) to Haazen Decl.

[12]     Id.

[13]     9/3/12 Circular regarding Review Status of the United States Overseas Evidence Retrieval Request, Ex. 8 to Berger Decl.  BOC's attorney states that the past practice of the Ministry suggests the Ministry will transmit discovery materials to this Court, and not, as PBOC's letter states, to the U.S. Department of Justice.  See Berger Decl. ¶ 9.

citation to the record, that "[i]t is my understanding that the Hague Convention request to the PRC in this action is the first one to involve a PRC bank as a defendant, and raised time-consuming issues of first impression."[14]

In an August 20, 2012 scheduling order, this Court ordered all documents to be produced by October 31, 2012.[15]  While the parties have waited for the Ministry's response to this Court's Letter of Request, BOC has apparently produced 639 pages of documents from its New York branch, including "compliance manuals, [and] documents evidencing certain banking transactions," but no emails or electronic documents.[16]

## III.   APPLICABLE LAW

In *Société Nationale Industrielle Aérospatiale*, the Supreme Court established that the use of the Hague Convention process is optional, not mandatory, and does not deprive a District Court of the jurisdiction it would otherwise possess "to order a foreign national party before it to produce evidence

---

[14]      Berger Decl. ¶ 9.

[15]      *See* 8/20/12 Scheduling Order [Docket No. 157].

[16]      Plaintiffs' Memorandum of Law in Support of Their Motion to Compel Production of Documents ("Pl. Mem."), at 2 n.2.  BOC does not contest plaintiffs' characterization of its discovery efforts in BOC's Memorandum of Bank of China Limited in Opposition to Plaintiffs' Motion to Compel Production Documents ("Opp. Mem.").

physically located within a signatory nation."[17]  At the same time, the Supreme Court emphasized that "international comity" ("the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states") "requires in this context a . . . particularized analysis of the respective interests of the foreign nation and the requesting nation."[18]

When evaluating the propriety of an order directing the production of information or documents in contravention of foreign law, courts in the Second Circuit consider the following five factors, drawn from *Aérospatiale*:

> (1) the importance to the investigation or litigation of the documents or other information requested;
>
> (2) the degree of specificity of the request;
>
> (3) whether the information originated in the United States;
>
> (4) the availability of alternative means of securing the information; and
>
> (5) the extent to which noncompliance with the request would undermine important interests of the United States, or

---

[17]     *Société Nationale Industrielle Aérospatiale v. United States Dist. Ct. for the Southern Dist. of Iowa*, 482 U.S. 522, 539–40 (1987).

[18]     *Id.* at 543–44 & n.27.

7

compliance with the request would undermine the important

interests of the state where the information is located.[19]

Courts in the Second Circuit also consider:

> (6) the hardship of compliance on the party or witness from
>
> whom discovery is sought; and
>
> (7) the good faith of the party resisting discovery.[20]

## IV.   DISCUSSION

This is not the first case in which a party has sought the production of

documents by BOC, BOC has objected that production would threaten it with civil

and criminal liability under China's bank secrecy laws, and a court has responded

by applying the Second Circuit's multi-factor comity test.[21]  In the two most recent

---

[19]   *See Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D. 429, 438–39 (E.D.N.Y. 2008) (citing *Aérospatiale*, 482 U.S. at 544 n.28; RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 442(1)(c)).  *See also Gucci America, Inc. v. Weixing Li*, No. 10 Civ. 4974, 2011 WL 6156936, at *5 (S.D.N.Y. Aug. 23, 2011).

[20]   *See Strauss*, 249 F.R.D. at 438–39 (citing *Minpeco S.A. v. Conticommodity Servs., Inc.*, 116 F.R.D. 517, 523 (S.D.N.Y. 1987)).

