**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------- X

SHERYL WULTZ, individually, as personal
representative of the Estate of Daniel Wultz,
and as the natural guardian of plaintiff
Abraham Leonard Wultz; YEKUTIEL
WULTZ, individually, as personal
representative of the Estate of Daniel Wultz,
and as the natural guardian of plaintiff
Abraham Leonard Wultz; AMANDA
WULTZ; and ABRAHAM LEONARD
WULTZ, minor, by his next friends and
guardians Sheryl Wultz and Yekutiel Wultz,

               **Plaintiffs,**

           - against -

BANK OF CHINA LIMITED,

              **Defendant.**

------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/5/12

**OPINION & ORDER**

**11 Civ. 1266 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.  INTRODUCTION

      This suit arises out of the death of Daniel Wultz and the injuries of

Yekutiel Wultz, suffered in a 2006 suicide bombing in Tel Aviv, Israel.  Four

members of the Wultz family brought suit against Bank of China ("BOC" or "the

Bank"), alleging acts of international terrorism and aiding and abetting

international terrorism under the Antiterrorism Act ("ATA"),[1] as well as three non-federal claims:  negligence, breach of statutory duty, and vicarious liability.[2] Plaintiffs filed this action in the U.S. District Court for the District of Columbia on August 8, 2008.[3]  The general facts and procedural history of the case were laid out in previous opinions[4] and familiarity with them is assumed.

BOC now moves to dismiss plaintiffs' non-federal claims.  For the reasons stated below, BOC's motion is granted in part and denied in part.

## II.   BACKGROUND

Plaintiffs allege that between 2003 and the 2006 attack, BOC facilitated dozens of wire transfers, totaling millions of U.S. dollars, for the terrorist organization responsible for the attack that killed Daniel Wultz, the Palestinian Islamic Jihad ("PIJ").[5]  According to plaintiffs, most of the transactions

---

[1]     *See* 18 U.S.C. § 2333.

[2]     *See* First Amended Complaint ("FAC") ¶¶ 126–140, 141–152, 153–158.

[3]     *See Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1 (D.D.C. 2010).

[4]     *See Wultz v. Bank of China Ltd.*, — F. Supp. 2d —, 2012 WL 1901194 (S.D.N.Y. May 25, 2012) ("*Wultz III*"); *Wultz v. Bank of China Ltd.*, 860 F. Supp. 2d 225 (S.D.N.Y. 2012) ("*Wultz II*"); *Wultz v. Bank of China Ltd.*, 811 F. Supp. 2d 841 (S.D.N.Y. 2011) ("*Wultz I*"), *overruled by Wultz III*, 2012 WL 1901194.

[5]     *See* FAC ¶ 69.

were initiated at a BOC branch in Guangzhou, China, from an account owned by a

PIJ leader named Said al-Shurafa.[6]  Other transfers were allegedly made by way of

BOC branches in the United States to another of Shurafa's accounts.[7]

Plaintiffs allege that BOC had actual or constructive knowledge that

the PIJ transfers were being made for the purpose of carrying out terrorist attacks.[8]

According to plaintiffs, Israeli security officers informed Chinese security and

bank officials in April 2005 of the role of the transfers in the PIJ's terrorist

activities.[9]  Later that month, Chinese officials allegedly alerted the BOC

leadership that Israeli officials had requested BOC halt the transfers.[10]

Plaintiffs' First Amended Complaint, filed January 13, 2009, included

three non-federal claims against BOC, all under Israeli tort law:  negligence,

breach of statutory duty, and vicarious liability.[11]  Plaintiffs argued that under

Israeli law, banks have a duty in some circumstances to shield non-customers from

---

[6]     *See id.*

[7]     *See id.*

[8]     *See id.* ¶¶ 77, 80.

[9]     *See id.* ¶¶ 74, 77.

[10]    *See id.* ¶ 77.

[11]    *See id.* ¶¶ 126–140, 141–152, 153–158.

intentional torts committed by customers.[12]  On August 3, 2011, this Court denied BOC's motion to apply New York law, rather than Israeli law, to plaintiffs' non-federal claims.[13]  I held that although there were strong arguments favoring the application of New York law, there were slightly stronger arguments favoring the application of Israeli law.[14]

Subsequently, in *Licci v. Lebanese Canadian Bank*, the Second Circuit was presented with facts similar to the ones in this case and held that New York common law, not Israeli law, should apply.[15]  The Second Circuit held that in a context such as this case, the location of the tortious injury does not control; instead, it is the location of the defendant's conduct that controls.[16]  Because the majority of BOC's conduct in this case occurred in China, I withdrew my earlier decision and ruled that the law of China should govern plaintiffs' non-federal claims.[17]

---

[12]    *See Wultz I*, 811 F. Supp. 2d at 849–50.

