UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

SHERYL WULTZ, individually, as personal
representative of the Estate of Daniel Wultz,
and as the natural guardian of plaintiff
Abraham Leonard Wultz; YEKUTIEL
WULTZ, individually, as personal
representative of the Estate of Daniel Wultz,
and as the natural guardian of plaintiff
Abraham Leonard Wultz; AMANDA
WULTZ; and ABRAHAM LEONARD
WULTZ, minor, by his next friends and
guardians Sheryl Wultz and Yekutiel Wultz,

                Plaintiffs,

            - against -

BANK OF CHINA LIMITED,

                Defendant.

------------------------------------------------------------ X

**MEMORANDUM
OPINION & ORDER**

11 Civ. 1266 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

      On October 29, 2012, I granted plaintiffs' motion to compel Bank of China Ltd. ("BOC") to produce foreign discovery materials even where doing so would contravene Chinese bank secrecy laws.[1] As part of the October 29 Order, I

---

[1] *See Wultz v. Bank of China Ltd.*, — F. Supp. 2d —, 2012 WL 5378961 (S.D.N.Y. Oct. 29, 2012) ("October 29 Order").

1

declined to order BOC to produce "confidential regulatory documents *created by the Chinese government* whose production is clearly prohibited under Chinese law."[2] In a footnote, I stated: "To be perfectly clear, this exception does not apply to materials created by BOC and provided to the Chinese government in the course of regulatory reviews."[3]

BOC has argued that it should not be required to produce documents in certain categories not explicitly addressed by the Order: *first*, documents that were produced by BOC and provided to the Chinese government *outside* the course of regular regulatory reviews; and *second*, documents whose production is prohibited under Chinese laws *other than* the bank secrecy laws addressed in the Order.[4] In particular, BOC has refused to produce, specifically log, or even acknowledge the existence of:

> (1) Reports, if any, that BOC would have submitted to the PRC government regulators from July 2003 to July 2008 not in the course of a regular regulatory review, subject to Article 5(1) of the Anti-money Laundering Law of the PRC; Articles 7, 15(2) and 16 of the Rules for Anti-money Laundering by Financial Institutions; and Article 6 of the Measures for the Administration on Financial Institutions' Reports of Large-sum Transactions and Suspicious

---

[2]   *Id.* at *5.

[3]   *Id.* at *5 n.46.

[4]   *See* Transcript of 11/20/12 Conference ("Tr. 11/20/12") at 18:10–23.

2

    Transactions.

 (2) Communications, if any, that BOC would have sent to the PRC government regulators from January 23, 2008, the date of plaintiff[s'] demand letter, to September 2008 referencing or referring to any documents in category (1).[5]

BOC argues that just as it would not be required under U.S. law automatically to produce a Suspicious Activity Report ("SAR") in civil litigation, so it should not be required to violate the analogous Chinese laws specified above in (1) by producing analogous documents submitted to Chinese regulators, such as Suspicious Transaction Reports ("SRTs") and Large-value Transaction Reports ("LTRs").[6] BOC also notes that U.S. regulators recently rejected, in large part, plaintiffs' requests for SARs and other non-public information submitted by or regarding BOC.[7]

---

 [5] 12/28/12 Letter from Lanier Saperstein, Counsel for BOC, to Lee Wolosky, Counsel for Plaintiffs, attached to 1/2/13 Letter from Wolosky to the Court ("1/2/13 Wolosky Letter").

 [6] See Tr. 11/20/12 at 18:10–23; Tr. 12/26/12 at 7:11–9:2; 12/26/12 Letter from King & Wood Mallesons, PRC Counsel for BOC, to Saperstein, attached to 1/2/13 Wolosky Letter. I assume based on plaintiffs' failure to provide any authority or affidavit to the contrary that the representation of Chinese law contained in the letter from BOC's PRC counsel is accurate.

 [7] See 10/2/12 Letter from Bill S. Bradley, Financial Crimes Enforcement Network (FinCEN), Treasury Department, to Wolosky ("10/2/12 Bradley Letter"), Ex. B to 11/28/12 Letter from Saperstein to the Court ("11/28/12 Saperstein Letter"); 10/29/12 Letter from Michael L. Brosnan, Office of the Comptroller of the Currency, to Wolosky, Ex. A to 11/28/12 Saperstein Letter.

After reviewing the submissions of the parties, I find BOC's argument persuasive. The October 29 Order concluded that the Second Circuit's multi-factor comity test argued in favor of ordering plaintiffs to produce documents in contravention of Chinese *bank secrecy* laws.[8] The comity test leads to a different result when applied to the production of the documents in contravention of the Chinese laws specified above in (1). The latter laws are primarily concerned not with protecting the confidentiality of bank clients, but with combating money laundering and other illegal financial transactions. As FinCEN wrote in rejecting plaintiffs' request for SARs filed by BOC, keeping reports of suspicious activity confidential "makes it easier for financial institutions to candidly and energetically" file such reports.[9] Combating money laundering in turn furthers one of the central interests considered in the October 29 Order: depriving international terrorist and other criminal organizations of funding.[10]

I reject, however, BOC's suggestion that documents created by BOC and communicated to the Chinese government outside the course of "regular regulatory reviews" need not be produced, as a rule, under the October 29 Order.

---

[8]     *See Wultz*, 2012 WL 5378961, at *1, 3, 5, 7.

[9]     10/2/12 Bradley Letter at 2.

[10]     *See Wultz*, 2012 WL 5378961, at *7.

