**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SHERYL WULTZ, et al.,

                              Plaintiffs,

          -against-                                    No.  11 Civ. 1266 (SAS)

BANK OF CHINA LIMITED,

                              Defendant


**PLAINTIFFS' REPLY MEMORANDUM OF LAW ADDRESSING**
**THE NEW YORK BORROWING STATUTE**


BOIES, SCHILLER & FLEXNER LLP
Lee S. Wolosky
Steven I. Froot
Marilyn C. Kunstler
Jaime Sneider
575 Lexington Ave.
New York, New York 10022

March 22, 2013                    *Attorneys for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ii

PRELIMINARY STATEMENT ..........................................................................................1

ARGUMENT ......................................................................................................................2

     A.    BOC Does Not Dispute That Federal Courts Apply New York's Three-Year Limitations Period Where Available State Law Claims Are Imperfect Analogues. . ...................................................................................................................2

     B.    The Joint Liability Claim Under Chinese Law Lacks Any Precise Analogue Under New York Law. ...........................................................................................4

     C.    Plaintiffs' Sixth Count Does Not Substantively Amount to an Intentional Tort.. ...6

     D.    Plaintiffs' Joint Liability Claim Is Not An Intentional Tort Couched As Negligence. ..........................................................................................................7

     E.    Equitable Tolling Under New York Law Is A Question of Fact Requiring Fact Discovery................................................................................................................8

CONCLUSION ...................................................................................................................10

# TABLE OF AUTHORITIES

<u>Cases</u>

*Columbia Pictures Industries Inc. v. Persky-Bright Organization,*
 1993 WL 497845 (S.D.N.Y. Dec. 2, 1993) ...............................................................................9

*Kapernakas v. Brandhorst,*
 638 F. Supp. 2d 426 (S.D.N.Y. 2009) .....................................................................................8

*Kaufman v. Cohen,*
 307 A.D.2d 113 (1st Dep't 2003) ............................................................................................6

*Lattibeaudiere v. AMR Services Corp.,*
 1996 WL 518076 (E.D.N.Y 1996) ..........................................................................................8

*Litle v. Arab Bank, PLC,*
 507 F. Supp. 2d 267 (E.D.N.Y. 2007) .....................................................................................9

*McKenna v. Senior Life Mgmt, Inc.,*
 429 F. Supp. 2d 695 (S.D.N.Y. 2006) ...............................................................................2, 3, 4

*Meridian Horizon Fund, LP v. KPMG (Cayman),*
 487 F. App'x 636 (2d Cir. 2012) .............................................................................................6

*Murray v. Admin. For Children's Servs.,*
 476 F. Supp. 2d 436 (S.D.N.Y. 2007) .....................................................................................3

*Owens v. Okure,*
 488 U.S. 235 (1989) .............................................................................................................3, 4

*Putter v. North Shore Univ. Hosp.,*
 825 N.Y.S.2d 435 (2006) ........................................................................................................9

*Quiles v. City of New York,*
 2003 WL 21961008 (S.D.N.Y. Aug. 13, 2003) ......................................................................3

*Ruso v. Morrison,*
 695 F. Supp. 2d 33 (S.D.N.Y. 2010) .......................................................................................9

*Sawyer v. Wight,*
 196 F. Supp. 2d 220 (E.D.N.Y. 2002) ..................................................................................7, 8

*Scholes v. American Kennel Club, Inc.,*
 1999 WL 799532 (S.D.N.Y. Oct. 7, 1999)............................................................................2, 3

*Seghers v. Morgan Stanley DW, Inc.,*
   2007 WL 1404434 (S.D.N.Y. May 10, 2007) .......................................................................3

*Sisak v. Nat'l R.R. Passenger Corp. (Amtrak),*
   1992 WL 42245 (S.D.N.Y. Feb. 24, 1992) ........................................................................3

*Strauss v. Credit Lyonnais, S.A.,*
   2007 WL 2296832 (E.D.N.Y. 2007) ...............................................................................9

*Wultz v. Islamic Republic of Iran ("Wultz I"),*
   755 F. Supp. 2d 1 (D.D.C. 2010) ..............................................................................6, 7

*Wultz v. Islamic Republic of Iran ("Wultz III"),*
   811 F. Supp. 2d 841 (S.D.N.Y. 2011) ...........................................................................7

