UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

SHERYL WULTZ, individually, as personal
representative of the Estate of Daniel Wultz,
and as the natural guardian of plaintiff
Abraham Leonard Wultz; YEKUTIEL
WULTZ, individually, as personal
representative of the Estate of Daniel Wultz,
and as the natural guardian of plaintiff
Abraham Leonard Wultz; AMANDA
WULTZ; and ABRAHAM LEONARD
WULTZ, minor, by his next friends and
guardians Sheryl Wultz and Yekutiel Wultz,

         Plaintiffs,

  - against -

BANK OF CHINA LIMITED,

         Defendant.

------------------------------------------------------------- X

**MEMORANDUM
OPINION AND ORDER**

11 Civ. 1266 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

On April 9, 2013, this Court ordered defendant Bank of China Limited ("BOC") to produce the following:

> (1) *BOC's 2008 Shurafa investigative files* [(the "Shurafa Investigative Files")]. These files relate to an internal investigation that BOC conducted in response to Plaintiffs' demand letter dated January 23, 2008 and ended with a report. The investigation concerned Said al-Shurafa and Shurafa's wire transfer patterns, which BOC eventually concluded were not

1

suspicious.[1]

On April 10, 2013, plaintiffs informed this Court that BOC had stated (in plaintiffs' words) "it currently has no intention of producing the Shurafa Investigative Files or other documents that the Court ordered BOC to disclose, because BOC might file a motion for reconsideration."[2] Plaintiffs requested the Court to order BOC to produce the Shurafa Investigative Files and approximately ten other documents by the close of business on Thursday, April 11, 2013, so that plaintiffs would be able to use the documents at the Rule 30(b)(6) depositions of BOC taking place in Hong Kong under the supervision of retired Judge Theodore H. Katz, beginning Monday, April 15, 2013 (New York time).[3]

After reviewing a response letter from BOC, this Court filed a letter endorsement on April 11, 2013 (the "April 11 Order"), ordering BOC to produce the Shurafa Investigative Files by close of business on Thursday, April 11, 2013, but staying the remainder of the April 9 Order until April 23, 2013.[4] Rather than

---

[1] *Wultz v. Bank of China Ltd.*, No. 11 Civ. 1266, 2013 WL 1453258, at *5 (S.D.N.Y. Apr. 9, 2013) (the "April 9 Order").

[2] 4/10/13 Letter from Lee Wolosky, counsel for plaintiffs, to the Court at 1.

[3] *See id.*

[4] *See* 4/10/13 Endorsed Letter from Lanier Saperstein, counsel for BOC, to the Court (Dkt. No. 245, filed April 11, 2013).

complying with the Court's order, BOC produced, according to a letter from plaintiffs submitted to the Court on April 12, a highly redacted version of "what [BOC] describes as 'the Shurafa Investigative *Report*.'"[5] BOC had apparently redacted every portion of the document reflecting BOC's opinions, analysis, deliberations, or narrative descriptions of the transactions at the center of this lawsuit. Plaintiffs stated that there were approximately 160 redactions totaling 125 full pages. Plaintiffs also stated that "BOC's failure to timely produce the Shurafa Investigative Files as instructed by the Court has denied Plaintiffs the opportunity to review and translate the Files for use at the 30(b)(6) depositions," and requested "an order instructing BOC to make immediate production of the unredacted and complete Files."[6]

BOC responded to plaintiffs' letter three days later, on April 15, 2013, arguing that the production was not incomplete, because "the documents that were produced are the very same set of documents that was referred to in the Court's April 11 Order as the 2008 Shurafa Investigative Files."[7] BOC also argued that the

---

[5] 4/12/13 Letter from Lee Wolosky to the Court at 1 (emphasis added).

[6] *See id.* at 2. Plaintiffs also requested "that the Court grant Plaintiffs the right to reopen next week's depositions in New York City at BOC's expense, . . . along with any sanctions the Court deems appropriate." *Id.*

[7] 4/15/13 Letter from Lanier Saperstein to the Court at 1.

