UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

SHERYL WULTZ, individually, as personal
representative of the Estate of Daniel Wultz,
and as the natural guardian of plaintiff
Abraham Leonard Wultz; YEKUTIEL
WULTZ, individually, as personal
representative of the Estate of Daniel Wultz,
and as the natural guardian of plaintiff
Abraham Leonard Wultz; AMANDA
WULTZ; and ABRAHAM LEONARD
WULTZ, minor, by his next friends and
guardians Sheryl Wultz and Yekutiel Wultz,

        Plaintiffs,

        - against -

BANK OF CHINA LIMITED,

        Defendant.

------------------------------------------------------------ X



**OPINION & ORDER**

11 Civ. 1266 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

        This Order addresses two pending discovery disputes:  (1) plaintiffs'

objection to the April 17, 2013 decision of Special Master Theodore H. Katz

approving Bank of China, Ltd.'s ("BOC's") redactions to certain discovery

documents;[1] and (2) motions for reconsideration of this Court's April 9, 2013

Opinion and Order ("April 9 Order") submitted by BOC and non-party the Office

of the Comptroller of the Currency ("the OCC").[2]

For the reasons stated below, plaintiffs' objection to the Special

Master's decision is rejected, and the OCC's and BOC's motions for

reconsideration of the April 9 Order are denied.

I.          **Plaintiffs' Objection to Special Master's April 17 Decision**

I assume the parties' familiarity with the background of the dispute

over the Shurafa Investigative Files, which has already been described in previous

opinions.[3]  In accordance with this Court's April 17, 2013 Memorandum Opinion

and Order ("April 17 Order"), the Special Master agreed to review BOC's

redactions to a document that BOC had produced to plaintiffs under the title of the

---

[1]         *See* 4/25/13 Plaintiffs' Objection to the Special Master's Decision
Concerning Bank of China Ltd.'s Redactions of the Shurafa Investigative Report
("Plaintiffs' Objection"); Ex. A ("Special Master Decision") to 4/19/13 Letter from
Lanier Saperstein, Counsel for BOC, to the Court; Fed. R. Civ. P. 53(f)(2)
(procedure for objecting to master's order).

[2]         *See* 4/23/13 Memorandum of Law in Support of Motion by Bank of
China, Ltd[.] for Reconsideration of April 9 and April 17, 2013 Orders ("BOC
Mem."); 4/22/13 Non-Party Office of the Comptroller of the Currency's
Memorandum in Support of Motion for Reconsideration ("OCC Mem.").

[3]         *See Wultz v. Bank of China Ltd.*, — F. Supp. 2d —, No. 11 Civ. 1266,
2013 WL 1832186, at *9–10 (S.D.N.Y. May 1, 2013) (summarizing earlier
opinions).

"Shurafa Investigative Report."[4] The Special Master concluded that "the redactions that [BOC] made were appropriate."[5] Pursuant to Federal Rule of Civil Procedure 53(f)(2), plaintiffs object to the Special Master's conclusion.[6]

Based on a comparison of the unredacted and redacted versions of the documents in question, as well as a review of the sealed transcript of BOC's *ex parte* hearing with the Special Master on April 17, 2013,[7] plaintiffs' objection is rejected and the Special Master's decision is adopted. Because of the sensitive nature of the privilege asserted by BOC, it would be inappropriate to offer a more detailed analysis. However, I provide two clarifications — including an order — based on non-confidential aspects of the sealed records:

*First*, contrary to plaintiffs' and this Court's assumption, BOC's internal investigation did not result in the preparation of a report. The testimony by BOC's Rule 30(b)(6) designee John Beauchemin that gave rise to this mistaken

---

[4]     *See Wultz v. Bank of China Ltd.*, No. 11 Civ. 1266, 2013 WL 1788559, at *2 (S.D.N.Y. Apr. 17, 2013).

[5]     Special Master Decision at 50–51.

[6]     *See* Plaintiffs' Objection at 1.

[7]     *See* Special Master Decision at 50 (noting that the parties agreed that BOC would be given an *ex parte* hearing before the Special Master). The Special Master delivered a copy of the sealed transcript of the *ex parte* hearing to this Court's chambers for *in camera* review.

assumption appears to have been part of a good faith attempt by BOC to answer

plaintiffs' questions without violating any laws.[8]

*Second*, based on non-confidential aspects of BOC's representations

to the Special Master, there are only two categories of documents relating to the

internal investigations that BOC conducted in response to plaintiffs' January 23,

2008 demand letter:  (i) the 1,473 pages of documents collected by Beauchemin

and already produced by BOC with appropriate redactions; and (ii) other materials

related to BOC's internal investigations of Shurafa and the Shurafa accounts, but

not collected by Beauchemin.

