# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
SHERYL WULTZ, et al.,                         :
                                              :
                        Plaintiffs,           :
                                              :          Case No.   1:11-CV-01266 (SAS)
        v.                                    :
                                              :
BANK OF CHINA, LTD.,                          :
                                              :
                        Defendant.            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

EHUD ARZI hereby declares, pursuant to 28 U.S.C. § 1746, the following to be true and correct:

1.      I make this supplemental Declaration in support of Bank Hapoalim B.M's ("Hapoalim") motion to quash or modify the 30(b)(6) subpoena (the "Subpoena"), which was served on Hapoalim by Defendant Bank of China, Ltd ("BOC"), on June 20th 2013 in connection with the above-captioned matter.

2.      I practice law in Israel and have been a member of the Israel Bar Association since 1990. Since 1997 I have been a partner with S. Horowitz & Co., one of Israel's leading law firms. I represent major, leading private and public institutions in the Israeli financial market in litigation at all court levels, in arbitration and mediation proceedings, as well as in negotiations outside of court proceedings. I provide ongoing legal advice and legal opinions as part of my practice and also serve as mediator and arbitrator when requested to do so and/or upon being appointed as such.

3.      I attach as Exhibit 1 ("Ex. 1") hereto my biographical details in English as they appear on my firm's website.

4.      I understand that Hapoalim was served with a document subpoena in September 2012 in this action, seeking three categories of documents. Essentially the document subpoena requested documents concerning particular banking transactions originating in Israel, Israeli polices relating to such banking transactions, and general policies. I further understand that Hapoalim produced certain polices and banking records in response thereto, and that the banking records were redacted (without any objection from BOC) to preserve all applicable privileges under Israeli law.  I further understand that the instant motion concerns a second Subpoena, which was recently served on Hapoalim, and demands testimony from a corporate designee pursuant to Rule 30(b)(6) regarding sixteen topics that encompass, collectively, over 50 lettered sub-parts (the "BOC Request").

5.      Therefore, I have been asked by Hapoalim to examine the BOC Request from the perspective of Israeli law.

6.      Throughout my years as an attorney, I have engaged and specialized in all aspects of the banking industry.  I am thoroughly familiar with Israeli banking law and the customary practices in Israeli courts with respect to issues relating to banks.

7.      *Inter alia*, I submitted a Declaration on behalf of Hapoalim dated May 21, 2007 in connection with several related cases, consolidated for purposes of discovery, pending in the District Court for the Eastern District of New York captioned *Linde et al. v. Arab Bank, PLC*, Case No. cv-04 2799(NG)(VVP) (the "*Linde* Action"), in which the plaintiffs seek damages arising from injuries and deaths caused by suicide bombings and other attacks in Israel, the West Bank, and Gaza.  The defendant in those cases, Arab Bank, PLC ("Arab Bank") is alleged to have knowingly sponsored such attacks by providing banking services to organizations identified by the U.S. and Israeli governments as terrorist organizations.  In the *Linde* Action, Hapoalim

was a non-party whom Arab Bank subpoenaed, seeking information demonstrating Hapoalim's knowledge of the nature of the terrorist organizations.

8.     On May 22, 2009, Magistrate Judge Pohorelsky issued a memorandum and order, *Linde v. Arab Bank, PLC*, 262 F.R.D. 136 (E.D.N.Y 2009) (the "*Linde* Decision") denying, in substantial part, Arab Bank's motion to compel Hapoalim (a non-party) to produce documents and certain of its employees as deposition witnesses.  Citing to my Declaration, the *Linde* court held that much of the information sought by Arab Bank from a non-party was protected from discovery under Israeli laws, and that international comity weighed against compelling production of the protected information.   The *Linde* court also held that any deposition subpoenas issued to Hapoalim pursuant to Rule 30(b)(6) would be limited to topics within the parameters of the permitted document discovery.  (A copy of the *Linde* Decision is annexed hereto as Ex. "2").

9.     I understand that Hapoalim was given permission in the instant action to file this motion, and that the Court ordered such motion be filed "expeditiously."  Because of the very short time frame, and because the information concerning the procedures for discovery and the limitations pertaining thereto under Israeli law as set forth in my Declaration in the *Linde* Action are directly applicable to the issues presently before the Court, I hereby re-submit my Declaration from the *Linde* Action (the "*Linde* Declaration") in support of Hapoalim's instant motion to quash or modify the Subpoena.  (A copy of the *Linde* Declaration dated May 21, 2007 is annexed hereto as Ex. "3" and is incorporated as if fully set forth herein).

