STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

|   |   |   |
|---|---|---|
| SHERYL WULTZ, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:11-cv-01266 (SAS) |
| | ) | |
| BANK OF CHINA, LTD., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

_____

## SUPPLEMENTARY DECLARATION OF RANDALL PEERENBOOM

I, Randall Peerenboom, declare under penalties of perjury as follows:

1.      Having read Plaintiffs' September 23, 2013 Reply Memorandum in this case, I submit this supplementary declaration to correct the potentially misleading characterization of my position regarding PRC discovery law and practices.  Plaintiffs claim that my March 15, 2009 declaration in *Elmaliach* "explains at length ways in which Chinese discovery resemble discovery in the U.S." (Reply Memorandum, p. 6, n.8), implying that Chinese discovery is the same or substantially similar to discovery in the U.S.  As I stated in my September 17, 2013 Declaration in this case and in the *Elmaliach* declaration, PRC civil procedures are similar to procedures in other legal systems, in particular *civil law systems*.[1]  As I also stated in my Sept. 17 Declaration, discovery in China is more limited than in the U.S. under the Federal Rules of Civil Procedure.  Moreover, discovery in China remains more limited than discovery under the Federal Rules of Civil Procedure even though discovery has been expanded under PRC law in recent years as described in my *Elmaliach* declaration.  PRC discovery law and practices also differ from discovery law and practices in the U.S. in many other aspects as well, including with respect to attorney-client privilege, as is generally true in legal systems that are heavily influenced by the civil law tradition.[2]

---

[1] See *Elmaliach* declaration, para. 14.

[2] See my Sept. 17 Declaration; see also, Kuo-Chang Huang, *Introducing Discovery Into Civil Law* (2003) xii ("Comparative study of discovery unsurprisingly reveals practices to be quite variable," and noting that the ALI/UIDROIT project to harmonize civil and common law approaches to discovery "rejects American-

2.      It would test the Court's patience to engage in a detailed comparison of the differences in discovery practices.  However, a brief comparison to how discovery has proceeded in this case might be useful, particularly given that this Court has emphasized in its May 1 order that "[t[he interpretation of Chinese law should be informed by attention to the general practices and features of China's legal institutions."   I understand in this case:

- Discovery has been ongoing for over two years, with numerous motions decided by the court; numerous memoranda, opposing memoranda and reply memoranda have been submitted by the parties; numerous letters have been sent back and forth between opposing counsel and to the court; there have been several expert witness declarations on a variety of discovery related issues; various conferences and meetings have been held between the parties to resolve discovery issues; and a special master has been appointed to review redacted investigative reports.[3]

- There have also been numerous depositions and attempts to depose parties, including many foreign nationals not in the U.S.  BOC has made available three witnesses for deposition, including two depositions conducted in Hong Kong.[4]

---

style discovery on the valid assumption that such procedures would be unacceptable elsewhere in the world."); Geoffrey Hazard, Jr. "Discovery and the Role of the Judge in Civil Law Jurisdictions," 73 Notre Dame L. Rev. 1017, 1019 (1998) ("The system of pretrial discovery is unique to the United States. Other common law countries have nothing like it.").

[3] The range of issues is wide, but includes such esoteric issues relating to specific U.S. discovery rules and practices as the number of pages for exhibits to a declaration (Docket Items No. 162, 172) and whether BOC is required to produce documents that were produced by BOC and provided to government regulators "outside the course of regular regulatory reviews," or only documents produced by BOC and provided to government regulators "within the course of regular regulatory reviews."  To the best of my knowledge, these issues have never arisen in a civil case in a Chinese court.

[4] Two pages of the section of my declaration entitled "The Legal and Practical Difficulties of Litigating in the U.S." were mysteriously omitted from the copy of Plaintiffs' Exhibit G provided to me.   As noted in my *Elmaliach* declaration, PRC law limits the right of parties to conduct depositions within China for use in foreign litigation. See also, U.S. Department of State, China Judicial Assistance, available at http://travel.state.gov/law/judicial/judicial_694.html ("China does **not** permit attorneys to take depositions in China for use in foreign courts.").

- BOC has produced more than 200,000 pages of documents dating back to 2003, including almost 20,000 pages of account records, over 10,000 pages of email correspondence, and over 70,000 pages of Word and Excel spreadsheets. BOC is still reviewing over 500,000 additional documents.

- BOC has hired an outside firm specializing in electronic discovery and a team of lawyers, and spent over $1 million to respond to discovery requests so far, excluding fees for their lawyers.

- BOC has produced confidential information, including AML-related information, in a civil case.

In contrast to the lengthy pretrial discovery process in this case, a PRC court may order parties to produce their evidence in as little as 30 days.[5]  In terms of actual practice, most civil cases **are completed** within one year – not pretrial discovery, the whole case.[6]  I know of no case in which pretrial discovery has gone on for as long as in this case, with no end yet in sight.  Similarly, I know of no case in which a party has produced so many documents in response to the requests of opposing counsel or a court has ordered a party to produce so many documents at such a high cost.  Nor am I aware of any case in which a court has heard so many pretrial motions relating to discovery issues.  In short, as is true of many legal systems, pretrial discovery in China is more limited than in the U.S. under the FRCP.

3.       More importantly, while my declaration in *Elmaliach* set out the general rules for discovery in China, I did not address the more specific issues raised in this case of attorney-client privilege, lawyer confidentiality, or whether PRC courts have compelled lawyers and in-house counsel to divulge confidential information in a civil case, especially AML-related confidential information, notwithstanding their confidentiality obligations under PRC laws and regulations for lawyers and in-house counsel or

---

[5] See article 33 of Several Provisions of the Supreme People's Court on Evidence in Civil Procedures, promulgated and effective on April 1, 2002
[6] See Several Regulations on the Strict Implementation of the System of Deadlines in Trying Cases, issued by the Supreme People's Court, and effective as of Sept. 28, 2000.  In 2006, 95% of all first instances cases were completed with the time limits. SPC 2007 Work Report, http://www.court.gov.cn/qwfb/gzbg/201003/t20100310_2610.htm.

3

pursuant to China's banking and AML-related legislation.   Nothing in my *Eliamalich* declaration contradicts or undermines, or should be construed as contradicting or undermining, my statements and conclusions with respect to these more specific issues.   Accordingly, I reconfirm my conclusions in my declaration, for the reasons stated therein and above: in my opinion, PRC courts would not compel lawyers to disclose confidential information, especially AML-related information, in a civil case, and I am aware of no cases in which they have done so.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 9, 2013 at Beijing, China.

Randall Peerenboom