UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------- X

SHERYL WULTZ, individually, as personal representative of the Estate of Daniel Wultz, and as the natural guardian of plaintiff Abraham Leonard Wultz; YEKUTIEL WULTZ, individually, as personal representative of the Estate of Daniel Wultz, and as the natural guardian of plaintiff Abraham Leonard Wultz; AMANDA WULTZ; and ABRAHAM LEONARD WULTZ, minor, by his next friends and guardians Sheryl Wultz and Yekutiel Wultz,

Plaintiffs,

- against -

BANK OF CHINA LIMITED,

Defendant.

---------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: 
DATE FILED: 11/15/13

OPINION AND ORDER

11 Civ. 1266 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I. BACKGROUND

On September 17, 2013, plaintiffs requested that the Court order BOC to produce account records of twenty Bank of China ("BOC") - Guangdong accountholders with the clan name al-Shurafa in addition to seven Shurafa

accounts previously produced by BOC.[1] On September 27, 2013, the Court ordered BOC to produce account records for those Shurafas "who transacted directly with the seven Shurafas whose accounts BOC has already produced."[2] The Court also ordered BOC to submit for *in camera* review: 1) opening account records for three Shurafas whose names are the same as certain individuals who "have social media profiles indicating links to Hamas and advocating terrorism"; and 2) information pertaining to the unproduced Shurafas' transactions with the same "common parties" as the produced Shurafas.[3]

At a conference on September 26, 2013, the Court also ordered BOC to submit for *in camera* review personnel records for twelve employees in BOC-Guangdong's Legal and Compliance department, specifically pertaining to: 1) the individuals' legal qualifications; 2) their competence or training to deal with anti-money laundering ("AML") or counterterrorism financing ("CTF") issues; and 3) any record of lapses in compliance as to AML or CTF issues.[4]

---

1 *See* 9/17/13 Letter from Lee Wolosky, Counsel for Plaintiffs, to the Court ("9/17/13 Wolosky Ltr."), at 1.

2 *Wultz v. Bank of China*, No. 11-cv-1266, Dkt. No. 326 (S.D.N.Y. Sept. 27, 2013) ("9/27/13 Order"), at 4.

3 *Id.*

4 *See* Transcript of 9/26/13 Conference ("Tr."), at 50-51.

Since the September 26 and 27 orders, BOC has provided plaintiffs with account records of five additional Shurafas who transacted directly with the seven previously produced Shurafas. BOC has also created four charts explaining transaction activity between common parties and the produced and unproduced Shurafas.[5] Finally, BOC has submitted for *in camera* review 1) the opening account records for the three "social media" Shurafas;[6] and 2) redacted personnel files for the twelve employees of BOC-Guangdong's Legal and Compliance Department identified by plaintiffs.[7]

Plaintiffs assert that BOC's production of the five directly transacting Shurafas is incomplete because it does not include: 1) any records dated after June 21, 2011; or 2) any records from BOC's New York office.[8] Plaintiffs also renew their request for the remaining unproduced Shurafa accounts. Plaintiffs assert that BOC did not review full account records in creating its charts, but only reviewed "the same limited data it had already produced."[9] Plaintiffs further argue that even

---

[5] *See* Exhibit ("Ex.") A to the 10/21/13 Letter from Lanier Saperstein, Counsel for BOC, to the Court ("10/21/13 Saperstein Ltr.").

[6] *See* 10/14/13 Letter from Saperstein to the Court, at 1-2.

[7] *See* 10/21/13 Second Letter from Saperstein to the Court, at 1.

[8] *See* 10/23/13 Letter from Wolosky to the Court ("10/23/13 Wolosky Ltr."), at 3.

[9] *Id.* at 3.

based on this "limited data," the "web of interconnected financial transactions recorded in [BOC's charts] establishes that the Shurafa accountholders . . . are connected by more than mere 'coincidence'. . . [and that] the Shurafas operated a common financial enterprise used by terrorists to move funds."[10] Finally plaintiffs ask that the Court order BOC to produce: 1) unredacted personnel records for *in camera* review; and 2) "the personnel files of compliance officials whose files do not reflect any competency to deal with anti-money laundering or counterterrorism functions, as these individuals are nevertheless responsible for such matters at BOC."[11]

BOC responds that its production of the five directly transacting Shurafas is complete.[12] To the extent "there are no account documents dated later than June 21, 2011 . . . that is because they do not exist."[13] BOC explains that it did not produce records from BOC's New York branch because the Court's order specified "BOC-Guangdong account holders" and did not require production from

---

[10] *Id.* at 1-2.

[11] *Id.* at 3.

[12] *See* 10/25/13 Letter from Saperstein to the Court ("10/25/13 Saperstein Ltr."), at 2.

