# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | |
| | | Docket #11cv1266 |
| WULTZ, et al., | : | 1:11-cv-01266-SAS-GWG |
| Plaintiffs, | : | |
| - against - | : | |
| BANK OF CHINA LIMITED, | : | New York, New York |
| | | January 27, 2014 |
| Defendants. | : | |
| ------------------------------------- | : | |

PROCEEDINGS BEFORE
THE HONORABLE GABRIEL W. GORENSTEIN,
UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

APPEARANCES:

For the Wultz Plaintiffs: BOIES, SCHILLER & FLEXNER
BY: STEVEN FROOT, ESQ.
LEE WOLOSKY, ESQ.
MARILYN KUNSTLER, ESQ.
JOSEPH DUNN, ESQ.
OLAV HAAZEN, ESQ.
575 Lexington Avenue
New York, New York 10022
(212) 446-2300

For the Mariah Plaintiffs: THE BERKMAN LAW OFFICE
BY: ROBERT TOLCHIN, ESQ.
111 Livingston Street, Suite 1928
Brooklyn, New York, 11201
(718) 855-3627

Transcription Service: Carole Ludwig, *Transcription Services*
141 East Third Street #3E
New York, New York 10009
Phone: (212) 420-0771
Fax: (212) 420-6007

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

THE COURT: And you don't think you can do it without some further kind of log.

MR. FROOT: That's right. Because as we saw with the log that was produced, created for the China based documents, although we were led to believe by the document hits that we were dealing with 480,000 documents, maybe I'm combining New York and China, I forget now because the numbers, it's been a while, but the log covered under 100,000 documents, the categorical log. And I think part of the explanation for that is that the categorical log didn't include things like false positives like code strings that had PIJ in them or something. So it's hard for us to know since the bank has said that it applied its same document review protocol to the US documents which was sort of an overarching privilege assertion, it's really not possible for us to know what they did, we just know it was a very low rate of production versus the number of document hits there were.

So we raised the issue on December 12th by letter to BOC. When we appeared on December 19th we raised with Your Honor that, knowing we would not see Your Honor likely before Christmas and New Year's we raised the issue with Your Honor that BOC had not in those 7 days responded to our request. You ordered that they either send us a letter or we meet and confer by the next Monday. We met and conferred the next

Monday, we followed it up, they followed it up with a letter or we did. We've now had several letters back and forth and we're prepared to raise that with Your Honor by letter tomorrow morning, if necessary, to make that issue crystallized for the Court and then they can provide a letter very quickly. But we think that that should be going on now so that we're not doing it piecemeal and seriatim.

THE COURT: Okay, and we haven't even hit the merits of the privilege, we're just talking about what they need to give you in order to make an application with respect to the privilege, is that right?

MR. FROOT: Yes, Your Honor. In other words, a categorical log --

THE COURT: I'm surprised it's this complicated.

MR. FROOT: I'm speaking of -- well, it's different productions and different privileges, they could have done the categorical log that Judge Scheindlin, we believe, directed them to create based on the New York documents but I would have to go back and check the order.

THE COURT: I mean it seems like it shouldn't be that complicated because when they were going through their US documents,, you know, one category is obviously the reports themselves, that's easy, right?

MR. FROOT: That's easy.

THE COURT: And then, you know, I mean maybe the other categories are any email or other document that mentions the reports.

MR. FROOT: But that would create, at least that would be, that would help us because just like the log that they did for the China based documents, which has 75 categories of type of document, that would allow us to say, okay, if you say there are 10,000 SARs, we're not going to, you know, we either don't believe there could be that many SARs or we're not going to challenge it. But if you tell us there are internal memoranda in the compliance department and all o those are privileged, and then they don't withhold any others because they all seem to refer to a SA, we think they're applying it too broadly, we can ask that question or raise it with Your Honor.

THE COURT: See, I have the same reaction, and I'll hear from Mr. Saperstein, but I have the same reaction to this that I had as to the Chinese regulatory log which is it's to the defendant's advantage to be as specific as possible. Because if they give you a log that says, what are they, suspicious activity reports?

MR. FROOT: Yes, Your Honor.

THE COURT: You know, one, suspicious activity reports; two, any email that mentions specific activity

reports; three, any internal bank document that mentions SARs. If that's what they then do, when you then go to challenge it, you will be, the advantage that they've been overbroad and say, you know what, this thing should be thrown out in its entirety because it's ridiculous or not, I don't know --

MR. FROOT: It should apply to the first category, but not the third.

