# Exhibit E

DORSEY
DORSEY & WHITNEY LLP

**LANIER SAPERSTEIN**
**Partner**
**(212) 415-9385**
**saperstein.lanier@dorsey.com**

March 25, 2014

**VIA ELECTRONIC MAIL**

Lee Wolosky, Esq.
Boies, Schiller & Flexner LLP
575 Lexington Avenue
7th Floor
New York, NY 10022

Re: Wultz v. Bank of China, No.1:11-cv-01266-SAS-GWG

Dear Mr. Wolosky:

I write in response to plaintiffs' March 13, 2014 letter summarizing plaintiffs' objections to the categorical log (the "Log") of regulatory documents collected from U.S. custodians that BOC served on February 28, 2014. For the reasons set forth below, we disagree with plaintiffs' objections, but in the interest of trying to narrow the potential dispute between the parties, we offer to provide additional information, if applicable.

**I. Categories 1, 2, 7, 8, 11, 15, 16 and 19:**

Plaintiffs object to eight categories on the Log that they claim "do not reveal the existence or contents of any specific Suspicious Activity Report." Ltr. at 1. Not only is plaintiffs' claim inaccurate, but it also misstates the scope of the SAR prohibition and seemingly ignores the applicable law governing the confidentiality of SARs and SAR-related information that BOC identified on its Log.

The SAR prohibition prevents a Bank from disclosing SARs themselves as well as "communications preceding the filing of a SAR and preparatory or preliminary to it; communications that follow the filing of a SAR and are explanations or follow-up discussion; or oral communications or suspected or possible violations that did not culminate in the filing of a SAR." *Whitney Nat. Bank v. Karam*, 306 F. Supp. 2d 678, 682-83 (S.D. Tex. 2004); *see also U.S. v. Holihan*, 248 F. Supp. 2d 179, 187 (W.D.N.Y. 2003) (recognizing that supporting documentation to SAR "may disclose the existence of an SAR and its contents, thereby thwarting the regulation's intent" and protecting such supporting documentation from disclosure); *Cotton v. Private Bank and Trust Co.*, 235 F. Supp. 2d 809, 815 (N.D. Ill. 2002) ("documents representing the drafts of SARs or other work product or privileged

communications that relate to the SAR itself are not to be produced because they would disclose whether a SAR has been prepared or filed").

The Office of the Comptroller of the Currency's ("OCC") published interpretation of the SAR prohibition regulation is in accord with the above cited decisions. *See* 75 Fed. Reg. 75576-01, 75579 (Dec. 3, 2010) ("SAR confidentiality [applies] not only to a SAR itself, *but also in appropriate circumstances to material prepared by the national bank as part of its process to detect and report suspicious activity, regardless of whether a SAR ultimately was filed or not*.") (emphasis added). The OCC has recognized explicitly *Cotton* and *Whitney* as cases that carry out the policy of the SAR prohibition law and regulations. *See* 75 Fed. Reg. at 75579 n.23. Further, FinCEN has informed you in this very case that the "SAR requirements for depository institutions" such as BOC "are inflexible." *See* October 2, 2012 letter from B. Bradley to L. Wolosky at 1.

Rather than address those authorities, plaintiffs incorrectly claim that Judge Scheindlin's April 9, 2013 Opinion and Order (Dkt. 244) somehow relieves BOC of its regulatory obligation under the SAR prohibition not to disclose documents in the above-mentioned Log categories. No such broad findings appear in that Order.

Instead, the Court ruled that "general information related to BOC's SAR filing practices" such as "BOC's SAR filing practices, the aggregate numbers of SARs filed during the relevant years, and the compliance areas to which those SARs relate" was not shielded from disclosure under the SAR prohibition. April 9, 2013 Order at 41. Addressing concerns that such information could fall within the SAR prohibition, the Court explained that "[a]t most, discovery of the requested information will reveal a year in which BOC filed no SARs." The Order expressly acknowledges that it would make sense to withhold information regarding *specific* instances in which a SAR was not filed, because a questioner could use that information to identify instances in which a SAR *was* filed. *See id.* at 42. The Court's ruling concerning BOC's general SAR filing practices has no application to the documents in the specific Log categories at issue.

