BOIES, SCHILLER & FLEXNER LLP

575 LEXINGTON AVENUE • 7TH FLOOR • NEW YORK, NY 10022 • PH. 212.446.2300 • FAX 212.446.2350

July 25, 2014

**BY ECF**

Hon. Gabriel W. Gorenstein
United States District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

Re: *Wultz v. Bank of China Ltd.*, No. 1:11-cv-01266 (SAS) (GWG)

Dear Judge Gorenstein:

We represent Plaintiffs in the above-captioned action. We write in response to the July 24, 2014 letter to Your Honor from Defendant Bank of China Ltd. ("BOC") (Dkt. #579) regarding documents that are *not* Suspicious Activity Reports ("SARs"), but which BOC is nonetheless withholding in their entirety pursuant to U.S. regulations governing the disclosure of SARs. For the reasons explained below and in Plaintiffs' July 9, 2014 letter to Your Honor (Dkt. #553), BOC should be compelled to produce these documents (the "non-SAR documents").

In its July 24, 2014 letter to Your Honor (the "July 24 Letter"), BOC does not even attempt to explain its representations to the Court at the January 27, 2014 conference that any log of its documents withheld pursuant to the SAR privilege "would simply say SAR filings," even though BOC was at the time withholding (and continues to withhold) thousands of non-SAR documents on that basis. BOC's July 24 Letter also does not argue that any of the documents that Plaintiffs seek are not relevant under Rule 26—an objection that BOC has apparently abandoned after Your Honor overruled it (*see* 1/27/14 Tr. at 56:13–15; 66:24–67:11).

BOC's only remaining objection to producing the non-SAR documents is that the documents are protected by the SAR privilege. Specifically, as reflected on BOC's SAR log and confirmed in its July 24 Letter, BOC takes the position that the SAR privilege is broad enough to permit BOC to withhold *in its entirety* any document that falls into any of the following categories:

- documents "disclosing the process" by which BOC identifies suspicious or unusual activity;
- documents disclosing specific instances of suspicious or unusual activity;
- documents that contain any reference to a SAR filing or refer to information as being part of a SAR; and
- communications preceding the filing of a SAR and communications following the filing of a SAR.

July 24 Letter at 6, 8–9. BOC argues that all of these documents are protected in their entirety because they are "part of the run up to filing a SAR," whether or not a SAR was ultimately filed. Yet BOC acknowledges that many of these documents have nothing to do with any actual SAR, and include documents "that did not culminate in the filing of a SAR," but are merely part of "BOC's

decision making process on whether to file a SAR." *Id.* at 8–9. BOC's position on the scope of the SAR privilege is wildly overbroad and should be rejected by the Court.

*First,* BOC offers no legitimate explanation for how its position is consistent with Judge Scheindlin's rulings in this case that (a) "the OCC's SAR regulations, at their most expansive, prohibit the disclosure of 'any information that would reveal the existence of a SAR'"; (b) that BOC must produce all documents related to its "SAR filing practices"; and (c) that "the OCC's regulations prohibit the disclosure of information that would reveal the *existence* of a particular SAR, not the *non*-existence of any SARs." 4/9/13 Order (Dkt. # 244) at 41–42 (*citing* 12 C.F.R. §21.11(k)(l)(i)). The reason that "the Court has not yet ruled (nor been asked to rule)" on the particular documents listed on BOC's SAR Log[1] (*see* July 24 Letter at 7–8) is that there was no way for Plaintiffs to know that BOC was withholding those materials—especially in light of BOC's repeated representations, at the most recent conference at which this issue was discussed, that it had already produced in redacted form the same types of documents that are listed on its Log as being withheld in their entirety. *See, e.g.*, 1/27/14 Tr. at 43:21–44:5 ("To the extent there was a reference in one of those documents where they said we filed a SAR . . . we would have redacted that sentence, but they would have got the whole document.").

Given that BOC nowhere disputes that "it . . . is a standard business practice for [BOC] to investigate suspicious activity" (*Freedman & Gersten, LLP v. Bank of Am., N.A.*, 2010 WL 5139874, at *2 (D.N.J. Dec. 8, 2010)), and in fact acknowledges that the documents Plaintiffs seek were created by BOC "whether or not a SAR was ultimately filed in any individual case" (July 24 Letter at 6), it is now clear that disclosure of at least some such documents would *not* expose "information that would reveal the existence of a SAR." *See also* 4/9/13 Order (Dkt. #244) at 41-42 ("BOC's argument that the production of the general information requested by plaintiffs could indirectly indicate whether a particular SAR was filed is unpersuasive."). For any given non-SAR document BOC is ordered to produce, there would be no way to determine whether a SAR was "ultimately filed," because Plaintiffs would not have a copy of the actual SAR (which they are not requesting here, and have never sought). Plaintiffs would also not have any portion of any other document confirming that a SAR was filed, and do not dispute that BOC is entitled to redact such information from its production.

