

**LANIER SAPERSTEIN**
**Partner**
**(212) 415-9385**
**saperstein.lanier@dorsey.com**

August 11, 2014

**BY ECF**

The Honorable Gabriel W. Gorenstein, U.S.M.J.
U.S. District Court, Southern District of New York
500 Pearl Street
New York, NY 10007

> Re:   *Wultz v. Bank of China Ltd.*, 11-cv-01266 (SAS) (GWG)

Dear Judge Gorenstein:

On behalf of Bank of China Ltd. ("BOC"), we respectfully submit this response to plaintiffs' August 4, 2014 letter (Dkt. No. 592), in which the *Wultz* plaintiffs raise several discovery issues.

**1.       Counterparties:**

Plaintiffs' request for all documents related to 25 counterparties who allegedly transacted with the Shurafas is based on a misrepresentation of the facts, the Court's October 29, 2012 Order, and the parties' meet-and-confers.  Plaintiffs' request should be denied on multiple grounds.

First, plaintiffs' claim that BOC is "refusing to produce documents relating to [the 25 identified counterparties]" is wrong.  As plaintiffs are fully aware – and as reflected on Exhibit A – BOC has produced 218[1] non-privileged, responsive documents related to the 25 counterparties to the extent those documents actually relate to the Shurafas or transactions with the Shurafas. But in yet another example of what Judge Scheindlin recently noted as the "troubling shift" in plaintiffs' approach to this litigation, which keeps "moving away from the connection to the Shurafas," (6/9/14 Tr. at 4-5), plaintiffs now take the position that BOC is obligated to produce every single counterparty document, without regard to relevance.

BOC never agreed to such a broad production and, as Your Honor made clear last summer, BOC's only obligation was to run plaintiffs' requested search terms:

---

[1] This number is deflated because it is based on the inherent vagrancies of OCR'ing, especially in respect of Chinese characters, which are difficult to accurately OCR.  When the counterparty search terms are run against the text-based version of BOC's produced documents in its China database, 397 documents hit on those terms.  However, because BOC cannot reasonably discern from those searches whether any of the search terms hit on text that may have been redacted in the final production set because of applicable privileges, BOC opted to use the more conservative number as reflected above.

Hon. Gabriel W. Gorenstein
Page 2

> ATTORNEY FOR DEFENDANT: …Now what the plaintiffs want is
> account records of counterparties' info without any showing that those
> documents are so relevant that they would overcome in a comity analysis
> Chinese Bank Secrecy.  That's beyond what Judge Scheindlin has done in
> overruling Chinese Bank Secrecy. It's one thing perhaps to run the search,
> it is another thing to order the disclosure if it turns out that from that list of
> 25 there are, in fact, account records.
>
> THE COURT:  Run the search, we'll worry about the disclosure part later.
> If there's a comity issue, that's going to have to be teed up.
>
> ATTORNEY FOR PLAINTIFF:  I'm sorry, Your Honor, are you ordering
> that the search for the 25 be run but not documents produced?
>
> THE COURT:  At this time, correct.

 6/20/13 Tr. at 92-93; *see also* 6/24/13 Tr. at 46 (reiterating BOC was only required to run
plaintiffs' proposed counterparty search terms).

        BOC fully complied with the Court's directive and provided plaintiffs with multiple sets
of hit count results in July 2013.  BOC also produced its non-privileged, relevant counterparty
documents.  Plaintiffs are not entitled to more.

        <u>Second</u>, plaintiffs fail to even identify a discovery request that actually seeks "all
documents" related to the 25 counterparties.   While plaintiffs broadly reference their First
Request for Production of Documents, plaintiffs are notably silent as to what particular request
purportedly encompasses these documents.   That is because there is none.   In recent
correspondence with BOC, plaintiffs sought to re-cast Request for Production No. 2 as the basis
for their present demand, but that position is disingenuous and divorced from the plain text of
Request No. 2, which seeks:

