BOIES, SCHILLER & FLEXNER LLP

575 LEXINGTON AVENUE • 7TH FLOOR • NEW YORK, NY 10022 • PH. 212.446.2300 • FAX 212.446.2350

October 3, 2014

**BY HAND DELIVERY**

Hon. Gabriel W. Gorenstein
United States District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

Re: *Wultz v. Bank of China Ltd.*, No. 11 Civ. 1266 (SAS) (GWG)

Dear Judge Gorenstein:

We represent Plaintiffs in the above-referenced action. We write to respectfully request that defendant Bank of China, Ltd. ("BOC") be ordered to produce certain documents that it continues to withhold improperly pursuant to regulations applicable to Suspicious Activity Reports ("SARs").

Following Plaintiffs' prior letter application to Your Honor on this issue, at a conference on July 29, 2014 (the "July 29 Conference"), Your Honor provided guidance on the scope and purposes of the protection against disclosure conferred by the regulations (the "SAR privilege"), and instructed the parties to meet and confer to apply Your Honor's guidance to the documents at issue. As described further below, the parties have completed that process and Plaintiffs have eliminated several categories of documents they previously sought. BOC continues to withhold thousands of documents, however, that fall outside the scope and purposes of the SAR privilege as articulated by Your Honor at the July 29 Conference. Accordingly, as directed by Your Honor, Plaintiffs make the instant application at the conclusion of the parties' meet-and-confer process. The materials BOC is withholding are not protected from disclosure, and BOC should be ordered to produce them to Plaintiffs or, for select documents identified below, to the Court for *in camera* review.[1]

---

[1] Plaintiffs certify, as required by Section 2.A of Your Honor's Individual Practices, that the parties communicated about the issues raised in this letter by written correspondence dated August 12, 2014, August 20, 2014, and August 25, 2014, and during a telephonic meet-and-confer call on August 20, 2014. Plaintiffs informed BOC during the August 20, 2014 meet-and-confer call that they believed the parties to be at an impasse and would be seeking relief from the Court. That call lasted approximately 30 minutes. The attendees on the call were Marilyn Kunstler and Joseph Dunn of Boies, Schiller & Flexner LLP on behalf of Plaintiffs, and Dan Goldberger and Glenn Salvo of Dorsey & Whitney LLP on behalf of BOC.

## Background

### 1. The Court's Guidance on the Scope and Purposes of the SAR Privilege at the July 29 Conference

On July 9, 2014, Plaintiffs wrote Your Honor to request that BOC be ordered to produce 19 categories of documents that included no SARs, but which BOC had nonetheless withheld pursuant to the SAR privilege. *See* 7/9/14 Ltr. from J. Dunn to Hon. G. Gorenstein (Dkt. # 553). Specifically, Plaintiffs sought production of the categories of documents numbered 1–16 and 18–20 on BOC's April 2, 2014 categorical log of documents withheld pursuant to the SAR privilege (BOC's "SAR Log"). BOC's SAR Log is attached to this letter as Exhibit A.

At the July 29 Conference that followed, Your Honor recognized that BOC's obligation to disclose its non-SAR documents will turn on "[t]he hard question" of whether the materials withheld by BOC consist of "information that would reveal the existence of a SAR." 7/29/14 Hr'g Tr. at 29:22–25 (attached hereto as Ex. B). *See also, e.g.*, 4/9/13 Opinion & Order at 41–42 (Scheindlin, J.) (Dkt. # 244) (holding that "the OCC's SAR regulations, at their most expansive, prohibit the disclosure of 'any information that would reveal the existence of a SAR.'"). Your Honor further held, pursuant to the applicable agency interpretation, that the SAR privilege covers investigative materials that are "preparatory and preliminary to" a SAR filing (7/29/14 Hr'g Tr. at 38:22–39:11), if disclosure of those materials would permit "someone looking at th[e] investigation . . . to infer from it that a SAR got filed" (*id.* at 32:20–24). In other words, to withhold investigatory documents on the basis of the SAR privilege, BOC would have to "confirm as to each document . . . that it's used in the process with the bank as to whether to file a SAR." *Id.* at 47:9–14. Your Honor held, however, that the SAR privilege is not broad enough to cover "any possible document that talks about money-laundering" or "what the bank does to combat money-laundering." 7/29/14 Hr'g Tr. at 39:23–40:10.

