| | |
|---|---:|
| **Squire Patton Boggs (US) LLP** | **Dorsey & Whitney, LLP** |
| 2550 M Street, NW | 51 West 52nd Street |
| Washington, DC  20037 | New York, NY 10019 |
| Tel (202) 457-5601 | Tel (212) 415-9385 |
| Fax (202) 457-6315 | Fax (212) 953-7201 |

October 15, 2014

Hon. Shira A. Scheindlin
United States District Judge, Southern District of New York
500 Pearl Street, New York, NY 10007

      Re:    *Wultz v. Bank of China Ltd.*, No. 1:11-cv-01266 (SAS)(GWG)
              *Moriah v. Bank of China Ltd.*, No. 1:12-cv-01594 (SAS)(GWG)

Dear Judge Scheindlin:

      In advance of the pre-motion conference on summary judgment scheduled for October 29, 2014, and pursuant to Section IV.A. of Your Honor's Individual Rules and Procedures, Bank of China Ltd. ("BOC") seeks authorization to file bifurcated motions for summary judgment, with a first-phase motion focused on whether, in light of recent Second Circuit case law, there is personal jurisdiction over BOC.[1]  If the Court grants such authorization, yet determines that personal jurisdiction exists, then BOC would proceed to a second-phase motion raising its remaining grounds for summary judgment.

      We recognize that the Court previously stated that it would not entertain phased motions for summary judgment that focused on a single, potentially dispositive issue, particularly before the close of fact discovery, given plaintiffs' likely response that they would require further discovery under what is now Fed. R. Civ. P. 56(d).  *See* Tr. (4/4/11) at 35:13-18.  However, given the Court's observations at the September 22, 2014 conference about the potential impact of *Gucci America, Inc. v. Weixing Li*, --- F.3d ----, 2014 WL 4629049, at *10 (2d Cir. Sept. 17, 2014), on jurisdiction over BOC, we respectfully seek authorization to resolve the jurisdictional issue first, which may obviate the need to address BOC's remaining grounds for summary judgment and ensure other efficiencies. *See* Tr. (9/22/14) at 23:25-24:13; *see also id.* at 20:13-16 (noting that plaintiffs have been pursuing "discovery here that doesn't produce much and … is expensive and time-consuming").

I.      **BACKGROUND.**

      In its motion to dismiss the *Wultz* case filed in the U.S. District Court in Washington, D.C. ("DC Court"), where the case was then pending, BOC argued that neither general nor specific jurisdiction existed over BOC.  *See Wultz* Dkt. #15 at 12-17.  Based on then-existing law, the DC Court held that it had general personal jurisdiction because "BOC allegedly does business with and holds assets in the United States." *Wultz v. Islamic Rep. of Iran*, 755 F. Supp. 2d 1, 35 (D.D.C. 2010). The DC Court also held that "the alleged jurisdictional fact that BOC knowingly performed a wire transfer for the PIJ [through] one of its U.S. branches supports a finding of specific personal jurisdiction." *Id.* at 34.  On reconsideration, the DC Court determined that jurisdiction over BOC

---

[1] The Court may wish to reschedule the October 29, 2014 conference given that  that the October 13, 2014 fact-discovery cut-off date, pursuant to the Amended Scheduling Order, has been extended to November 14, 2014 to accommodate recently noticed depositions.

October 15, 2014

did not exist in the District of Columbia, but that there was jurisdiction over BOC in New York, under then-existing law, because BOC maintained a branch in New York ("BOCNY"). *Wultz v. Islamic Rep. of Iran*, 762 F. Supp. 2d 18, 31-32 (D.D.C. 2011). The DC Court accordingly transferred the claims against BOC to this Court. *Id.* Following an initial conference, this Court declined BOC's request for *de novo* briefing and consideration of its motion to dismiss, and "accept[ed] and adopt[ed] … the decision of the [DC] Court with respect to any motion to dismiss." Tr. (4/4/11) at 7:1-9. The Court noted that "none of this is final," and anticipated that "some of this you hope to revisit on summary judgment after there is some discovery." *Id.* at 6:20-25. However, the Court stated that it would await the completion of full fact discovery before entertaining a summary judgment motion. *Id.* at 35:13-18.

BOC had planned to challenge personal jurisdiction as part of its plenary motion for summary judgment. In light of the Court's observations during the September 22, 2014 conference about the potentially dispositive impact of *Gucci*, however, BOC seeks the Court's authorization to make bifurcated summary judgment motions.[2]

## II.   THERE IS NO GENERAL JURISDICTION OVER BOC.

The Court lacks general jurisdiction over BOC, a bank incorporated and headquartered in China. In *Gucci*, applying *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), the Second Circuit held that BOC was not subject to general jurisdiction in New York because, although BOC "has branch offices in the forum, … [it] is incorporated and headquartered elsewhere" and BOC did not present "'an exceptional case' where the Bank's contacts are 'so continuous and systematic as to render [it] essentially at home in the forum.'" 2014 WL 4629049, at *10 (quoting *Daimler*, 134 S. Ct. at 761 & n.19). The Second Circuit thus held that "BOC's activities … 'plainly do not approach' the required level of contact" and "there is no basis consistent with due process for the district court to have exercised general jurisdiction over the Bank." *Id.* (quoting *Daimler*).

