# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

SHERYL WULTZ, et al.

      Plaintiffs,

-v-

BANK OF CHINA, LTD.

      Defendant.

-------------------------------------------------------------- X

1:11-CV-01266 (SAS) (GWG)

**DEFENDANT'S RESPONSE MEMORANDUM IN OPPOSITION TO PLAINTIFFS' OCTOBER 28, 2014 MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD ON THE BASIS OF THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK PRODUCT DOCTRINE**

DORSEY & WHITNEY LLP
Lanier Saperstein
Daniel W. Beebe
51 West 52nd Street
New York, New York 10019
Tel.:  (212) 415-9200
Fax:  (212) 953-7201

Glenn M. Salvo, *admitted pro hac vice*
50 South 6th Street, Suite 1500
Minneapolis, MN 55402
Tel.:  (612) 340-2600
Fax:  (612) 340-2868

SQUIRE PATTON BOGGS LLP
Mitchell R. Berger
2550 M Street, N.W.
Washington, D.C. 20037
Tel:  (202) 457-5601
Fax:  (202) 457-6315

*Counsel for Defendant Bank of China Limited*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

UNDISPUTED FACTUAL BACKGROUND..........................................................2

    I.     Summary of Undisputed Facts....................................................2

    II.    BOC Receives Plaintiffs' Demand Letter...................................3

    III.   BOC Collects Information for the Purpose of Seeking Legal Advice from External U.S. Legal Counsel Concerning the Threatened Lawsuit. ......................5

    IV.   BOC Provides to External U.S. Legal Counsel the Information BOC Collected for the Purpose of Seeking Legal Advice Concerning the Threatened Lawsuit........................................................7

    V.    K&L Gates Reviews the Information BOC Collected for the Purpose of Seeking Legal Advice from External U.S. Legal Counsel Concerning the Threatened Lawsuit, Requests Additional Information, and Provides Legal Advice to BOC........................................................9

    VI.   Plaintiffs File Their Complaint Against BOC, and K&L Gates Appears as Counsel of Record for BOC to Defend BOC in this Lawsuit...............................10

ARGUMENT .....................................................................................................10

    I.     The Challenged Documents on BOC's Privilege Logs are Protected by the Work Product Doctrine ........................................10

          A.   The Challenged Documents on BOC's Privilege Logs Were Prepared "by or for Another Party" ........................................11

          B.   BOC's Demand Letter Investigation Documents Were Prepared "in Anticipation of Litigation" ..................................12

          C.   BOC's Post-Complaint Investigation Documents Were Prepared "in Anticipation of Litigation or for Trial" ................17

          D.   Plaintiffs Have No "Substantial Need" for BOC's Work-Product Protected Documents. ..............................................18

          E.   Plaintiffs' Suggestion Throughout Their Letter Brief that BOC Cannot Claim Work Product Protection Because No Lawyers Were Involved Is Wrong on the Law and Facts. ..................................22

II.      The Challenged Documents on BOC's Privilege Logs are Protected by the Attorney-Client Privilege ........................................................................24

III.     BOC Did Not Waive Work Product Protection or Attorney-Client Privilege ........................................................................................................27

        A.      BOC Did Not Waive Work Product Protection or the Attorney-Client Privilege When It Reported to Its Regulators Concerning the Demand Letter Because These Reports Disclose No Protected Information. ...........................................................................................27

        B.      BOC Could Not Have Waived Work Product Protection or the Attorney-Client Privilege When It ███████████████ █████████████████████, Pursuant to the Financial Services Regulatory Relief Act of 2006 ...............................................................29

        C.      BOC Could Not Have Waived Work Product Protection or the Attorney-Client Privilege by ███████████████ ██████████████████████ Because It Was Ordered to Produce These Documents. ..........................................................................................30

        D.      BOC Has Not Waived Work Product Protection or the Attorney-Client Privilege by Placing Protected Documents "at Issue" in the Litigation. ..........................................................................................31

CONCLUSION ..............................................................................................................33

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied Irish Banks v. Bank of Am., N.A.*,
  240 F.R.D. 96 (S.D.N.Y. 2007) .......................................................................13, 15

*Am. Broad. Companies, Inc. v. Aereo, Inc.*,
  2013 WL 5526282 (S.D.N.Y. Oct. 7, 2013) ...........................................................28

*Bowne of N.Y.C. Inc. v. AmBase Corp.*,
  150 F.R.D. 465 (S.D.N.Y. 1993) ............................................................................28

*Boyer v. Bd. of Cnty Comm'rs of the Cnty of Johnson*,
  162 F.R.D. 687 (D. Kan. 1995) ..............................................................................26

*Caro v. Fidelity Brokerage Services, LLC*,
  2014 WL 3907920 (D. Conn. Aug. 11, 2014) ........................................................16

*Clarke v. Am. Commerce Nat. Bank*,
  974 F.2d 127 (9th Cir. 1992) ..................................................................................26

*In re Cnty. of Erie*,
  473 F.3d 413 (2d Cir. 2007)..............................................................................25, 28

*Diversified Grp., Inc. v. Daugerdas*,
  304 F. Supp. 2d 507 (S.D.N.Y. 2003).....................................................................26

*Egiazaryan v. Zalmayev*,
  290 F.R.D. 421 (S.D.N.Y. 2013) ............................................................................26

*Gardner v. Major Auto. Cos., Inc.*,
  2014 WL 1330961 (E.D.N.Y. Mar. 31, 2014) ........................................................29

*General Elec. Capital Corp. v. DIRECTV, Inc.*,
  184 F.R.D. 32 (D. Conn. 1998)...............................................................................16

*In re Grand Jury Proceedings*,
  219 F.3d 175 (2d Cir. 2000)........................................................................30, 31, 33

*In re Grand Jury Subpoena*,
  282 F. 3d 156 (2d Cir. 2002)...................................................................................22

*Gucci Am., Inc. v. Guess?, Inc.*,
  271 F.R.D. 58 (S.D.N.Y. 2010) ..............................................................................18

*Hickman v. Taylor*,
329 U.S. 495 (1947)..............................................................................................11, 20

*In re Kellogg Brown & Root, Inc.*,
756 F.3d 754 (D.C. Cir. 2014) ....................................................................................27

*In re Kidder Peabody Sec. Litig.*,
168 F.R.D. 459 (S.D.N.Y. 1996) .................................................................................33

*Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*,
2008 WL 4452134 (S.D.N.Y. Oct. 2, 2008)...............................................................12

*Martin v. Valley Nat. Bank of Ariz.*,
140 F.R.D. 291 (S.D.N.Y. 1991) .................................................................................15

*Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.*,
258 F.R.D. 95 (S.D.N.Y. 2009) .......................................................................11, 14, 26

*NXIVM Corp. v. O'Hara*,
241 F.R.D. 109 (N.D.N.Y. 2007)................................................................................28

*Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*,
273 F.R.D. 367 (S.D.N.Y. 2010) ..........................................................................28, 32

*Shinnecock Indian Nation v. Kempthorne*,
652 F. Supp. 2d 345 (E.D.N.Y. 2009) .........................................................................31

*Simon v. G.D. Searle & Co.*,
816 F.2d 397 (8th Cir. 1987) .......................................................................................16

*Standard Chartered Bank PLC v. Ayala Int'l Holdings (U.S.) Inc.*,
111 F.R.D. 76 (S.D.N.Y. 1986) ...................................................................................28

*U.S. Fidelity & Guar. Co. v. Braspetro Oil Serv. Co.*,
2000 WL 744369 (S.D.N.Y. June 8, 2000) .................................................................18

