BOIES, SCHILLER & FLEXNER LLP

575 LEXINGTON AVENUE • 7TH FLOOR • NEW YORK, NY 10022 • PH. 212.446.2300 • FAX 212.446.2350

November 19, 2014

**BY ECF AND HAND**
Hon. Gabriel W. Gorenstein
United States District Court for the
　Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 1620
New York, New York 10007

　　　Re:　*Wultz v. Bank of China Ltd.*, No. 1:11-cv-01266 (SAS)

Dear Judge Gorenstein:

　　　Plaintiffs respectfully submit this reply in further support of their letter application, dated October 28, 2014 (the "10/28/14 Ltr.") (Dkt. #697), seeking production of certain investigation documents withheld as work product by Defendant Bank of China Ltd. ("BOC"), and in response to BOC's opposition brief, dated November 14, 2014 (Dkt. #722) ("BOC Opp.").

　　　BOC's Opposition contains nothing new that materially alters the following basic facts:



　　　Faced with these undisputed facts, BOC asserts that its internal investigations in China were conducted with the "expectation" that they would *eventually* be shared with outside litigation counsel and used for the purpose of rendering legal advice. This assertion rests on a single paragraph in a declaration by Geng Wei, the non-lawyer who directed the investigations, signed over six years after the fact. As detailed below, this single sentence cannot carry BOC's heavy burden of establishing all of the elements of work product protection for documents generated by non-lawyers during its internal management investigations.

Although BOC represents that there are "many" documents showing involvement of U.S. licensed counsel in its investigations (BOC Opp. at 2), BOC does not identify examples of such documents, but, instead, attaches its complete privilege logs. Plaintiffs have compiled all of the Shurafa Investigation-related entries from BOC's privilege logs that reference purported-attorney involvement, and have attached a list of those entries hereto. *See* Ex.1. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

Nor can BOC dispute that Plaintiffs seek only factual investigation documents prepared by non-attorneys, and not documents revealing attorney thought processes, or any communications directly between BOC and its outside counsel. *See* 10/28/14 Ltr. at 2 n.4.[3]

In short, BOC cannot point to a single case, and Plaintiffs are aware of none, where the work product doctrine (or attorney-client privilege) was held to protect hundreds of factual investigation documents, created over the course of several months by company employees who are not lawyers, with no direction from lawyers, merely because, after first being shared with the company's regulator, the results of that fact investigation were later shared with counsel.

I. **The Facts Necessary to Decide This Application Are Undisputed.**

Plaintiffs and BOC agree on the majority of the parties' respective Proposed Undisputed Facts, and all of the key facts necessary to resolve the instant questions regarding BOC's invocation of work product to avoid disclosure of Shurafa Investigation documents. Plaintiffs

---

[1] Terms not defined herein have the same meaning as in Plaintiffs' letter application dated October 28, 2104 (Dkt. # 697).



[3] Appendices A-C attached to Plaintiffs' opening letter list the documents Plaintiffs seek in this application. BOC describes the appendices as misleading, but Plaintiffs never asserted they were a comprehensive list of BOC's withheld documents. *See* 10/28/14 Ltr. at 2, n.4.

Hon. Gabriel W. Gorenstein
November 19, 2014
Page 3 of 16

have attached a chart of those undisputed facts admitted by the parties (Ex.2) ("Undisputed Facts"), as well as a response to BOC's proposed additional facts. *See* Ex.3.

Among other facts, Plaintiffs and BOC *agree* that:





In the face of these undisputed facts, BOC asserts that from the day of the Demand Letter, the Shurafa Investigations were conducted with the "expectation" that they would eventually be used by BOC's (then-unidentified) outside litigation counsel, and therefore should be protected from disclosure. This argument turns the work product doctrine, as well as the attorney-client privilege, on its head. BOC's only support for this remarkable proposition is a single, post-hoc statement by Geng Wei, which cannot satisfy *BOC's burden* to establish that its internal investigation is entitled to work product protection.