[21]   *See Tiffany (NJ) LLC v. Forbse*, No. 11 Civ. 4976, 2012 WL 1918866 (S.D.N.Y. May 23, 2012) (ordering BOC, *as non-party*, to produce materials in contravention of Chinese law, in part based on suggestion of potential bad faith by BOC in context of multi-factor comity analysis); *Weixing Li*, 2011 WL 6156936 (ordering BOC, *as non-party*, to comply with subpoena in contravention of Chinese law, based on multi-factor comity analysis); *Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143 (S.D.N.Y. 2011) (declining to compel BOC, *as non-party*,

cases, the court compelled BOC to produce discovery materials in contravention of Chinese law even though BOC was a non-party.[22]  The fact that in the instant case BOC is a party doing business in the United States, and that some of the requested discovery may be physically present in the United States at BOC's New York branches, makes the case for compelling production even stronger.

Two other aspects of the earlier cases are relevant to this Court's application of the comity test in the instant case.  *First*, despite BOC's concerns, BOC has apparently never been sanctioned by the Chinese government for complying with American court orders to produce documents in contravention of China's bank secrecy laws.  On at least two occasions BOC has now been ordered to produce discovery materials.[23]  In both cases, BOC expressed concerns beforehand that doing so could result in sanctions.[24]  BOC's brief in opposition to

---

to produce documents in contravention of Chinese law, based on multi-factor comity analysis).

[22]     *See supra* note 21.

[23]     *See Forbse*, 2012 WL 1918866, at *11; *Weixing Li*, 2011 WL 6156936, at *12.

[24]     *See Forbse*, 2012 WL 1918866, at *9 (noting BOC's contention that sanctions were "much more than speculative"); *Weixing Li*, 2011 WL 6156936, at *11 (noting BOC's contention that if forced to comply with subpeona, "not only would Bank of China be subject to heavy fines, but employees of Bank of China could spend several years in jail").

plaintiffs' current motion to compel continues to express concerns regarding the

"clear potential for PRC sanctions on BOC for a production unauthorized by the

PRC government."[25]  But BOC's brief fails to indicate any sanctions that BOC has

in fact received as a result of its compliance with the two prior orders, other than a

"severe warning" from Chinese banking regulators.[26]  To date, the evidence

remains strong for the conclusion reached in the *Forbse* case that meaningful

sanctions by the Chinese government against BOC are "highly doubtful,"

especially given the Chinese government's majority interest in BOC.[27]

       *Second*, the Ministry of Justice of China has now responded to at least

one Letter of Request for the production of documents by BOC in contravention of

China's bank secrecy laws.[28]  The Ministry's response to the Letter of Request,

---

[25]      Opp. Mem. at 4.

[26]      On November 3, 2011, two of the bodies responsible for banking regulation in China, PBOC and the China Banking Regulatory Commission ("CBRC"), wrote a letter to four judges of the U.S. District Court for the Southern District of New York noting that PBOC and CBRC had already issued a "severe warning" to BOC and were determining "appropriate sanctions" in response to BOC's compliance with Judge Sullivan's order in *Weixing Li*.  *See* 11/3/11 Letter from People's Bank of China and the China Banking Regulatory Commission to Judges Pauley, Sullivan, Pitman, and Batts ("PBOC-CBRC Letter"), Ex. 6 to Berger Decl., at 3.

[27]      *Forbse*, 2012 WL 1918866, at *9.

[28]      *See* 8/7/12 Letter from Ministry of Justice, People's Republic of China, to the Honorable Magistrate Judge Henry B. Pitman ("Ministry Letter"),

dated August 7, 2012, only executed the requests in part.[29]   The Ministry's sole

reason for its partial refusal was the Chinese government's declaration at its

accession to the Hague Convention that it would only execute discovery requests

for "documents clearly enumerated in the Letters of Request and of direct and

close connection with the subject matter of the litigation."[30]   The Ministry

concluded that some of the evidence requested by the court's Letter of Request

"lacks direct and close connections with the litigation."[31]   In contrast to the U.S.