[13]    *See id.* at 841.

[14]    *See id.* at 851–52.

[15]    *See Wultz III*, 2012 WL 1901194, at *1 (citing *Licci v. Lebanese Canadian Bank*, 672 F.3d 155 (2d Cir. 2012)).

[16]    *See id.* at *4.

[17]    *See id.*

The ruling also noted BOC's assertion that plaintiffs' negligence claims could not survive under Chinese law.[18]  "If plaintiffs agree with the Bank, then their fourth, fifth, and sixth claims will be dismissed.  If plaintiffs disagree, then further briefing on the substance of Chinese tort law will be necessary."[19] Plaintiffs disagreed.  BOC now moves the court to dismiss plaintiffs' non-federal claims through a judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  Both parties have provided the requested briefing.

## III.   APPLICABLE LAW

### A.   Rule 12(c) Motion

Federal Rule of Civil Procedure 12(c) states:  "After the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings."  "Judgment on the pleadings is appropriate if, from the pleadings, the moving party is entitled to judgment as a matter of law."[20]

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to

---

[18]    *See id.*

[19]    *Id.*

[20]    *Burns Int'l Sec. Servs. v. International Union, United Plant Guard Workers of Am.*, 47 F.3d 14, 16 (2d Cir. 1995).

state a claim."[21]  In both cases, "the court must accept[ ] as true the complaint's factual allegations and draw[ ] all inferences in the plaintiff's favor.  A complaint should not be dismissed on the pleadings unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[22]

### B.      Choice of Law

"A federal court sitting in diversity or adjudicating state law claims that are pendent to a federal claim must apply the choice of law rules of the forum state."[23]  In the instant case, as in *Licci*, "New York choice-of-law rules apply in adjudicating the plaintiffs' negligence claim[s]."[24]

"Under New York choice-of-law rules, '[t]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved.'"[25]  In the instant case,

---

[21]      *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006) (citing *Karedes v. Ackerley Group, Inc.*, 423 F.3d 107, 113 (2d Cir. 2005)).

[22]      *Id.* (quotation marks and footnotes omitted).

[23]      *Licci*, 672 F.3d at 157 (citing *Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir. 1989)).

[24]      *Id.*

[25]      *Id.* (quoting *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415 (2d Cir. 2006)).

"[w]ith respect to each of plaintiffs' non-federal claims, there exists a substantive conflict of laws."[26]

> The Second Circuit held in *Licci*:
>
> The alleged conflict [of law] in this case concerns a conduct-regulating rule: the scope of a bank's duty to protect third parties against intentional torts committed by the bank's customers. If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders.[27]

As I held in *Wultz III*, Chinese tort law governs plaintiffs' non-federal claims because the majority of BOC's alleged conduct occurred in China, and "China's interest in regulating bank conduct within its borders . . . outweighs the interest of New York, through which the wire transfers passed only briefly, and the interest of Israel, where no conduct by the defendant took place."[28]

## C.    Chinese Law

"'Foreign law, though formerly treated as an issue of fact, is now recognized as an issue of law, to be established by any relevant source, including

---

[26]    *Wultz I*, 811 F. Supp. 2d at 849.

[27]    *Licci*, 672 F.3d at 158 (citation and quotation marks omitted).

[28]    *Wultz III*, 2012 WL 1901194, at *4.

7

testimony.'"[29]   Federal Rule of Civil Procedure 44.1 establishes that "[t]he court's determination [of foreign law] must be treated as a ruling on a question of law."

The parties agree that the primary sources of Chinese tort law during the relevant time period in the instant case were the General Principles of Civil Law of the People's Republic of China (1987) ("General Principles") and related interpretations issued by the Supreme People's Court.[30]   "When they were passed by the National People's Congress in 1986, the General Principles were meant to be an overall framework for more specific laws to be adopted subsequently."[31]   The

---

[29]   *Wultz II*, 860 F. Supp. 2d at 230 (quoting *United States v. Peterson*, 812 F.2d 486, 490 (9th Cir. 1987)).  *Accord In re Vitamin C Antitrust Litig.*, 810 F. Supp. 2d 522, 562 (E.D.N.Y. 2011) ("A determination of foreign law is, like choice of law analysis, a preliminary matter to be resolved by the court. Therefore, any disputed facts underlying that determination must also be resolved by the court.").