4

The Order states that BOC materials provided to the Chinese government in the course of regulatory reviews are not exempt from the order to produce. This does not imply that BOC materials provided to the Chinese government *outside* the course of regulatory reviews *are* exempt. Moreover, BOC has provided no argument as to why documents submitted during regulatory reviews and those submitted at other times should be treated differently.

In light of the considerations above, I order the following:

*First*, BOC will not be required automatically to produce SRTs, LTRs, and any other communications from BOC to the Chinese government whose disclosure is specifically and categorically prohibited under the Chinese laws specified above in (1).[11] Nor is BOC required to produce a more specific "log" of such communications than already provided. If plaintiffs believe there is a legal basis for overruling BOC's assertion of privilege despite the language in this Order — perhaps by analogy to a court review under the Administrative Procedure Act of a U.S. agency decision not to disclose non-public information such as a SAR — plaintiffs are invited to submit a letter not to exceed three single-spaced pages explaining the legal basis for compelling production and proposing any protective

---

[11] If there are, in fact, categories of communication other than SRTs and LTRs whose disclosure BOC believes is specifically and categorically prohibited under the Chinese laws specified above in (1), BOC is required to identify those categories as a condition of withholding production. *See* Tr. 11/20 at 19:22–24.

measures that might be necessary for the review of non-public materials.

*Second*, BOC is ordered to produce any materials that it has withheld because BOC provided the materials to the Chinese government outside the course of "regulatory reviews" or "regular regulatory review," as well as the materials described above in (2), or redacted versions of them, to the extent that doing so would not violate the Chinese laws specified in (1).

*Third*, with regard to plaintiffs' discovery request No. 7, as I stated at the December 26 conference, BOC is ordered to produce all documents, including communications, concerning any examination, investigation, or sanction of BOC's New York Branch, BOC's Guangdong Branch, and BOC's Head Office by the U.S. or PRC governments or any of their agencies regarding Anti-Money Laundering (AML), Counter-Terrorism Financing (CTF), and AML or CTF problems or deficiencies from January 1, 2003 to September 2008, subject to the restriction involving SRTs, LTRs, and other documents as stated above.[12] BOC is ordered to produce *immediately* any materials it has already identified that are

---

[12] *See* Tr. 12/26 at 24:14–25. This Order also continues to exclude "the production of confidential regulatory documents *created by the Chinese government* whose production is clearly prohibited under Chinese law." *Wultz*, 2012 WL 5378961, at *5. If BOC is withholding the production of any materials on this basis, it is ordered to identify the documents in a log and specify the basis in Chinese law prohibiting production of such documents.

responsive to the request as limited here,[13] and to complete its search for any remaining documents and produce them without further delay.

The next discovery conference will be held January 30, 2013 at 4:30 pm. The parties are invited to submit pre-conference letters of no more than three single-spaced pages no later than January 27, 2013.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:   January 9, 2013
         New York, New York

---

[13]   Plaintiffs argue BOC has continued to withhold responsive documents without a legal basis for doing so. *See* 1/2/13 Wolosky Letter at 3. I note that BOC's January 7 letter to the Court leaves unclear whether BOC has withheld materials that it knew to be validly discoverable under its own proposed revision of plaintiffs' request No. 7. *See* 1/7/13 Letter from Saperstein to the Court at 2 n.3. This Court stated in no uncertain terms in the October 29 Order that "'[a]n objection to part of a request must specify the part and permit inspection of the rest.'" *Wultz*, 2012 WL 5378961, at *8 (quoting Fed. R. Civ. P. 34(b)(2)(c)). If BOC is engaging in discovery in bad faith, as plaintiffs have argued since before the October 29 Order, *see id.* at *8 & n.82, plaintiffs may be entitled to move for appropriate sanctions.

- Appearances -

**For Plaintiffs:**

David Boies, Esq.
Mary Boies, Esq.
Olav A. Haazen, Esq.
Boies, Schiller & Flexner LLP
333 Main Street
Armonk, NY 10504
(914) 749-8200

Lee S. Wolosky, Esq.
Marilyn C. Kunstler, Esq.
Jaime Sneider, Esq.
Boies, Schiller & Flexner LLP
575 Lexington Avenue
New York, NY 10022
(212) 754-4205

**For Defendant:**

Mitchell R. Berger, Esq.
Patton Boggs LLP (DC)
2550 M Street, N.W.
Washington, D.C. 20037
(202) 457-5601

Elissa Judith Glasband, Esq.
James Edward Tyrrell, Jr., Esq.
Patton Boggs LLP (NJ)
The Legal Center
One Riverfront Plaza
Newark, NJ 07102
(973) 848-5600

David Taylor Case, Esq.
K & L Gates LLP (DC)
1601 K Street, NW
Washington, DC 20006
(202) 778-9084

Sarah Peck Kenney, Esq.
Walter P. Loughlin, Esq.
K&L Gates LLP (NYC)
599 Lexington Avenue
New York, NY 10022-6030
(212) 536-4880

8

**For Defendant (continued)**

Lanier Saperstein, Esq.
Allen & Overy LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 756-1136

Geoffrey R. Sant, Esq.
Morrison & Foerster LLP (NYC)
1290 Avenue of the Americas
New York, NY 10104
(212) 468-8000

Siubhan Josephine Ellen Magee, Esq.
Hughes Hubbard & Reed LLP (NY)
One Battery Park Plaza
New York, NY 10004
(212) 837-6409

Zachary Warren Carter, Esq.
Dorsey & Whitney LLP
51 West 52nd Street
New York, NY 10019
(212) 415-9345