*Wultz v. Islamic Republic of Iran ("Wultz IV"),*
   860 F. Supp. 2d 225 (S.D.N.Y. 2012) ...........................................................................7

*Wultz v. Islamic Republic of Iran ("Wultz VI"),*
   2012 WL 5431013 (S.D.N.Y. Nov. 5, 2012) ....................................................................7

Statutes, Regulations, and Rules

CPLR § 203(g) ....................................................................................................9

CPLR § 215(3) ...................................................................................................3

CWO § 12 ......................................................................................................4, 7

New York Labor Law § 215 ....................................................................................2

New York Labor Law § 740 ....................................................................................2

## PRELIMINARY STATEMENT

BOC does not dispute that courts in the Southern District of New York have applied New York's three-year residual limitations period to non-New York claims that were "imperfect analogues" to causes of action under New York law.  Here, Plaintiffs' Sixth Count for Vicarious Liability is just such a claim: it is a claim for joint liability, which is not an intentional tort under Chinese law (*or* Israeli law, as originally pled) and thus has no analogue under New York aiding and abetting law.  Rather, Chinese civil law recognizes joint liability for negligence as long as there is wrongfulness or fault; intent is not required.  BOC's expert, Professor deLisle, misses this point entirely.  He focuses on examples of *jiaosuo*-based liability for "instigation" of a tort, but he fails to address or rebut Plaintiffs' expert's description of *bangzhu* as merely requiring help with knowledge or awareness of possible harmful consequences, *i.e.* negligence.  This formulation is markedly different from intent requirements under New York aiding and abetting law, and this flaw in deLisle's opinion undermines BOC's entire argument.

BOC asserts that Plaintiffs' joint liability claim is in substance an aiding and abetting claim and therefore should be subject to New York's one-year statute of limitations governing intentional torts, but neither the pleadings nor prior holdings in this case supports that draconian result.  Indeed, the joint liability claim was originally pled under Israeli law, which even this Court recognized establishes liability based on a standard less than intent.  (*See* Dkt. # 145 at 21–22.)  In addition, the cases BOC cites to assert that Plaintiffs have couched an intentional tort claim in terms of negligence are inapposite.

Because the Chinese joint liability claim simply has no precise analogue under New York law, applying the three-year residual limitations period is most appropriate under U.S. Supreme Court and Southern District of New York precedent.  Accordingly, Plaintiffs' Sixth Count is

timely under New York law,[1] and BOC's request to amend its answer to add a statute of limitations defense, as well as BOC's request to dismiss the claim, should be denied.[2]

## ARGUMENT

A.    BOC Does Not Dispute That Federal Courts Apply New York's Three-Year Limitations Period Where Available State Law Claims Are Imperfect Analogues

BOC does not dispute that the court in *McKenna v. Senior Life Mgmt, Inc.* applied New York's residual three-year limitations period because New York statutes were all "imperfect analogues" to the claim pled under the False Claims Act.  429 F. Supp. 2d 695, 700 (S.D.N.Y. 2006).  Although the *McKenna* court found that three other New York statutes were similar to the False Claims Act in significant respects,[3] none was "precisely analogous".  *Id.* at 699.  Applying the Supreme Court's teaching in *Owens v. Okure*, 488 U.S. 235, 249–50 (1989), the court did not choose the most analogous statute, but rather held that the appropriate limitations period was the residual three-year period for personal injury claims.  *Id.* at 699–700.  In other words, it did not matter that other state whistleblower statutes existed, because none of them was precisely analogous to the False Claims Act.[4]  Here, the fact that New York law provides an

---

[1] BOC asserts that Israel is the place the joint liability claim accrued because it is where Plaintiffs' injuries were sustained.  This argument does not require any lengthy response, given that Israel applies a seven-year limitations period and the claim would therefore still be timely under Israeli law.

[2] Alternatively, if the Court credits BOC's theory of New York's statute of limitations, the appropriateness of equitable tolling is a question of fact requiring discovery.

[3] Specifically, the *McKenna* court found that (1) New York Labor Law § 740 was similar to the False Claims Act except that it would not allow redress for any overbilling not creating a specific public health and safety danger; (2) the New York Human Rights Law was even more analogous except that it would not protect against whistleblowing not related to employment discrimination; and (3) New York Labor Law § 215 also provided analogous protection for whistleblowers albeit for employee labor law complaints rather than federal false claims.  *See* 429 F. Supp. 2d at 697–99.