3

redactions "are of the same character as those approved by this Court" in its discussion of the SAR privilege in the April 9 Order.[8]

BOC's production was not, in fact, what the Court intended in its April 11 Order. Indeed, it is plain that BOC has violated the April 11 Order. BOC's interpretation of the April 9 Order is baseless. *First*, the Shurafa Investigative Files are described in the April 9 Order as "files" that "relate to an internal investigation" that "ended with a report."[9] No good-faith interpretion of this language could conclude that the Shurafa Investigative Files consist *only* of the report. If the Files consisted only of the report, it would have been unnecessary to speak of "files" (plural), much less of files that "relate to an internal investigation that . . . *ended with* a report."[10] The Shurafa Investigative Files include, at minimum, any materials used in the investigation leading up to the report, and any materials cited in the report. By apparently producing only the report itself, and none of the underlying materials, BOC has violated this Court's order.

*Second*, if BOC believed that portions of the Shurafa Investigative

---

[8] *Id.* (citing April 9 Order at 17, that is, *Wultz*, 2013 WL 1453258, at *5 (summarizing applicable law concerning SAR privilege)). BOC acknowledges that it has redacted approximately ten percent of the Shurafa Investigative Files. *See id.* at 2.

[9] *Wultz*, 2013 WL 1453258, at *5.

[10] *Id.* (emphasis added).

Files were protected by the SAR privilege, it had ample opportunity to make this argument in its opposition brief to plaintiffs' motion to compel, which was the subject of the April 9 Order.[11] BOC failed to raise this argument. Instead, in a section entitled "The '2008 Shurafa Investigative Files' Are Subject to the Attorney-Client and Work Product Privileges," BOC appended a single paragraph containing oblique references suggesting that the Shurafa Investigative Files might have been transmitted to the OCC, and that the transmittal might have been related in some way to a SAR.[12] This paragraph cited no cases, and certainly no binding precedent for the proposition that the transmittal of the Files to the OCC, if such a transmittal occurred, affected the discoverability of the Files in this litigation. Indeed, BOC did not even explicitly make this claim. BOC's lack of legal argument on this point was especially noteworthy, because plaintiffs' opening brief had explicitly criticized the argument that documents fall within the SAR privilege merely by having some relation to a SAR.[13]

As the April 9 Order concluded based on the parties' briefing, "the OCC's SAR regulations, at their most expansive, prohibit the disclosure of 'any

---

[11] *See id.* at *1 & n.3.

[12] *See* 2/15/13 Memorandum of Law on Behalf of Bank of China, Ltd. in Opposition to Plaintiffs' Motion to Compel Discovery ("BOC Opp.") at 23–24.

[13] *See* Pl. Mem. at 21 (citing numerous cases).

5

information that would reveal the existence of a SAR.'"[14] It is difficult to see how an internal report by BOC's compliance department could reveal the existence of a SAR on 160 different occasions — and that these occasions would happen to encompass every analytical and narrative portion of the report.

I also note that the Shurafa report is not itself a SAR. As plaintiffs have accurately stated, "[a] SAR is a specific government form, not unlike a Form 1040 or other Treasury Department filing."[15] In addition, even if BOC filed a SAR *based on* the Shurafa report, the report itself would not be privileged — to the extent that it could be produced without revealing the existence of the SAR filing.[16] The analysis would be no different if the OCC later requested the Shurafa report as part of its SAR investigation, because production of the report by itself still would

---

[14] *Wultz*, 2013 WL 1453258, at *12 (quoting 12 C.F.R. § 21.11(k)(1)(i)).

[15] 2/1/13 Memorandum of Law in Support of Plaintiffs' Motion to Compel Production of Investigative Files and U.S. Regulatory Communications ("Pl. Mem.") at 19 (citing the blank SAR form available on FinCEN's website). *See generally* FinCEN, Suspicious Activity Reporting Guidance, http://www.fincen.gov/news_room/rp/sar_guidance.html.