Under the reasoning of prior orders, including the April 9 Order, the

materials in category (ii) must be produced.[9]  To the extent that BOC asserts the

attorney-client or work product privileges over the materials in category (ii), BOC

is ordered to produce to plaintiffs, by May 31, 2013, a standard privilege log of any

withheld materials.[10]

---

[8]      *See* Plaintiffs' Objection at 1.

[9]      At the same time, for reasons related to the sensitive privilege issues
in this case and the language of this Court's prior orders, BOC's failure to produce
these materials until now is not evidence of bad faith.

[10]      BOC does not appear to assert any other privileges over the materials.
If this is incorrect, however, and BOC does assert other privileges, such assertions
should be brought to this Court's attention immediately — if necessary, through *ex
parte* communication with notice to plaintiffs, as in the case of BOC's *ex parte*

**II.      The OCC's and BOC's Motions for Reconsideration of this Court's April 9 Order**

"Motions for reconsideration are governed by Local Rule 6.3 and are committed to the sound discretion of the district court."[11]  "'[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'"[12]  "Typical grounds for reconsideration include 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"[13] Yet, because "the purpose of Local Rule 6.3 is to 'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and

_____

communications with the Special Master.

[11]      *Virtual Solutions, LLC v. Microsoft Corp.*, No. 12 Civ. 1118, 2013 WL 593764, at *14 (S.D.N.Y. Feb. 15, 2013), *reconsideration denied* (Mar. 7, 2013) (citing *Patterson v. United States*, No. 04 Civ. 3140, 2006 WL 2067036, at *1 (S.D.N.Y. July 26, 2006); *McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir. 1983)).

[12]      *United States v. Blumenberg*, No. 11 Cr. 3300, 2012 WL 6634066, at *2 (2d Cir. Dec. 21, 2012) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995) (alteration in original)).

[13]      *Gucci Am., Inc. v. Guess?, Inc.*, No. 09 Civ. 4373, 2011 WL 6326032, at *1 (S.D.N.Y. Dec. 16, 2011) (quoting *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

then plugging the gaps of a lost motion with additional matters,'"[14] the Rule must

be "narrowly construed and strictly applied so as to avoid repetitive arguments on

issues that have been considered fully by the Court."[15]  "[A] motion for

reconsideration is not a substitute for [an] appeal."[16]

The OCC moves for reconsideration of this Court's April 9 Order,

which granted plaintiffs' motion to compel BOC to produce four categories of

requested documents, including certain non-public communications between BOC

and the OCC.[17]  The dispute over one category of materials, the Shurafa

Investigative Files, has already been addressed above.  Another category,

---

[14]     *Medisim Ltd. v. BestMed LLC*, No. 10 Civ. 2463, 2012 WL 1450420,
at *1 (S.D.N.Y. Apr. 23, 2012) (quoting *Grand Crossing, L.P. v. United States
Underwriters Ins. Co.*, No. 03 Civ. 5429, 2008 WL 4525400, at *3 (S.D.N.Y. Oct.
6, 2008)).

[15]     *United States v. Treacy*, No. 08 Cr. 0366, 2009 WL 47496, at *1
(S.D.N.Y. Jan. 8, 2009) (quotation omitted).

[16]     *Scienton Techs., Inc. v. Computer Assocs. Intern. Inc.*, No. 04 Civ.
2652, 2013 WL 1856653, at *3 (E.D.N.Y. May 1, 2013) (quotation marks and
citations omitted).  *Accord Massop v. United States Postal Serv.*, 493 Fed. App'x
231, 232 (2d Cir. 2012) ("Finally, to the extent Massop was using the motion for
reconsideration to challenge the merits of the district court's judgment, she was
improperly using the motion as a substitute for appeal.") (citing *Stevens v. Miller*,
676 F.3d 62, 67 (2d Cir. 2012) ("In no circumstances . . . may a party use a Rule
60(b) motion as a substitute for an appeal it failed to take in a timely fashion.")).

[17]     *See Wultz v. Bank of China Ltd.*, No. 11 Civ. 1266, 2013 WL
1453258, at *5, *11, *13 (S.D.N.Y. Apr. 9, 2013).

consisting of general information related to BOC's SAR filing practices, is not

contested in the OCC's or BOC's motions.  If this general information has not

already been produced,[18] BOC is ordered to produce it now.  The two remaining

categories of documents that the April 9 Order directed BOC to produce are:

> . . . *BOC's periodic AML/CTF and other compliance communications* [("BOC's Communications")].  These communications concern periodic risk reports, self-analyses of BOC's compliance systems, proposed actions and changes to BOC's compliance procedures, and other communications that the OCC, having found deficiencies in BOC's compliance function, required BOC to submit to the OCC over approximately seven years during the relevant period.