10.     The rules and laws described at length in the *Linde* Declaration are valid at the present time, subject to changes and updates as shall be detailed below.  Thus, my analysis of the BOC Request from the perspective of Israeli law is almost identical to my analysis of the

document subpoenas served on Hapoalim in the *Linde* Action, as set forth in the *Linde* Declaration. As a result, I intend that the *Linde* Declaration constitute an integral part of this supplemental declaration, while paying heed, of course, to all that is stated below.

11.     I submit this supplemental Declaration (the "Supplemental Declaration") for two reasons. First, to confirm for the Court that the opinion set forth in the *Linde* Declaration, which pertains to the discovery of documents under Israeli law, is equally applicable to the disclosure of information sought through sworn testimony; and second, to examine the BOC Request from the perspective of Israeli law.

12.     It should be emphasized that the implementation of Israeli law with regard to the testimony that is being requested through the present Subpoena was done on the basis of the description as appearing in the BOC Request (on the various topics), without review of specific documents and/or applicable evidence being presented to me and without me being requested to relate to the question of the relevance of any document to the dispute within the framework of the case. This Supplemental Declaration focuses on the implementation of Israeli law with respect to the testimony that is being requested and nothing more.

13.     For the purposes of preparing this Supplemental Declaration, I have examined the following documents:

    (a)     The Subpoena.

    (b)     Israeli statutes and regulations.

    (c)     Case law from the Israeli Supreme Court, as well as other Israeli courts, that I have deemed relevant for purposes of preparing this opinion.

    (d)     The *Linde* Declaration.

    (e)     The *Linde* Decision.

14.     I refer below to the testimony that is sought in the BOC Request and particularly the relevant law that applies to such testimony  It should be emphasized that more than one law applies to portion of the types of information that are being requested.

## I.  REQUESTS FOR DISCOVERY UNDER ISRAELI LAW IN GENERAL AND IN PARTICULAR WITH RESPECT TO DISCOVERY UNDER ISRAELI LAW SOUGHT FROM NON-PARTIES

15.     In the *Linde* Declaration, I provided a detailed explanation concerning the competing interests in the discovery process (*i.e.*, the need for discovery in order to get to the truth as opposed to the protection of legitimate interests of the disclosing party).  As I made clear, against the backdrop of the need for balancing the competing interests, Israeli law recognizes certain situations of privilege, in which a party is denied the use of evidence that could aid in uncovering the truth at trial.  These privileges are based on the recognition that there are certain interests and considerations, aside from the central interest of uncovering the truth, which are proper to protect.  (*Linde* Declaration ¶¶ 15-17)

16.     In the *Linde* Declaration, I further discuss two classes of Israel's evidentiary privilege: statutory and legal.  Statutory privileges (based on the Evidence Ordinance) and legal privileges (based on judicial precedent) are described at ¶¶ 18-19 of the *Linde* Declaration.

17.     In the instant case, as I will discuss below, it appears that some of the information sought by the BOC Request is protected by the various privileges recognized by Israeli law, and the discovery of certain other information requested is prohibited by statutory and contractual obligations to which banks are subject.

18.     In addition, as discussed in the cases set forth in the *Linde* Declaration, under Israeli law, discovery is a process that is conducted between the parties to the litigation, and only in rare cases will the courts order a non-party to the litigation, to provide information in its

possession -- even if such information may be relevant to the subject matter of the litigation. (*Linde* Declaration at ¶¶ 21-22)

19.     The foregoing contents of the *Linde* Declaration are appropriate and correct at the present time as well.

20.     Also at the present time, the Israeli courts are strict not to overly broaden the extent of the disclosure obligations beyond the litigants to the proceedings.

21.     Thus, for example, as stated by the Israeli Supreme Court in CA 4447/07 *Rami Moore v. Barak E.T.C.* (published in Nevo on 25.3.2010):

> "The regulations dealing with the discovery of documents and their perusal (Regulations 112-114) apply only to documents found 'in the possession or control' of the litigant, and the case law reiterates and mentions that no disclosure obligation may be imposed with respect to documents found in the possession of a third party who is a stranger to the litigation.  Thus teach the respected judges in Israel who strive to implement a clear procedural framework in the law ..."