[13] *Id.*

the New York office.[14] Second, BOC contends that "plaintiffs offer no factual support for [the] theory" that the BOC charts show a "common financial enterprise used by terrorist organizations to move funds."[15] BOC explains that it "performed its link analysis on all of its produced transactional data, including BOC's customer account records and Swift information from intermediary banks."[16] BOC reasserts its position that plaintiffs have not shown that the remaining Shurafa accounts are relevant given that Al-Shurafa is a common clan name and that Guangdong has a large Muslim population.[17] Finally, BOC contends that it properly redacted the personnel files in accordance with the Court's order to "conduct a review to determine which documents in the personnel files were responsive to the Court's order for *in camera* production."[18]

Separately, plaintiffs assert that BOC improperly redacted 19 documents previously produced on September 20, 2013.[19] The 19 documents are internal BOC request forms dated in April 2005, created on or around the same

---

14 *Id.*

15 *Id.* at 1.

16 10/21/13 Saperstein Ltr. at 2.

17 *See id.*

18 *Id.* at 3.

19 *See* 10/31/13 Letter from Wolosky to the Court, at 1-2.

time as an alleged meeting between Israeli officials and BOC's Chinese regulator, the People's Bank of China.[20] Plaintiffs argue that the Court's May 1, 2013 order permitted BOC to redact only those communications created by the Chinese government in order "to remove any non-factual materials."[21] Plaintiffs assert that these documents were not created by the Chinese government and thus should have been produced in full. Plaintiffs ask the Court to order BOC to produce "unredacted versions" of these 19 documents along with "unredacted versions of any other responsive documents that BOC has improperly redacted" and to "disclose the names of the BOC accountholders whose account information appears on the 19 request forms."[22]

In response to this request, BOC explains that 18 of the 19 documents are duplicates, so there were only two individual request forms.[23] BOC asserts that neither of the forms pertains to a produced or unproduced Shurafa account "or to any issues in this case" and as such, redacting customer account numbers and

---

[20] *See id.* at 2.

[21] *Wultz v. Bank of China*, No. 11 Civ. 1266, 2013 WL 1832186, at *12 (S.D.N.Y. May 1, 2013).

[22] *Id.* at 2.

[23] *See* 11/5/13 Letter from Saperstein to the Court, at 1.

information is proper.[24] BOC further indicates that the documents were produced to the Court for *in camera* review in August and asks the Court to "independently verify the propriety of BOC's redactions."[25]

For the following reasons, plaintiffs' request for an order compelling BOC to produce additional Shurafa accounts is granted in part and denied in part, plaintiffs' request for an order compelling BOC to produce unredacted personnel files for *in camera* review is denied, and plaintiffs' request for an order compelling BOC to produce unredacted versions of the 19 documents produced on September 20, 2013 is denied.

## II. DISCUSSION

### A. Plaintiffs' Request for Additional Shurafa Accounts

#### 1. Social Media Shurafas

On September 17, 2013, plaintiffs submitted several Facebook and LinkedIn pages to support the proposition that three unproduced Shurafas are affiliated with terrorist groups.[26] These pages do not include identifying photographs and have minimal information as to other identifying characteristics

---

[24] *Id.* at 2.

[25] *Id.*

[26] *See* Exs. A-C to 9/17/13 Wolosky Ltr.

such as age. The Court has now reviewed the opening account information for three accountholders who have the same name as the social media profiles. It is impossible to determine that the social media accounts identified by plaintiffs belong, or even probably belong, to these three BOC-Guangdong account holders. Thus, plaintiffs have not met their burden to show that these accounts are relevant. Plaintiffs seek leave to provide photographs associated with the previously identified social media accounts.[27] Plaintiffs may provide those photographs to the Court within three days from the date of this Order. Otherwise, plaintiffs' request for production of the account records of the "social media" Shurafas is denied.

**2. Transacting Shurafas**

The Court ordered BOC to produce "complete account records of the Shurafas who transacted directly with the seven Shurafas whose accounts BOC has already produced."[28] BOC shall supplement its production of the five additional Shurafas with any account records located at the New York branch or any other BOC branch, or provide an affidavit stating that no such records exist. Because of the concern that BOC's production of the five additional Shurafas does not include documents dated after June 21, 2011, BOC shall produce account closing

---

27 *See* 10/23/13 Wolosky Ltr. at n.1.

28 9/27/13 Order, at 4.

statements, indicating that these accounts were closed on or prior to June 21, 2011.

As to the remaining unproduced Shurafas, the BOC charts do not show a "common financial enterprise used by terrorist organizations to move funds."[29] Nevertheless, the information reflected on BOC's charts does warrant production of several additional Shurafa accounts. BOC shall produce the complete account records of [redacted] Al-Shurafa and [redacted] Al-Shurafa as they transacted with the same common party as several previously produced Shurafas. BOC argues that the common party – [redacted] – is a "legitimate clothing business" and the common transactions do not support a finding that the two unproduced Shurafa accounts are relevant.[30] But this common party is sufficiently unique to justify production of the two unproduced accounts. Furthermore, it is unclear whether [redacted] is itself a Shurafa-

---

[29] Plaintiffs assert that BOC's charts and analysis are incomplete because BOC has not examined the full account records of the twenty unproduced Shurafas. *See* 10/23/13 Wolosky Ltr. at 3. BOC contends that its link analysis was done on "its produced transactional data" which includes "customer account records" and "Swift information from intermediary banks." BOC also states that it "attempted to find additional common parties" beyond the six previously identified by plaintiffs. 10/21/13 Saperstein Ltr. at 2. The Court ordered BOC to provide "information concerning the other Shurafas' transactions with common parties." 9/27/13 Order, at 4 (quotations omitted). BOC has provided this information and it is unclear that full account records would include any other information relevant to the transaction history of these account holders.