THE COURT: Yeah, right, not two or three, because that's ridiculously overbroad, plaintiffs, you win, that's the end of it. So, this is the exact same way I thought about the regulatory, the Chinese regulatory privilege, it's to the defendant's advantage to be as specific as possible in case they lose on the big concept and they can say, well, at least don't make us do this thing or that thing, or the other thing.

So that's why I'm surprised that there should be, it's now, just as I didn't expect the Chinese regulatory log to come to me because of the advantage of this to the defendants to be as specific as possible, and in a way the advantage to you when they're as general as possible, but it seems to me there shouldn't be any dispute about it. Whatever they give you, if it's general you should be happy because you know it's more easy to attack, and if it's specific, there is nothing you can do to complain about it anyway. So I don't even see why whatever they're giving you shouldn't be

sufficient, why we'd even need to be involved, do you see what I'm saying?

MR. FROOT: I do. When we wrote the letter on December 12th it wasn't to Your Honor, it --

THE COURT: Okay, so you just want the log.

MR. FROOT: We want such a log to be created and --

THE COURT: Okay. All right, and --

MR. FROOT: And we asked for it two months ago.

THE COURT: Right. So, again, as to the contents, I have a feeling I'm not going to get involved, why don't I just turn to Mr. Saperstein see if he has an objection to doing this log and when, if not, when it's going to come out.

MR. SAPERSTEIN: I do have an objection to doing this log, Your Honor, because it's very different from what we were dealing with before, all right. In China, there was a, there's a regulatory prohibition to banks turning over their internal AML, documents related to the AML and CTF activities, and then there's one with respect to STRs and LTRs.

In the US there isn't the same sort of prohibition. We have produced the plaintiffs AML related communications from the New York custodians --

THE COURT: You are using the word AML, I know what it stands for, but how does it relate to SAR?

MR. SAPERSTEIN: Oh, I'm sorry, okay. Well, okay,

fine, right. So often SARs are filed if there is some sort of suspicious or believed to be some sort of suspicious, either potential money laundering or terrorist financing, and so that's why a lot of STRs will be captured or SARs will be captured in any AML search.

The US prohibition is more narrow. It deals with the filing of SARs, and documents that reflect the existence of SARs. It is a narrow prohibition that has been upheld by the Judge and at no point, at no point has Judge Scheindlin ordered us to do a log of SARs. What Judge Scheindlin told us that if you filed a SAR on Mr. Shirafa or an STR on Mr. Shirafa, I need to see it, in camera. And to the extent we did, filed anything, we satisfied our obligations to the Court and complied with the Court order.

So now we're talking about SARs of other people, right, and what we have done is, it's not clear to me how SARs regard on anybody is even relevant to responsive to one of their requests. If it doesn't relate to Shirafa, why is a SAR that we filed on Bill Primps, no offense, even relevant to their claims, all right.

Second of all, the entry would simply say SAR filings. Two, we redacted documents that we produced to the plaintiffs to the extent they reflect the existence of a specific SAR. We did that. They had the actual documents,

what they don't have is the redacted language. The point that --

THE COURT: Wait, wait, what is it you gave them, I'm sorry?

MR. SAPERSTEIN: We gave, let's say, for example, we produced to the plaintiffs and OCC report of examination, right, or a response to an OCC report of examination. And there will be a description about certain customers and it will say something that may reflect the existence of an SAR that we filed. We will redact that sentence. Now the plaintiff's beef is that, you know what, you've been a little over aggressive in redacting your, some of your documents that you've produced to us, and it's what we've told the plaintiffs, that we have agreed to go back and do a re-review, which we done, and there were some instances where we think that the document didn't reflect the existence of a SAR and that we will reproduce those in unredacted form, in fact, we've already produced them in unredacted form elsewhere in the production.

So it's not clear to me what the plaintiffs want. They want us to say, so we've withheld SARs, we have. If they related to Shirafa and any such SARs existed or STRs existed, or LTRs existed, the judge has them, Judge Scheindlin, any other SARs we've held, any documents that are responsive to

plaintiff's requests that we produce to them that contain a reference to a SAR, a specific SAR, we've redacted. So they have everything, it is not clear to me what they want. I can give them a list, okay --

THE COURT: Sounds like a relevance problem, not a privilege problem.

MR. SAPERSTEIN: I'm sure what they're even asking me, Judge, I'm not even sure what they want from me, they want me to give to them every single SAR that the Bank of China New York branch filed from 2003 to 2008.