Further, the Court has not yet ruled (nor been asked to rule) on the scope of the SAR prohibition as it applies to documents in the various categories on the Log. Documents in those categories reflect BOC's efforts to investigate and assess suspected or possible violations for the purpose of assessing whether a SAR should be filed. Those documents reflect instances in which BOC actually filed a SAR on specific individuals or entities on which BOC considered filing a SAR. For example, Log categories 1, 2, 7, 8, 11, 15 and 16 all describe internal documents revealing specific suspicious or unusual transactions and therefore fall squarely within "material prepared by the national bank as part of its process to detect and report suspicious activity." 75 Fed. Reg. at 75579 n.23. Similarly, documents in Log category No. 19, "Internal BOC Unusual Activity Review Checklists investigating potentially suspicious transactions," reflect BOC's decision making process on whether to file a SAR in specific instances. Accordingly, the

documents withheld in Log categories Nos. 1, 2, 7, 8, 11, 15, 16, and 19 are protected from disclosure under the SAR Prohibition.

**II. Category 5:**

Plaintiffs ask BOC to "produce immediately" every document within category 5 on BOC's Log "that does not reveal the existence of a SAR that was actually filed." All the documents within Log category 5 reference or reveal the existence of SARs, as indicated in category 5's description: "Internal BOC reports or memoranda revealing or referencing specific Suspicious Activity Reports."

**III. Categories 3, 4, 6, 9, 10, 12, 13, 14, 18, and 20:**

BOC disagrees with plaintiffs' assertion that it may only withhold portions of the documents set forth in category Nos. 3, 4, 6, 9, 10, 12, 13, 14, 18, and 20, and that it must produce those documents with redactions. In particular, plaintiffs' description of the scope of redactions required is inappropriately narrow. Plaintiffs contend that "other information in these documents (including, for example, customer information or any words discussing suspicious transactions without memorializing that a specific SAR was filed) would not be protected and must be produced in its entirety." However, given the context of the documents in the relevant categories, leaving this and other specific identifying information un-redacted would impermissibly disclose the existence of specific SARs. Plaintiffs' approach defeats the entire purpose of the SAR prohibition. For example, any specific information contained within a document in Log category no. 12 ("Internal BOC Referral Form of Unusual/Suspicious Activities") would need to be redacted, as the existence of the document itself reveals the existence of consideration and eventual filing of a specific SAR. Only a blank form would remain after the required redactions.

Moreover, plaintiffs' position is squarely undercut by a recent case addressing this issue. There, the court denied a request that a national bank redact certain documents subject to the SAR prohibition:

> The Bank Secrecy Act privilege cannot be enforced merely by redacting explicit references to the existence of a Suspicious Activity Report. Requiring U.S. Bank to disclose information about internal investigations or monitoring of the Nino de Guzman accounts in particular, or internal methods of tracking unusual patterns in banking activity in general, would reveal the existence of a Suspicious Activity Report and would undermine public policy. Just as disclosure of a Suspicious Activity Report "may provide insight into how a bank uncovers potential criminal conduct that can be used by others to circumvent detection,"

DORSEY



> Confidentiality of Suspicious Activity Reports, 75 Fed. Register 75576-01, at 75578 (Dec. 3, 2010), so too will disclosure of what kinds of transactions trigger internal “red flag” alerts.
>
> …
>
> Any internal system a bank has established for detecting and investigating money laundering will, however it is labeled, be intertwined with the bank’s obligation to report suspicious activity to the government. Discovery into these matters will produce documents suggesting that a Suspicious Activity Report has been or might be under consideration or has already been filed.

*Norton v. U.S. Bank Nat. Ass’n*, --- P.3d ----, 2014 WL 627509, *7 (Wash. App. Div. 1 Feb. 18, 2014). This reasoning applies to documents in the relevant Log categories, where specific information is intertwined with the SAR detection and filing process.

Finally, plaintiffs are incorrect that their objection is in accord with the “law of this case.” As explained above, the Court has not yet ruled on the scope of the SAR prohibition as applied to the documents within the identified categories, and therefore has not ruled on whether redactions of documents within the SAR prohibition are appropriate, let alone the scope of any such redactions. Plaintiffs’ citation to BOC0012236-70 is not on point. As plaintiffs are aware, this document was part of BOC’s “Shurafa Investigative File” which was the subject of Judge Scheindlin’s April 17, 2013 Order. No similar order applies to the documents within the Log categories.