*Second*, though it is unnecessary to look further than Judge Scheindlin's prior rulings to resolve the instant application, BOC's position is unsupported by cases it cites. For example, in *Union Bank of California, N.A. v. Superior Court*, 29 Cal. Rptr. 3d 894 (2005), the court acknowledged that it was "not suggest[ing] that all reports of suspicious activity are protected under the SAR privilege," and:

> Financial institutions may have risk management procedures in place for detecting suspicious activity wholly apart from their procedures for complying with federal reporting obligations. *A bank may not cloak its internal reports and memoranda with a veil of confidentiality simply by claiming they concern suspicious activity or concern a transaction that resulted in the filing of a SAR.*

[1] The current version of BOC's SAR Log was attached as Exhibit C to Plaintiffs' July 9, 2014 letter to Your Honor.

*Union Bank*, 29 Cal. Rptr. 3d at 902 (emphasis added).

BOC likewise dismisses the *Freedman & Gersten LLP* case as "a minority view that has not been widely followed" (*see* July 24 Letter at 6 n.3), but ignores the fact that Judge Scheindlin relied on that case in her April 17 Order. 4/17/14 Order at 6 n.16. As Judge Scheindlin wrote, the court in *Freedman* "grant[ed] 'Plaintiff's request for any memoranda or documents drafted in response to the suspicious activity at issue in this case,' despite defendant's claim that the documents 'were prepared in anticipation of filing a SAR.'" *Id.* (*citing Freedman*, 2010 WL 5139874 at *3 & n.2). Another recent decision of a Court in this District, *S.E.C. v. Yorkville Advisors, LLC*, similarly relied on *Freedman* for the principle that the SAR privilege "extends only to SARs and does not reach supporting documentation created in the ordinary course of business." 2014 WL 2208009 at *14 (S.D.N.Y. May 27, 2014) (Pitman, M.J.) (*citing Freedman*, 2010 WL 5139874 at *3). Accordingly, even if BOC were correct that the principles in *Freedman* are a "minority view" (which they are not, as demonstrated by the numerous similar cases that Plaintiffs cited in their July 9 letter), that view has been endorsed by Judge Scheindlin in this case and consistently by the Courts of this District in similar cases, and should again be applied here.

*Third*, the letter from the Department of the Treasury's Financial Crimes Enforcement Network ("FinCEN") that BOC attaches as Exhibit A to its July 24 Letter only illustrates why the disclosure that Plaintiffs seek is appropriate here. That letter (the "FinCEN Letter") nowhere endorses BOC's sweeping view of the SAR privilege. To the contrary, it states FinCEN's position that the SAR privilege is limited to SARs themselves and "any information that may reveal that a SAR has, or has not, been filed". FinCEN Letter at 1. FinCEN advanced that position, which clearly aligns with Plaintiffs' position, in *this case* and in connection with *the very documents disclosure of which Plaintiffs now seek to compel.*

For the foregoing reasons, and the reasons stated in their July 9, 2014 letter to Your Honor, Plaintiffs respectfully request that the Court grant the relief sought therein.[2]

Respectfully yours,

Joseph Dunn /DGB

Joseph W. Dunn

cc: All Counsel (via email)

---

[2] Specifically, Plaintiffs request that BOC be ordered to produce all of the documents listed on its SAR Log that are not themselves SARs, but which BOC is withholding pursuant to the SAR privilege. Plaintiffs further request that BOC be ordered to produce without any redactions the documents that fall within Categories 1, 2, 7, 8, 11, 15, and 19 on BOC's Log (which BOC still does not claim "reference" or "reveal" any SAR, *see* July 24 Letter at 8); and that BOC be ordered to produce the documents that fall within Categories 3–6, 9, 10, 12–14, 18, and 20 on BOC's Log with only those redactions necessary to conceal information that would reveal the existence of a specific SAR that was actually filed by BOC. Finally, in light of BOC's misleading representations regarding its application of the SAR privilege at the January 27, 2014 conference—which BOC has not even attempted to explain—Plaintiffs respectfully request that the Court order BOC to submit a sample of the documents that it has redacted (or will redact) pursuant to the SAR privilege for *in camera* review to assess the legitimacy of BOC's redactions.