> All documents concerning all activities and transactions *in the
> Shurafa Accounts*, including without limitation: (i) *all documents
> concerning all deposits into and credits to the Shurafa Accounts*,
> concerning the participation of any sending, originating,
> correspondent and intermediary banking institutions (including
> without limitation any other branches and subsidiaries of BOC) in
> such deposits and credits, concerning the sources and origins of
> such deposits and credits, concerning the means by which such
> deposits and credits were made (e.g. cash, check, wire, etc.) and
> concerning the identities and locations of the persons who made
> such depositions and credits; *and* (ii) *all documents concerning all
> withdrawals from and debits to the Shurafa Accounts,* concerning
> the participation of any correspondent, intermediary and

Hon. Gabriel W. Gorenstein
Page 3

> beneficiary banking institutions (including without limitation any
> other branches and subsidiaries of BOC) in such withdrawals and
> debits, concerning the identities and locations of the recipients and
> beneficiaries of such withdrawals and debits and concerning the
> means by which such withdrawals and debits were made (e.g. cash,
> check, wire, etc.).

There is no canon of construction or reasonable interpretation that can transform this request – which was plainly designed to obtain information related to transactions involving the Shurafa Accounts – into a request for all documents relating to the 25 counterparties, without reference to or regard for the Shurafa Accounts. But even if such a misconstruction were possible, BOC stands by its many well-grounded objections to plaintiffs' First Set of Requests for Production and Request No. 2.[2] *See* Reponses and Objections of BOC to Plaintiffs' First Set of Requests for Production of Documents, at 12-17, Exhibit B.

In short, save for their recent verbal demands that BOC turn over every single document hitting on one of their 133 counterparty-related search terms, plaintiffs never posed a discovery request for such documents. They should not be permitted to obtain through some backdoor method a host of irrelevant documents that they failed to request through discovery.

Third, while plaintiffs' baldly claim that Judge Scheindlin "overrode BOC's objections to the production of this material and ordered the production of such documents without

---

[2] BOC objected on multiple grounds, including the fact that such disclosure is precluded by U.S. Banking Confidentiality Laws and PRC Banking Confidentiality Laws. Moreover, while plaintiffs' lawsuit is ostensibly grounded in a claim that Shurafa is a high-ranking member of the PIJ or Hamas, after six years and extensive discovery – including BOC's production of almost 115,000 documents, totaling approximately 900,000 pages – plaintiffs have yet to identify any credible evidence to support this allegation. Yet they now ask this Court to order the production of every single document related to 25 counterparties because they transacted with a Shurafa. The counterparties, however, have their own privacy interests. *See Spina v. Our Lady of Mercy Medical Ctr.*, 2001 WL 630481, at *2 (S.D.N.Y. June 7, 2001) (noting that, even under the older and broader scope of discovery, parties were prohibited from engaging in "fishing expedition[s]" by "roam[ing] in the shadow zones of relevancy … to explore matter which does not presently appear germane on the theory that it might conceivably become so" (citation and quotation omitted)*); see also Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1237-38 (10th Cir. 2000) ("Plaintiffs … issued subpoenas for production of documents from six different banks requesting all documents relating to any loans or transactions with [the defendant for a ten year period]. … The district court then affirmed the magistrate's decisions [limiting this discovery request to those documents relating only to the subjects of the plaintiffs' claims] … reason[ing] that … Rule 26 barred the requested discovery because the burden and expense of producing these documents far outweighed the Plaintiffs' mere hope that they might find something upon which to base a claim. … When a plaintiff first pleads its allegations in entirely indefinite terms, without in fact knowing of any specific wrongdoing by the defendant, and then bases massive discovery requests upon those nebulous allegations, in the hope of finding particular evidence of wrongdoing, that plaintiff abuses the judicial process.").

Hon. Gabriel W. Gorenstein
Page 4

qualification nearly two years ago, on October 29, 2012," (8/4/14 Ltr. from L. Wolosky to G. Gorenstein, at 1), that statement finds no support whatsoever in Judge Scheindlin's Order. Indeed, Judge Scheindlin summarized plaintiffs' first set of document requests as including the following categories:

> *first*, documents concerning bank accounts related to Said al-Shurafa …; *second*, documents concerning investigations of BOC or sanctions imposed on BOC by any governmental agency, domestic or foreign; *third*, documents concerning communications with any governmental agency about BOC's anti-money laundering procedures; and *fourth*, documents identified by BOC in its initial disclosures.