In accordance with that guidance, the Court ordered BOC to produce one document in redacted form, and the parties then agreed to meet and confer to apply these principles "to particular documents or types of documents" withheld by BOC to determine whether the categories of documents on BOC's SAR Log were in fact generated as part of BOC's process "[f]or preparing or deciding whether to file a SAR," and whether production in whole or in part would reveal the existence of SARs. *Id.* at 47:20–48:2. Your Honor suggested that Plaintiffs make the instant application at the end of that meet-and-confer process. *Id.* at 48:23–49:2.

### 2. The Documents that Remain in Dispute Following the Meet-and-Confer Process

Following the July 29 Conference and the meet-and-confer process, BOC has continued to refuse to produce any of the thousands of documents listed on its SAR Log—regardless of whether those documents refer to a SAR. Based on the Court's guidance at the July 29 Conference and information BOC has supplied to Plaintiffs about its SAR process, however,

BOIES, SCHILLER & FLEXNER LLP



Plaintiffs have narrowed the universe of documents that they are requesting be produced (in their entirety or in redacted form, as explained further below) from 19 categories to the following 14 categories of documents. To aid the Court's resolution of the parties' disputes over the 14 categories of documents at issue, Plaintiffs divide the categories into three Groups:

| Category # (from BOC's SAR Log) | BOC's Description of the Documents | Number of Documents Withheld |
|---|---|---|
| [redacted] | | |

**Argument**

**The Documents Plaintiffs Seek Fall Outside of the Scope of the SAR Privilege as Articulated by Your Honor at the July 29 Conference**

BOC should be ordered to produce the 14 above-listed categories of withheld documents—or, as explained below, produce redacted versions or a targeted sample for *in camera* review. The following discussion addresses each of the above three Groups of documents (A–C) in turn.

***Group A. Documents Related to Suspicious Transactions but not SARs (SAR Log Categories No. 7, 8, 11, and 16)***

BOC should be ordered to produce in their entirety the documents that are described as Categories No. 7, 8, 11, and 16 on its SAR Log. According to the descriptions in the SAR Log, [redacted] at Categories No. 7, 8, 11, 16 (Ex. A). As Your Honor determined at the July 29 Conference (*see* 7/29/14 Hr'g Tr. at 23:11–21), the applicable regulatory guidance specifies that documents that merely record suspicious banking activity, without stating whether any SAR was filed, do not fall within the SAR privilege:

> Documents that may identify suspicious activity but that do not reveal whether a SAR exists (e.g., a document memorializing a customer transaction, such as an account statement indicating a cash deposit or a record of a funds transfer), should be treated as falling within the underlying facts, transactions, and documents upon which a SAR may be based, and should not be afforded confidentiality. This distinction is set forth in the final rule's second rule of construction and reflects relevant case law.

Financial Crimes Enforcement Network; Confidentiality of Suspicious Activity Reports, 75 Fed. Reg. 75593-01 (Dec. 3, 2010). The same regulatory guidance further specifies that *information underlying a SAR filing* "does not constitute information that would reveal the existence of a SAR" *even if* "a reasonable and prudent person familiar with SAR filing requirements could use [the information] to conclude that an institution likely filed a SAR" (*see id.* at n. 13). There is accordingly no basis for BOC to withhold documents that merely relate to suspicious *customer transactions*, as opposed to any SARs filed on those transactions.