BOC also has not "consented to personal jurisdiction in New York" under the state statutes cited in *Gucci* (2014 WL 4629049, at *11 n.15). BOCNY is "organized under the laws of the United States," expressly exempt from N.Y. BANKING LAW §200, and thus does not derive its "authority to do business in this state" from N.Y. BUS. CORP. LAW §§ 1301, 1304(a)(6), the provisions cited in *Gucci*.[3] Accordingly, BOC is not subject to general jurisdiction.

---

[2] As the Court recognized, BOC did not waive its personal jurisdiction objection under these circumstances. Tr. (9/22/14) at 24:17. *See also Gucci*, 2014 WL 4629049, at *11 ("[A] party cannot be deemed to have waived objections or defenses which were not known to be available at the time they could first have been made." (quotations omitted)).

[3] In connection with establishing and operating a federally-licensed branch, a foreign bank, such as BOC, is "subject to such rules, regulations and orders as the Comptroller [of the Currency] considers appropriate . . ., which shall include provisions for service of process . . . ." 12 U.S.C. § 3102(b). The Comptroller of the Currency's regulations specifically provide that a foreign bank "is subject to service of process at [its New York branch] location," 12 C.F.R. § 28.21. However, service of process alone does not establish jurisdiction, which also requires: (i) "a statutory basis for personal jurisdiction that renders such service of process effective;" and (ii) and that "the exercise of personal jurisdiction must comport with constitutional due process principles." *Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59-60 (2d Cir. 2012) ("*Licci I*"). *Gucci* establishes that it would not comport with due process to exercise general jurisdiction over BOC based on the activities of BOCNY. Indeed, a recent New York State trial court decision reached a similar result with respect to the New York branch of a foreign bank after applying *Daimler* and considering the New York statues cited in

October 15, 2014

### III. THERE IS NO SPECIFIC JURISDICTION OVER BOC.

There also no longer is a basis for the DC Court's conclusion that "the alleged jurisdictional fact that BOC knowingly performed a wire transfer for the PIJ [through] one of its U.S. branches supports a finding of specific personal jurisdiction." BOC did not engage in any purposeful activity with regard to the small subset of wire transfers to Shurafa that passed through its New York branch. "Specific jurisdiction ... depends on an 'affiliation between the forum and the underlying controversy'" that comports with due process. *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011); *Licci I*, 673 F.3d at 60 & n.9. "Due process considerations require that the defendant 'have certain minimum contacts [with the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Licci v. Lebanese Can. Bank, SAL*, 732 F.3d 161, 169 (2d Cir. 2013) (citation omitted). "'[M]inimum contacts … exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there.'" *Id.* at 170 (citation omitted).

BOC's only U.S. contacts relevant to plaintiffs' claims involve BOCNY's role as an intermediary—and never the first intermediary bank—on certain wire transfers among foreign parties that originated at other foreign banks. This Court already has observed that: "[O]nly a small fraction of the relevant banking conduct occurred in New York: the wire transfers to China 'may have incidentally passed through BOC's branch in New York' and were 'executed' by BOC's branches in the United States …" *Wultz v. Bank of China*, 865 F.Supp.2d 425, 429 (S.D.N.Y. 2012). BOC also did not originate any Shurafa wire transfers and thus did not direct any transfers through New York. *See Licci v. Lebanese Canadian Bank, SAL*, 960 N.Y.S.2d 695, 701-02 (2012) (noting that application of New York's long-arm statute "may be complicated by the nature of inter-bank activity" and "requires examination of the particular facts in each case … [and] the defendant's contacts for their quality"). BOCNY simply processed, as an intermediary, wire transfers initiated by foreign banks. This "incidental[ ] passage" through BOCNY of a "small fraction" of the Shurafa wire transfers, *Wultz*, 865 F. Supp. 2d at 429, thus was not "purposeful" and is insufficient to establish specific jurisdiction over BOC.

For these reasons, BOC respectfully seeks authorization to file phased motions for summary judgment, with a first-phase motion limited to the issue of personal jurisdiction.

Respectfully submitted,

/s/ Mitchell R. Berger                                                                                       /s/ Lanier Saperstein

---

*Gucci. See Gliklad v. Bank Hapoalim B.M.*, 2014 N.Y. Misc. LEXIS 3600, *5-*7, 2014 N.Y. Slip Op. 32117(U) (N.Y. Sup. Ct., N.Y. Co. Aug. 4, 2014) ("[T]here is no evidence to suggest that the activity at the New York branch is substantial enough to warrant general jurisdiction in New York over Bank Hapoalim."). Further, in regulations implementing the Volcker Rule, the federal banking agencies expressly accept that a "foreign bank that operates or controls [a U.S.] branch, … is not considered to be located in the United States solely by virtue of operating or controlling the U.S. branch." *Prohibitions and Restrictions on Proprietary Trading and Certain Interests in, and Relationships with, Hedge Funds and Private Equity Funds*, 79 Fed. Reg. 5,536, 5,786 (Jan. 31, 2014) (to be codified at 12 C.F.R. § 351.6(e)(5)).