*United States v. Adlman*,
134 F.3d 1194 (2d Cir. 1998)........................................................................... *passim*

*United States v. Const. Prod. Research, Inc.*,
73 F.3d 464 (2d Cir. 1996)...........................................................................................25

*United States v. Nobles*,
422 U.S. 225 (1975)................................................................................................11, 31

*Upjohn Co. v. United States*,
449 U.S. 383 (1981)......................................................................................................27

*In re Veeco Instruments, Inc. Sec. Litig.*,
    2007 WL 724555 (S.D.N.Y. Mar. 9, 2007) ...........................................................19

*Vicinanzo v. Brunschwig & Fils, Inc.*,
    739 F. Supp. 891 (S.D.N.Y. 1990)........................................................................29

**Statutes**

12 U.S.C. § 1828(x) ..........................................................................................29, 30

18 U.S.C. § 2333(a) ...........................................................................................4, 29

28 U.S.C. § 1350................................................................................................4

## <u>INTRODUCTION</u>

Presently before the Court is Plaintiffs' motion to compel Bank of China, Ltd. ("BOC") to produce certain documents over which BOC has asserted the work product protection and the attorney-client privilege.  When the Court last addressed this issue, it found that BOC's privilege logs adequately described the documents over which BOC claimed the protections of the work product doctrine and the attorney-client privilege.  (*See* July 17, 2014 Hr'g Tr. at 40:3-8; 61:6-7) (excerpts attached as Exhibit 1 to Declaration of Daniel W. Beebe ("Beebe Decl.")).  To finally determine whether BOC's assertions of the work product protection and the attorney-client privilege are proper, Your Honor requested that BOC provide this Court with an affidavit that provides "the chronology of who told what to whom and how" with respect to BOC's investigations of the allegations in Plaintiffs' pre-suit Demand Letter and their subsequently filed Complaint.  (July 17, 2014 Hr'g Tr. at 61:14-17.)  On August 5, 2014, Plaintiffs submitted a Rule 72 Objection to Judge Scheindlin, arguing that Your Honor's ruling was inconsistent with Judge Scheindlin's earlier orders in this case.  At the August 11 conference, Judge Scheindlin rejected Plaintiffs' argument and affirmed Your Honor's ruling that BOC's privilege logs were sufficient.  (August 11, 2014 Hr'g Tr. at 4:8-9) (excerpts attached at Beebe Decl., Ex. 2).  On August 27, 2014, BOC served Plaintiffs with the August 27, 2014 Declaration of Geng Wei ("Geng Decl."), providing the chronology of BOC's Demand Letter and post-Complaint investigation in accordance with the Court's instructions.  (Beebe Decl., Ex. 3).  Geng Wei was then deposed by plaintiffs for two full days, on August 28 and 29, 2014.

The Plaintiffs now challenge BOC's claims of attorney-client privilege and work product protection for documents identified in Appendices A, B, and C to Plaintiffs' October 28, 2014 Letter Brief.  (October 28, 2014 Letter Brief ("Letter Brief"), at 1-2 & n.4 (Dkt. No. 697).) While those Appendices are labeled as BOC's privilege logs, they are not — they are excerpts

hand-selected by Plaintiffs.   Nor are they representative of BOC's privilege logs or the involvement of U.S.-licensed lawyers in BOC's investigation of the allegations in Plaintiffs' pre-suit Demand Letter and Plaintiffs' subsequent Complaint.   Nor are Plaintiffs accurate in their Letter Brief when they say they are seeking production of "those withheld documents that relate to BOC's fact investigations into the Shurafa accounts."   Rather, Plaintiffs have omitted from their Appendices every log entry that specifically references the participation in BOC's investigations of a U.S.-licensed lawyer — and there are many such documents — to give the misleading impression that U.S.-licensed lawyers played no role in the investigation of the allegations in Plaintiffs' pre-suit Demand letter or their Complaint.   Accompanying this memorandum are BOC's actual privilege logs, so the Court can see in context the full continuum of written communications among BOC and its legal counsel.[1]

BOC's documents were properly withheld.   They are protected by both the attorney-client privilege and the work product protection.   BOC has done nothing to waive these protections.   Plaintiffs' motion should accordingly be denied.

<u>**UNDISPUTED FACTUAL BACKGROUND**</u>

**I.      Summary of Undisputed Facts**

BOC received Plaintiffs' demand letter from Robert Tolchin, co-counsel of record for the Plaintiffs in this lawsuit, on January 24, 2008.   The "Demand Letter," "Re: Impending Legal Action in United States Courts Against Bank of China," informed BOC that Mr. Tolchin was

---

[1]      11/7/13 BOC Guangdong Branch Privilege Log (Beebe Decl., Ex. 4), 11/7/13 BOC New York Branch Privilege Log (Beebe Decl, Ex. 5), 12/19/13 BOC Head Office Log (Beebe Decl, Ex. 6), 3/21/14 BOC Supplemental Guangdong Branch Privilege Log (Beebe Decl, Ex. 7), 3/21/14 BOC Supplemental Head Office Privilege Log (Beebe Decl, Ex. 8), 4/15/14 BOC Supplemental New York Branch Privilege Log (Beebe Decl, Ex. 9), 10/14/14 BOC 2nd Supplemental Guangdong Branch Privilege Log (Beebe Decl, Ex. 10).

going to commence a lawsuit against BOC.  (Beebe Decl., Ex. 11).  ███████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████.

      The confidential work product created by BOC in anticipation of this lawsuit, which Plaintiffs seek by the present motion, is protected by the work product doctrine.  These communications are also protected by the attorney-client privilege.  From the inception of these confidential communications within BOC for the purpose of seeking legal advice from BOC's external U.S. legal counsel, as they passed through BOC's organizational structure on their way to BOC's external U.S. legal counsel, and as communicated to BOC's external U.S. legal counsel, these communications are protected by the attorney-client privilege.

## II.     BOC Receives Plaintiffs' Demand Letter.



---

²     In connection with the present motion, Plaintiffs have submitted a "Statement of Undisputed Facts," several of which, in fact, are disputed.  With this memorandum, BOC

██████████████████████████████████████████

████████████████████████. (BOC's Statement of Additional Undisputed Facts,

BOC's Proposed Fact ("Def. Prop. Fact") No. 1) (August 27, 2014 Decl. of Geng Wi ¶3.) The

Demand Letter informed BOC that Mr. Tolchin was going to commence a lawsuit against BOC:

> We are now preparing to file a civil action on behalf of our clients against BOC. That action will be filed in federal court within the next few weeks. The Plaintiffs who are American citizens will assert claims against BOC under the civil provisions of the Antiterrorism Act, 18 U.S.C. § 2333(a) ("ATA"). There is no question whatsoever that BOC's conduct is actionable under § 2333(a) of the ATA. The Israeli Plaintiffs will assert claims against BOC under the Alien Tort Claims Act, 28 U.S.C. § 1350 ("ATCA"). BOC's conduct is clearly actionable under the ATCA.

> Additionally, all the Plaintiffs will assert supplemental claims against BOC (including wrongful death, assault, battery, intentional infliction of emotional distress and civil conspiracy) under New York, Florida and Israeli law.

> . . .

> In light of the numerous precedents establishing the proper quantum of damages awarded to victims of terrorism under the ATA and ATCA, BOC faces damages liability in this case of several hundred million dollars or more.