### II. BOC Has Failed to Meet Its Burden of Proving It Is Entitled to Withhold the Shurafa Investigation Documents Based on the Work Product Doctrine.

As Plaintiffs previously demonstrated, under Second Circuit law, documents generated by an internal investigation may not be withheld as work product if they would have been created regardless of the potential litigation. *See* 10/28/14 Ltr. at 11. BOC misstates the work product doctrine in the Second Circuit, and fails to explain how it would have conducted its Shurafa Investigations differently had there been no threat of litigation. BOC conducted a management-led investigation for internal and regulatory proposes, regardless of any concern for litigation.

#### A. *BOC's Proffered "But For" Test Misconstrues the Law of the Second Circuit on Work Product.*

BOC argues that because the Initial Shurafa Investigation followed BOC's receipt of the Demand Letter, this but-for causation guarantees work product protection for all fact investigation documents created by BOC thereafter. BOC Opp. at 15. In fact, it is well established that the possibility of litigation does not by itself make documents created or collected thereafter work product. There is no better example of this than Judge Scheindlin's rejection of this precise argument for the investigation file assembled by BOC employee John Beauchemin in New York in response to the very same Demand Letter. *See* 4/9/13 Order at 40 & n. 114 (Dkt. # 244).

Even where litigation is threatened, courts do not automatically grant work product protection, but consider the reason a document was created and whether it would have been created regardless of potential litigation. In *Allied Irish Banks v. Bank of Am., N.A.*, 240 F.R.D. 96, 107 (S.D.N.Y. 2007), the Court held that investigation documents created by non-lawyers after litigation was imminent were not work product. BOC acknowledges this decision (BOC

BOIES, SCHILLER & FLEXNER LLP

Opp. at 13), but ignores its holding: that even where litigation is likely, documents underlying an investigation report may not be withheld as work product if they would have been created in the same form regardless of any threatened litigation. *Allied Irish Banks,* 240 F.R.D. at 107 ("All of the circumstances surrounding the creation of the Report point to the ineluctable conclusion that AIB would have prepared the Report, along with the materials used to generate it, simply because of its 'business-related purposes'—that is, regardless of the potential for litigation."). BOC similarly ignores the numerous cases cited by the Court in *Allied Irish Banks* in which investigations following threatened litigation, or even actual litigation, did not merit work product protection. *Id.* at 107.

BOC nevertheless argues that "a document's purpose is . . . irrelevant to the question whether it should be protected." (BOC Opp. at 13) (quoting *United States v. Adlman,* 134 F.3d 1194, 1198 (2d Cir. 1998)). Yet in the very next paragraph, BOC acknowledges that "the first step in determining whether a document is prepared 'because of' litigation is to consider whether there were 'reasons other than the anticipation of litigation for generating the materials.'" BOC Opp. at 13. BOC makes no attempt to explain how "reasons" are different from "purposes" in a work product analysis. This distinction-without-a-difference is simply wordplay, and does not reflect a meaningful distinction made by the Second Circuit.

The full quotation from *Adlman,* which BOC shortened, helps explain this point: "The fact that a document's purpose *is business-related appears* irrelevant to the question whether it should be protected under Rule 26(b)(3)." *Adlman,* 134 F.3d at 1200 (emphasis added). In other words, the fact that a document has a business purpose will not by itself prevent the application of work product protection, but the document must still meet all of the requirements of the work product doctrine. *Adlman* defined these requirements by drawing from Wright & Miller's FEDERAL PRACTICE AND PROCEDURE, holding that a document must be prepared "because of" litigation, "in light of the nature of the document and the factual situation in the particular case," excluding those documents created "in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation." *Adlman,* 134 F.3d at 1202. The Sixth Circuit, which also applies the "because of" test derived from Wright & Miller, has stated this distinction as follows: "If a document is prepared in anticipation of litigation, the fact that it also serves an ordinary business purpose does not deprive it of protection, but the burden is on the party claiming protection to show that anticipated litigation was the *driving force* behind the preparation of each requested document." *In re Professionals Direct Ins. Co.,* 578 F.3d 432, 439 (6th Cir. 2009) (emphasis added).