Supreme Court's hopes in *Aérospatiale*,[32] the Ministry of Justice appears to have

---

Ex. 7 to Berger Decl.

[29]      *See id.* at 1.

[30]      *Id.  See also* Hague Conference on Private International Law,
Declaration by People's Republic of China, Hague Convention of 18 March 1970
on the Taking of Evidence Abroad in Civil or Commercial Matters ("China Decl.")
¶ 2.

[31]      Ministry Letter.

[32]      *See Aérospatiale*, 482 U.S. at 542 ("It is well known that the scope of
American discovery is often significantly broader than is permitted in other
jurisdictions, and we are satisfied that foreign tribunals will recognize that the final
decision on the evidence to be used in litigation conducted in American courts
must be made by [American] courts.").  Reporters' Notes ¶ 1, RESTATEMENT
(THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 442, describes in
greater detail the international hostility to United States discovery practices.  The
note concludes that despite this hostility, "[t]he United States position . . . has been
that persons who do business in the United States, or who otherwise bring
themselves within United States jurisdiction to prescribe and to adjudicate, are
subject to the burdens as well as the benefits of United States law, including the
laws on discovery."  Today's opinion regarding BOC's discovery obligations

chosen not to defer to the relatively broad scope of American discovery in its

treatment of the Hague Convention request.

      Neither of these developments could have been fully known to

plaintiffs when they consented to the submission of the Letter of Request on

August 29, 2011.[33]  Moreover, plaintiffs expressly noted at the time that in

consenting to the Letter, they were not consenting to wait indefinitely for a

response, and to the contrary "intend[ed] to move to compel production from the

defendant after waiting a reasonable time for the defendant to seek permission

from the Chinese authorities."[34]  Well over a year has passed since the submission

of the Letter.  In light of this Court's obligation to secure the "just, speedy, and

inexpensive determination" of the present action,[35] this Court must consider

---

reflects the United States position.  *See also* RESTATEMENT (THIRD) OF FOREIGN
RELATIONS LAW OF THE UNITED STATES § 441(2)(a) ("In general, a state may
require a person of foreign nationality . . . to do an act in that state even if it is
prohibited by the law of the state of which he is a national . . . .").

[33]    *See* Tolchin Letter.

[34]    *Id.*

[35]    *See* Fed. R. Civ. P. 1.  *See also Aérospatiale*, 482 U.S. at 542–43
(rejecting the mandatory use of Hague Convention as first resort whenever
discovery is sought from a foreign litigant, because "[i]n many situations the Letter
of Request procedure . . . would be unduly time consuming and expensive, as well
as less certain to produce needed evidence than direct use of the Federal Rules"
and therefore "inconsistent with the overriding interest in the 'just, speedy, and
inexpensive determination' of litigation in our courts" (quoting Fed. R. Civ. P. 1)).

plaintiffs' motion to compel based on an application of the Second Circuit's seven-factor comity test to the facts of this case as they are known today.

### 1–2.   Importance of Documents and Specificity of Request

On the one hand, plaintiffs persuasively argue that each of the general categories of their requested discovery contains documents that are important to their case.[36]  BOC does not meaningfully contest this conclusion.[37]  On the other hand, BOC persuasively argues that the scope of some of plaintiffs' requests is overbroad.[38]  BOC contests the scope of requests 7–9 and 1–5, but not requests 6 or 10.[39]  I find that requests 7–9 require substantial narrowing.[40]

---

[36]     *See* Pl. Mem. at 4–5.

[37]     *See* Opp. Mem. at 5–10.

[38]     *See id.* at 5–9.

[39]     *See id.*

[40]     Plaintiffs' requests 7–9 seek the production of:

    7.    All documents concerning any examination or investigation of BOC by any governmental agency (domestic or foreign).

    8.    All documents concerning any penalty or sanction imposed on BOC by any governmental agency (domestic or foreign).

    9.    All documents concerning communications to which any governmental agency (domestic or foreign) was a party, which relate to, refer to, describe and/or evidence BOC's AML/STF procedures, operations and activities.