[30]   *See* Expert Report of Jacques deLisle ("deLisle Report"), Ex. 1 to 8/20/12 Declaration of Mitchell R. Berger, counsel for BOC ("Berger Decl."), ¶ 13; Plaintiffs' Memorandum in Opposition to Bank of China Limited's Motion for Partial Judgment on the Pleadings ("Opp. Mem.") at 3.  All quotations from and citations to the General Principles are from the translations appearing in the briefs and supporting declarations, or from the translation available on the Supreme People's Court of the People's Republic of China website at: http://en.chinacourt.org/public/detail.php?id=2696.

[31]   Andrew J. Green, *Tort Reform with Chinese Characteristics: Towards a "Harmonious Society" in the People's Republic of China*, 10 SAN DIEGO INT'L L.J. 121, 126 (2008).  Green notes that "without further clarification the provisions provide only rough guidance to China's courts on how to handle a personal injury tort case." *Id.* at 127.  Because Chinese courts do not develop law through case precedent, "[t]he absence of sufficiently detailed positive law . . . impede[d] the

8

more comprehensive and specific Tort Law of the People's Republic of China

("PRC") finally arrived in 2009 and became effective July 1, 2010.[32]

## IV.   ANALYSIS

### A.   Plaintiffs' Non-Federal Claims Under Chinese Law

In support of the contention that plaintiffs' non-federal claims would

fail under Chinese tort law, BOC offers reports from two experts:  Jacques deLisle,

a distinguished professor of law and political science and the Director of the Center

for East Asian Studies at the University of Pennsylvania, who has written and

taught for over two decades on contemporary Chinese law, including Chinese tort

law;[33] and Zhang Xinbao, a professor of law at Renmin University of China Law

School with expertise in the theoretical underpinnings of Chinese tort law.[34]  In

support of the viability of plaintiffs' non-federal claims, plaintiffs offer a report

from George W. Conk, an adjunct professor of law at Fordham Law School and

U.S. tort law expert who has published translations of and at least one article on

---

uniform application" of tort law in China.  *Id.*

[32]   *See* Vincent R. Johnson, *The Rule of Law and Enforcement of Chinese Tort Law*, 34 THOMAS JEFFERSON L. REV. 43, 80–81 & n.225 (2011).

[33]   *See* deLisle Report at 1–3.

[34]   *See* Legal Opinion on the Case of Sheryl Wultz, etc. v. Bank of China ("Zhang Report"), Ex. 2 to Berger Decl., at 1.

9

Chinese tort law.[35]

The parties' experts present strikingly different pictures of Chinese tort law, based on sharply differing interpretive approaches.  DeLisle offers a broad overview of "[s]everal inter-related general features of China's tort law," all of which "contrast broadly with the tort law of the United States,"[36] including:  the comparatively narrow scope of tort liability in China;[37] the general refusal of Chinese courts to impose tort liability in the absence of a specific, express, clear statement in positive law establishing such liability;[38] and the general emphasis in China on addressing tort-like behavior through public law — administrative and criminal sanctions — rather than through civil law remedies requiring private litigation.[39]  In sum, deLisle states that "a Chinese civil law court would conclude

---

[35]     *See* Declaration of Professor George W. Conk ("Conk Decl."), Ex. 1 to 9/21/12 Declaration of Marilyn C. Kunstler, counsel for plaintiffs ("Kunstler Decl."), ¶¶ 11–21; Addendum 1 to Conk Decl., at 3.

[36]     deLisle Report ¶ 16.

[37]     *See id.*

[38]     *See id.* ¶¶ 17–20.  "Positive law" could be a piece of legislation, a regulation, or one of the Supreme People's Court's regulation-like "Interpretations."  *See id.* ¶¶ 17, 19.  Contrary to the suggestion at Conk Decl. ¶¶ 24, 31, a state with a "positivist" legal regime need not be a state whose powers are limited by the rights of the individual.  *See* Reply Report of Jacques deLisle ("deLisle Reply Report"), Ex. 1 to 10/12/12 Reply Declaration of Mitchell R. Berger, at 15.

[39]     *See* deLisle Report ¶ 21.

that a tort claim is not viable where its foundation in existing, positive law is doubtful or ambiguous and where statutes, regulations and similar rules specific to the industry or fact scenario do not expressly authorize it."[40]  DeLisle bases his conclusions regarding the failure of plaintiffs' non-federal claims on a reading of the General Principles and other Chinese legal sources in light of these general features of Chinese tort law.[41]

By contrast, plaintiffs' expert Conk focuses more intently on the "plain language" of various legal texts viewed in relative isolation.[42]  Conk's textualist approach makes few claims about how the General Principles were actually applied during the relevant period by Chinese courts.