[4] Although BOC relies on *Scholes v. American Kennel Club, Inc.*, 1999 WL 799532 (S.D.N.Y. Oct. 7, 1999), that case is factually inapposite given that "the Washington Supreme Court itself takes the tort of outrage to be interchangeable with intentional infliction of emotional distress."  *Id.* at *5.  That is, there was no question that New York's intentional infliction claim

aiding and abetting claim that BOC asserts is similar in some respects to the Chinese joint

liability claim is irrelevant, because it is not "precisely analogous" and is at best an "imperfect

analogue" to the Chinese joint liability claim, as further described below in Part B.

BOC attempts to limit the holding in *Owens* as solely driven by a concern for uniformity

because states have varying limitations periods for intentional torts that could apply to § 1983

claims.  (*See* Opp'n 19–21.)  But the *Owens* principle was extended beyond the §1983 context in

*McKenna* not because of uniformity concerns but because of the lack of a precise analogue under

state law.

All of the cases cited by BOC for the proposition that the one-year limitations period for

intentional torts applies to "non-federal claims that are alleged as companions to § 1983 claims"

concerned state tort claims that fell squarely within the intentional torts enumerated in CPLR §

215(3).  *See, e.g.*, *Murray v. Admin. For Children's Servs.*, 476 F. Supp. 2d 436, 441 (S.D.N.Y.

2007) (false arrest, false imprisonment and malicious prosecution); *Quiles v. City of New York*,

2003 WL 21961008, at *5-*6 (S.D.N.Y. Aug. 13, 2003 (assault and battery); *Sisak v. Nat'l R.R.

Passenger Corp. (Amtrak)*, 1992 WL 42245 at *5 (S.D.N.Y. Feb. 24, 1992) (assault, battery,

false imprisonment, and false arrest); *see generally* CPLR § 215(3) (including "assault, battery,

false imprisonment, [and] malicious prosecution" among other enumerated intentional tort

claims subject to a one-year statute of limitations).  Here, as described further below, the Chinese

joint liability claim is not brought as a companion to a §1983 claim—to the contrary, it stands in

the shoes of the § 1983 claim in *Owens* in that it too lacks a New York state analogue.

---

was precisely analogous to the Washington claim.  *Seghers v. Morgan Stanley DW, Inc.*, 2007
WL 1404434, at *7 n.10 (S.D.N.Y. May 10, 2007) is likewise inapposite because Plaintiffs are
not seeking to assert an unnamed or new tort under New York law, they are bringing a cause of
action well recognized under foreign law.

Finally, BOC has utterly failed to rebut the "common-sense concerns" that "plaintiffs could not know in advance what limitations period would apply if courts could select the 'most analogous' one after the fact." *McKenna*, 429 F. Supp. 2d at 699-700 (quoting *Owens*, 488 U.S. at 245-48).[5] This policy concern looms large considering that Plaintiffs originally pled the joint liability claim under Israeli law before it was transformed into a Chinese law claim, and neither country's laws utilize the same analysis of mental states as does New York law.[6]

Therefore, under the principles established in *Owens* and *McKenna*, the three-year residual limitations period applies to Plaintiffs' claim for joint liability under Chinese law.

B.    The Joint Liability Claim Under Chinese Law Lacks Any Precise Analogue Under New York Law

As Plaintiffs demonstrated in their Supplemental Memorandum of Law, the joint liability claim is not an intentional tort and lacks any precise analogue under New York law.   Plaintiffs' Chinese counsel Li Wang attests that a party may be subject to joint liability under Chinese civil law where he or she "*acted only through negligence*." Ex. 2, Wang Decl. 2 (emphasis in original).  In particular, with respect to *bangzhu*, or help, a party may be jointly liable even where he or she does "'not know that a tortfeasor's actions had infringed or will infringe the rights of others.'" *Id.*   "[W]hile intention is not required, *bangzhu* liability requires an element of wrongfulness or fault", which "can be satisfied by negligence".  *Id.* at 3.[7]