[16] *See* 12 C.F.R. § 21.11(k)(1)(ii)(A)(2) ("[T]his paragraph . . . shall not be construed as prohibiting: (A) The disclosure by a national bank . . . of: . . . (2) The underlying facts, transactions, and documents upon which a SAR is based . . . ."); *Freedman & Gersten, LLP v. Bank of Am., N.A.*, No. 09 Civ. 5351, 2010 WL 5139874, at *3 & n.2 (D.N.J. Dec. 8, 2010) (granting "Plaintiff's request for any memoranda or documents drafted in response to the suspicious activity at issue in this case," despite defendant's claim that the documents "were prepared in anticipation of filing a SAR") (collecting and analyzing cases).

6

not reveal the existence of the SAR.  Indeed, under such circumstances, a bank would only reveal the existence of the SAR filing — and thereby violate the law — by *refusing* to produce the report and citing the SAR privilege as the basis for doing so — as BOC may have done in this case.

Nevertheless, if BOC is correct that one or more of the redacted portions of the Shurafa Investigative Files in fact reveals the existence of a SAR, it would be inappropriate to order the production of those passages to plaintiffs.  In an April 15 letter, plaintiffs propose a compromise solution, requesting "that BOC be directed to provide the full, unredacted production . . . to Judge Katz in Hong Kong for *in camera* review."[17]

I adopt plaintiffs' proposal.  BOC is directed to produce to Judge Katz, immediately, an unredacted version of the document it has already produced in redacted form as the "Shurafa Investigative Report."[18]  Judge Katz is invited, at

---

[17]   4/15/13 Letter from Lee Wolosky to the Court at 2.

[18]   In the interest of simplicity, and out of concern for Judge Katz's schedule in Hong Kong, I do not order the *immediate* production of the materials in the Shurafa Investigative Files other than the Shurafa report.  (I assume that there are such materials, unless the Shurafa report contains complete copies of all supporting materials and all materials used in the preceding investigation.)  BOC must produce all relevant remaining materials, however, as soon as practicable after Judge Katz finishes reviewing the Shurafa report, and in accordance with Judge Katz's conclusions regarding the applicability of the SAR privilege to the Shurafa report.

his discretion, to review the unredacted document and to determine whether the production of any of the presently redacted passages would in fact reveal the existence or contents of a SAR and thereby violate the SAR privilege.[19]  Judge Katz is then invited to order BOC to produce to plaintiffs an unredacted, or less heavily redacted, version of the document, as appropriate.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:   April 16, 2013
         New York, New York

---

[19]  *See Wultz*, 2013 WL 1453258, at *5, *12–13; Pl. Mem. at 19–21; BOC Opp. at 22–24; 2/19/13 Non–Party Office of the Comptroller of the Currency's Response in Opposition to Plaintiffs' Motion to Compel Production of Investigative Files and U.S. Regulatory Communications at 20–22.  I note at the outset that it is possible that none of the redacted passages fall within the SAR privilege.

8

- Appearances -

**For Plaintiffs:**

Lee S. Wolosky, Esq.
Steven I. Froot, Esq.
Marilyn C. Kunstler, Esq.
Jaime Sneider, Esq.
Boies, Schiller & Flexner LLP
575 Lexington Avenue
New York, NY 10022
(212) 446-2350

**For Defendant:**

Mitchell R. Berger, Esq.
Patton Boggs LLP (DC)
2550 M Street, N.W.
Washington, D.C. 20037
(202) 457-5601

Zachary Carter, Esq.
Lanier Saperstein, Esq.
Neil McDonell, Esq.
Eric Epstein, Esq.
Daniel Goldberger, Esq.
Dorsey & Whitney LLP
51 West 52nd Street
New York, NY 10019
(212) 415-9309