> . . . *OCC reports and communications* [("OCC's Communications")].  These documents include the OCC's bank examination reports, evaluations of BOC policies and practices, recommendations to BOC, and other communications related to problems or deficiencies in BOC's [Anti-Money Laundering and Counter-Terrorism Financing ("AML/CTF")] compliance function.[19]

These categories of documents are the subject of the OCC's and BOC's motions

for reconsideration.  Specifically, the OCC, joined by BOC,[20] argues that the April

---

[18]     On April 11, 2013, this Court stayed the April 9 Order, except the order to produce the Shurafa Investigative Files, to allow BOC an opportunity to file the motion for reconsideration at issue in this Opinion.  *See Wultz*, 2013 WL 1788559, at *1 (summarizing procedural background).

[19]     *Wultz*, 2013 WL 1453258, at *5.

[20]     *See* BOC Mem. at 1 (adopting by reference the OCC's arguments). To the extent that BOC offers arguments beyond those offered by the OCC, BOC's

9 Order erred in three respects by ordering the production of BOC's

Communications and the OCC's Communications: *first*, by concluding that the

OCC waived the bank examination privilege with respect to certain documents in

BOC's possession;[21] *second*, by ordering the production of documents in the

possession of BOC that may contain non-public OCC information, without first

requiring plaintiffs to make a *Touhy* request for these documents through the

OCC;[22] and *third*, by "fail[ing] to properly weigh" the relevant factors in deciding

to override the bank examination privilege.[23]

      I address each of the OCC's arguments in turn. *First*, the agency

asserting the bank examination privilege "has the burden of establishing its

applicability to the documents at issue."[24]  In preparing the April 9 Order, this

Court was aware of each of the three ostensible assertions of privilege cited by the

---

arguments concern the production of the Shurafa Investigative Files.  *See id.*

[21]    *See* OCC Mem. at 1–3.

[22]    *See id.* at 4–6.

[23]    *Id.* at 2, 6–9.

[24]    *Schreiber v. Society for Sav. Bancorp, Inc.*, 11 F.3d 217, 220 (D.C. Cir. 1993) (citing *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1341 (D.C. Cir. 1984)).  "If the agency can establish that a document is privileged merely by filing a conclusory affidavit . . ., then the agency itself and not the court can determine the extent of the privilege.  Surely something more is required." *Id.*

OCC in its current submission.[25]  None of these statements contains a specific

assertion of privilege over "(a) BOC's internal reports and communications,

including the Shurafa investigative report, along with attachments, supporting

documents, and related investigative files; [and] (b) documents that BOC

submitted to the OCC other than in response to OCC communications regarding

Matters Requiring Attention ('MRAs')."[26]  The OCC was given the opportunity to

make specific assertions of privilege over any of these materials, but the OCC

failed to do so in its briefing to this Court.[27]  As a result, this Court correctly

concluded in the April 9 Order that the OCC failed to establish the applicability of

the bank examination privilege to the materials in categories (a) and (b).

Indeed, even now, after this Court's conclusion in the April 9 Order

that the OCC failed to carry its burden, and after the OCC has had the opportunity

to submit two supplemental briefs, the OCC continues to refuse "to assert the bank

examination privilege with respect to *specific* documents."[28]  The OCC states that it

"cannot" do so "until it is provided an opportunity to review the materials pursuant

---

[25]     *See* OCC Mem. at 4 & n.4.

[26]     *Wultz*, 2013 WL 1453258, at *6.

[27]     *See id.* at *7.

[28]     OCC Mem. at 3–4 (emphasis added).

to a *Touhy* request."[29]  Rather than asserting the bank examination privilege over

specific documents or clearly specified categories of documents, the OCC

continues to state only that it "does not waive its right to assert" the bank

examination privilege over any "non-public OCC information" in BOC's

possession.[30]  The OCC does not specify which of the materials in categories (a)

and (b) it views as non-public OCC information.

   *Second*, the OCC fails to cite any controlling decision contrary to the

analysis of the OCC's *Touhy* regulations in the April 9 Order.  Instead, the OCC

cites several mostly unreported decisions from district courts in other Circuits

concluding that *Touhy* requests must be submitted not only for the production of

materials in the possession of banking regulators, but also for the production of

privately held materials over which a banking regulator may wish to assert the

bank examination privilege.[31]  As the April 9 Order discussed at length, however,

---

  [29]  *Id.* at 4.

  [30]  *See id.* at 4 (citing 12 C.F.R. § 4.32(b)(2)).