22.     The *Rami Moore* opinion is equally applicable to testimonial evidence.

23.     And more.  As stated in the *Linde* Declaration (¶ 22), where the information being requested concerns information that relates to a third party who is a stranger to the legal proceedings, as in the present case, then here too recent case law provides that "the defence of the rights to privacy within the framework of discovery proceedings receives secondary importance when the privacy of third parties who are not party to the proceedings may be harmed, and in such event a discovery order is granted only in very rare circumstances" (*See*, the decision of the Regional Labor Court in Tel-Aviv  (Summary Procedure) (T-A) 30184-09-11 *Committee of Doctors at Ichilov Hospital et al. v. the Medical Association of Israel* (published in Nevo on 9.12.2012), an appeal on the decision was denied within the framework of Leave for

Appeal (National) 53690-12-12 *Committee of Doctors at Ichilov Hospital et al. v. the Medical Association of Israel* (published in Nevo on 25.3.2013)).

24.    Therefore, and despite there being no absolute prohibition under Israeli law for the disclosure of information found in the possession of a third party or for the disclosure of information that relates to a third party, according to the Israeli law, the fact that testimony is being requested from a third party constitutes a significant consideration which an Israeli court is required to examine at the time it is asked to rule on a discovery motion. An Israeli court will evaluate the suitable balance between harming a third party and the importance of discovering information for the purpose of clarifying the disputes in the claim.

25.    Thus, separate and apart from the question of whether Israeli protections and immunities apply (discussed below), an Israeli court must decide whether such rare circumstances exist in the matter so as to compel a non-party to participate in discovery.

## II.  IMMUNITIES/PRIVILEGES

### A.    INFORMATION RELATING TO THE BANK'S CLIENTS

#### (1)    Bank-Client Privilege

26.    As I explained in the *Linde* Declaration, under Israeli law, information relating to a bank's clients is shielded under a bank-client privilege.  In a nutshell, such privilege is based on Israeli common law, which clearly recognizes the right of a client to secrecy regarding its accounts and banking activities as a right inherent in the bank-client relationship.  The client owns this right to confidentiality and the client is the only one that can waive such right, the bank having no authority to do so without an express authorization from the client.  A complete discussion of this privilege including its application by Israeli courts can be found at ¶¶ 23-35 of the *Linde* Declaration.

27.     The ruling of the Israeli Supreme Court in the case of Leave for Civil Appeal 1917/92 *Skoler v. Jerbi* Supreme Court Judgments 47(5) 764 (the "*Skoler* case") which decided on the bank-client privilege, and which was described extensively in the *Linde* Declaration, remains valid and is still current today.

28.     Thus, for example, see the decision of the District Court for the Central Region, from June of this year (2013) T-A (Central) 28621-11-10 *Agricultural Bank for Israel Ltd. v. Mordechai Dagani* (published in Nevo on 13.6.2013):

> "In the case law there has been recognized the right of a client to the confidentiality of information concerning his accounts and business activities in his relations with the banking corporation. The protection that is given to a bank's client against disclosure of the banking information stems either from the right to privacy that is granted in law or from the principle of good faith that exists as an express condition or that may be deduced in an agreement between the client and the bank, as well as from the banker's conduct from the emissary relations and general duty of trust that a bank owes its clients."

29.     Notably, as in the present case, when a discovery request seeks, *inter alia*, information concerning clients of a bank, who are not themselves parties to the proceeding, the prevailing case law holds that the court must protect the confidentiality of accounts belonging to one who is not a party to the dispute, and that any deviation from this rule is permitted only in rare, exceptional and extraordinary situations. A discussion of the case law can be found at ¶¶ 28-32 of the *Linde* Declaration.

30.     It should also be noted that the Israeli courts have held that in light of the sensitive and problematic nature of discovery from non-parties, such non-parties may seek to intervene in the proceedings for the purpose of presenting arguments against such discovery. Therefore, should the matter be brought before an Israeli court, it is reasonable to assume that the bank's clients would be allowed to argue against such disclosure. (*Linde* Declaration at ¶ 33)

31.   This rule, according to which where the information being requested belongs to a third party who is not party to the litigation, a discovery order will be granted only in rare circumstances and exceptional cases, is relevant also at the present time.