[30] 10/28/13 Letter from Saperstein to the Court ("10/28/13 Saperstein Ltr."), at 2.

related account.[31] If [redacted] is a Shurafa-related account, BOC shall also produce its complete account records. Finally, BOC has labeled [redacted] Al-Shurafa as a "common party" even though it is evident from BOC's chart that [redacted] Al-Shurafa transacted directly with two previously produced Shurafas.[32] Thus, BOC shall also produce complete account records for [redacted] Al-Shurafa.

I am also troubled by the fact that the twelve already produced Shurafas "lived or worked at the same address, separated only by different suite numbers."[33] Even if the building is, as BOC claims, a thirty-story commercial building with numerous offices and businesses,[34] this fact reasonably leads to an inference that at least some, if not most, of the Guangdong Shurafas are related parties. BOC is directed to provide the names of any remaining unproduced Shurafas who list [redacted], or the [redacted] [redacted], as an address within three days from the date of this Order. Finally, BOC should also provide an updated link analysis as to direct and indirect

---

[31] Plaintiffs claim that the common party has been identified as a "Shurafa company," but BOC's chart is unclear and it has not responded to this assertion. 10/23/13 Wolosky Ltr. at 2.

[32] *See* Chart 2, Ex. A to 10/21/13 Saperstein Ltr.

[33] 10/28/13 Letter from Wolosky to the Court, at 1. *Accord* 10/30/13 Letter from Saperstein to the Court ("10/30/13 Saperstein Ltr."), at 1.

[34] *See* 10/30/13 Saperstein Ltr. at 1.

transactions between any of the remaining unproduced Shurafas and the newly produced Shurafas – that is, the five Shurafas produced in response to the 9/27 Order and the three Shurafas whose production is required by this Order.[35]

**B. Plaintiffs' Requests as to Personnel Files**

BOC submitted redacted copies of twelve personnel files for *in camera* review. The Court did not order BOC to provide the entire unredacted personnel file for these employees. Rather, the Court asked defense counsel to look for information pertinent to three relevant areas of inquiry: 1) legal qualifications; 2) AML/CTF expertise; and 3) lapses in AML/CTF compliance.[36] Having reviewed the information submitted for *in camera* review, BOC must produce these redacted personnel files to plaintiffs.

Plaintiffs also request the Court to order production of additional personnel files for "compliance officials whose files do not reflect any competency to deal with anti-money laundering or counterterrorism functions, as these individuals are nevertheless responsible for such matters at BOC."[37] BOC has provided personnel files for the twelve employees whom plaintiffs identified and

---

35 If [redacted] is a Shurafa-related account, BOC should also include those records in its production and in its updated link analysis.

36 *See* Tr. at 50-51.

37 10/23/13 Wolosky Ltr. at 3.

requested. Plaintiffs' new request appears to be for additional personnel files without clarification as to a specific office, department, or individual name. Plaintiffs' request is denied at this time.

### C. Plaintiffs' Request for Unredacted Documents

The Court has reviewed unredacted versions of the 19 documents plaintiffs have identified. The documents are internal request forms generated by BOC. Eighteen of the 19 documents are duplicates and none of the documents pertain to the Shurafas or to any of the other issues in this case. Plaintiffs are not entitled to information about issues irrelevant and external to their case. BOC's redactions were appropriate.

## III. CONCLUSION

For the foregoing reasons, plaintiffs' requests are granted in part and denied in part. BOC must complete all ordered production within seven days from the date of this Order.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
November 15, 2013

**- Appearances -**

**For Plaintiffs:**

David Boies, Esq.
Lee S. Wolosky, Esq.
Steven I. Froot, Esq.
Marilyn C. Kunstler, Esq.
Jaime Sneider, Esq.
Boies, Schiller & Flexner LLP
575 Lexington Avenue
New York, NY 10022
(212) 446-2350

**For Defendant:**

Mitchell R. Berger, Esq.
Patton Boggs LLP (DC)
2550 M Street, N.W.
Washington, D.C. 20037
(202) 457-5601

Zachary Carter, Esq.
Lanier Saperstein, Esq.
William G. Primps, Esq.
Neil McDonell, Esq.
Eric Epstein, Esq.
Daniel Goldberger, Esq.
H. Alex Iliff, Esq.
Geoffrey Sant, Esq.
Dorsey & Whitney LLP
51 West 52nd Street
New York, NY 10019
(212) 415-9309