THE COURT: Well are withholding it because of some legal statutory reason or because of a relevance reason?

MR. SAPERSTEIN: Both, Your Honor. It seems to me, if there is a document, let's say there's a document, that they asked for all our communications with the OCC, right, about our compliance with the OCC's consent order. We produced those documents to the plaintiffs. To the extent there was a reference in one of those documents where they said we filed a SAR on Olav Hanson, and we will -- Haazen, my apologies, we would have redacted that sentence, but they would have got the whole document.

THE COURT: Okay, got it.

MR. FROOT: Your Honor, if I may?

THE COURT: Well this is helpful. I mean -- go

ahead.

MR. FROOT: I just want to say the problem we have is that there were, the document search protocol yielded 32,700 unique document hits when BOC did the searches back at the early part of the summer. They produced 8,000 --

THE COURT: Wait, wait, unique document hits on?

MR. FROOT: US, New York documents.

THE COURT: US documents.

MR. FROOT: Because that’s all we’re talking about now. And they produced 8,000 documents which means they withheld 75 percent of the documents. Now it could turn out they didn’t withhold 75 percent of the documents on privilege grounds, and so their log will reflect fewer documents, because the log that Your Honor ordered them to produce, to create for the China documents, does have a column that says how many documents are in the chart, you know, are in a category of a certain kind of document. And they’ll do that and then that will be clear, and we may not have anything more to say, or we’ll have a lot to say, because we say there can’t be 75 percent of the documents, you know, some 24,000 documents that are SARs.

THE COURT: But, you know, now this is the mixing of problems that I’ve noted before which is there is not an agreement that anything that was generated as a result of the

hits is necessarily relevant, right?

MR. FROOT: Because of relevance, right, but that, but the thing is there have been problems in this case, not just before Your Honor. I mean what we learned about the document search pursuant to the protocol in China was that there was a complete misapplication of Judge Scheindlin's order and a wasted, you know, some of that time and those months was wasted.

THE COURT: Let's not focus on people's behavior, let's focus on, we can get to behavior afterwards, I just want to understand the issue right now.

MR. FROOT: The issue is the same issue that we had with the PRC, except that instead of their being two privileges, which there are for the PRC, they grouped together all the regulatory privileges as one privilege, and then they had a second privilege which was the STR privilege.

THE COURT: Let's talk about the US.

MR. FROOT: Okay, in the -- sorry.

THE COURT: They have a list of search terms, those search terms generated 30-something-thousand documents. My understanding is that rather than going back to you and saying, you know, this term produced this wrong kind of thing, you went literally through every document?

MR. SAPERSTEIN: Yes, Your Honor.

THE COURT: Okay. So in doing that, were they or were they not entitled to withhold SARs, that's the first question?

MR. FROOT: Yes.

THE COURT: Okay. And were they or were they not entitled to withhold documents that referred to a specific STR of an individual other than the ones Judge Scheindlin is looking at in Canada?

MR. FROOT: Only to the extent that the reference is, you know, redacted, but the rest of the document is not.

THE COURT: Correct.

MR. FROOT: Yes.

THE COURT: All right. They are, you two are onboard on those two points?

MR. FROOT: I believe so.

THE COURT: It sounds like.

MR. FROOT: Yes.

THE COURT: So now I need to understand, I don't think they're saying, and I can ask them if you want, that they withheld anything else other than that.

MR. FROOT: Well, that --

THE COURT: But I'll ask them on the SAR ground.

MR. FROOT: We spoke about this on Friday at a meet and confer because they had produced the log with respect to

the PRC and we talked about it in the analogous situation. Admittedly, in the analogous situation, and I think we do have a difference about how broadly that's applied. But there's a fundamental point here that hasn't been discussed. It is a secret assertion of privilege if 24,000 documents, unique documents have been withheld but we don't know if out of that group 4,000 have been withheld on privilege grounds, or 14,000 have been withheld on privilege grounds and how many have been withheld on relevance grounds I agree and I understand --

THE COURT: But let's put the privilege aside, to me this is a relevance issue, why are SARs of other people relevant to your claim?

MR. FROOT: Because the biggest issue in this case that is unresolved and for which the factual record is incomplete, as Judge Scheindlin has said, is to what extent the Bank of China knew about the money laundering that was going on via the Shirafa's for the Palestinian Islamic Jihad in Hamas. And she has said that if you don't, if you are not able to prove everything you want to prove about what was said at a meeting back and forth, you may be forced to put in proof of whether Bank of China was in reckless disregard of their obligations to apply the, you know, antiterrorist rules and whether they were negligent in that respect. And so, you know, whatever meets the standard of knowledge under the

Antiterrorism Act.