However, as a show of BOC’s good faith and transparency, BOC will re-review the documents in the disputed Log categories to determine whether documents in any categories can be feasibly redacted and produced consistent with BOC’s regulatory obligations as well as whether any documents which can be feasibly redacted contain any relevant un-redacted information. BOC previously conducted such an analysis as part of its review of those documents, but it will revisit its initial determinations in the interest of potentially resolving the parties’ dispute without the need for Court intervention.

**IV. Category 21**

Plaintiffs’ objections to the documents that BOC has withheld in category 21 are without merit, as they ignore BOC’s regulatory obligations. In order to bring as much transparency to the process as possible, BOC provides further details regarding category 21. The information contained in category 21 can be further divided into five sub-categories, as set forth below:

DORSEY



1. FinCEN 314(a) Requests;

2. Internal BOC logs of specific FinCEN 314(a) requests;

3. Cover emails circulating specific FinCEN 314(a) requests;

4. Reports BOC generates for its responses to FinCEN 314(a) requests;

5. Internal BOC memoranda providing instructions for complying with FinCEN 314(a) requests.

Documents within the first four sub-categories all reveal "the fact that FinCEN has requested information concerning the individual, entity, or organization named in the Request." 31 C.F.R. § 1010.520(b)(3)(iv)(B)(2). Consistent with BOC's regulatory obligations, it cannot produce those documents. The fifth category comprises internal BOC memoranda providing instructions for complying with FinCEN 314(a) Requests. Upon further review, the memoranda themselves fall outside the FinCEN prohibition, although the FinCEN 314(a) Requests (sub-category 1), which typically are attached as exhibits to these memoranda, fall squarely within the prohibition. BOC has produced to plaintiffs examples of these memoranda without the attachments. *See, e.g.*, BOC0139810. These memoranda are substantively identical; they vary in their instructions only with respect to the receipt and response dates for the attached FinCEN 314(a) Requests. Their production would be cumulative and unduly burdensome, in that they would require substantial redaction without providing any additional substantive information.

Finally, BOC will serve plaintiffs with a supplemental log that provides data on the number of documents within these various FinCEN 314(a) sub-categories.[1]

**V. Responses to plaintiffs' "clarifying questions":**

Plaintiffs ask if BOC asserts "any objections to producing any of the documents that are described on its Log other than (1) attorney client privilege; (2) work product protection; (3) the "SAR Prohibition"; and (4) the "FinCEN 314(a) Request Prohibition?" BOC is not aware of any basis for withholding the documents described on its log other than the four you described.

Plaintiffs seek clarification regarding BOC's assertion that it "does not waive its right to withhold documents, in whole or in part, related to customers who are not relevant to this case, consistent with the Court's January 27, 2014 ruling." Plaintiffs contend that, at the January 27

---

[1] Regarding plaintiffs' statement that BOC's assertion of this prohibition is untimely, BOC notes that BOC's withholding of these documents is based upon a regulatory obligation, not a privilege that can be waived. Additionally, since none of these documents has any relevance to plaintiffs' claims in this case, BOC maintains its relevance objections to their production.

DORSEY



conference, Judge Gorenstein overruled BOC's relevant objections to "producing all SAR-related materials." That is not correct. The focus of Judge Gorenstein's ruling was on what information BOC should log, not what information BOC was required to produce. *See* Jan. 27, 2014 Hr'g. Tr. (Gorenstein, J.) at 66:24-67:11. By logging any particular category of documents, BOC does not concede that the information is relevant to plaintiffs' sole remaining claim in this case. Moreover, BOC intended to reference in its Log the Court's November 15, 2013 Order, in which Judge Scheindlin denied plaintiffs' request for 19 un-redacted documents because none of the parties whose names had been redacted pertained to the "Shurafas or to any other issues in this case" and the Court reminded plaintiffs that they "are not entitled to information about issues irrelevant and external to their case." November 15 Order at 12.

Very truly yours,

/s/ Lanier Saperstein

Lanier Saperstein