10/29/12 Order, at 3. The October 29 Order does not contain any discussion of plaintiffs' purported request for "all" counterparty documents – undoubtedly because they never made one – and Judge Scheindlin accordingly never addressed this issue, much less "ordered the production of such documents without qualification."

Finally, plaintiffs' counterparty request appears to be little more than a thinly-veiled attempt to bypass the process currently before Judge Scheindlin addressing plaintiffs' broad request for Iran- and Syria-related documents. During the parties' July 24, 2014 meet-and-confer (which plaintiffs incorrectly describe as having occurred on July 21), plaintiffs took the position that all documents related to the 25 counterparties are fair game. Although reflecting some movement from their original demand that BOC produce every document hitting on their 133 proposed counterparty search terms, BOC still objected to this overly broad and irrelevant request. Indeed, when BOC's counsel asked if plaintiffs were actually claiming that every single counterparty document was relevant, even if it was a transaction "with grandma," plaintiffs conceded that was their position. Plaintiffs' counsel then queried whether BOC would consider it to be irrelevant if BOC's Swift records reflected a transaction where it was discernable on the face of the transaction that money was being wired from Iran to one of the counterparties and then immediately flipped to a Shurafa. When BOC's counsel pointed out this was a much narrower request and offered to at least consider it, plaintiffs quickly responded this was merely an example and plaintiffs were unwilling to narrow their request, reiterating they want all counterparty documents, without regard to Shurafa (or, presumably, Iran, Syria, Hamas, or PIJ). At that point, BOC agreed the parties were at an impasse.

But consistent with their "example" at the July 24 meet-and-confer, in their letter to the Court plaintiffs claim the counterparty "evidence is crucial to establishing the Iran-financed scheme at issue in this case, since entities within the Iranian government that provide financial support for terrorism generally take steps to disguise the source of such support." (8/4/14 Ltr. from L. Wolosky to G. Gorenstein, at 2.) Plaintiffs made almost the same argument at the May 12, 2014 hearing before Your Honor, arguing that the Iran/Syria documents are relevant because "Iran and Syria frequently didn't move money in their own names." (5/12/14 Tr. at 72:18-19.)

Hon. Gabriel W. Gorenstein
Page 5

However, Judge Scheindlin subsequently addressed that issue, ordering BOC to produce "[o]nly [those documents] that reflect the bank's knowledge or understanding that Bank of China's accounts were being used on or on behalf of Iran, Syria or an entity controlled by them for … the purpose of providing any financing to Hamas, PIJ or anybody in the Shurafa-related accounts." (6/9/14 Tr. at 20:6-12.) As Judge Scheindlin recently noted, plaintiffs' request must be narrowly construed to "define relevance as showing that the bank had some awareness or some knowledge. The bank is not going to be liable here [i]f it's an accidental bystander…. [The Bank has] to back it. They can't be the victim themselves for someone else's bad behavior." (7/18/14 Tr. at 17:3-14.)

In sum, BOC has produced its non-privileged, responsive documents related to the 25 counterparties to the extent those documents actually relate to the Shurafas or transactions with the Shurafas. Plaintiffs never requested – and are not entitled to – any and all documents BOC may have related to the 25 counterparties and BOC stands by its many objections to producing counterparty documents that are untethered to the Shurafas or plaintiffs' allegations in this lawsuit. For all of the above reasons, plaintiffs' request should be denied.