BOC has never claimed that the transaction-related documents described as Categories 7, 8, 11, and 16 in its SAR Log explicitly state that a SAR was filed. Nor does BOC claim that the documents classify transactions as "unusual" or "suspicious." Even if that were the case, however, the documents would still not be within the scope of the SAR privilege. As explained in *Union Bank of California, N.A. v. Superior Court*, which Your Honor cited at the July 29 Conference (*see* 7/29/14 Hr'g Tr. at 39:12–22), even "internal memoranda" and "reports" related to suspicious transactions are not protected, regardless of whether a SAR was filed on those

transactions. *See* 29 Cal. Rptr. 3d 894, 902 ("A bank may not cloak its internal reports and memoranda with a veil of confidentiality simply by claiming they concern suspicious activity or concern a transaction that resulted in the filing of a SAR."). There is no authority in support of BOC's contrary position [redacted]

Finally, BOC has voluntarily disclosed documents related to suspicious transactions in the past, and has provided no basis for distinguishing those materials from the materials described in Categories 7, 8, 11, and 16 on its SAR Log. For example, BOC invoked the SAR privilege to make extensive redactions to the investigative report that its New York branch prepared on terrorist operative Said al-Shurafa and Shurafa's counterparties in 2008. [redacted] *See, e.g.*, BOC0262267; BOC0262260 (attached as Ex. D hereto). These properly-produced documents illustrate why FinCEN and the courts have concluded that documents that merely reveal *suspicious transactions*, as opposed to *Suspicious Activity Reports*, are not protected from disclosure: the documents may identify transactions that BOC deemed suspicious in the ordinary course of its business, but that alone says nothing about whether BOC filed a SAR.

***Group B.*** ***Documents that Relate to Internal BOC Investigations of Suspicious Transactions, or Purportedly "Reveal the Existence" of Already-Filed SARs (SAR Log Categories No. 4, 5, 9, 10, 13, and 15)***

Six categories of at-issue documents comprise investigative materials and communications between BOC and its regulators, most of which BOC's SAR Log claims either [redacted] 15. In its correspondence with Plaintiffs since the July 29 Conference, BOC has claimed that these materials are all "documents that were prepared as part of BOC's SAR process *and/or* documents that identify specific SARs" (emphasis added). As explained further below, based on Your Honor's guidance at the July 29 Conference, Plaintiffs respectfully request that BOC be

---

[2] At the time, BOC apparently did not consider these lists of suspicious transactions to be privileged (or it would not have produced them). BOC only disclosed months later that it was withholding thousands of [redacted] pursuant to the SAR privilege, when Your Honor ordered it to prepare the SAR Log.

ordered to produce certain of these materials to Plaintiffs in redacted form, and to submit a sample of the remainder for the Court's *in camera* review.

***Redaction.*** To the extent that the documents in SAR Log Categories No. 4, 5, 9, 10, 13, and 15 merely mention an already-filed SAR, but were not prepared as part of BOC's SAR filing process, they should be produced to Plaintiffs in redacted form, with only those redactions necessary to avoid disclosing the fact that a SAR was filed. As Your Honor explained at the July 29 Conference, the "timing" of the creation of a document "is something that the courts . . . certainly implicitly talk about" in considering whether to apply the SAR privilege. 7/29/14 Hr'g Tr. at 14:23–15:5 (quoting *Whitney Nat. Bank v. Karam*, 306 F. Supp. 2d 678 (S.D. Tex. 2004)). As also noted by the Court, the agency guidance establishes that the SAR privilege is meant to protect a *pre-SAR* or *pre-decision-making on SAR* process only:

> THE COURT: . . . And let's just look at the Federal Register explanation from the Agency. Yeah, here it is, 'prepared by the National Bank as part of its process to detect or report suspicious activity regardless of whether a SAR ultimately was filed or not.' All that to me talks about a pre-SAR or pre-decision-making on SAR process.