> While our clients' claims are extremely strong and BOC's liability is patent, we would nevertheless consider a pre-suit settlement. Resolving this matter promptly without suit would have advantages for all parties. Indeed, given BOC's clear-cut liability and substantial damages exposure, a pre-suit settlement would certainly seem to be the prudent course for BOC.

> If BOC has an interest in exploring the possibility of a pre-suit settlement, please advise forthwith. Otherwise, absent immediate confirmation that BOC is willing to enter serious settlement negotiations, we will file suit with no further notice.

---

has submitted its Response to Plaintiffs' Statement of Undisputed Facts and BOC's Statement of Additional Undisputed Facts, in accordance with the Court's directions at the July 17, 2014 and October 23, 2014 conferences.

(Def. Prop. Fact No. 2) (Demand Letter at 3-5 (citations omitted).) ██████████

████████████████████████████████████████████████████

██████████ (Def. Prop. Fact No. 3) (Geng Decl. ¶ 3.)

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████.

(Def. Prop. Fact No. 4) (Geng Decl. ¶ 4; Deposition of Wang Qi ("Wang Dep.") at 414:3-415:2.

(Beebe Decl., Ex. 12).)

### III.  BOC Collects Information for the Purpose of Seeking Legal Advice from External U.S. Legal Counsel Concerning the Threatened Lawsuit.

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████ (Def. Prop. Fact No. 5) (Geng Decl. ¶

5.) ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████. (Def. Prop. Fact

No. 6) (Geng Decl. ¶ 5.)

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

5



. (Def. Prop. Fact No. 7) (Geng Decl. ¶ 6.)

. (Def. Prop. Fact No. 8) (Geng Decl. ¶ 6.)

(Def. Prop. Fact No. 9) (Geng. Decl.¶ 8.)

. (Def. Prop. Fact No. 10) (Deposition of Lui Hongbing ("Liu Dep."), *e.g.*, 75:20-76:2, 151:12-18 (Beebe Decl., Ex. 13); Geng Decl. ¶ 8.)

. (Def. Prop. Fact No. 11) (Geng Decl. ¶¶ 9-10; (February 20, 2013 Declaration of John Beauchemin ("Beauchemin Decl.") ¶¶ 5-22  (Beebe Decl., Ex. 14, along with transmittal letter dated February 20, 2013; Wang Dep. at 317:20-318:6; 324:22-325:11.)

. (Def. Prop. Fact No. 12) (Geng Decl. ¶ 10.)

███████████████████████████████████████████████. (Def.

Prop. Fact No. 13) (Geng Decl. ¶ 11; Wang Dep. at 317:24-318:4.)

**IV.      BOC Provides to External U.S. Legal Counsel the Information BOC Collected for the Purpose of Seeking Legal Advice Concerning the Threatened Lawsuit.**

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████. (Def. Prop. Fact No. 14) (Beauchemin Decl. ¶ 4.)   ██████████████

███████████████████████████████████████. (Def. Prop.

Fact No. 15) (*See* Beauchemin Decl. ¶¶ 4, 22 (affirming the involvement of outside counsel from

the date of receipt of the Demand Letter on).)

████████████████████████████████████████████

██████████████████████████████████████. (Def.

Prop. Fact No. 16) (Geng Decl. ¶ 12.)   ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████ (Def. Prop.

Fact No. 17) (Geng Decl. ¶ 12.)

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████



████████. (Def. Prop. Fact No. 18) (Geng Decl. ¶ 13.) ████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████ (Def. Prop. Fact No. 19)

(Geng Decl. ¶ 14.)

████████████████████████████████████

████████████████████████████████████████████.

(Def. Prop. Fact No. 20) (*See e.g.*, Geng Decl. ¶ 17.) ████████

████████████████████████████████████████████

████ (Def. Prop. Fact No. 21) (*See* Nov. 7, 2013 BOC Guangdong Branch Privilege Log

(Beebe Decl., Ex. 4), at Entry No. 82 (Feb. 19, 2008); *see also id.* at Entry No. 199 (Mar. 19,

2008) ████████████████████████████████████

████████████████  ████████████████████████

████████████████████████████.

████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████.

(Def. Prop. Fact No. 22) (Geng Decl. ¶ 18.) ████████████████

████████████████████████████████████████████

████████████████. (Def. Prop. Fact No. 23) (Geng Decl. ¶ 19.) ████████

████████████████████████████████████████████

████████████████████████████████████████████



██████████████████████████████████████████████████████. (Def. Prop.

Fact No. 24) (Geng Decl. ¶ 19.)

      **V.**    **K&L Gates Reviews the Information BOC Collected for the Purpose of Seeking Legal Advice from External U.S. Legal Counsel Concerning the Threatened Lawsuit, Requests Additional Information, and Provides Legal Advice to BOC.**

(Def. Prop. Fact No. 25.) (Geng Decl. ¶ 21.)

(Def. Prop. Fact No. 26.) (Geng Decl. ¶ 22.)

(Def. Prop. Fact No. 27.)

(Def. Prop. Fact No. 28.) (*See, e.g.*, November 7, 2013 BOC Amended Privilege Log 1 Entries

Nos. 158-174.)

## VI. Plaintiffs File Their Complaint Against BOC, and K&L Gates Appears as Counsel of Record for BOC to Defend BOC in this Lawsuit.

[3]  (Def. Prop. Fact No. 29.) (Geng Decl. ¶ 23.)



. (Def. Prop. Fact No. 30) (Geng Decl. ¶ 23.)

. (Def. Prop. Fact No. 31.) (Geng Decl. ¶ 23.)

. (Def. Prop. Fact No. 31.) (Geng Decl. ¶ 23.)

## ARGUMENT

## I. The Challenged Documents on BOC's Privilege Logs are Protected by the Work Product Doctrine

Plaintiffs' own investigation has failed to establish the most elemental allegation of their entire case—that Said ZR al-Shurafa is a terrorist—and for that reason Plaintiffs are now focused on BOC's post-Demand Letter and post-Complaint investigations.   But these documents are subject to the work product protection and are not discoverable.

The elements of the work product doctrine are codified in Rule 26 of the Federal Rules of Civil Procedure.   The work product doctrine shields from production "documents and tangible

---

[3]   The Complaint was filed in Los Angeles, California, with the caption <u>Zahavi v. Bank of China, Limited</u>.

things that are prepared in anticipation of litigation or for trial by or for another party or its representative" Fed. R. Civ. P. 26(b)(3)(A).

The purpose of the work product doctrine is to prevent the "[i]nefficiency, unfairness and sharp practices would inevitably develop" if a party were allowed to intrude on the preparations of the opposing party. *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). Discovery was not intended to allow the legal profession "to perform its functions either without wits or on wits borrowed from the adversary." *Id*. at 517 (Jackson, concurring).

The confidential work product of the parties themselves, like that of their legal counsel,[4] when prepared in anticipation of litigation or trial is protected. Especially in the case of business organizations like BOC, if discovery of a party's work product were allowed, it would "impose[ ] an untenable choice upon a company." *United States v. Adlman*, 134 F.3d 1194, 1200 (2d Cir. 1998). The company would be forced to choose between "scrimp[ing] on candor and completeness … subject[ing] itself and its co-venturers to ill-informed decisionmaking" or seriously prejudicing the company's prospects in litigation. *Id.*

### A. The Challenged Documents on BOC's Privilege Logs Were Prepared "by or for Another Party"

Plaintiffs do not dispute that the documents in dispute here were prepared "by or for another party" (BOC). Plaintiffs' Demand Letter threatened a lawsuit against BOC, and BOC was named as a party when Plaintiffs filed their Complaint.