BOC also fails to acknowledge that courts in this Circuit do not mechanically apply a test for work product, but consider the subjective belief of a party seeking to withhold documents as work product. *See Gulf Isl. Leasing, Inc. v. Bombardier Capital, Inc.,* 215 F.R.D. 466, 475 (S.D.N.Y. 2003) ("Whether material was prepared 'in anticipation of litigation' requires a determination of the subjective question of whether the party actually thought it was threatened with litigation"); *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002,* 318 F.3d 379, 386 (2d Cir. 2003) ("subjective intent is only one among many factors to be weighed in

making an objective determination of whether documents constitute work product").

[redacted]

   B. *BOC's Work Product Claims Rely Primarily on the 2014 Geng Declaration, Which Is Contradicted by His Deposition Testimony and Other Sources.*

BOC's work product assertions rely almost entirely on one, post-hoc document, the August 27, 2014 Declaration of Geng Wei, the BOC compliance officer who directed the Shurafa Investigations. *See, e.g.*, BOC Opp. at 6, 14, 16, 22, 25 (citing Geng Decl. ¶ 6). BOC has talismanically repeated that its investigation was conducted "with the expectation that external U.S. counsel would use and analyze [its] findings" (BOC Opp. at 3), yet all BOC has to support this claim is an after-the-fact declaration of this one person. This single line from a declaration, [redacted]), is hardly enough for BOC to carry its "heavy" burden here. *In re Grand Jury Subpoenas*, 318 F.3d at 384.

Moreover, Geng's own deposition testimony contradicts the key statements on which BOC now relies. [redacted] In addition, the role of outside litigation counsel described in Geng's most recent declaration is inconsistent with his deposition testimony. [redacted]

   C. *BOC's Shurafa Investigations Were Led by BOC Management, for Internal and Regulatory Purposes, and Would Have Been Conducted in the Same Manner Regardless of Possible Litigation.*

BOC's but-for formulation of the work product doctrine fundamentally misundetstands the central inquiry for the Court: the question is not what BOC would have done if it had never learned of the Shurafa allegations, but rather what BOC would have done if it had learned of

these allegations, but saw no threat of litigation. *See Allied Irish Banks*, 240 F.R.D. at 106. BOC's argument that it would not have conducted the Shurafa Investigation if it had remained ignorant of the Shurafa allegations (BOC Opp. at 15) is simply a tautology.[4] BOC has failed to state how its Shurafa Investigation would have been conducted differently had it known of the allegations, but not of the possibility of litigation—almost certainly because BOC's Shurafa Investigations would have been conducted in the exact same manner under any circumstances.[5]

Although BOC argues that it needed to investigate the allegations in the Demand Letter "to protect both its legal interests and its reputational interests" (BOC Opp. at 14), BOC's Shurafa Investigations had all the hallmarks of an internal, management-led investigation aimed at protecting its reputation, reporting to its regulators and improving internal controls, but none of the attributes of a company's responding to impending litigation.



---

[4] The best illustration of the flaw in this argument is that the scope of the work product doctrine outlined by BOC would encompass documents created in the ordinary course of business after a threat of litigation, yet this Circuit has consistently rejected attempts to withhold such documents as work product. *See Adlman*, 134 F.3d at 1202 ("[T]he 'because of' formulation that we adopt here withholds protection from documents that are prepared in the ordinary course of business"). If the reason for the creation of a document were irrelevant in a work product analysis, any document would become protected work product if its creation was triggered by a possibility of litigation, no matter how ministerial or removed from the potential litigation. No case law supports such a position.

[5] This Court has recognized that this inquiry is required by *Adlman*, even if inherently difficult and requiring speculation. *See Allied Irish Banks*, 240 F.R.D. at 106 ("As a general rule, it is not easy for a factfinder to determine what 'would have' happened in some hypothetical situation—and it is particularly difficult here inasmuch as it is impossible even to imagine a scenario involving a multi-million dollar fraud that does not include the potential for litigation. Nonetheless, this is the question that the *Adlman* test requires us to answer and it is an exercise that courts have regularly performed.").