First Requests at 6.  BOC correctly objects that these requests lack any time-frame and sweep far beyond the universe of documents relevant to plaintiffs' claims.

Significantly, plaintiffs do not meaningfully contest BOC's conclusion that requests 7–9 are overbroad.[41]  In addition, plaintiffs appear to agree with BOC's argument that BOC "is legally barred from producing certain regulatory communications and filings" by U.S. banking laws and regulations.[42]

Based on the above, there may be room for the parties to resolve at least some of their numerous disputes over the scope of discovery without this Court's intervention.  As BOC's opposition brief notes, and plaintiffs' reply brief confirms, the parties did not meet and confer regarding the narrowing of plaintiffs' requests prior to the submission of plaintiffs' motion to compel.[43]

The parties are now directed to attempt to negotiate a narrowing of plaintiffs' requests in accord with the Federal Rules of Civil Procedure and relevant U.S. banking laws and regulations.  Plaintiffs are entitled to obtain materials relevant to the claims and defenses raised in this case and "reasonably

---

Obviously, not every governmental examination of BOC or penalty imposed on BOC will be relevant to plaintiffs' claims.

[41]    *See* Pl. Mem. at 6 (regarding specificity of requests); Plaintiffs' Reply Memorandum of Law in Support of Their Motion to Compel Production of Documents ("Reply Mem."), at 1.

[42]    Reply Mem. at 5; Opp. Mem. at 8.

[43]    *See* Opp. Mem. at 5; Reply Mem. at 1.

14

calculated to lead to the discovery of admissible evidence,"[44] as limited by consideration of the factors set forth in Rule 26(b)(2)(C).  With regard to foreign discovery materials, I recognize that ordinarily it may be "reasonable to limit foreign discovery to information [that is] necessary to the action . . . and directly relevant and material," rather than "information that could lead to admissible evidence."[45]  But in light of the significant U.S. interest in eliminating sources of funding for international terrorism, and the other factors discussed below, the law governing discovery disputes in this case must ultimately be the broad discovery rules of the Federal Rules of Civil Procedure.

However, to the extent that plaintiffs' narrowed discovery requests call for the production of confidential regulatory documents *created by the Chinese government* whose production is clearly prohibited under Chinese law, I decline to order production of such regulatory documents.[46]  While the issue of whether to order BOC to produce discovery materials in contravention of Chinese bank secrecy laws has now been thoroughly aired in several decisions from this district,

---

[44]      Fed. R. Civ. P. 26(b)(1).

[45]      RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 442, cmt. a.

[46]      To be perfectly clear, this exception does not apply to materials created by BOC and provided to the Chinese government in the course of regulatory reviews.

the issue of whether to order BOC to produce confidential Chinese governmental regulatory documents in violation of other Chinese laws prohibiting such production has not been sufficiently analyzed or briefed.  Ordering the production of the non-public regulatory documents of a foreign government may infringe the sovereignty of the foreign state and violate principles of international comity to a far greater extent than the ordered production of private account information in contravention of foreign bank secrecy laws, and consequently deserves close and distinct attention.[47]  If plaintiffs' narrowed discovery requests encompass the production of confidential regulatory documents created by the Chinese government, the parties may submit supplemental letters on this sensitive issue.

Returning to the comity analysis in light of the above, I conclude that the importance of the documents requested by plaintiffs in its First Requests weighs in favor of granting plaintiffs' motion to compel.  At present, the lack of specificity of some of plaintiffs' discovery requests weighs against granting plaintiffs' motion.  But once plaintiffs' discovery requests have been narrowed in accordance with the principles articulated above, the specificity factor will weigh in plaintiffs' favor as well.

_____

[47]     *See Aérospatiale*, 482 U.S. at 546 ("American courts should . . . take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations, and for any sovereign interest expressed by a foreign state.").