It is worth noting that plaintiffs provide no evidence that a Chinese court has ever imposed liability on a bank in circumstances similar to those of the instant case.  It would be inappropriate to require an opinion from a Chinese court, given that Chinese courts do not routinely issue opinions,[43] but it remains

---

[40]     *Id.* ¶ 23.

[41]     *See id.* ¶¶ 12, 16, 22.

[42]     *See* Conk Decl. ¶ 34.

[43]     *See id.* ¶ 26 ("There is no system of guidance by precedent, judges deciding cases do not issue explanatory published opinions, and their judgments do not bind co-ordinate or lower courts in other cases.").

noteworthy that plaintiffs are unable to produce any evidence from any source —
including news sources, scholarly publications, or other expert testimony — that a
Chinese court has ever imposed the kind of tort liability that plaintiffs insist is
authorized by "the plain language" of the General Principles.[44]

      DeLisle's report is the most persuasive of the three.  The
interpretation of Chinese law should be informed by attention to the general
practices and features of China's legal institutions, rather than by relying solely on
inferences drawn from indeterminate legal language.[45]  As Conk notes, the

---

[44]    Opp. Mem. at 5 (quoting Conk Decl. ¶ 34).  *See also* deLisle Reply
Report at 28–30 (summarizing two cases involving bank liability to ostensible third
parties).  In one case summarized by deLisle, the trial court found that a bank was
jointly and severally liable in tort to a plaintiff whom deLisle presents as a third
party.  *See id.* at 28–29 (Xiangtan Organics case).  But the Supreme People's Court
rejected the lower court's analysis, concluding that the bank was liable to the
plaintiff through contract law.  *See id.*  The Supreme People's Court's analysis thus
supports the conclusion that the plaintiff in that case was not a third party, not the
conclusion that the scope of bank liability to third parties is especially narrow
under Chinese tort law.  In the other case summarized by deLisle, a bank was held
not liable to a third party who was defrauded using the bank's services and based
on the bank's negligence.  *See id.* at 29.  But the puzzling facts of the case,
including that the ostensible "third party" had opened the account at the bank and
deposited the funds there, *see id.*, make it difficult to derive any general principle
relevant to the instant case.

[45]    Plaintiffs suggest that there is an inconsistency in BOC's argument.
"[I]n defiance of logic . . ., according to BOC, Chinese law must be specified in
writing, except that 'general features' control when specific written provisions are
not convenient to BOC's position."  Opp. Mem. at 4.  If BOC were claiming that
China possesses a perfectly consistent and complete system of laws, including an
unwritten law that all laws must be specified in writing, plaintiffs' objection might

contemporary history of Chinese law began only in 1978, when Deng Xiaoping instituted a policy of legal reform in the wake of the lawlessness of the Cultural Revolution.[46]  Since that time, the Chinese legal system has undergone exceptional growth and development, but it continues to lack some characteristics of the rule of law commonly assumed in the West.  Black letter law in the PRC is often "general and vague," "poorly drafted," "subject to frequent change," "out-of-date," and, perhaps most significantly for the current case, "at odds with reality and current practices."[47]  Even China's current constitution contains a number of apparently legally binding statements that are in practice not enforced by the courts.[48]  The

---

pose a serious problem.  But BOC's position is more modest.  BOC suggests that Chinese courts, as a matter of practice, follow an unwritten rule of only imposing tort liability based on specific, written rules establishing such liability through positive law.  *See* Memorandum of Bank of China Limited in Support of Motion for Partial Judgment on the Pleadings Dismissing Plaintiffs' Non-Federal Claims ("Def. Mem.") at 7–8.  I find no inconsistency in this position.

[46]     *See* Conk Decl. ¶¶ 22–23.  To the extent that BOC relies on a 1951 New York Court of Appeals case in support of the notion that China has a civil law system today or had one in the last decade, BOC's reliance is obviously undermined by the intervening decades of Chinese history.  *See* Def. Mem. at 8–9 (citing *Industrial Export & Import Corp. v. Hongkong & Shanghai Banking Corp.*, 302 N.Y. 342 (1951)).

[47]     RANDALL PEERENBOOM, CHINA'S LONG MARCH TOWARD RULE OF LAW 12 (2002).