_____

    [5] BOC also contradicts its own assertion that the PIJ's torts "have an easily-identified one-year limitations period" (Opp'n 20) by its admission that the acts committed by the PIJ would give rise to at least two different limitations periods of one and two years, respectively (*id.* at 12–13).
    [6] For example, as noted by Dr. Schnoor, the Israeli Supreme Court has held that vicarious liability under CWO § 12 requires "actual knowledge", but "intent is irrelevant". Ex. 1, Schnoor Decl. ¶¶ 23–24 (Dkt. # 134), *cited in* Jan. 9, 2012 Op. & Order (Dkt. # 145 at 21). By contrast, Chinese law allows joint liability where there is "wrongfulness or fault", which "can be satisfied by negligence".  Wang Decl. 3; *see also infra* Part B.
    [7] BOC's assertion that a negligence-based joint liability claim would need to be dismissed as duplicative of their previously-dismissed Negligence claim is baseless.  The Court

As BOC argues at length, New York aiding and abetting claims require actual knowledge and intent.  (*See* Opp'n 10–11.)  BOC's expert, Professor deLisle, attempts to shoehorn Plaintiffs' claim into this construct by inappropriately conflating *bangzhu* and *jiaosuo* and asserting that all Chinese joint liability categorically requires intent.  This characterization is incorrect, given that Chinese legal literature "carefully distinguishes *bangzhu* and *jiaosuo* liability."  Wang Decl. 3.  Plaintiffs' expert, Professor Conk, previously described—and BOC does not dispute—that the General Principles provide for liability for a person who either "instigates [*jiaosuo*] *or* helps [*bangzhu*]" the primary tortfeasor.  Ex. 3, Conk Decl. ¶ 50 (emphasis added) (Dkt. # 179-1); *see also* Wang Decl. 1.  Professor deLisle effectively rewrites the General Principles by eliminating the word "or" and inserting a comma instead, quoting the text as: "'instigates, helps' [*jiaosuo, bangzhu*]" (deLisle Supp. 1).  He then provides examples only of cases involving *jiaosuo*.  (*See id.* at 6–7.)  Thus, he provides no guidance with respect to the meaning or application of *bangzhu*.

Professor Conk previously explicated the *bangzhu* language as follows: "a fair reading of 'help' [*bangzhu*] is that it requires more than mere cause in fact; there must be some knowledge or awareness by the actor of possible harmful consequences.  That is, to support liability, the help must be wrongful."  Conk Decl. ¶ 50 (emphasis added).  Professor Conk further explained that "*Bangzhu* is the term one might use to ask a policeman for directions."  *Id.*  Noticeably

---

did not hold that negligence on the part of BOC could not be established, only that Chinese lawmakers create liability "'through specific provisions'" and "[n]either of the articles cited by plaintiffs [*i.e.* articles 106 and 119 of the General Principles] are sufficiently specific" to support the Negligence claim.  2012 WL 5431013, at *5.  The joint liability claim, however, is based on a different provision—article 130—which the Court found sufficiently specific to state a tort claim, even recognizing that joint liability could attach "by joint intent or joint *negligence*" and "even if there is no joint intent or joint *negligence*".  *Id.* at *5 & n.65 (emphases added).

5

absent from Professor deLisle's Supplemental Report is any rebuttal of or alternative to this reading of *bangzhu*.[8]

Professor deLisle compounds his error by suggesting that *bangzhu* should be understood by reference to the U.S. Restatement regarding aiding and abetting. But the source material on which he relies does not support this assertion. Rather, one of the articles deLisle cites merely presents the Restatement as an option to be considered for future legislation in China, and the other article cites to the Restatement in discussing new developments of joint tort law foreign to China. Wang Decl. 5. Neither article supports viewing the Restatement as informing Chinese *bangzhu* liability, and practitioners of Chinese law do not consult the Restatement or consider it an authority on Chinese law (*see id.* at 4). Indeed, deLisle himself originally cited the Restatement only to illustrate the differences between U.S. and Chinese law. deLisle Rep. n.50 (Dkt. #161-1).

Thus, contrary to BOC's assertion, Chinese joint liability law is not precisely analogous to New York aiding and abetting law, so the three-year residual limitations period is most appropriate.