  [31]  *See id.* at 5 n.5 (citing *In re Countrywide Fin. Corp. Sec. Litig.,* No. 07 Civ. 5295, 2009 WL 5125089, at *2 (C.D. Cal. Dec. 28, 2009); *F.D.I.C. v. Flagship Auto Ctr., Inc.*, No. 3:04 Civ. 7233, 2005 WL 1140678, at *5–6 (N.D. Ohio May 13, 2005); *Union Planters Bank, N.A. v. Continental Cas. Co.*, No. 02 Civ. 2321, 2003 WL 23142200, at *7–8 (W.D. Tenn. Nov. 26, 2003); *Raffa v. Wachovia Corp.*, 242 F. Supp. 2d 1223, 1225 (M.D. Fla. 2002); *American Sav. Bank v. Painewebber Inc.*, 210 F.R.D. 721, 723 (D. Haw. 2001)).  It gives this Court pause that plaintiffs have cited *no* opinions in which a court compelled a

the Second Circuit follows a different approach to *Touhy* regulations than other

Circuits, and it is the Second Circuit's approach that governs this Court.[32]  Because

ordering BOC to produce the materials at issue in the April 9 Order did not

"compel [the government] to act," the order did not violate the principle of

sovereign immunity, and fell within the Court's powers under the Federal Rules of

Civil Procedure.[33]  Under different circumstances, this Court might have deferred

to the OCC's preference for using its *Touhy* procedures to evaluate the

applicability of the bank examination privilege to documents in private hands.  But

under the circumstances of this case as they existed on April 9, 2013, such an

approach was neither legally required nor in the interests of justice, for the reasons

stated in the April 9 Order.[34]

> *Third*, with regard to this Court's weighing of the *Franklin* factors for

---

private party to produce non-public OCC materials that would have required a
*Touhy* request to obtain from the OCC.  *See* Plaintiffs' Memorandum in Opposition
to the Motions for Reconsideration Submitted by Defendant Bank of China and
Non-Party Office of the Comptroller of the Currency at 4.  Nevertheless, the OCC
has provided no basis for concluding that the April 9 Order was incorrect as a
matter of first impression in the Second Circuit.

> [32]     *See Wultz*, 2013 WL 1453258, at *1–3, *6.

> [33]     *United States E.P.A. v. General Elec. Co.*, 197 F.3d 592, 597 (2d Cir.
1999), *opinion amended on reh'g*, 212 F.3d 689 (2d Cir. 2000).

> [34]     *See Wultz*, 2013 WL 1453258, at *8–9.

overriding the bank examination privilege,[35] none of the OCC's arguments rest on

"'controlling decisions or data that the court overlooked.'"[36]  In particular, it is not

correct that "the Court essentially [gave] . . . no weight" to the risk of a chilling

effect.[37]  The April 9 Order gave due weight to this risk.[38]  It is not necessary for

every judicial consideration of the chilling effect to be accompanied by a lengthy

paean to the virtues of candor in regulatory communications.

In sum, none of the OCC's arguments support granting the OCC's

motion for reconsideration.  The OCC's and BOC's motions for reconsideration

are denied.  The Clerk of Court is directed to close BOC's and the OCC's motions

[Dkt. Nos. 248, 250].

---

[35]     *See id.* at *3–4 (laying out the factors for determining whether "good cause" exists to override the bank examination privilege, as articulated in *In re Franklin Nat'l Bank Sec. Litig.*, 478 F.Supp. 577, 583 (E.D.N.Y. 1979) (Weinstein, J.)), *8–9 (analyzing whether to override the bank examination privilege based on the factors articulated in *Franklin*).

[36]     *Blumenberg*, 2012 WL 6634066, at *2 (quoting *Shrader*, 70 F.3d at 257 (alteration in original)).

[37]     OCC Mem. at 8.

[38]     *See Wultz*, 2013 WL 1453258, at *9.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      May 23, 2013
            New York, New York

**- Appearances -**

| **For Plaintiffs:** | **For Defendant:** |
|---|---|
| Lee S. Wolosky, Esq. | Mitchell R. Berger, Esq. |
| Steven I. Froot, Esq. | Patton Boggs LLP (DC) |
| Marilyn C. Kunstler, Esq. | 2550 M Street, N.W. |
| Jaime Sneider, Esq. | Washington, D.C. 20037 |
| Boies, Schiller & Flexner LLP | (202) 457-5601 |
| 575 Lexington Avenue | |
| New York, NY 10022 | Zachary Carter, Esq. |
| (212) 446-2350 | Lanier Saperstein, Esq. |
| | Neil McDonell, Esq. |
| | Eric Epstein, Esq. |
| | Daniel Goldberger, Esq. |
| | Dorsey & Whitney LLP |
| | 51 West 52nd Street |
| | New York, NY 10019 |
| | (212) 415-9309 |