32.   See in this regard that stated by the Israeli Supreme Court in Leave for Civil Appeal 621/13 *Gregor Haim Laizerowitz v. Union Israel Bank Ltd.* (published in Nevo on 17.4.2013):

> "… and it should be emphasized—the disclosure of information concerning the bank accounts of a person who is not party to the legal proceeding is indeed possible only in rare and exceptional cases …"

33.   See also in this regard that stated by the Tel-Aviv District Court in Originating Motion (T-A) 21930-06-10 *Verdimos Zeiler v. Bank Hapoalim B.M.* (published in Nevo on 31.10.2011) (the "*Verdimos* case"):

> "When dealing with an application that involves a third party and harms his privacy, removal of the immunity becomes more complex … The guiding measure for the purpose of weighing between conducting a just trial and presenting protected material that is subject to privacy being harmed, special consideration will be added where the matter concerns information concerning a person who is a stranger to the litigation that is being conducted. In these circumstances, the point of balance shifts in the direction of adding weight to the protection of privacy, **and the conditions for harming same are extremely severe.**"

### (2)   Breach of Duty of Confidentiality and Protection of Privacy Law

34.   A discussion of a bank's duty of confidentiality and the possible ramifications of a breach of that duty, including a breach of the Protection of Privacy Law, can be found at ¶¶ 35-40 of the *Linde* Declaration.  Briefly, in addition to the bank's immunity from passing on information relevant to its clients, the disclosure of information relating to the bank's clients may also constitute a breach of the contractual duty owed by a bank to its client.  Such breach could

lead to a civil claim against Bank Hapoalim for damages caused to the client, the cause of action being contractual or a civil wrong (tort). (*Linde* Declaration at ¶ 36)

35.     Additionally, the disclosure of information regarding Hapoalim's clients by Hapoalim could be considered an infringement of privacy, which constitutes a civil wrong, and a breach of the Protection of Privacy Law, which carries criminal penalties that can be up to five years' imprisonment. (*Linde* Declaration at ¶¶ 37-39)

36.     My conclusion is therefore that under Israeli law, at least a portion of the information demanded in requests 1-7 of the Subpoena (as I understand the requests from reading the Subpoena), are privileged under the bank-client privilege and, even more severely, protected from disclosure under the Protection of Privacy Law and, consequently, the testimony requested by BOC may lead to the imposition of sanctions on Bank Hapoalim and/or its representatives. Moreover, to the extent BOC would seek information under requests 8-9 directly relating to the Shurafa Wire Transactions as defined in the Subpoena, that information as well would be privileged.  Given that I have not been provided with the questions BOC seeks to ask, it is possible, though I cannot know at this time, that questions under additional requests may infringe on the above-referenced protections as well.

**B.     INFORMATION EXCHANGED WITH THE BANK OF ISRAEL PURSUANT TO THE BANKING ORDINANCE**

37.     As I stated in the *Linde* Declaration, under the provisions of the Banking Ordinance, 1941 (hereinafter the "Banking Ordinance") a bank has a duty of confidentiality with regard to all information exchanged between it and the Bank of Israel pursuant to the Banking Ordinance.  An infringement of this duty of confidentiality may even lead to criminal sanctions. (*Linde* Declaration at ¶¶ 41-49)

38.     As I explained in the *Linde* Declaration, the duty of confidentiality set out in the Banking Ordinance is not absolute, and it is possible to reveal information exchanged under the Banking Ordinance in the event that the Governor of the Bank of Israel sees the need therefor, for the purposes of a criminal claim, or when dealing with information or documentation received from a bank, where the bank agrees that it should be revealed.  However, in light of the purpose of the Banking Ordinance, the disclosure of such information is not readily granted. (*Linde* Declaration at ¶¶ 44-48)

39.     Furthermore, at ¶¶ 45-47 of the *Linde* Declaration, I discuss cases in which Israeli courts have held that pursuant to the duty of confidentiality set out in the Banking Ordinance, information received from, or delivered to, the Bank of Israel is immune from discovery in judicial proceedings. (*Linde* Declaration at ¶¶ 45-47).  This extends beyond documents and thus information received from, or delivered to, the Bank of Israel is also cloaked with the same immunity.

40.     Israeli courts are continuing to implement the rules as specified in the Banking Ordinance and case law, and Israeli courts have prohibited the publication of correspondence exchanged with the Bank of Israel, within the framework of discovery proceedings. *See, e.g.*: the decision of the District Court in Class Action (Haifa) 34200-06-11 *Echo-Tech (Micro Parts) Ltd. v. Credits Cards Company in Israel Ltd.* (published in Nevo on 21.5.2012) where it was held by the court, within the framework of a hearing on a motion for the discovery and perusal of documents, that correspondence exchanged with the Bank of Israel, cannot be disclosed due to the secrecy obligations that are entrenched in the Banking Ordinance.