And so that's why all of the circumstances of steps that Bank of China has taken to root out and vet customers and take steps when they have red flags about money laundering and terrorist financing are relevant in this case. And that's why there has been litigation before Judge Scheindlin about SARs and about STRs and LTRs, both here and in the Peoples Republic, because she's agreed that that's obviously important information for the knowledge issue.

So what I'm saying now is that the same reason Judge Scheindlin ordered a categorical log of the China based production, because otherwise it's a secret and you have, the plaintiffs have absolutely no idea to what extent relevance has been asserted or to what extent privilege has been asserted, if they withhold based on the SAR privilege documents back and forth internal to BOC in New York that discuss a particular customer and some suspicions they have about that customer, we are entitled to get that.

THE COURT: To get, but to get what --

MR. FROOT: To get that memorandum that discusses what indicia of terrorist financing or money laundering raised an issue for Bank of China, up until to the point where one of those memos say either prospectively or retrospectively we're filing a SAR tomorrow or we filed a SAR yesterday.

THE COURT: All right, well I didn't understand, and you can correct me, Mr. Saperstein, that such documents would have been withheld. I thought that the only thing that was being held in its entirety were SARs themselves, and that in the case of documents that referred to a specific SAR of a person, they were merely redacting the name of that person, am I wrong on that, Mr. Saperstein?

MR. SAPERSTEIN: I must confess I'm getting a little confused by this. We are withholding specific SARs.

THE COURT: Well all SARs except the ones you have been ordered to produce.

MR. SAPERSTEIN: For in camera, correct. Exactly.

THE COURT: All right.

MR. SAPERSTEIN: We have produced documents, communications about our AML program and our compliance with counterterrorist financing laws, thousands of those documents. To the extent that those documents referred to a SAR, yes, what we do is we redact just the specific line.

THE COURT: If there's an email between person A and person B saying, you know, this guy did A, B and C, should we do a SAR, and person B says no or yes, is that being produced or not?

MR. SAPERSTEIN: Well, I mean I think it depends. I mean it is, I mean --

MR. FROOT: It's the whole story.

MR. SAPERSTEIN: Well, no, it's not, Steve, stop the ad hominem point. We gathered, we did a search and we gathered thousands upon thousands of documents. We looked for AML and CTF communications, particularly those, including those that were shared with the OCC. So, yes, if there was any document regarding any investigation by the OCC or any communication concerning the OCC that fell into the description you said, I think it probably would be produced unless it specifically referenced a SAR, that they were going to file a SAR.

THE COURT: Okay, well, you now raised a bunch of other questions, two obvious ones. When you say it was produced unless it raised a SAR, does that mean you withheld it in its entirety? If you don't know the answer to the question, Mr. Saperstein, it's better that you tell me that you are going to get back to me rather than take a guess.

MR. SAPERSTEIN: I don't know the answer, but I would have to look at the hypothetical again that you told me. I don't, I don't know the answer to that specific question. I know we withheld SARs, and I know if a document referenced a specific SAR we redacted it.

THE COURT: Redacted what?

MR. SAPERSTEIN: The reference to the specific person's name in filing a SAR.

THE COURT: But not the entire document?

MR. SAPERSTEIN: No, not the entire document.

THE COURT: Because when I asked you the question just now you didn't really answer it directly, you talked about how you produced documents involving the OCC, and that's not what I asked you about. So I don't know why you brought up the OCC. If you don't know the answer to my question, really it's better if you say I don't know and we need to get an answer, but I asked you a very specific question which is if there's an email between person A and person B saying customer X did A, B and C, should we do a SAR, and the other person says yes or no, I want to know if that's been produced, withheld, produced with redaction, or if you don't know.

MR. SAPERSTEIN: I don't know the answer to that. And I'll tell you the reason I don't know is because I'm not familiar of any communication that are just literally one line, should we not file a SAR or should we file a SAR.

THE COURT: I didn't say one line --

MR. SAPERSTEIN: Okay, two or three lines.

THE COURT: I meant anything, you keep bringing me back to communications with the OCC, which I am not asking about necessarily, I'm asking also about internal communications which could be many pages for all I know. I don't --

MR. SAPERSTEIN: Right. Okay, I will get back to you on your, on the, on your question, Your Honor. But certainly if it was a --

THE COURT: But it's not just a question of getting back to me, I think it's going fundamentally to the problem here which is to the extent that documents have been withheld, whether because you thought they were relevant or privileged, there has to be a full accounting of what you did. So if documents were produced as a result of the search terms that you withheld for SAR reasons, you need to able to explain what they are. And again, I mean I think you're the one, you folks may be the one that go down with the ship. Because if you say, well, we withheld, if we withheld, you know -- are we about to get an answer or do you want to consult?