## 2.    Plaintiffs' Interrogatory Nos. 8, 9, 10 and 11:

BOC is providing to plaintiffs herewith with its Second Amended Supplemental Objections and Responses to Plaintiffs' Fourth Set of Interrogatories. *See* Exhibit C. BOC further amended its response to Interrogatory No. 8 to reflect BOC's effort in September 2008 to contact Said Z.R. al-Shurafa. BOC further amended its responses to Interrogatory No. 9 and 10 to reflect Judge Scheindlin's June 9, 2014 ruling in which she directed BOC to produce "[o]nly [those documents] that reflect the bank's knowledge or understanding that Bank of China's accounts were being used on or on behalf of Iran, Syria or an entity controlled by them for … the purpose of providing any financing to Hamas, PIJ or anybody in the Shurafa-related accounts." (6/9/14 Tr. at 20:6-12.) BOC has not amended its response to Interrogatory No. 11, as its believes it has provided sufficient information. BOC has confirmed that it does not have accounts for any of the entities and individuals listed in Interrogatory No. 11. Plaintiffs' efforts to expand the request represents the "troubling shift" in plaintiffs' approach to this litigation, that Judge Scheindlin observed, which keeps "moving away from the connection to the Shurafas," (6/9/14 Tr. at 4-5). None of the entities or individuals listed in Interrogatory No. 11 has any alleged connection to Shurafa. None of them have accounts at BOC. Plaintiffs do not—and cannot—allege that any of them transferred any money to or from Shurafa, as plaintiffs have all of the Shurafa account records and SWIFT reports.

## 3.    Plaintiffs' Sixth Set of Interrogatories:

Plaintiffs' Sixth Set of Interrogatories seek the "aggregate" number of STRs/LTRs filed on more than 20 Shurafa-related BOC customers. There is no dispute that BOC is prohibited from disclosing whether or not it filed an STR or LTR on any of those customers (the "STR/LTR Prohibition"). But plaintiffs claim they are entitled to know the "aggregate" or total number of STRs and LTRs (if any) that BOC has filed on those specific customers. Plaintiffs'

Hon. Gabriel W. Gorenstein
Page 6

interrogatory, if answered as plaintiffs would like, would serve as an end-run around the STR/LTR Prohibition.  Indeed, if BOC is not permitted to disclose whether or not it has filed an STR or LTR on a specific individual, it is likewise not permitted to disclose the specific number of STRs or LTRs that it has filed on a specific individual.  Accordingly, BOC objected to providing this information because it is confidential and prohibited under Chinese law.  *See* May 1, 2013 Order (Dkt. No. 261 at 24) ("With regard to STRs, article 6 of PBOC's LTR and STR Measures provides an additional source of confidentiality. This suggests that STRs, and perhaps LTRs as well, are especially confidential under PRC law, just as SARs are accorded special protections under U.S. law.").

In their August 4 letter, plaintiffs claim that "Judge Scheindlin held that Plaintiffs are entitled to full discovery of aggregate STR information, even if the aggregate information pertains to specific Shurafa accounts." Pls.' Ltr. at 4.   Plaintiffs do not accurately represent Judge Scheindlin's rulings.

First, Judge Scheindlin never stated that BOC is required to disclose the specific number of STRs or LTRs that BOC has filed on a specific customer.  Rather, she stated only that her previous orders "allowed reference to filings in the aggregate or procedures about filing or something of that that's not related to any specific filing, then it shouldn't be redacted" and that "if there are documents that would reveal something but not the existence of a specific filing but of an aggregate report or something like that, or policy or procedure, that shouldn't be redacted." 5/30/13 Tr. at 30:3-6; 10-13.  Here, if BOC were to provide the requested information, it would reveal the number of STR or LTR filings BOC has made on a specific individual, which runs afoul to the STR/LTR Prohibition.

Second, as the quoted language demonstrates, the issue before the Court concerned the extent to which BOC was permitted to redact information contained in documents responsive to plaintiffs' document requests. The Court did not address the issue here: whether BOC is required to disclose the specific number of STRs or LTRs (if any) that it has filed on specific customers. To the extent the Court did address this issue, it came down in BOC's favor, holding that BOC is not required to produce information that would reveal the specific number of STRs or LTRs that BOC filed on a specific individual. *See Id.*  Because this information is confidential and prohibited from disclosure under Chinese law, BOC properly objected to plaintiffs' interrogatory and should not be required to disclose it.

Respectfully submitted,

*/s/ Lanier Saperstein*

Lanier Saperstein

cc: Counsel of Record (by ECF)