7/29/14 Hr'g Tr. at 15:6–11. A document that was prepared by BOC after it filed a particular SAR and merely references the already-filed SAR cannot have been "prepared by the National Bank as part of its process" to determine to file and to file the SAR, and should accordingly be produced in redacted form.

Consideration of the policy justification for the SAR privilege makes clear why redacting the reference to an already-filed SAR is sufficient to protect any post-filing document. As the Court noted at the July 29 Conference, the policy justification identified by FinCEN for the SAR privilege is "the creation of an environment that encourages a bank to report suspicious activity without fear of reprisal." 7/29/14 Hr'g Tr. at 34:4–13. A non-SAR document that merely references an already-filed SAR, by its nature, was not created by BOC as a result of any effort to "report suspicious activity." The suspicious activity referenced by the document, if any, has *already been reported* and the creation of the document is thus part of BOC's ordinary course of business after the referenced SAR was submitted. For example, BOC might generate AML committee meeting minutes that (in part) mention an already-filed SAR, or one of BOC's employees might send an email questioning the lack of a business purpose for Said al-Shurafa's transactions that (in part) mentions that Shurafa was the subject of an existing SAR filing. Because these documents would have been created regardless of BOC's process "[f]or preparing or deciding whether to file" the referenced SAR (7/29/14 Hr'g Tr. at 47:20–48:2), BOC is not entitled to withhold them in their entirety, and only the specific sentence that mentions the SAR is protected. Judge Scheindlin and other judges who have considered the scope of the SAR privilege agree on this point.[3]

---

[3] *See, e.g.*, 4/17/13 Mem. Opinion and Order (Dkt. # 247) at 6–7 (noting a "lack of legal argument" from BOC that "documents fall within the SAR privilege merely by having some relation to a SAR," and ordering production of investigative report in redacted form); *Weil v. L.I.*

***In camera review.*** Plaintiffs further request that the Court order BOC to submit for *in camera* review a sample of ten of the remaining unproduced documents from each of Categories No. 4, 5, 9, 10, 13, and 15 on BOC's SAR Log. This targeted *in camera* review is necessary for the following reasons.

First, the sheer volume of the documents in these categories belies BOC's claims that all of the documents have been properly withheld in their entirety pursuant to the SAR privilege. BOC has produced a total of approximately 17,500 documents from its records in the United States, yet these five categories contain a total of 6,923 withheld documents, the vast majority of which are described on BOC's SAR Log [redacted] In other words, BOC claims that *over one third* of the relevant documents in this case located in the United States "were prepared as part of BOC's SAR process." It is implausible that generating SARs—a highly specialized function that was the responsibility of only a small fraction of BOC's U.S.-based document custodians—could account for such a large proportion of BOC's responsive documents.

Second, based on Plaintiffs' review of BOC's existing document production, BOC has consistently abused the SAR privilege to redact relevant evidence of its deficient anti-money laundering compliance function. In some instances, Plaintiffs have been able to identify BOC's redactions as improper because BOC disclosed an unredacted version of the document elsewhere in its production. These improper redactions raise serious questions as to whether BOC is also improperly withholding documents pursuant to the SAR privilege. For example:

[redacted]

---

*Sav. Bank*, 195 F. Supp. 2d 383, 389 (E.D.N.Y. 2001) (document does not become confidential "simply because it has some connection to a SAR").

[redacted]

In light of these demonstrably improper redactions, and the sheer number of documents in SAR Log Categories No. 4, 5, 9, 10, 13, and 15, Plaintiffs respectfully request that BOC be ordered to produce for *in camera* review a minimum of ten documents drawn at random from each of these Categories. If any substantial portion of the material submitted for *in camera* review is unrelated to any SAR filing and not a part of BOC's SAR filing process, the Court should order BOC to produce these categories of documents in their entirety.