---

[4]   Rule 26 provides an additional, heightened layer of protection to work product revealing an attorney's mental processes to allow the lawyer to prepare and develop legal theories and strategy with an eye toward litigation "free from unnecessary intrusion by his adversaries." *Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.*, 258 F.R.D. 95, 102 (S.D.N.Y. 2009) (citations omitted). Materials that would reveal these mental processes "are sacrosanct, and receive heightened protection." *Id.* at 102 (*citing United States v. Nobles*, 422 U.S. 225, 238 (1975)). This protection for attorney opinion work product is, however, a separate and additional layer of protection.

**B.      BOC's Demand Letter Investigation Documents Were Prepared "in Anticipation of Litigation"**

Despite challenging BOC's work product assertions several times, most recently in Plaintiffs' July 2014 briefing to Your Honor and their following Rule 72 Objection, Plaintiffs have ***never*** disputed that the documents with respect to which BOC has asserted the work product protection were prepared in anticipation of litigation.  See, for example, Plaintiffs' June 27, 2014 Letter Brief (Dkt. No. 544) and July 15, 2014 Letter Brief (Dkt. No. 562), arguing only that "BOC's Work Product Assertions Should be Overridden" on the basis of substantial need. See also BOC's July 16, 2014 Letter Brief (Dkt. No. 568) ("Plaintiffs do not dispute that those documents were prepared by BOC in anticipation of litigation.").   Now, for the first time, Plaintiffs introduce a totally new argument that none of the activity within BOC as a result of Plaintiffs' Demand Letter and Complaint concerned Plaintiffs' threatened lawsuit.  It is easy to see why Plaintiffs have not made this argument before.  Plaintiffs are wrong on both the law and the facts.

The challenged documents on BOC's privilege logs were prepared "in anticipation of litigation."  Plaintiffs incorrectly state that when determining whether a document was prepared "in anticipation of litigation," the "'threshold issue' requires an 'inquiry into the primary motivational purpose behind the creation of the document.'" (Ltr. at 6.) (quoting *Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, No. 03 Civ. 5560 RMB HBP, 2008 WL 4452134, *10 (S.D.N.Y. Oct. 2, 2008)).  Indeed, it is telling that Plaintiffs chose to cite to an unreported case on such a widely reported issue.

*United States v. Adlman*, the controlling Second Circuit case on work product protection, makes it explicitly clear that the "primary purpose" of a document is not the appropriate test of work production protection.  Starting with the Rule itself, the court noted "[n]owhere does Rule

26(b)(3) state that a document must have been prepared to aid in the conduct of litigation in order to constitute work product, much less *primarily* or *exclusively* to aid in litigation." 134 F.3d 1194, 1198 (2d Cir. 1998).  *Adlman* concerned a study prepared for an attorney assessing the likely result of litigation expected to result if the defendant company entered into a particular business transaction.  *Id.* at 1195.  The "primary or ultimate purpose of making the study was to assess the desirability of [the] business transaction."  *Id.*  The Second Circuit saw no basis for denying privilege "merely because the document was created for a business purpose rather than for litigation assistance." *Id.,* 134 F.3d at 1200. Completely contrary to Plaintiffs' assertion that the primary purpose of the document is a "threshold" issue, the court clearly stated "*a document's purpose is … irrelevant* to the question whether it should be protected under Rule 26(b)(3)." *Id.* (emphasis added).

In *Allied Irish Banks v. Bank of Am., N.A.*, the court explained how *Adlman* is appropriately applied in cases where a document has multiple purposes.  240 F.R.D. 96 (S.D.N.Y. 2007).  After considering and rejecting alternative approaches, the Second Circuit in *Aldman* had announced work product protection applies if a document is prepared "because of" existing or anticipated litigation.  134 F.3d at 1198.  In *Allied Irish Banks*, the Court explained that the first step in determining whether a document is prepared "because of" litigation is to consider whether there were "reasons other than the anticipation of litigation for generating the materials." *Allied Irish Banks*, 240 F.R.D. at 106. If there is a non-litigation reason why the document was created, the analysis turns on whether the documents "would have been created in substantially similar form" if there was no existing or anticipated litigation. *Id.*, 240 F.R.D. at 106.  Materials that would not have been created in substantially similar form in the absence of litigation are subject to work product privilege. *Id.,*  240 F.R.D. at 106.

Here, BOC initiated its investigation of the allegations in Plaintiffs' Demand Letter precisely because Plaintiffs' Demand Letter threatened litigation. █████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████ (Geng Decl. ¶ 6.)

Plaintiffs argue that BOC conducted the Demand Letter investigation out of concern for its reputation, and not to prepare for litigation, but that ignores the fact that the reputational threat to BOC *was the reputational harm that could result because of the threatened litigation.*

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████ (*See* Letter Brief at 11 n.18 (emphasis added).)  Plaintiffs cannot simply ignore the root cause of the Bank's concern—the prospect of litigation—in this analysis.

Indeed, courts in the Second Circuit have explained that documents which have business purposes (such as preventing reputational harm) as well as litigation-related purposes must receive protection because otherwise "a company would face 'untenable choice[s]' between making business decisions that depend on thorough legal analysis, and alternatively 'scrimp[ing] on candor and completeness to avoid prejudicing its litigation prospects.'" *Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.*, 258 F.R.D. 95, 103 (S.D.N.Y. 2009) (quoting *Adlman*, 134 F.3d at 1200).  That is exactly the case here.  BOC needed to investigate the allegations in Plaintiff's Demand Letter to protect both its legal interests and its reputational interests that were threatened by Plaintiffs' lawsuit.

Plaintiffs misstate the law with respect to documents involving reputational and publicity concerns.   Plaintiffs assert that "documents based on concerns for reputation or negative publicity" do not qualify for work product protections, citing *Martin v. Valley Nat. Bank of Ariz.*, 140 F.R.D. 291 (S.D.N.Y. 1991).   This assertion is correct only to the extent that the document was created ***solely because of*** concern for reputation or publicity and not because of anticipated or pending litigation.   Second Circuit law is clear that where preparation for litigation is one of a document's purposes, the inquiry turns on whether the document "would have been created in substantially similar form" in the absence of existing or threatened litigation.   *Allied Irish Banks*, 240 F.R.D. at 106.   In *Martin*, the court's decision rested on the fact that the party failed to make any showing that the memorandum was related to the litigation.   Using the inquiry announced in *Allied Irish Banks*, it is clear that the material BOC is trying to protect here qualifies for work product protection.

To the extent BOC had more than one purpose for conducting the Demand Letter investigation, the appropriate question for the Court is whether these materials would have been prepared in a substantially similar form in the absence of the threatened litigation.   *Allied Irish Banks*, 240 F.R.D. at 106.   Had Plaintiffs not sent the Demand Letter threatening litigation, BOC would have undertaken no investigation at all, not retained K&L Gates, and not created the documents with respect to which BOC claims protection under the work product doctrine.   ███

████████████████████████████████████████████████████████

████████████████████████████████████████████████████. (Geng Decl. ¶ 3.)   ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████ (Geng Decl. ¶ 6.)

Because the material would not have been generated in a substantially similar form in the absence of Plaintiffs' threatened lawsuit, the work product protection applies.