[6] While the investigation in *Allied Irish Banks* was based in part on a "need[] to reassure the public" (240 F.R.D. at 107), BOC is a state-owned enterprise of the PRC government, and as such, focused on reassuring its majority shareholder—the PRC government. In both cases, the goal of reassuring stakeholders was the same.



In contrast, BOC took no steps ordinarily associated with a company preparing for litigation:



- BOC did not issue formal litigation holds to preserve documents for months (*see* 10/28/14 Ltr. at 9-10);

- BOC never retained outside counsel, or any other outside professionals, to conduct an independent investigation;[8] and



If BOC intended that its investigation findings would be sent to outside counsel as part of a response to imminent litigation, it certainly did not act in such a manner.[9] The Demand Letter may have started a chain of events leading to BOC's Shurafa Investigations, but BOC dealt with the Shurafa matter as an internal business affair. BOC cannot point to any way its response would have been different had the Shurafa allegations surfaced internally or in the media, rather than in the Demand Letter.

---



D. *BOC Does Not Explain Why It Failed to Issue Timely Litigation Holds.*

BOC has provided no explanation as to why it failed to issue written instructions to its employees to preserve documents following receipt of the Demand Letter, stating only that the question is pending before Judge Scheindlin. BOC Opp. at 16-17. Although Judge Scheindlin is indeed awaiting an *in camera* production of BOC's written litigation holds, BOC conceded in open court that it had not issued written instructions to preserve documents prior to receiving the Complaint in August of 2008. *See* 10/28/14 Ltr. at 3, n.8. That admission is undisputed and of crucial importance here.

BOC argues that because *Adlman* did not discuss litigation holds, the issue is irrelevant, yet numerous courts have discussed the connection between the work product doctrine and document preservation, a point Judge Scheindlin recognized recently. *See Anderson v. Sotheby's Inc. Severance Plan*, No. 04 CIV. 8180 (SAS), 2005 WL 2583715, at *4 (S.D.N.Y. Oct. 11, 2005) ("[B]ecause the Administrator claimed that it reasonably anticipated litigation as of July 6, 2004, the Administrator's duty to preserve the documents arose as of that date."); *TransWeb, LLC v. 3M Innovative Props. Co.*, No. CIV. 10-4413 FSH PS, 2012 WL 2878075, at *2 (D.N.J. July 13, 2012) (imposition of document preservation notice "tends to support 3M's contention that its state of mind when it created the documents was that litigation was anticipated"); *see also* 10/28/14 Ltr. at Ex. 6 (10/21/14 Hr'g Tr. (Scheindlin)) at 86:9-17 (THE COURT: "That's the obligation, the obligation to preserve. There's lots of questions as to when it's triggered. . . . [A] lot of folks think as soon as you claim work product that's when you began to have the duty to preserve."). BOC's failure to explain the absence of issued litigation holds further suggests that the Shurafa Investigation was not conducted in anticipation of litigation.

E. *The Lack of Attorney Direction of the Shurafa Investigations Indicates They Were Not Conducted in Anticipation of Litigation.*

Although the involvement of an attorney is not dispositive, it remains strongly indicative of whether materials were actually created in anticipation of litigation. *See* 10/28/14 Ltr. at 6. Judge Scheindlin implicitly recognized this principle in ordering the production of the Shurafa Investigative File assembled by John Beauchemin, noting that, after initially contacting Gary Lax, BOC's outside regulatory counsel, Beauchemin proceeded to conduct his own investigation to assemble the file, without the aid or direction of Mr. Lax. *See* 4/9/13 Order, at 40 (Dkt. #244).