### 3.    Whether Information Originated in United States

As in *Weixing Li* and *Forbse*,[48] there is no genuine dispute that at least some of the documents to which the present comity analysis applies originated in China.[49]  This factor weighs against plaintiffs' discovery request.

### 4.    Availability of Alternative Means

In earlier cases involving attempts to obtain materials from BOC in contravention of Chinese bank secrecy laws, BOC argued that the Hague Convention would provide "a perfectly adequate means of securing the information . . . requested without forcing the Bank to violate Chinese law,"[50] while earlier plaintiffs argued that a request through the Hague Convention would not represent a reasonable alternative means of obtaining the requested discovery.[51]

In the instant case, BOC emphasizes the significance of the pending Hague request, "to which the PRC Supreme Court reportedly has devoted

---

[48]    *See Forbse*, 2012 WL 1918866, at *5–6; *Weixing Li*, 2011 WL 6156936, at *6.

[49]    *See* First Amended Complaint ¶ 69 (alleging that most of the transfers for the PIJ were made to an account "at a BOC branch in Guanzhou, China").

[50]    *Weixing Li*, 2011 WL 615693, at *7. *Accord Forbse*, 2012 WL 1918866, at *6; *Qi Andrew*, 276 F.R.D. at 152–53.

[51]    *See Forbse*, 2012 WL 1918866, at *7.  *See also Weixing Li*, 2011 WL 615693, at *7; *Qi Andrew*, 276 F.R.D. at 152–53.

substantial time and resources."[52]  BOC argues that the PRC Supreme Court ruling

"would inform, and narrow if not obviate, this Court's comity analysis."[53]

   BOC also draws this Court's attention to a November 3, 2011 letter

from PBOC and the China Banking Regulatory Commission ("CBRC") to four

judges of the Southern District of New York.[54]  The letter urges "U.S. courts to

employ the Hague Convention in order to avoid a conflict between PRC law and

U.S. law," following the example of Judge Pitman in *Qi Andrew*.[55]  The letter also

suggests that through a yearly Strategic and Economic Dialogue established in

2009, the U.S. and PRC governments have reached "an important consensus that

bilateral mechanisms [such as the Hague Convention] should be preferred to

unilateral actions in cross-border legal enforcement."[56]  The letter notes that "a

U.S. court . . . enforcing a subpoena to compel production of bank account

information in China or ordering a Chinese bank to freeze or turn over client assets

in China [would] violate the above-mentioned important consensus," which would

---

[52]  Opp. Mem. at 3.

[53]  *Id.*

[54]  *See id.*, citing PBOC-CBRC Letter.  BOC identifies PBOC and CBRC as "China's principal bank regulators."  *Id.*

[55]  PBOC-CRBC Letter at 2 (emphasis omitted).

[56]  *Id.* at 3.

have "an unnecessary adverse impact on further discussions and cooperation."[57]

    While I recognize and respect the sovereign interest expressed by the
PBOC-CRBC letter,[58] and strongly agree that bilateral mechanisms are preferable
to unilateral actions in cross-border legal enforcement, I nevertheless conclude that
subsequent events have validated the concern in an earlier BOC discovery case
"that Hague Convention requests in circumstances similar to those presented here
are not a viable alternative method of securing the information Plaintiffs seek."[59]
*First*, as noted above, the Chinese Ministry of Justice's response to the Hague
request in *Qi Andrew* denied some of the valid discovery requested by the court's
Letter of Request.[60]  Specifically, the Ministry denied requests that were not
"clearly enumerated" and "of direct and close connection with the subject matter of
the litigation,"[61] echoing the language in China's declaration at its accession to the
Hague Convention.[62]  The PBOC-CRBC letter also invokes this language when it

---

[57]     *Id.*

[58]     *See Aérospatiale*, 482 U.S. at 546 ("American courts should . . . take
care to demonstrate due respect for . . . any sovereign interest expressed by a
foreign state.").