[48]     *See* Conk Decl. ¶ 23 (noting that Chinese courts do not review legislation or agency action for conflict with the constitution); deLisle Reply Report at 13–14 ("[T]he Chinese constitution's individual rights provisions are not

role of the Chinese Communist Party in governing the country is not reflected in the constitution.[49]  The discrepancy between language and legal reality in Chinese law calls into question the attempt to deduce Chinese law simply from the language of Chinese legal sources, without critical attention to the practices of Chinese legal institutions.

I now turn to the specific viability of each of plaintiffs' non-federal claims under Chinese law.

### 1.    Negligence

Plaintiffs ground their negligence claim in two articles of the General Principles.  *First*, article 106 states that "[c]itizens and legal persons who through their fault encroach upon State or collective property or the property or person of other people shall bear civil liability."[50]  Plaintiffs suggest that BOC's conscious provision of banking services to the PIJ, despite the alleged warnings, qualifies as

a formally operative part of Chinese law.").  *But see* PEERENBOOM, CHINA'S LONG MARCH, at 7 ("[A] number of administrative laws have been passed establishing legal mechanisms for challenging government officials and holding them accountable."). In light of China's commitment to legislative supremacy, and the dominance of legislative organs by the Chinese Communist Party, scholars have long debated whether China's legal system is better understood as a rule of law regime, or rather, in the socialist tradition, as a regime in which the Party rules *by* law.  *See, e.g.*, *id.* at 8, 10.

[49]    *See* PEERENBOOM, CHINA'S LONG MARCH, at 8.

[50]    Opp. Mem. at 5 (quoting General Principles art. 106).

14

"fault" under article 106, because BOC's behavior violated several Chinese laws.[51] *Second*, plaintiffs argue that article 119 "creates a private right of action against '[a]nyone who infringes upon a citizen's person and causes him physical injury.'"[52]

DeLisle persuasively argues that neither of these articles provide a source of tort liability for BOC in this case. "[W]hen Chinese lawmakers have intended to create a duty that grounds tort liability of defendants toward plaintiffs for harms immediately committed by a third party, they have done so through specific provisions."[53] Neither of the articles cited by plaintiffs are sufficiently specific to carry the burden of establishing tort liability.[54] In addition, deLisle notes that article 119 "does not create a basis for a claim or grounds for liability."[55] Rather, article 119 provides "the elements, and some guidance on the measure, of damages that a defendant must pay" once liability has been established in a tort case.[56] Even if I were to discount deLisle's general statements about tort liability,

---

[51]  *See id.* at 6.

[52]  *Id.* (quoting General Principles art. 119).

[53]  deLisle Report ¶ 35.

[54]  *Cf. id.* ¶¶ 36–37 (providing examples of sufficiently specific provisions).

[55]  deLisle Reply Report at 1.

[56]  *Id.*

15

the plain language of article 119 and the surrounding articles supports deLisle's interpretation rather than that of plaintiffs.[57]

### 2.    Breach of Statutory Duty

Plaintiffs argue that article 49 of the General Principles governs civil liability for commercial entities such as BOC and lists six categories of conduct for which such entities "'shall bear' civil liability," including "engaging in other activities prohibited by law, damaging the interests of the State or the public interest."[58]  Plaintiffs suggest that "there is no question that a Chinese court would consider knowingly executing millions of dollars in bank transfers for terrorists" damaging to the interests of the PRC and the public interest.[59]

DeLisle persuasively argues that the language of article 49 does not establish tort liability.[60]  In fact, even in terms of plain language, there is no basis

---

[57]    *See generally* General Principles § 3.  The full text of article 119 reads:

> Anyone who infringes upon a citizen's person and causes him physical injury shall pay his medical expenses and his loss in income due to missed working time and shall pay him living subsidies if he is disabled; if the victim dies, the infringer shall also pay the funeral expenses, the necessary living expenses of the deceased's dependents and other such expenses.

[58]    Opp. Mem. at 8 (quoting General Principles art. 49).

[59]    *Id.* at 9.

[60]    *See* deLisle Reply Report at 4; deLisle Report ¶ 57.

16

for concluding that article 49 establishes *civil* liability at all.  Contrary to plaintiffs' paraphrase, the text of article 49 does not include the term "civil," while the texts of other articles establishing civil liability do.[61]

### 3.    Vicarious Liability

Plaintiffs argue that their vicarious liability claim is authorized by article 130 of the General Principles, which states:  "If two or more persons jointly infringe upon another person's rights and cause him damage, they shall bear joint liability."[62]  Plaintiffs cite to a 1988 Supreme People's Court opinion that they suggest interprets article 130 as creating vicarious liability for aiding another's tortious conduct.[63]  Plaintiffs quote the opinion as stating: "[a] person who

---

[61]    *Compare* General Principles art. 49 ("Under any of the following circumstances, an enterprise as legal person shall bear liability, its legal representative may additionally be given administrative sanctions and fined and, if the offence constitutes a crime, criminal responsibility shall be investigated in accordance with the law . . . ."), *with, e.g.*, General Principles art. 106 ("Citizens and legal persons who breach a contract or fail to fulfil other obligations shall bear *civil* liability" (emphasis added)).  *Accord* deLisle Reply Report at 4–7 (clarifying that article 49 is "about non-civil responsibility or liability").