C.   Plaintiffs' Sixth Count Does Not Substantively Amount to an Intentional Tort

BOC incorrectly asserts that Plaintiffs' joint liability claim is in substance an intentional tort. BOC bases this assertion in part on the fact that the Sixth Count incorporates by reference the preceding paragraphs—one of which happens to allege actual knowledge. (Opp'n 6.) This cherry-picked reference misconstrues what is a common pleading practice. By the same logic, Plaintiffs' Fourth Count alleging Negligence would have been transformed into an intentional

---

[8] Although deLisle's Reply Report criticized Conk's description of *bangzhu* as overly broad and employing terms not contained in the article, it offered no alternative interpretation. *See* deLisle Reply Rep. 10 (Dkt. # 188-1).

tort as well, given that it similarly incorporates by reference the preceding paragraphs including the same knowledge allegations. *See* FAC ¶ 126. This would be an absurd result.

BOC further asserts that the joint liability claim must be an intentional tort because the DC Court held that allegations showing intentional misconduct also supported the joint liability claim. (Opp'n 6–7.) BOC grossly mischaracterizes the DC Court opinion, which actually described the joint liability allegations as "knowing provision of financial services", *Wultz I*, 755 F. Supp. 2d 1, 81 (D.D.C. 2010). Even under the New York aiding and abetting framework that BOC erroneously seeks to apply, intent is a higher standard than mere knowledge. *See, e.g.*, *Meridian Horizon Fund, LP v. KPMG (Cayman)*, 487 F. App'x 636, 643 (2d Cir. 2012) ("Although a plaintiff is not required to allege that the aider and abettor had an intent to harm, there must be an allegation that such defendant had actual knowledge of the breach of duty." (quotation omitted)). Indeed, BOC casually ignores the DC Court's holding that the Israeli statute under which the joint liability claim was originally pled only required "knowledge, not intent" and "mere negligent provision of assistance to a wrongdoer has been sufficient [to] establish [CWO § 12] liability", *see* 755 F. Supp. 2d at 80, 81 n.15. This directly contradicts BOC's assertion that the DC Court viewed the joint liability claim as an intentional tort.

Although BOC points out that this Court has labeled the joint liability claim as aiding and abetting when analyzing the claim under Israeli law (Opp'n 8 (citing *Wultz III*, 811 F. Supp. 2d 841, 850 (S.D.N.Y. 2011); *Wultz IV*, 860 F. Supp. 2d 225, 236 (S.D.N.Y. 2012)), that was not a determination of the elements of the claim. In any event, the Court has since ruled that the claim arises under Chinese law, which does not analyze joint liability in the same way that Israeli law does. *See supra* footnote 6. Likewise, Plaintiffs' previous description of the originally-pled

CWO §12 claim as being akin to aiding and abetting under Israeli law (*see* Dkt. # 116 at 6) is irrelevant for the same reason.

BOC also asserts that this Court held that Chinese joint liability law applies to a defendant who "'aids or abets another in the commission of a tort'".  (Opp'n 9.)  The cited passage, however, merely quotes the deLisle Reply Report (Dkt. # 161–1), which suggested that aiding and abetting is one of three forms of joint tort liability under Chinese law.  *See Wultz VI*, 2012 WL 5431013 at *6 (S.D.N.Y. Nov. 5, 2012).  Even BOC acknowledges that the Court did not hold that the Chinese joint liability claim is the same as New York aiding and abetting, and it certainly reached no conclusion as to whether the claim is equivalent to an intentional tort as defined under New York law.  (*See* Opp'n 15–16.)

Thus, neither the pleadings nor the prior holdings of the DC Court and this Court supports BOC's assertion that the joint liability claim is substantively an intentional tort.

D.      Plaintiffs' Joint Liability Claim Is Not An Intentional Tort Couched As Negligence

The cases BOC cites for the proposition that Plaintiffs have essentially pled an intentional tort couched as negligence are inapposite.  (*See* Opp'n 5–6.)  For example, in *Sawyer v. Wight*, 196 F. Supp. 2d 220, 228–29 (E.D.N.Y. 2002), the defendant wrestler punched the plaintiff for heckling him in a hotel lobby, and there was no question that punching was an intentional tort rather than negligence.  Here, the joint liability claim is not synonymous with an intentional tort as in *Sawyer*; rather, the question is what level of mental state, if any, is required for BOC to be held liable for providing financial services that facilitated the actions of the PIJ and Hamas.