41.     In this matter, immunized information is being sought from a bank which is not a party to the proceedings.  This, together with the important public interest recognized by the

Israeli courts in the non-disclosure of information exchanged with the Bank of Israel pursuant to the Banking Ordinance, would, I believe, strongly militate against the disclosure sought by BOC. (*Linde* Declaration at ¶ 49)

42.    My conclusion, therefore, is that in the light of Israeli law, at least a portion of the information demanded in requests 4-5, 11 of the Subpoena are subject to privilege, pursuant to the immunity with respect to Bank of Israel information, such that delivery of that information via sworn testimony may constitute an infringement of the provisions of the Banking Ordinance and cause Bank Hapoalim or its representatives to be subject to criminal sanctions. Moreover, to the extent requests 2, 3 and 6 seek information exchanged with the Bank of Israel (in light of BOC's definition of "Government of Israel"), that information would be subject to the foregoing privilege as well. Given that I have not been provided with the questions BOC seeks to ask, it is possible, though I cannot know at this time, that questions under additional requests may infringe on the above-referenced protections as well.

## C.    INFORMATION COLLECTED PURSUANT TO THE PROHIBITION ON MONEY LAUNDERING AND THE PROHIBITION ON TERROR FINANCING LAWS

43.    As explained in my *Linde* Declaration at ¶¶ 51-62, under Israeli law, a bank must maintain confidentiality with respect to all information received by it pursuant to the provisions of the Prohibition on Money Laundering Law, 5760-2000 and the Prohibition on Terror Financing Law, 5765-2005.

44.    The provisions of the Prohibition on Money Laundering Law are implemented by way of a reporting and supervisory mechanism, which prescribes the obligation of financial services providers to report on various financial activities performed by their clients. (*Linde* Declaration at ¶ 53)

45.     All reports are delivered to a database established pursuant to the Prohibition on Money Laundering Law and the Prohibition on Money Laundering Authority is responsible for the management of the database, for the analysis of the information therein, and for transferring the information to the relevant executive or law enforcement authorities who continue to deal therewith. (*Linde* Declaration at ¶ 54)

46.     In the *Linde* Declaration, I describe in detail how this law imposes on the bank (or persons acting on its behalf) an obligation of confidentiality with regard to all information which was received by it within the framework of the mechanisms for reporting and supervision set out in the law.  (*Linde* Declaration at ¶ 57)

47.     In addition, and as detailed by me in ¶ 55 of the *Linde* Declaration, the Governor of the Bank of Israel issued an order known as an Order Prohibiting Money Laundering (Identification Obligations, Reporting and Managing Registries of Banking Corporations), 5761-2001 (the "Order") which also contains within its framework a special provision prohibiting the bank from disclosing information reported by it (*see*: section 12 of the Order which provides that: "disclosure of the fact of the crystallization, inexistence or content of the report according to section 9, as well as the fact of the existence of a supplementary report within the meaning of such term in section 31(C) of the Law, the existence of an application to report as aforesaid or the content of any of these, as well as perusing the documents intended for any of these is prohibited, save for anyone authorized to do so for the purpose of fulfilling his duty in the banking corporation, the Controller or anyone authorized by him, the competent authority or by order of court").

48.     As I stated in the *Linde* Declaration, a breach of the obligations of confidentiality may lead to the imposition of criminal sanctions, even if such breach is through negligence. (*Linde* Declaration at ¶ 58)

49.     The Prohibition on Money Laundering Law prohibiting the disclosure of information and the use thereof, and the civil and criminal sanctions for an infringement of this obligation also apply to information collected within the framework of the Prohibition on Terror Financing Law. (*Linde* Declaration at ¶ 61)

50.     As stated in the *Linde* Declaration, the provisions of Israeli law specify that it may be possible to disclose the information by order of an Israeli court.  However, it should be mentioned that Israeli case law has not yet offered a clear-cut rule to explain when an Israeli court may order the disclosure of such information.  Nor has Israeli case law supplied any set conditions that must be met before a Court may order disclosure. Nonetheless, it appears that in light of the rationales forming the basis of the aforesaid immunity, an Israeli court would decide such cases by balancing the object of the immunity provision with the relevance of the information and the importance of such information for clarifying the disputes in the proceeding, the efficiency of the deliberation and revelation of the truth.