MR. SAPERSTEIN: Yeah, let me consult with colleagues.

THE COURT: Take your time.

MR. SAPERSTEIN: I will need to get back to you to let you know whether we would have redacted or withheld that document, Your Honor.

THE COURT: Okay. Well this is very important. So, you know, something needs to be done, really not to get back to me, but to get back to me, but to get back to the plaintiffs that describes precisely what happened here. And

if there is a way to link it to, you know, numbers, that's better, I'm not requiring it now, but I can't, I'm not sitting here now going to say that it's irrelevant that people's discussions about SARs are something you can just withhold in their entirety. I mean I don't know yet. But you have to be able to express exactly what you did somehow.

So I mean maybe the simple thing is to deal with the relevance issue because once you know whether I think it's relevant or not we could deal with it right now. If I found it to be relevant, then you've got to produce it unless you meet your burden of explaining why you are not producing it and describing what it is that you didn't produce. So maybe we should talk about relevance first.

MR. SAPERSTEIN: I agree, Your Honor, because, you know, I never understood the plaintiff's request that Bank of China in New York was obligated to produce, log, or log each and every SAR that they filed from 2003 to 2008. The plaintiffs asked for information on the average numbers of SARs the bank filed and we provided that to the plaintiffs --

THE COURT: I think the SARs are not as critical as documents that reference SARs. The SARs we could deal with, I don't think that's going to be hard to deal with. I mean do you have information on how many of your withholdings were SARs, is that retrievable, or you don't know, or --

MR. SAPERSTEIN: I'm sure it could be, I mean I'm sure we can say of the number of hits that we had that this number were SARs.

THE COURT: Actual SARs. That's what I'm talking about.

MR. SAPERSTEIN: Yeah. I'm sure we can, I think we can do that.

THE COURT: That part, all right, get back to the plaintiffs on that, that part I think is not so critical, it's the things that reference, am I right it's not so critical, the SARs, themselves? I mean either there's a privilege or there isn't.

MR. FROOT: No, there's a privilege for an actual SAR or the identification of a SAR that's been filed, with the name of the person as to whom it's been filed. Absolutely.

THE COURT: Okay, so we're in agreement on that.

MR. FROOT: No, the problem --

THE COURT: The problem is the other things. The things that talk about SARs.

MR. FROOT: And the fact that, the fact that Mr. Saperstein this deep into the case, in the effort since August, since July, is not able to give a coherent answer on this point about how far they went, is a perfect example of where the only way we can test this, even begin to understand

it, is just to have a privilege log along the lines of what Your Honor directed the bank to do to the China based production.

THE COURT: Okay, we're doing this one step at a time, Mr. Froot. So what I said is I want to deal with relevance now, and Mr. Saperstein's answer was the SARs, themselves, are not relevant, and I'm saying let's not worry about that because you're not worried about that.

So now, Mr. Saperstein, why aren't documents that reference the filing of SARs relevant?

MR. SAPERSTEIN: Documents referencing the filing --

THE COURT: No, I'm sorry, I said that wrong. Why aren't documents that talk about SARs relevant, whether they should be filed or not be filed and that sort of thing?

MR. SAPERSTEIN: It's absolutely a loss to me why we would have to produce every single document that we have talking about whether we filed a SAR or didn't, didn't file a SAR. The Court was very clear in its April 9th order as to the categories of information that we had to produce and we've produced those documents. But to go back and go through the bank and search for every single SAR and then work backwards to find every single document that may refer to one of those SARs and turn them over or log them, there is clear, it is not clear to me why --

THE COURT: I don't know what you're talking about, Mr. Saperstein, you just totally lost me, you said, you think I'm asking you to go to each SAR and then with respect to each SAR find documents that reference it, is that what you think I'm asking you?

MR. SAPERSTEIN: That seems to be where we're going, Your Honor.

THE COURT: No, that's not what I'm asking you.

MR. SAPERSTEIN: Okay. Okay.

MR. FROOT: Your Honor, if I may --

THE COURT: I assume, Mr. Saperstein, that as part of the electronic search --

MR. SAPERSTEIN: Yes.