***Group C. BOC Forms (SAR Log Categories No. 2, 12, 19, and 20)***

The last Group of documents as to which the parties continue to disagree is a collection of named forms that BOC personnel use in the course of general information-gathering and investigation efforts at the bank (SAR Log Categories No. 2, 12, 19, and 20). As explained further below, these forms are not a part of BOC's SAR filing process, and BOC should accordingly be ordered to produce the forms. At its most expansive, the SAR privilege only entitles BOC to redact references to filed SARs from these forms.

<u>Demand Draft Questionnaires (SAR Log Category No. 2).</u> A redacted example of one of these documents, which BOC produced to Plaintiffs as part of the meet-and-confer process, is attached to this letter as Exhibit J. As the redacted example indicates, these Questionnaires are not part of BOC's SAR filing process, and nowhere mention SARs. Instead, the Questionnaires are used by BOC to gather information about potentially suspicious transactions for a number of other ordinary-course functions—including to comply with BOC's own "policies and procedures" and unspecified "Anti-Money Laundering laws (AML) and the other U.S. government regulations". *See* Ex. J.

[redacted] BOC. BOC should not be permitted to argue that the same documents that exist for the purpose

of making disclosures to and receiving information from third parties are absolutely protected from disclosure to Plaintiffs here.

Internal BOC Referral Form of Unusual/Suspicious Activities (SAR Log Category No. 12). This BOC-internal form helps BOC identify suspicious activity independent of the SAR process. [redacted] On its face the form is a report that BOC would fill out in the ordinary course of business independent of its SAR filing process. The form is, accordingly, not within the scope of the SAR privilege. *See Gregory v. Bank One Corp., Inc.*, 200 F. Supp. 2d 1000, 1002 (S.D. Ind. 2002) ( (SAR protection "requires confidentiality of SARs and their contents, not of other reports of suspicious activity"); *Freedman & Gersten, LLP v. Bank of Am., N.A.*, 2010 WL 5139874, at *2 (D.N.J. Dec. 8, 2010) ("it is . . . a standard business activity for banks to investigate suspicious activity").

BOC's instructions accompanying these forms also make clear that they serve a variety of purposes that are completely unrelated to SARs or BOC's SAR filing process. [redacted] BOC's Referral Forms of Unusual/Suspicious Activities accordingly do not permit "someone looking at th[e] investigation . . . to infer from it that a SAR got filed" (7/29/14 Hr'g Tr. at 32:20–24), and are not protected from disclosure.

Unusual Activity Review Checklists (SAR Log Categories No. 19 and 20). An example of an Unusual Activity Review Checklist is attached to this letter as Exhibit N. These checklists are also used by BOC to identify suspicious activity independent of the SAR filing process, and should be produced by BOC for all of the same reasons as the Referral Forms of Unusual/Suspicious Activities. Similar to the Referral Forms, these Review Checklists are on their face preliminary and unrelated to BOC's mechanisms for deciding whether to file a SAR.

[redacted]

[redacted]

**BOC's Own Conduct Establishes that the Protective Order Is Sufficient to Protect the Confidentiality of Its Non-SAR Documents**

BOC has taken the position that it is absolutely prohibited from disclosing the documents listed on its SAR Log, such that even the strict Protective Order that is in place in this case (Dkt. # 121) is insufficient to ensure their confidentiality. BOC's own conduct outside this litigation, [redacted]

* * *

For the foregoing reasons, Plaintiffs respectfully request that the Court order BOC to produce the documents described as Categories No. 2, 7, 8, 11, 12, 16, 19, and 20 on its SAR Log. With respect to Categories No. 4, 5, 9, 10, 13, and 15 on BOC's SAR Log ("Group B"), Plaintiffs request that the Court order BOC to produce to Plaintiffs in redacted form any documents that merely reference an already-filed SAR; and to submit samples of the remaining documents for *in camera* review.

Respectfully yours,

Joseph W. Dunn

Attachments

cc: All Counsel (via email)