To support its position that BOC did not prepare the disputed documents in anticipation of litigation, Plaintiffs also point to BOC's characterization of Plaintiffs' legal claims to the Ministry of Foreign Affairs as legally frivolous. (Ltr. at 11.)  Plaintiffs point to no authority stating a party must believe the anticipated litigation is meritorious, however, because no such authority exists. Under Plaintiffs' self-serving view of the work product protection, every defendant who files a motion to dismiss a frivolous claim would be stripped of work product protection.  But the work product doctrine does not require a party to admit a claim has merit before the doctrine will apply; it protects the work product of parties preparing to defend themselves from good claims and bad claims alike.  *See, e.g.*, *Caro v. Fidelity Brokerage Services, LLC*, 2014 WL 3907920, *10, 13 (D. Conn. Aug. 11, 2014) (concluding that "there is no plausible scenario where such evidence would not be protected by the attorney-client privilege or work product doctrine" even though respondent also argued that underlying claims were frivolous); *General Elec. Capital Corp. v. DIRECTV, Inc.*, 184 F.R.D. 32, 36 (D. Conn. 1998) (attorney work-product doctrine applies to documents reflecting attorneys' individual case assessments of "everything from frivolous suits to those with the most serious injuries") (quoting *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401-402 (8th Cir. 1987).

Finally, Plaintiffs assert that BOC did not anticipate litigation at the time of BOC's Demand Letter investigation because BOC first issued written instructions to collect, analyze and preserve documents on or about September 10, 2008, following receipt of Plaintiffs'

Complaint. BOC disputes that assertion, which, in fact, is an issue presently pending before Judge Scheindlin, who (1) already has held several times that BOC need not produce its written instructions to collect and preserve documents to Plaintiffs and (2) has ordered BOC to collect and provide all such instruction to her for her *in camera* review and provided a timetable for BOC to do so. Regardless, the question of whether a party has issued written instructions to preserve documents is not the deciding factor for determining whether a document was created in anticipation of litigation. *See, e,g.*, *United States v. Adlman*, 134 F.3d at 1198-1200 (setting out the relevant test for "in anticipation of litigation" without reference to "written instructions to preserve documents").

### C. BOC's Post-Complaint Investigation Documents Were Prepared "in Anticipation of Litigation or for Trial"

Plaintiffs rely on many of the same misplaced arguments to assert that BOC's post-Complaint work product relating to the allegations in Plaintiffs' Complaint are not protected. As demonstrated above, these arguments fail.

Moreover, although Plaintiffs' waiver argument with regard to pre-Complaint investigative documents is meritless, as discussed below, Plaintiffs do not present any waiver argument at all with respect to BOC's post-Complaint work product. And, because the lawsuit was filed before these post-Complaint documents were created and BOC was now doing what every party does when presented with a filed lawsuit, it cannot reasonably be denied that BOC's post-Complaint work product was created because of the lawsuit and therefore "in anticipation of litigation or trial." BOC anticipated litigation after the Complaint was filed and investigated the allegations in the Complaint because of the litigation. BOC's litigation counsel Mr. Loughlin of K&L Gates provided his initial legal advice to BOC with respect to the Complaint the same day he received the Complaint, and followed that advice with additional written legal advice on

August 25, 2008 and thereafter at regular intervals as BOC's counsel of record until he withdrew as BOC's counsel at BOC's request.  (Geng Decl. ¶ 23.)

> **D.     Plaintiffs Have No "Substantial Need" for BOC's Work-Product Protected Documents.**

Plaintiffs assert that, even if BOC's Shurafa investigative documents are protected work product, this Court should still order BOC to produce these documents because Plaintiffs have a "substantial need" for information concerning BOC's investigation and Plaintiffs have "exhausted all other avenues for discovery into the Shurafa transfers and BOC's investigation of them."  (Letter Brief at 15.)  Plaintiffs' argument is unavailing because: (1) their assertion is premature – Plaintiffs still have 14 remaining "avenues for discovery" in the form of deposition testimony from BOC witnesses who have yet to be deposed; and (2) BOC has already provided ample information to Plaintiffs concerning BOC's Shurafa investigation and the Shurafa transfers, obviating their alleged "substantial need" for BOC's work product documents.  We address each argument below.

> **1.     Plaintiffs' Assertion of "Substantial Need" is Premature Because They May Obtain Substantially Comparable Evidence in Upcoming Depositions.**

An assertion of "substantial need" and "undue hardship" is premature while the parties are still taking depositions.  *See U.S. Fidelity & Guar. Co. v. Braspetro Oil Serv. Co.*, 2000 WL 744369, *13 n.14 (S.D.N.Y. June 8, 2000) ("The Court notes that, in any event, the Banks' assertion of substantial need and undue hardship is premature.  It is based on speculation about their ability to locate and depose witnesses and about the witnesses' ability to recall past events.  At this stage of discovery, the parties are still in the process of identifying witnesses and arranging for depositions"); *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 80 (S.D.N.Y. 2010) ("Guess's argument that it cannot obtain substantially comparable evidence is belied by the fact that Guess has subpoenaed the deposition testimony of Murray, and has subpoenaed Moss for a

continued deposition"); *In re Veeco Instruments, Inc. Sec. Litig.*, 2007 WL 724555, *11 (S.D.N.Y. Mar. 9, 2007) ("Moreover, lead plaintiff's argument that it has no access to substantially comparable evidence is belied by the fact that lead plaintiff has noticed and taken the depositions of individuals who can testify and have testified concerning various aspects of the restatement.")

Although Plaintiffs protest that they have "now exhausted all other avenues for discovery into the Shurafa transfers and BOC's investigation of them," they recently requested an additional 15 depositions of BOC witnesses as a means of gathering more information about the Shurafa transfers and BOC's Shurafa investigation.  (*See* October 29, 2014 Letter from L. Wolosky (Dkt. No. 699), Exhibit B (Summary of Depositions of BOC Witnesses Taken and Noticed in the Coordinated *Wultz* and *Moriah* Actions).)  On October 31, 2014, Judge Scheindlin granted BOC a protective order as to only one of these requested witnesses and ruled that the remaining 14 depositions of BOC witnesses will proceed in December in Hong Kong.  (October 31, 2014 Hr'g Tr. at 11:21-22; 19:16-17; 22:13-14 (excerpts attached at Beebe Decl., Ex. 15); *see also* November 6, 2014 Hr'g Tr. at 5:10-16 (excerpts attached at Beebe Decl., Ex. 16).)

During the October 31, 2014 telephonic conference with Judge Scheindlin, Plaintiffs explicitly stated that they intended to ask questions to one of BOC's witnesses, Mr. Li, about the Shurafa investigation to fill in the so-called "gaps" in the deposition testimony of Geng Wei:

> There were gaps in Dr. Gang's deposition and his recollection of events that we would like Mr. Li to -- Dr. Gang submitted a written declaration in which he indicated that Mr. Li's job was to gather information and conduct many of the interviews in the 2008 investigation of Shurafa.  We believe that we are entitled to question him --

(October 31, 2014 Hr'g Tr. at 21:4-9 (Beebe Decl., Ex. 15).)  Judge Scheindlin ordered that Mr. Li's deposition proceed, and Plaintiffs presumably will ask him – as well as the other 13 BOC

deposition witnesses – any remaining questions they have concerning BOC's Shurafa investigation.  (October 31, 2014 Hr'g Tr. at 22:9 (Beebe Decl., Ex. 15).)  Given this, Plaintiffs' assertion of "substantial need" and "undue hardship" is premature, and will remain so until the end of depositions.

### 2. Plaintiffs Are Already in Possession of Ample Information Regarding BOC's Shurafa Investigation and the Shurafa Transfers.