Simple logic underlies this holding: a party motivated by fear of litigation seeks to involve litigation counsel rapidly, while a party with other priorities may not. Here, BOC demonstrated its priorities by launching its investigation , but waiting to meet with its litigation counsel until after it had completed its initial investigation and prepared a report to its Chinese regulator. Wright & Miller, from which the Second Circuit work product standard is drawn, agrees: "Involvement of counsel is not a guarantee that work-product protection will apply, although it may show that the pertinent documents were prompted by the prospect of litigation." 8 FED. PRAC. & PROC. CIV. § 2024 (3d ed.). The *absence* of attorney direction—a factor not

even addressed by Wright & Miller—demonstrates that BOC's investigation would have been conducted in the same form regardless of the possibility of litigation.

BOC asserts that lack of lawyer involvement is "irrelevant," (BOC Opp. at 22), but all of the cases it cites in which the courts applied the work product doctrine involved documents prepared by attorneys.[10] The Second Circuit has recognized the relevance of attorney involvement in work product questions. *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002,* 318 F.3d 379, 384 (2d Cir. 2003) ("[T]he principle underlying the work product doctrine—sheltering the mental processes of an attorney as reflected in documents prepared for litigation—is not generally promoted by shielding from discovery materials in an attorney's possession that were prepared neither by the attorney nor his agents."); *see also Bice v. Robb,* 511 F. App'x 108, 110 (2d Cir. 2013) (finding that "the [challenged] documents are not protected by the attorney work-product doctrine, because (though they may have been created because of the prospect of litigation) they are not the work product of an individual acting as [party's] attorney") (citing *Adlman*); *Matter of Grand Jury Subpoenas Dated Oct. 22, 1991, & Nov. 1, 1991,* 959 F.2d 1158, 1166 (2d Cir. 1992) (noting that "the attorney-work-product doctrine generally does not shield from discovery documents that were not prepared by the attorneys themselves, or their agents, in the course of or in anticipation of litigation," but it may apply to non-attorney material, if the request is made "with the precise goal of learning what the opposing attorney's thinking or strategy may be"). Plaintiffs are seeking facts from an internal investigation conducted six years ago by nonlegal personnel, not materials that would reflect in any way, shape or form the thinking or strategy of counsel.

---

[10] In *Adlman*, the memorandum in question was prepared by a lawyer: "Adlman asked Paul Sheahen, an accountant and lawyer at Arthur Andersen & Co. ("Arthur Andersen"), to evaluate the tax implications of the proposed restructuring. Sheahen did so and set forth his study in a memorandum (the 'Memorandum')." 134 F.3d at 1195. In *In re Grant Jury Subpoena*, 282 F. 3d 156 (2d Cir. 2002), the government was seeking to depose a party's lawyer. *Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.,* 258 F.R.D. 95, 98 (S.D.N.Y. 2009), applied work product protection to documents drafted by plaintiffs' counsel ("Farkas drafted the business arrangements set forth in the MOU"), but rejected work product for numerous other documents withheld, such as draft engagement letters. *Id.* at 103 ("[L]ike the draft MOUs, the draft letters would not exist but for the dispute between CAM and NMP. Yet this does not mean that they are necessarily work product."). In any event, the court ordered the purported work product to be produced because the documents had been placed at issue and "creat[ed] the 'type of unfairness' that requires a finding of forfeiture." *Id.* at 108. In *Gen. Elec. Capital Corp. v. DIRECTV, Inc.* (184 F.R.D. 32, 34 (D. Conn. 1998)), also cited by BOC, the court found that of the 84 documents challenged, 75 were irrelevant, and of the remaining nine, five were neither privileged nor work product and had to be produced. *Id.* Of the remaining four that were properly withheld, three involved counsel on their face (letters to or from Kirkland & Ellis, or Nisen & Elliott LLP) (*Id.* at 35), and the challenged documents were "case reserves" representing "*the attorney's estimate* of anticipated legal expenses." *Id.* (emphasis added). Finally, BOC cites *Caro v. Fid. Brokerage Servs., LLC* (No. 3:12-CV-01066 CSH, 2014 WL 3907920, at *10 (D. Conn. Aug. 11, 2014)), but that was actually a motion to vacate an arbitration award, where the losing party complained that "the arbitration panel should have permitted them to produce as witnesses Fidelity's outside counsel." *Id.* The court in *Caro* was not ruling on a work product claim, and in any event, testimony by counsel is not analogous to the documents requested here.