[59]     *Weixing Li*, 2011 WL 6156936, at *9.

[60]     *See* Ministry Letter.

[61]     *Id.* at 1.

[62]     *See* China Decl.

states: "[W]e would expect that U.S. courts, in hearing [cases similar to *Qi Andrew*] in the future, will rely on that decision and require parties seeking information relating to a bank account in China to rely on the Hague Convention to request information that is *directly and closely related* to the case."[63]  If the Ministry applies a similar standard in the instant case, it is likely that documents relevant to plaintiffs' claims — in particular, documents that may not themselves be admissible at trial, but are "reasonably calculated to lead to the discovery of admissible evidence"[64] — will be denied.  In such a scenario, the Hague Convention would definitively not represent a reasonable alternative means for plaintiffs to obtain discovery.

> *Second*, the time that has already passed since this Court's submission of the Letter of Request on August 31, 2011 by itself calls into question whether the Hague Convention process can be viewed as a *reasonable* alternative means of discovery.  The U.S. Supreme Court has recognized that where the Hague Convention process "would be unduly time consuming and expensive," requiring the parties to submit to the process is inconsistent with the "overriding interest in

---

[63]     PBOC-CRBC Letter at 2 (emphasis added).

[64]     Fed. R. Civ. P. 26(b)(1).

the 'just, speedy, and inexpensive determination' of litigation in our courts."[65]  In

other words, the ease of obtaining documents through the Hague Convention

process is relevant to this Court's analysis of the "alternative means" factor.  "'If

the information sought can easily be obtained elsewhere, there is little or no reason

to require a party to violate foreign law.'"[66]  "Conversely, if the information cannot

be *easily obtained* through alternative means, this factor is said to counterbalance

the previous factor — the location of the documents and information — and

weighs in favor of disclosure."[67]  Here, the elapsed time since the submission of

this Court's Letter of Request has already sufficiently demonstrated that plaintiffs'

requested discovery materials cannot be "*easily obtained*" through the Hague

Convention process.

In light of the preceding considerations, plaintiffs lack sufficient

alternative means for obtaining their requested materials.  This factor weighs in

favor of granting plaintiffs' motion to compel.

### 5.    Weighing of U.S. and Chinese Interests

---

[65]    *Aérospatiale*, 482 U.S. at 542–43 (quoting Fed. R. Civ. P. 1).

[66]    *Milliken & Co. v. Bank of China*, 758 F. Supp. 2d 238, 247 (S.D.N.Y. 2010) (quoting *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992)).

[67]    *Id.* (quotation marks and citation omitted).

This factor — the balancing of national interests — "is the most important, as it directly addresses the relations between sovereign nations."[68]  The United States has a "profound and compelling interest in combating terrorism at every level, including disrupting the financial underpinnings of terrorist networks."[69]  When the U.S. interest "in fully and fairly adjudicating matters before its courts" is combined with its interest in combating terrorism, the U.S. interest "is elevated to nearly its highest point, and diminishes any competing interests of the foreign state."[70]  The interest of the United States in depriving international terrorist organizations of funding that could be used to kill American citizens strongly outweighs the interest of a foreign nation in bank secrecy laws and the abstract or general assertion of sovereignty.[71]

I have given serious consideration to the countervailing Chinese interest, expressed in the PBOC-CBRC letter, in "the development of China's

---

[68]     *Madanes v. Madanes*, 186 F.R.D. 279, 286 (S.D.N.Y. 1999).

[69]     *Strauss*, 249 F.R.D. at 443–44 (citations and quotation marks omitted) (performing comity analysis in context of French banking corporation alleged to have provided material support to foreign terrorist organization and to have financed acts of terrorism).

[70]     *Id.* at 443.