[62]    Opp. Mem. at 9 (quoting General Principles art. 130).

[63]    *See id.* at 9–10 (quoting Opinion (for Trial Use) of the Supreme People's Court on Questions Concerning the Implementation of the *General Principles of Civil Law of the People's Republic of China* (Jan. 26, 1988), trans. Whitmore Gray & Henry Ruiheng Zhen, 52 LAW & CONTEMPORARY PROBLEMS 59, 81 (1989) ¶ 148 ("Opinions ¶ 148"), Ex. G to Conk Decl.).  DeLisle also cites Opinions ¶ 148 as the source for the "instigating and aiding" form of joint liability under Chinese tort law.  *See* deLisle Reply Report at 35 n.111.

instigates or helps [*bangzhu*] another person to commit a tort is a joint tortfeasor and must bear joint civil liability."[64]  Plaintiffs also cite the Interpretation of the Supreme People's Court of Some Issues concerning the Application of Law for the Trial of Cases on Compensation for Personal Injury (2003) ("Personal Injury Interpretation"), which both parties agree is an authoritative source, and which states on its face that joint liability attaches to conduct that combines to produce the same injury "even if there is no joint intent or joint negligence."[65]

DeLisle suggests that there are three possible forms of joint tort liability under Chinese law.[66]  One of these forms "provide[s] for the possibility of

---

[64]      Opp. Mem. at 10 (quoting Opinions ¶ 148).  DeLisle offers alternate translations for the paired terms: "[i]nstigating" or "abetting" and "helping" or "aiding."  deLisle Report ¶ 61.

[65]      Opp. Mem. at 10–11 (quoting Personal Injury Interpretation art. 3). The full text of the first paragraph of article 3 states:

> Where two or more persons cause an injury to others by joint intent or joint negligence, or their injurious acts are directly combined and result in the same injury consequence even if there is no joint intent or joint negligence, a joint tort shall be constituted, and the tortfeasors shall bear joint liabilities in accordance with Article 130 of the General Principles of Civil Law.

*See also* deLisle Reply Report at 35 n.111 (citing Personal Injury Interpretation art. 3).  DeLisle notes there may be a "dissenting minority view" in Chinese legal scholarship according to which "knowledge or less" might be adequate for establishing joint liability.  *See id.* at 37.

[66]      *See* deLisle Reply Report at 35–39.

18

liability in some circumstances for one who aids or abets another in the commission of a tort."[67]  But deLisle asserts that under his "understanding of the general or mainstream view in Chinese law," a defendant does not incur the "aiding and abetting" form of joint tort liability unless the defendant has "a level of intention to advance the principal tortfeasor's tortious ends that exceeds mere knowledge," and a sufficient connection or contribution exists between the defendant's act and the tortious act.[68]

Plaintiffs' First Amended Complaint does not allege any facts in support of the conclusion that BOC *intended* the PIJ to stage its attack.[69]  But intent exists along a spectrum.  In U.S. tort law, it is common to speak of a variety of states of mind relevant to intention, such as negligence, gross negligence, recklessness, intent, and even malice or evil motive.[70]  DeLisle's reference to a requisite "*level* of intention" supports the conclusion that Chinese tort law

---

[67]    deLisle Report  ¶ 60.

[68]    *Id.* ¶ 62.  *Cf.* Zhang Report at 14 (noting that assistance leading to civil liability "must be intentional" and that "negligence does not constitute 'assistance'"); Conk Decl. ¶ 50 (stating that "[i]n the context of Chinese tort law, a fair reading of 'help' [*bangzhu*] is that it requires . . . some knowledge or awareness by the actor of possible harmful consequences.  That is, to support tort liability, the help must be wrongful.").

[69]    *See* FAC ¶¶ 77–81; Opp. Mem. at 9–12.