Similarly, in *Kapernakas v. Brandhorst*, 638 F. Supp. 2d 426, 428 (S.D.N.Y. 2009), the defendant refused to surrender artwork and plaintiff brought claims for conversion and replevin as well as breach of fiduciary duty, breach of a bailment, unjust enrichment, and constructive trust.  All of the claims boiled down to the same allegation, and the latter claims were merely an

attempt to benefit from a longer limitations period.  Unlike *Kapernakas*, however, the joint

liability claim here does not duplicate the Anti-Terrorism Act ("ATA") claims and there is no

dispute that the ATA claims were timely filed.

*Lattibeaudiere v. AMR Services Corp.*, 1996 WL 518076, at *5 (E.D.N.Y. 1996) involved

a workplace incident in which plaintiff alleged assault and battery.  Plaintiff sued the company

and the coworkers responsible, and further asserted negligent hiring and retention against the

company.  The court found that plaintiff had conceded that the gravamen of his complaint was

the intentional torts, and the negligence claims were pled in the alternative.  By contrast, the joint

liability claim alleged here is not an alternative but rather an addition to the other claims pled.

Thus, these cases carry little to no weight with respect to whether the Chinese law should

be characterized as an intentional tort—which indeed it should not.

E.    Equitable Tolling Under New York Law Is A Question of Fact Requiring Fact Discovery

Notwithstanding BOC's arguments to the contrary, equitable tolling may be appropriate

under New York law.  New York's "Discovery Rule" for claim accrual in CPLR § 203(g)

provides for equitable tolling "where fraud or concealment of the existence of a claim prevents

an individual from timely filing".  *Ruso v. Morrison*, 695 F. Supp. 2d 33, 47 (S.D.N.Y. 2010).

BOC inappropriately assumes that the Discovery Rule is inapplicable because allegations of

fraud are "not involved here" and no showing of "affirmative wrongdoing" "is or could be made

here."  Opp'n 23–24.  Such assertions are premature because even the cases cited by BOC

recognize that whether a defendant has actively concealed its involvement and thereby prevented

plaintiff from discovering its claim is a "question of fact".  *Ruso*, 695 F. Supp. 2d 33, 47; *accord*

*Putter v. North Shore Univ. Hosp.*, 825 N.Y.S.2d 435, 438 (2006).

*Strauss v. Credit Lyonnais, S.A.*, 2007 WL 2296832 (E.D.N.Y. 2007), which BOC relies

on to support claim accrual upon knowledge of the *terrorist entity* perpetrating the attack

9

regardless of other possible defendants, does not rule out equitable tolling where a defendant acts to prevent plaintiff from discovering defendant's relationship with the terrorist entity.  Nor does *Litle v. Arab Bank, PLC,* 507 F. Supp. 2d 267 (E.D.N.Y. 2007), which is distinguishable insofar as the significant public record of defendant's involvement in funding the second *intifada* precluded any Discovery Rule argument by plaintiffs.

Here, it is too early to make any determination as to fraud or affirmative wrongdoing, and BOC's staunch resistance to fact discovery thus far only underscores the possibility it engaged in affirmative efforts to conceal its involvement with PIJ and Hamas.  Accordingly, to the extent the Court is inclined to permit BOC to plead a statute of limitations defense, Plaintiffs respectfully request permission from the Court to pursue discovery on that issue.

## CONCLUSION

For the foregoing reasons, and those explained in Plaintiffs' Supplemental Memorandum, BOC's requests to amend its Answer and to dismiss Plaintiffs' Sixth Count should be denied.  In the alternative, Plaintiffs should be allowed to conduct discovery with respect to BOC's fraud or affirmative wrongdoing in preventing Plaintiffs from discovering BOC's involvement in the conduct alleged in the complaint.

Dated: New York, New York                  Respectfully submitted,
          March 22, 2013

                                           **BOIES, SCHILLER & FLEXNER LLP**

                                           By:  ____/s/_____

                                           Lee S. Wolosky
                                           Steven I. Froot
                                           Marilyn C. Kunstler
                                           Jaime Sneider
                                           575 Lexington Avenue
                                           New York, New York 10022
                                           Telephone: (212) 446-2300
                                           Facsimile:  (212) 446-2350

Olav A. Haazen
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile:  (914) 749-8300

*Attorneys for Plaintiffs*