51.     I therefore conclude that under Israeli law, at least certain of the information demanded pursuant to requests 1-6, 9, 11-12, 15 of the Subpoena may include information collected or disclosed pursuant to the reporting mechanism of the Prohibition on Money Laundering Law and the Prohibition on Terror Financing Law, and that the discovery of this information by way of sworn testimony would constitute an infringement of the obligations of confidentiality set out in such laws and lead to the imposition of criminal sanctions on Bank Hapoalim or its representatives. Given that I have not been provided with the questions BOC

seeks to ask, it is possible, though I cannot know at this time, that questions under additional requests may infringe on the above-referenced protections as well.

### D.     INFORMATION THAT MAY INCRIMINATE HAPOALIM

52.     Lastly, my *Linde* Declaration also describes the Israeli privilege against self-incrimination, which applies also in civil proceedings and also to corporations, like in the present case. (*See*, *e.g.*: the District Court for the Central Region in Tel-Aviv (Central) 33427-03-10 *Igor Gusov v. Electra Israeli Consumer Products* (published in Nevo on 12.7.2010) where it was held by the court, within the framework of a hearing on a motion to stay the civil proceedings due to the existence of criminal proceedings, that the defendant is entitled to exercise the right of privilege against self incrimination in civil proceedings, and therefore can abstain from submitting certain evidence or from giving testimony that might lead to his incrimination.

53.     As stated in the *Linde* Declaration, the privilege against self-incrimination under Israeli law is not absolute, and courts will balance the damage that may be caused as a result of revealing a document with the benefit that may result from its disclosure, under the circumstances of each particular case.  However, even if an Israeli court requires that information be supplied, it is also authorized to provide absolute assurance that the information so supplied will not be used to incriminate the supplier.  (*Linde* Declaration at ¶¶ 63-66)

54.     In my opinion, under Israeli law, and under the circumstances of this case, at least certain of the information demanded in requests 13-14 may be privileged in accordance with the privilege against self-incrimination. Given that I have not been provided with the questions BOC seeks to ask, it is possible, though I cannot know at this time, that questions under additional requests may infringe upon this privilege as well.

## III. APPLICATION OF THE LAWS OF CONFIDENTIALITY AS DETAILED ABOVE ALSO FOR THE PURPOSE OF GIVING TESTIMONY

55.     While my focus in the *Linde* Declaration was to examine situations concerning a bank's immunity from producing documents which are protected under Israeli confidentiality laws, the same analysis I employed in the *Linde* Declaration pertains to the disclosure of information, here sought by BOC in the form of sworn testimony.

56.     It should be emphasized that according to Israeli law the same law should apply to a matter concerning a document that is privileged under the laws detailed above and the issue of giving testimony and, therefore, as stated, the *Linde* Declaration, which refers to the furnishing of documents, is relevant also to the present BOC Request dealing with the Subpoena to give testimony.

57.     One cannot "circumvent" the laws of confidentiality through the subpoenaing of testimony.

58.     Thus, for example, see the decision of the Israeli Supreme Court in the *Skoler* case:

> "... Our matter, if such exists, on relative privilege, is that we must balance the extent of the harm against each of the opposing interests. Note that when speaking about balance, our intention is not only to the use to be made by the court of the provision of section 39 of the Evidence Ordinance [New Version], but also of the testimony of the banker in court, where he will be required to disclose bank accounts, after being summoned as a witness 'according to an order of court granted for a special reason', as aforesaid in section 38 of the Evidence Ordinance [New Version]..."

## CONCLUSION

59.     Based on the above and my analysis set forth in the *Linde* Declaration, some of the information requested by BOC in the form of sworn testimony is protected under various forms of privilege created under Israeli law, while the production of some of the requested

information would violate statutory and contractual duties of confidentiality and could result in civil and/or criminal liability being imposed on Hapoalim and its representatives.

60.     In this case, BOC seeks privileged and confidential information from Hapoalim. This is particularly troubling under Israeli law given that much of the information that is being requested concerns non-parties.   Accordingly, under Israeli law, an order compelling the disclosure of such information may only be granted in rare circumstances.   According to the information that was forwarded to me, it does not appear that the circumstances in this case would be considered rare and exceptional thereby requiring disclosure of the information and, therefore, I believe that in all likelihood an Israeli court would reject the BOC Request or, at least, alter its scope.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August _2_, in ___TEL AVIV___, Israel.

_____E. ARZI_____
EHUD ARZI