THE COURT: You generated documents that talked about the filing of SARs, and not just SARs themselves.

MR. SAPERSTEIN: Right.

THE COURT: And then I thought you told me you looked at all those documents.

MR. SAPERSTEIN: We did.

THE COURT: So therefore you had to make a decision about documents that talked about SARs, right?

MR. SAPERSTEIN: We certainly, any documents that related to AML or CTF we produced or we logged. If there was a reference to a SAR we redacted the specific reference to the

SAR. I'm not aware of any documents, standing here right now, in which there was a discussion about a SAR that we withheld, whether on responsiveness grounds or SAR grounds. And that is what I said that I would go back and look at. But I am standing here right now, I am not aware of any documents where there was an exchange about a filing of a SAR, this guy's a terrorist, oh, no, he isn't, oh, yes, he is, should we file a SAR, I'm not aware of that document.

THE COURT: Okay, well, again, whether you're aware of it right now isn't really the answer to the question, the question is what happened as part of this process and what was withheld and not withheld and how that can be explained so that there can be a review of what you did.

Mr. Froot, you were trying to tell me something.

MR. FROOT: Yeah, I don't understand why, if we're dealing with 24,000 documents, which is a fraction of what we were dealing with for the China based production, they can't simply make a list of 25 or 55 types of documents and indicate for each type of document whether it was withheld on the ground of a SAR privilege. Then we would know. If all of the 24,000 pages or documents are withheld on a SAR privilege and nothing else is withheld on any other basis, we might question how there could be 24,000 SARs, because that's not believable. Or if it turns out that 500 documents --

THE COURT: These documents were not generated merely by the use of a SAR term, right?

MR. FROOT: No, they are generated by our search protocol.

THE COURT: By a number of terms.

MR. FROOT: And that has already been done. So the point is, they're not doing any new searches, that's why I was lost in terms of the prior response.

THE COURT: How many, how many of the documents were, you know, documents that had a SAR element to the search, do you know the answer to the question? In other words --

MR. SAPERSTEIN: I don't, Your Honor.

THE COURT: If we'd taken SAR out of the protocol, would it have been the same number or did SAR add some, you know, additional, isn't that part of the question?

MR. SAPERSTEIN: No, because, the reason I don't think it's part of the question is because all they have to do is say, you know, we found 33,000 documents, unique documents that were hit by the protocol, and we produced 8,000, now we look at the 24,000 that weren't produced and it turns out that we withheld X number of thousand, 2,000 or 20,000, on privilege grounds. Those are the ones we have to break down in terms of types of documents and list the privilege. I mean

we're entitled to that, otherwise it's a secret assertion of privilege. And it doesn't get solved by someone standing up in court and making an effort to explain generally how they approached it. The only way to pin this down, just like the only way to pin down the assertion of the other two privileges that are statutory privileges in China that were asserted by defendants, is to actually see what they did. If it turns out that out of the 24,000 documents 20,000 were withheld because they were gibberish, false positives, then that's what they'll say and that's easy, and they have very little work to do to put this log together. But if it turns out that 24,000 documents were withheld on the basis of the SAR privilege, that's a little bit difficult to see.

THE COURT: Well isn't one way to do this to say -- you have the documents that have been redacted, obviously, the 24,000 are documents withheld in their entirety?

MR. FROOT: Yes.

THE COURT: Okay. Wouldn't one way to do this be to say of those 24,000 were any withheld on SAR grounds, right --

MR. FROOT: It's the only privilege so the same thing is saying --

THE COURT: Well no, no, no, no because is it your assumption that they produced, again, this is the thing that's been driving me crazy in this whole production, is it your

assumption that anything that was generated as a result of the hits was required to be produced by them, even if it was gibberish or related to some other topic?

MR. FROOT: No, but the point is --

THE COURT: So the answer is not that they were required to produce all 24,000 documents.

MR. FROOT: Correct.

THE COURT: Well that's what you just said, so that's why you are throwing me off here.

MR. FROOT: No, all I said, Your Honor, with due respect, all I said was that if the 24,000 that have been withheld, if only 8,000 are withheld on privilege grounds then that categorical log will add up to 8,000 when you add up the last column. And the only possible relevance objection, we've litigated these --

THE COURT: Wait, wait, I lost you, try me again.

MR. FROOT: Okay. We start with 33,000 unique documents that were captured by the search protocol.

THE COURT: Right.

MR. FROOT: All we are asking for --

THE COURT: They gave you 8,000 either in full or redacted form.

MR. FROOT: Right.