For a party to obtain discovery of work product, it must prove – as a threshold matter – that it has a "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Fed. R. Civ. P. 26(b)(3)(A)(ii).  The "bare assertion" that the relevant information sought is unavailable by other means is insufficient to overcome work-product protection under Rule 26(b)(3).  *See Adlman*, 134 F.3d at 1204.  Even a showing of "substantial need" is not sufficient to compel disclosure of work product materials containing the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative."  Fed. R. Civ. P. 26(b)(3)(B); *Adlman*, 134 F.3d at 1204.  At the July 17, 2014 conference, Your Honor explained that, in order for Plaintiffs to succeed with their "substantial need" argument, they must make a very fact-based showing that they cannot obtain needed information in any other way:

> … I don't think it's enough to say, well, gee, the issues they're investigating are really important to us therefore we have substantial need.  Because if that was the test then, you know, no investigation anyone ever did would be protectable under work product.  Usually a substantial need is you can't get it in some other way, and it's very fact based.

(July 17, 2014 Hr'g Tr. 62:24–63:6.)  Plaintiffs have not made such a showing.

Discovery was not intended to allow the legal profession "to perform its functions either without wits or on wits borrowed from the adversary."  *Taylor*, 329 U.S. at 517 (Jackson, concurring).  Plaintiffs already have at their disposal all of the underlying facts necessary to

conduct their own investigation.[5]  BOC has produced the following documents and testimony to Plaintiffs in the course of this six-year litigation: (1) all Shurafa account records, as well as the account records of 14 additional account holders with the common clan name of "Shurafa";  (2) BOC's AML policies; (3) thousands of other AML/CTF problem/deficiency documents pursuant to the Court's May 1, 2013 Order; (4) all of the non-privileged documents from the Head Office and Guangdong Branch relating to Shurafa; (5) depositions of 7 BOC witnesses, including four witnesses from China thus far, including Geng Wei, Wang Qi, Tan Zhou, and Liu Hongbing, who provided extensive 30(b)(6) testimony regarding the Guangdong Branch's Shurafa Investigation (*see* Liu Dep. at 50:21-54:3; 74:6-79:25; 144:21-159:25; 163:2-19 (Beebe Decl., Ex. 17)); (6) responses to Plaintiffs' interrogatories concerning BOC's attempts to contact or communicate with Shurafa (Beebe Decl., Ex. 18); (7) an August 27, 2014 Declaration of Geng Wei explaining BOC's investigation following receipt of Plaintiffs' 2008 Demand letter (Beebe Decl., Ex. 3); (8) the New York Branch's Shurafa Investigative File, (*see* April 10, 2013 Memorandum Order (Dkt. No. 245); and (9) a February 20, 2013 Declaration of John Beauchemin explaining the New York branch's Shurafa investigation (Beebe Decl., Ex. 14).

In sum, Plaintiffs have made a bare assertion of substantial need, without support, and which is contradicted by the plethora of documents and testimony already provided by BOC. Even if Plaintiffs were not on the verge of taking an additional 14 depositions of BOC witnesses, Plaintiffs do not lack information regarding BOC's investigation and the Shurafa transfers. Plaintiffs' "substantial need" argument, therefore, fails to meet the standard set forth in Rule 26(b)(3).

---

[5]    *See* July 8, 2014 Letter from L. Saperstein to Hon. Gabriel W. Gorenstein (Dkt. No. 554) at 8; July 16, 2014 Letter from L. Saperstein to Hon. Gabriel W. Gorenstein (Dkt. No. 568) at 6.

**E.      Plaintiffs' Suggestion Throughout Their Letter Brief that BOC Cannot Claim Work Product Protection Because No Lawyers Were Involved Is Wrong on the Law and Facts.**

Plaintiffs dispute that the challenged documents on BOC's privilege logs were prepared to assist BOC's external U.S. legal counsel.  As a matter of law, however, the participation of a lawyer is not a requirement for work product protection.  It is sufficient for the protection to apply that the documents were prepared "by or for another party."  Fed. R. Civ. P. 26(3)(A); *see also In re Grand Jury Subpoena*, 282 F. 3d 156, 161 (2d Cir. 2002) ("It is helpful to remember that the work product privilege applies to preparation not only by lawyers but also by other types of party representatives including, for example, investigators seeking factual information.").  Thus, Plaintiffs' assertions that "no law firm was retained to conduct the investigation," and that the investigation was completed before outside counsel had "meaningful involvement" are irrelevant.  Because there is no basis in the Federal Rules of Civil Procedure or the law of this Circuit for contending that a lawyer must guide the creation of a document for it to be entitled to work product protection, Plaintiffs' argument fails.

Plaintiffs are also wrong on the facts.  BOC's Demand Letter investigation was conducted for and with the participation of BOC's outside legal counsel.  ███████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

█████████       (Geng  Decl.  ¶ 6.) ████████████████████████████████████

██████████████████████████████████.  (Geng Decl. ¶ 6.)  As K&L Gates began to receive initial information from BOC, it requested more information and provided additional direction and legal advice to BOC.

After Plaintiffs filed their Complaint, BOC's external U.S. legal counsel continued to provide legal advice to BOC at regular intervals as BOC's counsel of record in this lawsuit.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████. (Geng Decl. ¶ 23.) ███

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████ (Geng Decl. ¶ 23.)

As in their several prior motions, Plaintiffs once again argue wrongly that Judge Scheindlin has already decided the question presented to Your Honor, and, once again, they point to Judge Scheindlin's April 9 Order addressing the "Shurafa Investigative File" as evidence that this dispute, which Judge Scheindlin expressly referred back to Your Honor, has somehow already been decided.   The scope of the April 9 Order was limited to a specific set of documents compiled by Mr. Beauchemin—the "Shurafa Investigative Files"—that was later provided to the OCC.  (*See* April 9 Order at 40 (Dkt. No. 244).)  The Court did not order BOC to produce any other investigative documents.  To the contrary, the Court contemplated that BOC would log such documents to the extent they were privileged.  (*See* May 23, 2013 Opinion and Order (Dkt. No. 271) at 4 (noting that BOC could serve a privilege log indexing its claims of attorney-client and work-product privilege with respect to "other materials related to BOC's internal investigations of Shurafa and the Shurafa accounts, but not collected by Beauchemin").  *See also* May 23, 2013 Opinion and Order at 3-4 (Dkt. No. 271) ("[C]ontrary to Plaintiffs' and this Court's assumption, BOC's internal investigation did not result in the preparation of a report. The testimony by BOC's Rule 30(b)(6) designee John Beauchemin that gave rise to this

mistaken assumption appears to have been part of a good faith attempt by BOC to answer Plaintiffs' questions without violating any laws.").)

What is more, Plaintiffs made this same argument to Judge Scheindlin in their August 5, 2014 Rule 72 Objection, where they attempted unsuccessfully to challenge the procedure decided by Your Honor during the July 17, 2014 conference to resolve the parties' dispute over BOC's work product and privilege claims. (Pls.' Rule 72 Objection to July 17, 2014 Rulings at 12 (Dkt. No. 593).) Judge Scheindlin affirmed Your Honor's ruling. (August 11, 2014 Hr'g Tr. at 4:3-9.)

### II. The Challenged Documents on BOC's Privilege Logs are Protected by the Attorney-Client Privilege

The documents identified by Plaintiffs were appropriately withheld as BOC's Demand Letter and Complaint investigation documents are subject to both the attorney-client privilege and the work product protection. These documents reveal BOC's collection of information concerning the allegations in the Demand Letter and the Complaint for the purpose of seeking legal advice from BOC's external U.S. counsel, BOC's collection and processing of requests for legal advice from within BOC, as later communicated to BOC's external legal counsel, and BOC's collection of further information at the direction of its external legal counsel for the purpose of advising BOC in this lawsuit. These documents are protected by the attorney-client privilege.