BOC also asserts that its Shurafa Investigations were "conducted for and with the participation of BOC's outside legal counsel." BOC Opp. at 22. But BOC has not produced an engagement letter between BOC and K&L Gates, ▮

▮ Ultimately, BOC continues to rely principally on one line from a recent declaration of BOC employee Geng Wei, ▮. Although the direction of counsel may not be dispositive for a work product claim, BOC's lack of credible proof that outside counsel was actually directing the Shurafa Investigations suggests that resulting documents were not created "because of" litigation, as outlined in *Allied Irish Banks*. *See* BOC Opp. at 13 ("If there is a non-litigation reason why the document was created, the analysis turns on whether the documents 'would have been created in substantially similar form' if there was no existing or anticipated litigation") (quoting *Allied Irish Banks*, 240 F.R.D. at 106).

### III. BOC Has Failed to Establish That Its Disclosures of Investigation Reports to ▮ Does Not Constitute Waiver.

▮



A. *BOC's Disclosures to* ▮ *Constitute Waiver of the Attorney-Client Privilege and Work Product Protection, and Entitle Plaintiffs to the Documents Underlying BOC's Reports* ▮.

BOC argues that its disclosure ▮ could not have waived work product protection because the work product doctrine "protects documents and tangible things, not the underlying facts." BOC Opp. at 28. ▮

███████████████████████████████████████ Under BOC's reading of the law, disclosure of fact work product effectively could never constitute waiver.

Nor is BOC's argument aided by its citation to *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 480 (S.D.N.Y. 1993), a case where the court found a waiver of work product and attorney client privilege, because a party "disclosed . . . *materials* to its adversaries" (emphasis added). It is BOC's disclosure of reports to its regulators summarizing facts uncovered by the Initial Shurafa Investigation that has triggered waiver, not the facts themselves. The reason these documents are currently not privileged is because BOC chose to disclose them, not because they contain factual material.



███████████████████████████████. Disclosures such as these are not the "unrevealing terms" discussed in *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 273 F.R.D. 367, 368 (S.D.N.Y. 2010), on which BOC relies, ███████████████████████
████████████████████████████████████████████████████████████. *See Cruz v. Coach Stores, Inc.*, 196 F.R.D. 228, 231 (S.D.N.Y. 2000) (disclosing executive summary of investigation means party "may no longer claim privilege with respect to the underlying notes that the Executive Summary purports to summarize").

BOC's disclosure here is exactly the type of conduct courts rejecting claims of "selective waiver" have sought to prohibit: using carefully selected privileged material ███████
███████, while obstructing private litigants from similar access. *See Gruss v. Zwirn*, No. 09 CIV. 6441 PGG MHD, 2013 WL 3481350, at *12 (S.D.N.Y. July 10, 2013) ("As a general matter, when a party selectively discloses attorney-client communications to an adverse government entity, the privilege is waived not only as to the materials provided, but also as to the

underlying source materials."). ▮

### B. 12 U.S.C. 1828(x) Does Not Shield BOC's Disclosures ▮

BOC cites no case law supporting its argument that 12 U.S.C. §1828(x) should apply to a foreign bank's disclosures ▮ (BOC Opp. at 29-30), a reading that appears to ignore the presumption against extraterritoriality. *See Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010) ("[U]nless there is the affirmative intention of the Congress clearly expressed to give a statute extraterritorial effect, we must presume it is primarily concerned with domestic conditions.") (quotation marks omitted). ▮