[71]     *See id.*

banking industry" through the enforcement of its bank secrecy laws.[72]  More

generally, I take seriously the mutual interest of China and the United States in the

bilateral resolution of cross-border legal enforcement issues.  But the Chinese

interest in building confidence in its banking industry does not encompass an

interest in protecting the confidentiality of those who participate in the funding of

international terrorism.[73]  Even in *Forbse*, where the U.S. interest was not as great

as it is here — because it was limited to the defense of intellectual property rights

and protecting consumers from counterfeit products — the court concluded that

those interests outweighed the Chinese interests.[74]  For these reasons, the balancing

of U.S. and Chinese interests weighs heavily in favor of plaintiffs' discovery.

### 6.    Hardship of Compliance

As earlier cases have noted, BOC's New York branches are not

subsidiaries of a foreign parent company, but rather are branches of the same

corporate entities as their counterparts in China.[75]  "[T]here is a presumption that a

---

[72]     PBOC-CBRC Letter at 3.

[73]     *Cf. Forbse*, 2012 WL 1918866, at *8 ("The fact that numerous Chinese government organs are vested with the power to override the confidentiality provisions only underscores the notion that the secrecy laws were not designed to protect Chinese citizens who engage in unlawful behavior.").

[74]     *See id.* at *7–9.

[75]     *See id.* at *3 (citing and quoting *Qi Andrew*, 276 F.R.D. at 147 n.1).

corporation is in the possession and control of its own books and records," and

"[c]lear proof of lack of possession and control is necessary to rebut the

presumption."[76]  BOC has now conceded that its New York branch is not legally

separate from BOC,[77] and appears no longer to dispute that the documents at issue

in this case are in the control of BOC's New York branches.[78]  In addition, as noted

above, BOC has produced no evidence that it has been meaningfully sanctioned by

the Chinese government for complying with the two previous U.S. court orders to

produce documents in contravention of China's bank secrecy laws.[79]

          Because BOC has produced no evidence that producing the requested

foreign documents would entail significant hardship, this factor weighs in favor of

plaintiffs' discovery request.

          **7.     Good Faith of Party Resisting Discovery**

          Plaintiffs argue that BOC may not be acting in good faith, based on

two considerations.  *First*, BOC continues to promote the use of the Hague

---

[76]     *First Nat'l City Bank of N.Y. v. IRS*, 271 F.2d 616, 618 (2d Cir. 1959).

[77]     *See* Opp. Mem. at 2 n.4.

[78]     *See id.  See also Forbse*, 2012 WL 1918866, at *3 ("[I]t is revealing that BOC was able to quickly produce the relevant documents located at its Chinese branch following Judge Sullivan's decision in *Weixing Li*.").

[79]     *See Forbse*, 2012 WL 1918866, at *11; *Weixing Li*, 2011 WL 6156936, at *12.

Convention process, despite evidence from past cases that the results of such requests are uncertain,[80] and despite the lack of a response to date to the Letter of Request in this case.[81]  *Second*, plaintiffs allege that BOC "has apparently failed to undertake a comprehensive review of even documents located in New York."[82] BOC states in response that it is unable to "undertake a meaningful search for electronic records responsive to plaintiffs' overbroad Requests 7–9 until those requests are narrowed and made more specific."[83]

BOC's response, accompanied by no legal support, is unacceptable. As plaintiffs rightly note, Federal Rule of Civil Procedure 34(b)(2)(c) clearly states:  "An objection to part of a request must specify the part and permit inspection of the rest."  Plaintiffs' discovery requests 7–9 are clearly overbroad, as noted earlier.  But those requests also contained documents that are relevant to plaintiffs' claims.  BOC was obligated under the Federal Rules to permit inspection

---

[80]    *See, e.g.*, *Forbse*, 2012 WL 1918866, at *7 (citing statistics from the Chinese Ministry of Justice that "roughly half of the Hague Convention requests that China received from 2006 to 2010 . . . were returned unexecuted, and over this time period, it took an average of six months to one year for China to execute such requests.").