[70]    *See, e.g.*, *Smith v. Wade*, 461 U.S. 30, 39, 46–47 (1983).

recognizes a variety of intentional states as well.[71]

Plaintiffs have pled that "BOC's conduct was criminal in nature, dangerous to human life, outrageous, intentional, reckless and malicious."[72]  Under the standard governing BOC's motion for judgment on the pleadings, I must accept as true plaintiffs' factual allegations regarding the warnings BOC received and BOC's conduct in the wake of those warnings.[73]  Based on these allegations, it is not "beyond doubt" that plaintiffs can prove "no set of facts" in support of their vicarious liability claim under Chinese law.[74]  As a result, I will not dismiss plaintiffs' vicarious liability claim on the pleadings.

As the case proceeds, both parties will have the opportunity to provide further clarification regarding what level or type of intention is required to establish joint liability under the relevant rules of Chinese tort law, and whether BOC's conduct conformed to that level or type.

Finally, BOC argues in a lengthy footnote, apparently for the first time, that plaintiffs' vicarious liability claim is likely untimely under New York's

---

[71]     See deLisle Report ¶ 62 (emphasis added).

[72]     FAC ¶ 158.

[73]     See FAC ¶¶ 63–81, 158.  See also Cleveland, 448 F.3d at 521.

[74]     Cleveland, 448 F.3d at 521.

"borrowing statute."[75]  I hereby grant plaintiffs' request for the opportunity to brief this issue.[76]

## B.   Remaining Issues

*First*, plaintiffs argue that even if BOC would not be liable under Chinese tort law, it would be contrary to New York public policy to dismiss plaintiffs' non-federal claims.  I noted in *Wultz I* that "'[i]f the choice of law analysis leads to the application of foreign law, a court may refuse to apply that law only if its application would be violative of fundamental notions of justice or prevailing concepts of good morals.'"[77]  Plaintiffs have not established that any fundamental notion of justice or prevailing concept of good morals would be violated by dismissing two of plaintiffs' non-federal claims through the application of Chinese tort law to the instant case under New York's choice of law rules.  To the contrary, the case law remains unclear even on the question of whether BOC would be liable under New York tort law.[78]  If the law remains unsettled on

---

[75]   *See* Def. Mem. at 25 n.12; Reply Mem. at 10 n.15.

[76]   *See* Opp. Mem. at 22 n.25.  The parties are directed to agree on and notify the Court of a prompt briefing schedule.

[77]   *Wultz I*, 811 F. Supp. 2d at 847 (quoting *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998)).

[78]   *Compare* Opp. Mem. at 17–18, *with* Def. Mem. at 21–22.  Plaintiffs' strongest support comes from a recent New York Supreme Court decision finding,

on facts very similar to those alleged in the instant case, that the "specific allegations regarding BOC's actual knowledge . . . [take this case] outside the usual rule that '[b]anks do not owe non-customers a duty to protect them from the intentional torts committed by their customers.'" *Elmaliach v. Bank of China, Ltd.*, Index No. 102026/09, at 11 (Sup. Ct. N.Y. Co. July 7, 2011).

Plaintiffs raise a troubling concern about the fullness of deLisle's candor before the Southern District at an earlier stage of *Elmaliach*, when deLisle appeared as an expert in support of BOC's *forum non conveniens*-based motion to dismiss.  *See* Opp. Mem. at 12–13; Conk Decl. at 9 n.8.  In his *Elmaliach* report, deLisle stated that "plaintiffs' Chinese law experts . . . base their conclusions that China cannot and will not provide an adequate forum for plaintiffs['] claims on a series of . . . incomplete depictions of Chinese courts, the Chinese legal system and other related matters."  7/24/09 Declaration of Professor Jacques deLisle in *Elmaliach v. Bank of China Ltd.*, No. 09 Civ. 2130 (S.D.N.Y.) ("deLisle *Elmaliach* Report"), Ex. 2 to Kunstler Decl., ¶ 12.  Specifically, deLisle noted that "[a] Chinese court might apply the tort law of the PRC, Israel or the U.S. to this case.  Under Chinese law, the plaintiffs would be entitled to damages much higher than those claimed by plaintiffs' experts . . . ."  *Id.* ¶ 13.

In a footnote in deLisle's expert report in the instant case, deLisle explains that his reports on behalf of BOC in *Elmaliach* and *Wultz* are not inconsistent, because in the earlier case "I was not asked to analyze, and I did not opine on, whether the particular actions alleged by the plaintiffs in that case would, if true, state a claim cognizable under Chinese tort law."  deLisle Report ¶ 12 n.1.  In sum:

(i)  One element of the *forum non conveniens* analysis is whether there exists "an alternative forum in which plaintiff may bring suit."  *See Elmaliach*, Index No. 102026/09, at 12 (quoting *Islamic Repub. of Iran v. Pahlavi*, 62 N.Y.2d 474, 479 (1984)).