THE COURT: That leaves 25,000.

MR. FROOT: Right. And we are saying give us a categorical privilege log --

THE COURT: You can see that those 25,000 are not necessarily relevant, some of them are gibberish.

MR. FROOT: Absolutely. So I'm not asking them to go back and look at any of the gibberish, just for anything, when you withhold a document on privilege grounds, it's your obligation to look at it, read it and tag it with a privilege. So if they've done that and they've actually, you know, done what everyone does in litigation, then they can produce a log categorically that shows which types of documents got withheld under this, the only privilege available to them at this point after the litigation before Judge Scheindlin resulting in the April 9th order which is this SAR privilege. And if some of the categories look like they are not revelatory of a SAR, or most have a line in them that reveal the filing of a SAR, then we have a legitimate question as to why those were not produced. But right now we don't know how many of the 25,000 --

THE COURT: Wait, wait, could you stop right there?

MR. FROOT: Sure.

THE COURT: I don't know why, if those 25,000 aren't necessarily relevant, if they find some document, I guess your view is any document that references a SAR is potentially relevant, right?

MR. FROOT: Or money laundering or anything else that was in our document request. Unfortunately, this does tie back to some extent to the request --

THE COURT: So some of these requests aren't necessarily ones that were generated because of a SAR hit, right?

MR. FROOT: Of course.

THE COURT: Right. They could --

MR. FROOT: Absolutely, but we want to know which are withheld from the US production on privilege grounds.

THE COURT: So the 25,000, just to make up a number, let's pretend 10,000 were generated because of the word SAR or however you did it, in the protocol.

MR. FROOT: Right.

THE COURT: Okay. So that's the group you're interested in.

MR. FROOT: No, we're interested in any documents withheld on privilege grounds. Let's say we have a request for any --

THE COURT: Well I'm assuming they didn't withhold any of the others on SAR grounds. In other words --

MR. FROOT: Why, a document that references AML, anti-money laundering, that's captured by the relevance, you know, standard, so it's not gibberish, right? And it may

refer to a SAR or it may say generally this is the kind of thing that's going to need more research and analysis because we have to decide whether we are going to file a SAR. I don't think there is anything privileged about that under the SAR privilege.

THE COURT: No, no, I'm agreeing that there re relevant documents outside this 10,000, I'm just imagining there's a group of documents that are generated because of a SAR term in the search protocol, right?

MR. FROOT: I assume so, but --

THE COURT: There's some number.

MR. FROOT: Yeah.

THE COURT: That's the number it seems we're interested in because the other ones, they are not, I assume they're not withholding on a SAR privilege, but maybe I'm wrong.

MR. FROOT: But I have no way of knowing out of the 25,000 what they're asserting privilege over. And if they're asserting privilege over things that are not SAR documents, that's something we're entitled to know so that we can raise it with the Court, that's all I'm saying. There is no burden in the sense that they have already been assessed as privileged. Part of what gave us agita was that when we asked in our December 12th letter, and Your Honor will see the

correspondence because we'll submit it tomorrow, we asked how did you do, you know, why is this log not appropriate for the US production, and they said, you know, either we did it the same --

THE COURT: Hold on, you lost your audience.

MR. FROOT: Sorry.

THE COURT: Go ahead and consult. Just wait.

MR. FROOT: I mean, Your Honor, for some of these categories there's no, this is Steve Froot on the record, for some of these categories there may be no issue because they seem like a small enough category and they say it's a SAR --

THE COURT: When you say category what do you mean?

MR. FROOT: A category on the categorical log of what was withheld on privilege grounds from the US/New York document production. If there is a category that says actual SAR filings --

THE COURT: Right.

MR. FROOT: X thousand documents. Unless that number is very large, then that's the end of it probably. But if there are other categories on the list that say SAR privilege as the privilege, then that may raise a question. And they may want to --

THE COURT: Do you have any way of figuring out what, how many, or identifying documents you withheld on SAR

grounds, other than SARs, themselves, Mr. Saperstein, or don't you know the answer to that question?

MR. SAPERSTEIN: I don't know the answer to that question. I know that if a document related to AML or CTF, that document would have been reviewed and marked as responsive. Again, I don't know if there was --

THE COURT: And not withheld on SAR grounds.

MR. SAPERSTEIN: Right, it could be redacted on SAR grounds.

THE COURT: But not withheld in its entirety.