Plaintiffs assert that the BOC employees in China involved in these communications do not have legal qualifications, but BOC no longer claims (and in many cases never claimed) privilege for any document on the basis that it was communicated solely by or to these employees. Rather, the entries Plaintiffs identify were properly withheld because they relate to

BOC's investigation of the allegations set forth in Plaintiffs' January 2008 Demand letter and in their subsequently filed Complaint.

The attorney-client privilege protects "confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance."  *In re Cnty. of Erie*, 473 F.3d 413, 418 (2d Cir. 2007) (citing *United States v. Const. Prod. Research, Inc.,* 73 F.3d 464, 473 (2d Cir. 1996)). The party seeking to invoke attorney-client privilege must show "(1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *In re Cnty of Erie*, 473 F.3d at 419 (2d Cir. 2007).

With respect to BOC's earlier collection of information concerning the allegations in the Demand Letter, Plaintiffs misrepresent that BOC's outside U.S. legal counsel "was not even involved in the Initial Shurafa Investigation or the resulting report."  As demonstrated above, this simply is not true. ███████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████

████████████  (Geng Decl. ¶ 6.)   BOC provided these findings to K&L Gates, which in response provided  BOC  with  legal  advice  with  respect  to  the  allegations  in  the  Demand  letter.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████. (Geng Decl. ¶ 22.) ███████████████████████

████████████████████████████████████████████████████████

████████████. (Geng Decl. ¶ 22.)

BOC's early investigation is not barred from protection under the attorney-client privilege simply because it began before outside litigation counsel was retained because it was conducted for the purpose of seeking legal advice from a licensed attorney. Courts in the Second Circuit have recognized that attorney-client privilege "can arise prior to formal engagement." *Newmarkets Partners LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.*, 258 F.R.D. 95, 100 (S.D.N.Y. 2009). A lack of an existing attorney-client relationship does not prevent confidential communications within the client from qualifying for protection under the attorney-client privilege if they were prepared for the purpose of seeking legal advice once counsel was retained. *See, e.g.*, *id. at* 101 (citing *Clarke v. Am. Commerce Nat. Bank,* 974 F.2d 127, 129 (9th Cir. 1992)). Indeed, the attorney-client relationship encompasses even "[p]reliminary consultation[s]" undertaken with an intent to obtain representation. *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 429 (S.D.N.Y. 2013); *Diversified Grp., Inc. v. Daugerdas*, 304 F. Supp. 2d 507, 513 (S.D.N.Y. 2003) (holding that pre-retention communications may be privileged if the party "believes that he is approaching the attorney in a professional capacity with the intent to secure legal advice"). When claims of attorney-client privilege are made in the corporate context, "the focus of the inquiry clear must be whether the communications were made at the request of management in order to allow corporation to secure legal advice." *Boyer v. Bd. of Cnty Comm'rs of the Cnty of Johnson,* 162 F.R.D. 687, 689 (D. Kan. 1995). What is important, simply put, is not when BOC begins to prepare its request for legal advice. BOC's outside legal counsel received BOC's requests for legal advice, and rendered advice in response to these requests, and these communications are protected.

With respect to BOC's later Demand Letter and post-Complaint investigations and related communications with its external U.S. legal, there can be no question that the attorney-

client privilege protects these documents. ████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████. (Geng Decl. ¶ 23.)  These communications are protected.  *See, e.g.*, *In re*

*Kellogg Brown & Root, Inc.*, 756 F.3d 754, 758 (D.C. Cir. 2014) ("[C]ommunications made by

and to non-attorneys serving as agents of attorneys in internal investigations are routinely

protected by the attorney-client privilege."); *accord Upjohn Co. v. United States*, 449 U.S. 383,

392-94 (1981).

### III.   BOC Did Not Waive Work Product Protection or Attorney-Client Privilege

BOC did not waive either the work product protection or the attorney-client privilege by

providing reports to its regulators or by producing these reports in this litigation.

#### A.   BOC Did Not Waive Work Product Protection or the Attorney-Client Privilege When It Reported to Its Regulators Concerning the Demand Letter Because These Reports Disclose No Protected Information.

Plaintiffs claim that BOC waived work product protection and attorney-client privilege

when it ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████ (*See*

Plaintiffs' Letter Brief at 11-12; 19 (Dkt. No. 697).)  BOC cannot have waived the attorney-

client privilege or work product protections by █████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████.

The **underlying facts** ███████████████ are not protected by the work product doctrine or the attorney-client privilege.  The work product doctrine protects **documents and tangible things**, not the underlying facts.  That some of the facts ███████████ also may be collected and analyzed in BOC's protected work product documents does not mean that BOC's disclosure of these underlying facts constitutes a waiver of the work product protection.  *See Bowne of N.Y.C. Inc. v. AmBase Corp.*, 150 F.R.D. 465, 471 (S.D.N.Y. 1993) ("Nonetheless, the rule does not protect from disclosure the underlying facts known to the party or his counsel, even if acquired in anticipation of litigation."); *NXIVM Corp. v. O'Hara*, 241 F.R.D. 109, 127 (N.D.N.Y. 2007) (observing that work product doctrine does not extend to facts).  Similarly, the attorney-client privilege protects **communications**, not the underlying facts.  *Am. Broad. Companies, Inc. v. Aereo, Inc.,* 2013 WL 5526282, *5 (S.D.N.Y. Oct. 7, 2013) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney . . . ."); *Standard Chartered Bank PLC v. Ayala Int'l Holdings (U.S.) Inc.*, 111 F.R.D. 76, (S.D.N.Y. 1986) ("The privilege protects communications between the client and his attorney; it does not protect facts which the client communicates to the attorney[.]").

While the Plaintiffs argue that ████████████████████████ ████████████████████████████████████████ ███████████████████ This cannot be enough for a waiver. *Erie*, 546 F.3d at 229 (finding that "[a] mere indication of a claim or defense certainly is insufficient to place legal advice at issue" and holding that a party must "***rely*** on privileged advice from his counsel to make his claim or defense"); *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 273 F.R.D. 367, 368 (S.D.N.Y. 2010) (finding no waiver

where party's testimony summarized in "'conclusory and unrevealing terms' certain advice or impressions of their counsel"); *Gardner v. Major Auto. Cos., Inc.*, No. 11 Civ. 1664 FB VMS, 2014 WL 1330961, *6 (E.D.N.Y. Mar. 31, 2014) (rejecting "proposition that whenever a party breathes a word, in any context, that it relied upon counsel's advice, privilege is waived"); *Vicinanzo v. Brunschwig & Fils, Inc.*, 739 F. Supp. 891, 893 (S.D.N.Y. 1990).  If this were enough for a waiver, then the corollary of Plaintiffs' argument is that Plaintiffs' Demand Letter necessarily waived Plaintiffs' attorney-client privilege and work product protections.  Plaintiffs' Demand Letter similarly acknowledges that the Plaintiffs collected facts and provided them to Mr. Tolchin, who discloses these facts in the Demand Letter and his legal opinion on several issues including, for, example, his determination that "[t]here is no question whatsoever that BOC's conduct is actionable under § 2333(a) of the ATA."  (Demand Letter at 4.)