▮

### C. BOC's Claim that It Did Not Place ▮ "At Issue" Is Irrelevant.

BOC's claim that it has not "plac[ed] protected documents 'at issue' in the litigation" (BOC Opp. at 31) is irrelevant. Although BOC characterizes Plaintiffs' application solely as an "at issue" waiver, similar to an advice of counsel defense, Plaintiffs' initial letter was clear that "Plaintiffs are not arguing for a subject matter waiver," ▮

▮

## IV. BOC Has Not Rebutted Plaintiffs' Showing of Substantial Need for Fact Investigation Documents.

Plaintiffs' initial letter described in detail the lack of any foreseeable sources for information about the facts of Shurafa's operations in Guangdong and BOC's interactions with Shurafa upon receipt of the Demand Letter. *See* 10/28/14 Ltr. at 14-16. Plaintiffs detailed the stonewalling by the PRC and Israeli governments, the inaccessibility of high-level former BOC officers, and the gaps in the memories of the BOC employees responsible for the Shurafa

Investigations. *Id.* at 15-16. In response to Plaintiffs' showing of need, BOC has made no effort to rebut these points, choosing instead to argue that Plaintiffs' motion is premature, or that BOC has already provided ample Shurafa Investigation material. To the contrary, BOC's production of Shurafa-related documents has been extremely limited, and Plaintiffs' substantial need application is now ripe.

### A. The Impending Hong Kong Depositions Do Not Render Plaintiffs' Application Premature.

As stated in Plaintiffs initial letter (10/28/14 Ltr. at 16, n.23), further depositions of BOC employees do not make Plaintiffs' substantial need arguments premature. The impending depositions in Hong Kong are primarily of low- or mid-level BOC employees, who had no role in BOC's Shurafa investigations. None of these witnesses can speak to the high-level investigation decisions Geng and Wang participated in, or to the coordination of the Shurafa Investigations across BOC-HO, BOC-GD, and BOC-NY. With almost no investigation documents to jog these witnesses' memories, Plaintiffs are not confident that further investigation witnesses will have a better recollection than Geng or Wang, in particular because substantial time has now passed.

Should the Court determinethat the upcoming depositions could provide the factual investigation information Plaintiffs need, Plaintiffs respectfully request the substantial need question be held in abeyance until after the depositions conclude, permitting Plaintiffs to return to the Court on this issue should BOC's witnesses continue to be unable to provide or recall critical investigation facts.

### B. BOC Has Not Provided "Ample" Shurafa Material Up to This Point.

BOC suggests that it has provided "ample information regarding BOC's Shurafa Investigation" to Plaintiffs (BOC Opp. at 20), yet the examples it cites prove the exact opposite:

- BOC points out that it has provided declarations of its officers regarding the investigation, but these sworn statements merely describe what BOC did, without revealing any facts the Shurafa Investigations uncovered. BOC Opp. at Ex.3 (Geng Decl.); Ex. 14 (Beauchemin Decl.).

- BOC asserts that it has provided numerous deponents, but Plaintiffs' initial letter detailed the substantial gaps in the recall of the witnesses BOC has proffered regarding the investigation (*see* 10/28/14 Ltr. at 15-16), gaps which BOC makes no attempt to explain in its opposition.

- BOC has produced numerous "problem or deficiency" documents, but this material concerns AML issues generally, not the facts of the Shurafa Investigations, which BOC is withholding as work product. Apart from account records, BOC has produced few Shurafa-related documents, while withholding thousands as privileged work product.

- BOC's New York Shurafa Investigation File was only produced after Judge Scheindlin found it had been improperly withheld as work product, in circumstances largely similar to those here. *See* 4/9/13 Order at 40 & n. 114 (Dkt. # 244); 5/23/13 Order at 4 (Dkt.# 271).

### V. BOC Has Not Satisfied Its Burden of Establishing that the Attorney-Client Privilege Applies to All Documents Related to the Shurafa Investigations.