[81]    *See* Pl. Mem. at 8.

[82]    *Id.* at 9.

[83]    Opp. Mem. at 10 n.16.

of such documents.

Nevertheless, I lack sufficient evidence at the present time to ascribe bad faith to BOC.[84]  On balance, this factor does not weigh for or against plaintiffs' discovery request.

### 8.      Weighing the Factors

Considering the totality of the circumstances,[85] I find that the comity test weighs strongly in favor of granting plaintiffs' motion to compel, with the limitations noted above regarding the scope of the requests.

In light of this finding, as stated above, the parties are ordered to meet and confer without further delay concerning the narrowing of plaintiffs' discovery requests.  The parties are then to submit a revised and swift discovery schedule, including the immediate production of documents that should already have been produced.  If the parties remain unable to resolve specific discovery disputes, they

---

[84]      I note, however, that another judge in the Southern District recently found BOC to have acted in bad faith in its discovery practices:  "From our view, BOC's actions reflect a conscious decision to selectively disclose information pertinent to the case, and to the discovery dispute more specifically, only as it suits BOC's litigation interests."  *Tiffany (NJ) LLC v. Forbse*, No. 11 Civ. 4976, 2012 WL 3686289, at *6 (S.D.N.Y. Aug. 23, 2012).  This Court assumes BOC understands that selective disclosure and tactical delays will not be tolerated under any circumstances.

[85]      I reiterate that BOC is a party in this action over whom the Court has exercised personal jurisdiction and that some of the requested documents may be present in the United States.

may submit letters regarding those disputes, as prescribed in this Court's

Individual Rules.[86]

## IV.   CONCLUSION

For the reasons stated above, plaintiffs' motion to compel is granted,

subject to the narrowing of plaintiffs' discovery requests 7–9 through the process

described above.  The Clerk of the Court is directed to close this motion [Docket

No. 165].  A conference is scheduled for November 30, 2012 at 4:30pm.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:        October 29, 2012
              New York, New York

---

[86]    Individual Rules and Procedures of Judge Shira A. Scheindlin,
Rule V.B.

- Appearances -

**For Plaintiffs:**

David Boies, Esq.
Mary Boies, Esq.
Olav A. Haazen, Esq.
Boies, Schiller & Flexner LLP
333 Main Street
Armonk, NY 10504
(914) 749-8200

Lee S. Wolosky, Esq.
Marilyn C. Kunstler, Esq.
Jaime Sneider, Esq.
Boies, Schiller & Flexner LLP
575 Lexington Avenue
New York, NY 10022
(212) 754-4205

**For Defendant:**

Mitchell R. Berger, Esq.
Patton Boggs LLP (DC)
2550 M Street, N.W.
Washington, D.C. 20037
(202) 457-5601

David Taylor Case, Esq.
K & L Gates LLP (DC)
1601 K Street, NW
Washington, DC 20006
(202) 778-9084

Lanier Saperstein, Esq.
Allen & Overy LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 756-1136

Elissa Judith Glasband, Esq.
James Edward Tyrrell, Jr., Esq.
Patton Boggs LLP (NJ)
The Legal Center
One Riverfront Plaza
Newark, NJ 07102
(973) 848-5600

Geoffrey R. Sant, Esq.
Morrison & Foerster LLP (NYC)
1290 Avenue of the Americas
New York, NY 10104
(212) 468-8000

**For Defendant (continued)**

Sarah Peck Kenney, Esq.
Walter P. Loughlin, Esq.
K&L Gates LLP (NYC)
599 Lexington Avenue
New York, NY 10022-6030
(212) 536-4880

Siubhan Josephine Ellen Magee, Esq.
Hughes Hubbard & Reed LLP (NY)
One Battery Park Plaza
New York, NY 10004
(212) 837-6409

Zachary Warren Carter, Esq.
Dorsey & Whitney LLP
51 West 52nd Street
New York, NY 10019
(212) 415-9345