(ii)  DeLisle offered his expert opinion in support of a *forum non conveniens*-based motion to dismiss *Elmaliach* and transfer it to a Chinese court, in part based on the stated conclusion that under Chinese law plaintiffs would be entitled to damages.  This conclusion contained no conditional "if" clause regarding the viability of plaintiffs' claims, though deLisle now states that one was

22

whether the claim against BOC could survive dismissal under New York tort law, it is unlikely that dismissal of the claim under foreign tort law would so offend New York public policy that the claim would have to be allowed to proceed in disregard of New York's usual choice of law rules.

     *Second*, plaintiffs invite this Court to abstain from performing the choice of law analysis in this opinion until the appeal in *Elmaliach* is resolved, or until discovery is complete in the instant case.[79]  I decline on both counts.  As the District Court for the District of Columbia noted in its decision transferring plaintiffs' claims against BOC to the Southern District, this litigation has been ongoing for several years, and this Court will not "further exacerbate the already-extensive delays."[80]

---

                         implied.  *See* deLisle Reply Report at 40.

(iii)    DeLisle now offers his expert opinion in support of a motion to dismiss the non-federal claims in *Wultz*, in part based on the conclusion that under Chinese law plaintiffs would be unable to bring suit.

     In light of deLisle's reports in the instant case, it is difficult to avoid the conclusion that deLisle's report in *Elmaliach* was misleading, whether intentionally or unintentionally.  Nevertheless, I continue to find deLisle's reports in the instant case largely persuasive.

[79]    *See* Opp. Mem. at 23–25.

[80]    *Wultz v. Islamic Repub. of Iran*, 762 F. Supp. 2d 18, 33 (D.D.C. 2011).

District Court for the District of Columbia noted in its decision transferring plaintiffs' claims against BOC to the Southern District, this litigation has been ongoing for several years, and this Court will not "further exacerbate the already-extensive delays."[80]

*Third*, in light of this opinion's application of Chinese tort law to plaintiffs' non-federal claims, the parties' arguments concerning the application of New York tort law in the instant case are moot.[81]

## V.   CONCLUSION

For the foregoing reasons, BOC's motion for judgment on the pleadings dismissing plaintiffs' non-federal claims is granted in part and denied in part. The Clerk of the Court is directed to close this motion [Docket No. 159].

SO ORDERED:

_____

Shira A. Scheindlin
U.S.D.J.

Dated:      November 5, 2012
            New York, New York

---

[80]      *Wultz v. Islamic Repub. of Iran*, 762 F. Supp. 2d 18, 33 (D.D.C 2011).

[81]      *See* Def. Mem. at 19–25; Opp. Mem. at 17–23.

24

**- Appearances -**

**For Plaintiffs:**

David Boies, Esq.
Mary Boies, Esq.
Olav A. Haazen, Esq.
Boies, Schiller & Flexner LLP
333 Main Street
Armonk, NY 10504
(914) 749-8200

Lee S. Wolosky, Esq.
Marilyn C. Kunstler, Esq.
Jaime Sneider, Esq.
Boies, Schiller & Flexner LLP
575 Lexington Avenue
New York, NY 10022
(212) 754-4205

**For Defendant:**

Mitchell R. Berger, Esq.
Patton Boggs LLP (DC)
2550 M Street, N.W.
Washington, D.C. 20037
(202) 457-5601

David Taylor Case, Esq.
K & L Gates LLP (DC)
1601 K Street, NW
Washington, DC 20006
(202) 778-9084

Lanier Saperstein, Esq.
Allen & Overy LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 756-1136

Elissa Judith Glasband, Esq.
James Edward Tyrrell, Jr., Esq.
Patton Boggs LLP (NJ)
The Legal Center
One Riverfront Plaza
Newark, NJ 07102
(973) 848-5600

Geoffrey R. Sant, Esq.
Morrison & Foerster LLP (NYC)
1290 Avenue of the Americas
New York, NY 10104
(212) 468-8000

**For Defendant (continued)**

Sarah Peck Kenney, Esq.
Walter P. Loughlin, Esq.
K&L Gates LLP (NYC)
599 Lexington Avenue
New York, NY 10022-6030
(212) 536-4880

Siubhan Josephine Ellen Magee, Esq.
Hughes Hubbard & Reed LLP (NY)
One Battery Park Plaza
New York, NY 10004
(212) 837-6409

Zachary Warren Carter, Esq.
Dorsey & Whitney LLP
51 West 52nd Street
New York, NY 10019
(212) 415-9345