MR. SAPERSTEIN: Not withheld in its entirety. Now what I'm unfamiliar about and you asked and we talked about before, what happens if there's an email about a SAR, like, well, this guy Steve Froot, okay, should we file a SAR, yes, no, maybe, and then, yes, we should file, or no, we should not file. Those specific one-off documents about specific SARs, I am not sure if that would have been captured by our review.

THE COURT: I mean it seems to me that you need to produce any document that was not a SAR itself, which I'm happy to take out of the picture, that you withheld because of SAR, you need to say what those documents are. I don't see how you get around that.

MR. SAPERSTEIN: Well it seems to me we get back to the relevance issue. So if there is a, if there is a SAR filed

on somebody and it's not a Shirafa, and it doesn't readily identify, doesn't point to AML problems or any sort of AML issue at the bank, it's just a matter of this person transferred $100,000 through our bank, it has exceeded the threshold, let's file a SAR on this person. That's not, I don't even get to the relevant issue because that's not a responsive document.

THE COURT: Okay, I'm overruling your relevance objection because they're entitled to understand how this bank dealt with SARs. So having heard that, what they need is other than SARs themselves, for any document that you withheld in its entirety, if you produced it they can deal with the redaction. But for any document you withheld in its entirety, you need to log that in some way, I don't even know if you should be doing a categorical log, I don't know how many such documents there are, do you know how many documents there are?

MR. SAPERSTEIN: How many documents there are that relate to the filing --

THE COURT: No, for which you said I'm not giving them to the other side because it relates to a SAR.

MR. FROOT: And it's privileged.

THE COURT: Privilege or irrelevant, however he wants to put it.

MR. SAPERSTEIN: Yeah, we would say it would be not

relevant.

THE COURT: That's why I didn't use the word privilege because I overruled your relevance objection. So my question is how many documents did you withhold because it related to a SAR?

MR. SAPERSTEIN: I don't know.

THE COURT: Okay. That's what, and what are they, is it 10, is it 1,000 or do you have no idea?

MR. SAPERSTEIN: I don't.

MR. FROOT: And which types of documents, Your Honor?

THE COURT: Well, no, no, I mean that's one step at a time. I think those documents, I mean I think arguably they could be an individual privilege log if it was a small enough number, but if it's some huge number and if you want to get out from the burden of doing and individual privilege log, then I'm willing to talk about doing a generic privilege. Because I have no idea what they are and you don't know what they are. But, you know, I think the problem was that you assumed that none of these were relevant, I disagree with you on that, I think they are relevant, and now there needs to be a way where you articulate how you withheld the privilege from the plaintiffs. My assumption is a document by document log. If you think there's an easier way to do it, I'm willing to be

reasonable, but the presumption is it should be explained. And if it's 50 documents then just do the document by document log. And if it's something, you know, much larger and you want to talk about how you can categorize it then let's do that, but that needs to be done soon.

So I know you don't know the parameters of what you're dealing with, I'm not blaming you for that since this came up out of nowhere today, I didn't expect to have it raised, I think you should do that promptly, and if you don't get what you want then churn it up with a letter and I'll decide whether to order the document by document log or something else.

MR. FROOT: So is it the case, Your Honor, that we are, plaintiffs are expecting a categorical log along the lines of what Your Honor delineated --

THE COURT: Either a document by document log or a categorical log, just like for the other one. And if, again, I think it's the defendant's advantage to do a categorical log that is pretty specific, but if they don't and if they just say well we withheld any document as privileged because it mentions a SAR, you know, I think they're going to lose on that. I think it's to their advantage to make it as specific as possible.

MR. FROOT: I understand, Your Honor, I don't think

it's a relevance issue because --

THE COURT: Well I've overruled the relevance claim.

MR. FROOT: Okay.

THE COURT: So now it just becomes a privilege issue. And I don't know, you know, how there is going to be a privilege if it's a redactable line from the document.

MR. FROOT: Your Honor, is there a timeframe --

THE COURT: And I mean I'm willing to have the redaction, because it wasn't obvious, I'm willing to have a redaction of the name of the particular individual involved or identifying information. Timeframe? This is kind of a discreet issue, I think the other things may be a little more important. Why don't they come up with a proposal to you in a week and if you're not satisfied with it you can start a letter process, all right?

MR. FROOT: Very well, Your Honor.

THE COURT: And if you folks want to agree on another deadline, that's fine, too.

MR. FROOT: Your Honor, shall I continue with the other items?

MR. SAPERSTEIN: What was Your Honor's ruling on the timing issue, sorry?

THE COURT: You should make a proposal to them in a week, either we're going to give you a document by document