### B.    BOC Could Not Have Waived Work Product Protection or the Attorney-Client Privilege When It ███████████████████████████████ ██████, Pursuant to the Financial Services Regulatory Relief Act of 2006

Even if ████████████████████████████ were protectable under the work product doctrine or attorney-client privilege (they are not), BOC's reports to its regulators cannot be construed as a waiver of work product protection or the attorney-client privilege because (1) the Financial Services Regulatory Relief Act of 2006 prevents waiver of work product protection and the attorney-client privilege when a bank discloses "any information" to its banking regulators; and (2) because ███████████████████████████████████████  ██████████████████████████.

The Financial Services Regulatory Relief Act of 2006, codified at 12 U.S.C. § 1828(x), provides that "[t]he submission by any person of any information to the Bureau of Consumer Financial Protection, any Federal banking agency, State bank supervisor, or foreign banking authority for any purpose in the course of any supervisory or regulatory process of such Bureau,

agency, supervisor, or authority shall not be construed as waiving, destroying, or otherwise affecting any privilege such person may claim with respect to such information under Federal or State law as to any person or entity other than such Bureau, agency, supervisor, or authority."



. (*See, e.g.*, February 28, 2013 Declaration of Randall Peerenboom ("Peerenboom Decl.") at n.16 (Dkt. No. 233); Letter from King & Wood Mallesons, dated December 26, 2012. (Beebe Decl., Ex. 19). Accordingly, BOC's ███████████████ is protected from waiver by 12 U.S.C. § 1828(x). Because ███████████████████████ ████, ███████████████ did not waive BOC's work product protection or attorney-client privilege with respect to BOC's Demand Letter investigation either.

> **C.    BOC Could Not Have Waived Work Product Protection or the Attorney-Client Privilege by ████████████████████████ ██████ Because It Was Ordered to Produce These Documents.**

Even if BOC's ███████████████████, were protectable under the work product doctrine or attorney-client privilege (they are not), BOC's production ██████ ████ in this lawsuit in response to the Court's May 1, 2012 Order did not waive the work product protection or attorney-client privilege with respect to BOC's internal documents and communications with its attorneys concerning the Demand Letter investigation.

Work product protection will not be deemed waived where a party is compelled to disclose it. *See, e.g., In re Grand Jury Proceedings*, 219 F.3d 175, 180 (2d Cir. 2000) (remanding to trial court on waiver and doubting government's contention that corporate defendant waived work product and attorney-client privilege when its founder and CEO was compelled to answer questions at a grand jury proceeding and made several statements,

including, "everything I heard from counsel before the ATF meeting, everything afterwards ... supports the fact that we are not legally responsible.").  Here, BOC was compelled to produce its communications with PRC regulators concerning Shurafa pursuant to the Court's May 1, 2013 Order.  (*See* May 1, 2013 Order at 43-44 (Dkt. No. 261) (ordering BOC to produce "all materials concerning Shurafa or the Shurafa accounts, including visits of foreign officials related to these topics.").)   Like the corporate defendant in *In re Grand Jury Proceedings*, BOC did not voluntarily disclose the Shurafa Report to the Court or Plaintiffs; instead, it was ordered to do so by the Court.  *In re Grand Jury Proceedings*, 219 F.3d at 187.  Accordingly, BOC's disclosure of its reports to it its regulators concerning Shurafa did not waive the attorney-client privilege or work product protections with respect to BOC's internal communications or communications with its U.S. legal counsel in connection with the Demand Letter investigation.

### D.     BOC Has Not Waived Work Product Protection or the Attorney-Client Privilege by Placing Protected Documents "at Issue" in the Litigation.

Plaintiffs' contention that BOC somehow put its Demand Letter investigation "at issue" by ███████████ "affirmatively" in connection with BOC's letter of July 16, 2014 to the Court, or otherwise, is not the proper application of the "at issue" waiver doctrine.  A party may waive the work product doctrine by placing the protected documents "at issue" in the litigation, *i.e.*, making affirmative use of the protected information and simultaneously shielding the underlying documents from scrutiny, or using privileged information as both a proverbial "sword" and "shield."  *See U.S. v. Nobles*, 422 U.S. 225, 239-240 (1975) (finding that the defense waived its work product protection over an investigator's report by relying on the report when cross-examining witnesses); *Shinnecock Indian Nation v. Kempthorne*, 652 F. Supp. 2d 345, 365 (E.D.N.Y. 2009) ("In fact, an examination of cases on waiver of the attorney work product privilege indicates that courts generally permit discovery of work product based on

implied or subject-matter waiver only where the privileged communications have affirmatively been put at issue or when the defendant seeks to exploit the doctrine for a purpose inconsistent with the privilege, such as for the unilateral testimonial use of privileged communications.").

BOC did not place the advice of its external counsel or work product "at issue" when it disclosed to this Court that it had engaged counsel and had sought advice in anticipation of this litigation ███████████████████████████████. BOC cited ███████████ in order to establish the timing and extent of the participation of BOC's external U.S. legal counsel in connection with its privilege and work product assertions, not because BOC wishes to specifically rely on ███████████ to defend itself in the lawsuit. (*See* July 16, 2014 Letter from Lanier Saperstein to Judge Gorenstein at 3 n.5 (Dkt. No. 568).)

There are three basic categories of information related to BOC's Demand Letter and post-Complaint investigations. First, there is the historical factual information that BOC gathered in anticipation of litigation. As demonstrated above, BOC has already provided ample information to Plaintiffs concerning BOC's Shurafa investigation and the Shurafa transfers, and Plaintiffs still have 14 remaining "avenues for discovery" in the form of deposition testimony from BOC witnesses who have yet to be deposed to acquire historical factual information. Second, there is the traditional work product investigative information, such as witness interviews and on-site visits. As BOC has informed Plaintiffs by way of interrogatory response ████████████████ ██████████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████. Based on Plaintiffs' allegations in the Complaint, BOC does not intend to rely on these documents in its defense. In particular, the Plaintiffs' allegations focus, as they must, on BOC's state of mind at the time of

the alleged bombing in this case, which allegedly occurred in April 2006.  BOC's state of mind two years later, in 2008, is simply not relevant to Plaintiffs' claim.  <u>Third</u>, there are the internal communications within BOC, as well as external communications with outside counsel, that request information, analyze information, seek advice, and so on.  BOC does not intend to rely on those communications in connection with its defense.  BOC does not, for example, plan to rely on an "advice of counsel" defense.  *See, e.g., In re Grand Jury Proceedings*, 219 F.3d 175, 182-83 (2d Cir. 2000) ("The quintessential example [of implied waiver of privilege] is the defendant who asserts an advice-of-counsel defense and is thereby deemed to have waived his privilege with respect to the advice that he received.") (quoting *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 470 (S.D.N.Y. 1996)).

In short, BOC simply has not put its post-Demand letter or post-Complaint investigations "at issue" in this litigation and it therefore has not waived attorney work product or attorney-client privilege.

## CONCLUSION

For the reasons set forth above, BOC respectfully requests that the Court deny the Motion, and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated:   November 14, 2014                        **DORSEY & WHITNEY LLP**

<u>*/s/ Lanier Saperstein*</u>
Lanier Saperstein
Daniel W. Beebe
51 West 52nd Street
New York, New York 10019
Tel.:  (212) 415-9200
Fax:  (212) 953-7201

Glenn M. Salvo, *admitted pro hac vice*
50 South 6th Street, Suite 1500
Minneapolis, MN 55402
Tel.:  (612) 340-2600
Fax:  (612) 340-2868

**SQUIRE PATTON BOGGS LLP**
Mitchell R. Berger
2550 M Street, N.W.
Washington, D.C. 20037
Tel:  (202) 457-5601
Fax:  (202) 457-6315

*Counsel for Defendant Bank of China Limited*