BOC has attempted to cloak the entirely of its Shurafa Investigations under the attorney client privilege, despite the fact that the vast majority of investigation documents withheld—and all of the documents Plaintiffs seek—do not include any reference to an attorney. BOC makes this assertion on the grounds that these documents "reveal BOC's collection of information concerning the allegations in the Demand letter and the Complaint for the purpose of seeking legal advice from BOC's external U.S. Counsel." BOC Opp., at 24. BOC's Shurafa Investigations were directed by nonlegal BOC employees, however, and any subsequent use of the Shurafa Investigations' findings by counsel does not retroactively privilege the entire process.

███████████████████████████████████████████. Even if Geng's professed expectation were credible, a non-attorney leading an investigation cannot invoke the privilege simply because he later retains attorneys to assist him. *See Allied Irish Banks*, 240 F.R.D. at 105 (rejecting attorney client privilege where non-lawyer headed an investigation, "then retained the attorneys to 'assist' him."). ███████████████████████████████████████████ he did not act as a "translator or interpreter" (*id.*) for BOC's outside counsel, and BOC has produced no evidence to support such a claim. Even if BOC's representations that it intended the investigation to assist outside counsel were accurate, they are irrelevant. *Compare* BOC Opp. at 25 ("[T]he entire Demand Letter investigation was conducted with the expectation that external U.S. counsel would use and analyze these findings") *with United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) ("[T]he privilege protects communications between a client and an attorney, not communications that prove important to an attorney's legal advice to a client."). It may be that the multitude of internal BOC communications regarding the investigation assisted BOC's outside counsel at some point, but that possibility does not make these non-attorney communications privileged.[11]

---

[11] BOC's argument that the attorney-client privilege may precede a formal engagement is beside the point. *See* BOC Opp. at 26. Plaintiffs are not seeking any documents or communications to or from an attorney, making BOC's arguments on this point inapposite. Thus preliminary consultations *between client and attorney* may be covered by the attorney client privilege, but BOC offers no authority suggesting that internal communications *not* involving an attorney would fall within this rule. Indeed, *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 430 (S.D.N.Y. 2013), cited by BOC, explicitly rejected attorney-client privilege protection for internal corporate communications regarding the retention of

BOIES, SCHILLER & FLEXNER LLP

Even if BOC's Shurafa Investigations were actually led by BOC's outside counsel, BOC has failed to prove that its investigation communications "preserved the confidentiality . . . by limiting dissemination only to employees with a need to know." *Allied Irish Banks*, 240 F.R.D. at 169. [REDACTED] While the Geng Declaration states that it is customary at BOC to "direct requests for information to the department or team at the relevant branch" (*id.*), BOC's custom does not supplant the law of this District. *See Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enforcement Agency*, 811 F. Supp. 2d 713, 743 (S.D.N.Y. 2011), *amended on reconsideration* (Aug. 8, 2011) ("In the case of an organizational client, the confidential communication must be circulated no further than among those members of the organization who are authorized to speak or act for the organization in relation to the subject matter.") (quotation marks omitted).

For the all above reasons, Plaintiffs respectfully request the Court overrule BOC's work product assertions and order immediate production of the documents listed in Appendices A, B, and C to Plaintiffs 10/28/14 Letter.

Respectfully yours,

*Marilyn C. Kunstler*

Marilyn C. Kunstler

Attachments

cc: All Counsel of Record (via ECF)

---

outside counsel, upon finding that certain documents in question "[did] not reflect legal advice" from the proposed outside counsel. BOC's citation to *Boyer v. Bd. of Cnty. Comm'rs of Cnty. of Johnson*, 162 F.R.D. 687, 690 (D. Kan. 1995), reinforces this point. In that case, the communication at issue "occurred during a pre-deposition conference in which defendant's *counsel* was not only obtaining the knowledge of the witness, but preparing the witness for her deposition" (emphasis added). The same applies BOC's citation to *Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.*, 258 F.R.D. 95, 100 (S.D.N.Y. 2009) ("Notwithstanding the fact that [attorney] Farkas had not been formally retained, [clients] Mathes and Tatara looked to him for legal advice on behalf of NMP, and Farkas provided such.").