**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SHERYL WULTZ, et al.,

Plaintiffs,

-against-

BANK OF CHINA LTD.,

Defendant

No. 11 Civ. 1266 (SAS) (GWG)

# PLAINTIFFS' RESPONSE TO DEFENDANT'S RULE 72 OBJECTION TO THE OCTOBER 24, 2014 ORDER OF THE HONORABLE GABRIEL W. GORENSTEIN REGARDING DOCUMENTS WITHHELD UNDER THE SAR PRIVILEGE

BOIES, SCHILLER & FLEXNER LLP
Lee S. Wolosky
Marilyn C. Kunstler
Steven I. Froot
Joseph W. Dunn
575 Lexington Ave.
New York, NY 10022

*Attorneys for Plaintiffs Sheryl Wultz, Yekutiel Wultz, Amanda Wultz, and Abraham Leonard Wultz*

November 21, 2014

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .......... 1

BACKGROUND .......... 2

I. THE DOCUMENTS AT ISSUE AND BOC'S "SAR PROCESS" .......... 2

II. JUDGE GORENSTEIN'S OCTOBER 24 ORDER .......... 6

ARGUMENT .......... 8

I. BOC HAS THE BURDEN OF SHOWING THAT THE OCTOBER 24 ORDER WAS CLEARLY ERRONEOUS OR CONTRARY TO LAW .......... 8

II. THE OCTOBER 24 ORDER CORRECTLY APPLIED THE RELEVANT FinCEN AND OCC REGULATIONS AND GUIDANCE, AND IS SUPPORTED BY THOSE AGENCIES' CONDUCT IN THIS CASE .......... 9

III. THE OCTOBER 24 ORDER CORRECTLY APPLIED THE RELEVANT CASE LAW .......... 16

IV. THE OCTOBER 24 ORDER IS CONSISTENT WITH THE POLICY RATIONALES FOR THE SAR PRIVILEGE .......... 18

V. THE DOCUMENTS COVERED BY THE OCTOBER 24 ORDER ARE RELEVANT, AND BOC'S ARGUMENTS OTHERWISE ARE UNTIMELY .. 22

CONCLUSION .......... 25

# TABLE OF AUTHORITIES

## Cases

*Advanced Analytics, Inc. v. Citigroup Global Markets, Inc.*, 301 F.R.D. 47 (S.D.N.Y. 2014).... 17

*Cotton v. Private Bank and Trust Co.*, 235 F. Supp. 2d 809 (N.D. Ill. 2002) ....................... *passim*

*First Am. Title Ins. Co. v. Westbury Bank*, 2014 WL 4267450 (E.D. Wis. Aug. 29, 2014)......... 19

*Freedman & Gersten, LLP v. Bank of America, N.A.*, 2010 WL 5139874 (D.N.J. Dec. 8, 2010) ........................................................................................................................ 17, 21

*Gregory v. Bank One Corp. Inc.*, 200 F. Supp. 2d 1000 (S.D. Ind. 2002) .................................. 21

*In re Comverse Tech., Inc. Sec. Litig.*, 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ...................... 8

*Norton v. US Bank National Association*, 324 P.3d 693 (Wash. App. 2014)............................... 16

*S.E.C. v. Yorkville Advisors, LLC*, 2014 WL 2208009 (S.D.N.Y. May 27, 2014) ....................... 17

*Union Bank of California v. Superior Court*, 130 Cal. App. 4th 378 (2005) (Obj. at 8–9).... *passim*

*In re Whitley*, 2011 WL 6202895 (Bankr. M.D.N.C. Dec. 13, 2011……………………............21

*Whitney Nat'l Bank v. Karam*, 306 F. Supp. 2d 678 (S.D. Tex. 2004)................................. *passim*

*Wiand v. Wells Fargo Bank, N.A.*, 981 F. Supp. 2d 1214 (M.D. Fla. 2013) .................... 17, 19, 21

## Statutes

31 U.S.C. § 5318(g)(2)(A)(i) ........................................................................................... 19

## Rules

FED. R. CIV. P. 72(a) ........................................................................................... *passim*

Pursuant to 28 U.S.C. § 636(b)(1)(A) and FED. R. CIV. P. 72(a), Plaintiffs respectfully submit this Response to the Objection of Defendant Bank of China Ltd. ("BOC") (the "Objection") (Dkt. # 714) to the October 24, 2014 Order of the Honorable Gabriel W. Gorenstein (the "October 24 Order" or "Order") (Dkt. # 693) directing BOC to produce certain documents that it withheld pursuant to the confidentiality requirements relating to Suspicious Activity Reports ("SARs") in 12 C.F.R. § 21.11(k) and 31 C.F.R. § 1020.320(e) (the "SAR privilege").

## PRELIMINARY STATEMENT

Even though this Court has ruled that the SAR privilege, "at [its] most expansive, prohibit[s] the disclosure of 'any information that would reveal the existence of a SAR,'"[1] BOC has improperly asserted that privilege over thousands of ordinary-course documents that are not SARs and in many cases do not even mention a SAR filing. BOC's theory is that documents that relate to suspicious customers and transactions—including the suspicious customers and transactions that are at the center of this case—are all within the scope of the SAR privilege because they are somehow used in what BOC calls its "SAR process."

Judge Gorenstein's October 24 Order correctly rejected this theory, which is not supported by the applicable regulations or agency guidance, and is inconsistent with what Judge Gorenstein recognized as the "more persuasive" case law on the scope of the SAR privilege.[2] The October 24 Order was based on Judge Gorenstein's careful consideration of all relevant legal authorities, and was made on an extraordinarily developed factual record that included seven separate submissions by the parties, two Court conferences, and *in camera* review of numerous withheld documents. BOC nonetheless now asks the Court to set aside the October 24 Order as "clearly erroneous or contrary to law" under FED. R. CIV. P. 72(a).

[1] 4/9/14 Opinion & Order, at 41 (Dkt. # 244) (citing 12 C.F.R. § 21.11(k)).

[2] 11/5/14 Memorandum Decision at 4–5 (the "November 5 Decision") (Dkt. # 711).

BOC fails to show that the October 24 Order was incorrect in any way, let alone carry its burden to establish that the Order was "clearly erroneous or contrary to law." BOC does not meaningfully dispute that the October 24 Order is consistent with the language of the applicable regulations, and its arguments that the Order is contrary to "controlling" agency guidance rest on a tortured interpretation of that guidance that has never been endorsed by the agencies themselves. To the contrary, those agencies (FinCEN and the OCC) have both stated positions on the scope of the SAR privilege in this case that undermine BOC's overbroad interpretation and support the October 24 Order. FinCEN and the OCC have also not intervened in this dispute to oppose the discovery Plaintiffs seek, even though BOC notified both agencies of the dispute months ago.

BOC's arguments that Judge Gorenstein misapplied non-binding case law; erroneously found that BOC's withheld documents are ordinary-course investigative material after conducting extensive *in camera* review; and failed to respect the policy rationales for the SAR privilege are not only meritless, but also do not establish that the October 24 Order was "clearly erroneous or contrary to law" under Rule 72(a).

BOC's Objection to Judge Gorenstein's October 24 Order should be denied.

## BACKGROUND

### I. THE DOCUMENTS AT ISSUE AND BOC'S "SAR PROCESS"

Aside from acknowledging that Plaintiffs have never sought production of SARs themselves (Objection at 7 n.4), BOC's Objection hardly discusses the types of documents that Judge Gorenstein's October 24 Order directed it to produce. BOC initially represented that the only documents it was withholding pursuant to the SAR privilege were SARs. 1/27/14 Tr. (Gorenstein, J.) at 42:22–23; 66:5–12 (excerpted as Ex. 1). By order of Judge Gorenstein,

however, BOC was compelled to produce a categorical privilege log that revealed it was actually withholding *thousands* of relevant non-SAR documents pursuant to the SAR privilege. *See* BOC's Suppl. Cat. Log Pursuant to M. J. Gorenstein's Jan. 27, 2014 Order (BOC's "SAR Log") (Obj. Ex. E). Based on Judge Gorenstein's guidance on the scope of the SAR privilege at a conference on July 29, 2014 (the "July 29 Conference"), Plaintiffs requested that BOC be ordered to produce 14 categories of documents listed on BOC's SAR Log. *See* 10/3/14 Ltr. from J. Dunn to Hon. G. Gorenstein (BOC Obj. Ex. I) (Dkt. # 657). Judge Gorenstein then held a second conference, on October 23, 2014 (the "October 23 Conference"), at which he conducted *in camera* review of a sample of documents from each of those 14 categories of documents and evaluated whether BOC had properly applied the SAR privilege.

The 14 categories of documents that Judge Gorenstein considered at the October 23 Conference fall into three groups:

| **Category # (from BOC's SAR Log)** | **BOC's Description of the Documents (from BOC's SAR Log)** | **Number of Documents Withheld** |
|---|---|---|
| [redacted] | | |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | | |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |

| | | |
|---|---|---|
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | | |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |

BOC argued before Judge Gorenstein, and continues to argue in its Objection, that *all* of the above documents fall within the SAR privilege in their entirety because they are used in BOC's process for filing SARs or "identify SAR filings" (*see* Objection at 3). As is clear from BOC's own descriptions in its SAR Log, however, a substantial number of the withheld documents merely relate to suspicious "transactions" and "customers" at BOC—not SARs. Similarly, based on Judge Gorenstein's extensive *in camera* review at the October 23 Conference, the withheld documents that "identify," "reveal[]," or "referenc[e]" SARs consist largely of generic BOC documents—such as Compliance Department emails and memos—that merely mention an already-filed SAR *in part*. *See, e.g.*, 10/23/14 Tr. at 43:25–44:4 (withheld document would still contain "a ton" of information "if you redact the mention of the SAR"); 59:1–18 (only one tab of many on withheld spreadsheet revealed "SAR history") (Ex. 2).

BOC's Objection claims that the above-listed categories of documents are part of its SAR process based on sweeping assertions that the documents are materials "in which a SAR has been or might be under consideration" (Objection at 17) or "were prepared as part of BOC's distinct process for deciding whether to file a SAR" (Objection at 19). Those assertions, however, are

contradicted by BOC's policies and procedures and BOC's descriptions of the documents before Judge Gorenstein. [redacted] That SAR decision-making process is *preceded* by a process of generic, ordinary-course information gathering and investigation that has no connection to BOC's separate process for deciding whether to file SARs. [redacted]

[redacted] In a lengthy colloquy with Judge Gorenstein as Judge Gorenstein conducted *in camera* review at the October 23 Conference, BOC confirmed that *all of the withheld documents* that it characterizes in its Objection as "documents in which a SAR has been or might be under consideration" or "prepared as part of BOC's distinct process for deciding whether to file a SAR" were actually prepared as part of the generic investigative process described in the above chart—*not* the "SAR Decision making procedure" that begins with the grey bubble at bottom left of the chart. *See* 10/23/14 Tr. at 30:16–31:9; 59:24–60:10; 71:4–7; 77:24–78:5; 78:19–24; 86:1–13; 87:23–90:8 (confirming that documents within particular SAR Log categories all fall within a "box" on the above chart that precedes the "SAR Decision-making procedure" at bottom left).

BOC is accordingly incorrect, as a factual matter, that its withheld documents "reveal all the specific customers and/or transations for which BOC evaluat[ed] and analyzed . . . whether to file a SAR" (Objection at 22). At most, based on the above chart and BOC's own descriptions, these documents only reveal customers and/or transactions for which BOC conducted generic, ordinary-course investigations that have no connection to whether BOC ultimately filed a SAR as a result of its separate SAR decision-making process.

## II. JUDGE GORENSTEIN'S OCTOBER 24 ORDER

At the conclusion of the October 23 Conference, Judge Gorenstein read into the record his ruling on whether BOC is entitled to withhold the 14 above-listed categories of documents under the SAR privilege. The October 24 Order incorporates Judge Gorenstein's ruling on the

record at the October 23 Conference by reference, and is further explained in a five-page Memorandum Decision that Judge Gorenstein issued on November 5, 2014 (Dkt. # 711).

Judge Gorenstein found that BOC's blanket application of the SAR privilege was overbroad. Specifically, the October 24 Order directed BOC to produce all of the documents within the 14 above-listed categories except materials that are "at the very end stage" of the process described in the above flowchart and "involv[e] a discussion about whether to create a SAR or not using specific criteria about what is required, what the requirements are to file a SAR." 10/23/14 Tr. at 95:8–96:6; 100:9–101:12. Should any document that the Order directed BOC to produce contain language stating whether a specific SAR was filed, BOC is entitled to redact that language (but not the name of the customer) to maintain the confidentiality of whether the SAR decision. *Id.* at 96:24–97:13.

The October 24 Order is based on Judge Gorenstein's finding that, contrary to BOC's overbroad interpretation of the SAR privilege, "documents relating to investigations or inquiries by the bank are not in and of themselves protected under this privilege." *Id.* at 95:8–10. Judge Gorenstein reasoned that "the bank, as part of its ordinary course of business, has a strong interest in investigating criminal activity," such that BOC would generate the types of generic investigative documents at issue regardless of the SAR filing requirement, and disclosure accordingly would not reveal the existence of any SAR. *Id.* at 100:24–101:12: *see also* Nov. 5 Decision at 4. Judge Gorenstein noted that, even though he conducted extensive *in camera* review of particular documents withheld by BOC at both the July 29 and October 23 Conferences, "[i]n no instance have we been shown documents that would 'reveal the existence of a SAR.'" Nov. 5 Decision at 5. Because the documents withheld by BOC "do not themselves

indicate whether a SAR was actually filed or not," Judge Gorenstein ruled that they are not protected by the SAR privilege. Nov. 5 Decision at 2–3.

BOC requested a stay of Judge Gorenstein's ruling pending submission of its Objection, and Judge Gorenstein granted the stay subject to BOC "start[ing] the process" of preparing to make its production during the period of the stay. 10/23/14 Tr. at 102:12–18; 105:6–21.

## ARGUMENT

### I. BOC HAS THE BURDEN OF SHOWING THAT THE OCTOBER 24 ORDER WAS CLEARLY ERRONEOUS OR CONTRARY TO LAW

BOC's Objection is governed by FED. R. CIV. P. 72(a), which provides for objections to the rulings of a magistrate judge on nondispositive matters. Rule 72(a) requires district courts to consider such objections under the deferential "clearly erroneous or contrary to law" standard. FED. R. CIV. P. 72(a) ("The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."). For BOC to meet its burden in challenging Judge Gorenstein's October 24 Order under this standard, either (1) "on the entire evidence, the [Court must be] left with the definite and firm conviction that a mistake has been committed"; or (2) BOC must establish that the Order "misapplies relevant statutes, case law, or rules of procedure." *In re Comverse Tech., Inc. Sec. Litig.*, 2007 WL 680779, at *2 (E.D.N.Y. Mar. 2, 2007) (internal formatting omitted).

The October 24 Order is particularly deserving of the deference required by Rule 72(a), given the extent of the record developed before Judge Gorenstein and the care that the Magistrate Judge devoted to parsing that record and the applicable law. Judge Gorenstein issued the October 24 Order after considering seven separate submissions by the parties over the course of

three months—a total of 50 pages of letter-briefing, with 31 separate exhibits.[3] Judge Gorenstein also held two separate conferences—the July 29 and October 23 Conferences—devoted to BOC's application of the SAR privilege. Each of the conferences was over an hour long and included oral argument, clarification of factual details, and *in camera* review of withheld documents. *See* 10/23/14 Tr. (Gorenstein, J.); 7/29/14 Tr. (Gorenstein, J.) (Ex. 3). Finally, Judge Gorenstein explained the October 24 Order both in a detailed ruling from the bench at the October 23 Conference (*see* 10/23/14 Tr. at 94:16–104:20) and in the November 5 Decision. BOC made all of the same arguments on the scope of the SAR privilege over the course of this months-long process before Judge Gorenstein as it does now—in summary form—in its Objection, and those arguments were carefully considered and rejected by the Magistrate Judge. Especially on this extraordinary record, Rule 72(a) and the principle of "us[ing] our magistrate judges appropriately" favor upholding Judge Gorenstein's findings. *See* 9/22/14 Tr. (Scheindlin, J.) at 19:15–20:2 (excerpted as Ex. 4).

In any event, as explained below, BOC has not met its burden to show that Judge Gorenstein's October 24 Order was "clearly erroneous or contrary to law" under Rule 72(a).

## II. THE OCTOBER 24 ORDER CORRECTLY APPLIED THE RELEVANT FinCEN AND OCC REGULATIONS AND GUIDANCE, AND IS SUPPORTED BY THOSE AGENCIES' CONDUCT IN THIS CASE

The October 24 Order is consistent with both the regulations creating the SAR privilege and the interpretation of those regulations issued by the Financial Crimes Enforcement Network ("FinCEN") and the Office of the Comptroller of the Currency ("OCC"). The October 24 Order

[3] 10/22/14 Ltr. from L. Saperstein to Hon. G. Gorenstein (Obj. Ex. L) (Dkt. #690); 10/21/14 Ltr. from J. Dunn to Hon. G. Gorenstein (Obj. Ex. K); 10/16/14 Ltr. from L. Saperstein to Hon. G. Gorenstein (Obj. Ex. J) (Dkt. # 683); 10/3/14 Ltr. from J. Dunn to Hon. G. Gorenstein (Obj. Ex. I) (Dkt. # 657); 7/25/14 Ltr. from J. Dunn to Hon. G. Gorenstein (Obj. Ex. H) (Dkt. # 582); 7/24/14 Ltr. from L. Saperstein to Hon. G. Gorenstein (Obj. Ex. G) (Dkt. # 579); 7/9/14 Ltr. from J. Dunn to Hon. G. Gorenstein (Obj. Ex. F) (Dkt. # 553).

is also supported by the stated positions of both FinCEN and the OCC on the scope of the SAR privilege in this case, and the fact that neither agency has decided to participate in this dispute to defend BOC's overbroad SAR privilege claims, even though the OCC has previously intervened in this case.

The regulations creating the SAR privilege, 31 C.F.R. § 1020.320(e) and 12 C.F.R. § 21.11(k), were issued by FinCEN and the OCC, respectively, and are identical in relevant part. As explained in the November 5 Decision, these regulations prohibit banks from disclosing "a SAR, or any information that would reveal the existence of a SAR," with the important exception that "[t]he underlying facts, transactions, and documents upon which a SAR is based" are not protected. 31 C.F.R. § 1020.320(e)(1); 12 C.F.R. § 21.11(k)(1); *see also* Nov. 5 Decision at 1–2. As this Court has recognized, pursuant to this language, the SAR privilege, "at [its] most expansive, prohibit[s] the disclosure of 'any information that would reveal the existence of a SAR.'" 4/9/14 Opinion & Order, at 41 (Dkt. # 244).

BOC presents no legitimate argument that the October 24 Order is inconsistent with the language of 31 C.F.R. § 1020.320(e)(1) and 12 C.F.R. § 21.11(k)(1), and there is none. As Judge Gorenstein explained, the investigatory documents that BOC was ordered to produce in the October 24 Order do not "differ in character from the 'underlying . . . documents upon which a SAR is based'—records that the regulations themselves explicitly exclude from the SAR privilege." Nov. 5 Decision at 5. The October 24 Order's consistency with the applicable regulations is also supported by Judge Gorenstein's finding, upon extensive *in camera* review of BOC's withheld documents, that "[i]n no instance have we been shown documents that would 'reveal the existence of a SAR.'" Nov. 5 Decision at 5; *see also id.* at 2–3 ("The Court's *ex parte* examination of samples of documents provided by BOC reflects that the documents do not

themselves indicate whether a SAR was actually filed or not. Instead, the documents contain references to banking transactions without any specific discussion of SAR requirements.") BOC's Objection does not even mention this finding, let alone show that it was clearly erroneous.[4]

Instead of arguing that the October 24 Order misapplied the applicable language in 31 C.F.R. § 1020.320(e)(1) and 12 C.F.R. § 21.11(k)(1), BOC's Objection relies on guidance issued by FinCEN and the OCC interpreting those regulations. *See* Obj. at 8–14 (citing 75 F.R. 75576-01; 75 F.R. 75593-01). Judge Gorenstein considered FinCEN's and the OCC's guidance and found that, "even accepting *arguendo*" that the agency guidance was deserving of deference by this Court, the guidance did not support BOC's overbroad assertion of the SAR privilege. Nov. 5 Decision at 3–4.[5] BOC has not shown that this finding was incorrect, let alone clearly erroneous or contrary to law.

---

[4] BOC offers to cherry-pick a single document from each of the 14 at-issue SAR Log categories that it asserts "if produced according to the Order, would still reveal the existence of a SAR"; and to submit those 14 cherry-picked documents for *in camera* review now. Obj. at 24. Even accepting as true BOC's unsupported assertion that all 14 documents would "reveal the existence of a SAR," such a submission could not establish that Judge Gorenstein's order was clearly erroneous. There are 12,587 documents in the at-issue SAR Log categories, and the factual record before Judge Gorenstein—including the policy documents and representations by BOC explained on pages 4–6 above, and Judge Gorenstein's *in camera* review of *multiple* withheld documents per SAR Log category—all support the October 24 Order's conclusion that these documents would not "reveal the existence of a SAR" (November 5 Decision at 5). BOC had ample opportunity to make its new proposal for *in camera* review in the course of the parties' months-long dispute over the SAR privilege before Judge Gorenstein, but failed to do so. BOC should not be permitted to change the factual record now.

BOC also suggests that complying with the October 24 Order will reveal the existence of SARs because BOC withheld and logged the documents at issue, instead of including them in the rest of its production. *See* Obj. at 24. That is a problem of BOC's own making, and, in any event, BOC is incorrect. Because BOC may redact mentions of whether a SAR was filed *or not filed*, it will be impossible to determine that any SAR exists based on BOC's production. *See* 10/23/14 Tr. at 96:24–9.

[5] Because Judge Gorenstein ruled "even accepting *arguendo*" deference to the agency's guidance, BOC is incorrect that Judge Gorenstein somehow "failed to give deference" to the guidance (Obj. at 10). As the November 5 Decision makes clear, Judge Gorenstein declined to rule that the agency guidance was not due deference; rather, he held that the October 24 Order would have been the same even had he found that deference was due. *See* November 5 Decision at 3.

The broadest possible view of the SAR privilege endorsed in the agency guidance cited by BOC is that the privilege applies "*in appropriate circumstances* to material prepared by the national bank as part of its process to detect and report suspicious activity, regardless of whether a SAR ultimately was filed or not." 75 F.R. 75576-01 at 75579 (emphasis added). That view is entirely consistent with the October 24 Order, which agreed with BOC that the SAR privilege does attach to certain "material prepared by [BOC] as part of its process to detect and report suspicious activity, regardless of whether a SAR ultimately was filed or not" (*id.*)—specifically, the subset of at-issue documents that are "at the end of the process" and "involv[e] a discussion about whether to create a SAR or not using specific criteria about what is required, what the requirements are to file a SAR." 10/23/14 Tr. at 95:8–96:6. The October 24 Order explicitly did not require BOC to produce this subset of documents. In other words, under the Order, "discussion[s] about whether to create a SAR or not using specific criteria" as part of BOC's final SAR decision-making process are the "appropriate circumstances" in which BOC's SAR process comes within the scope of the SAR privilege, consistent with the agency guidance cited by BOC.

Even though the October 24 Order did find that BOC's SAR process is protected in certain appropriate circumstances, BOC apparently takes the position that the October 24 Order was inconsistent with the agency guidance that a bank's SAR process is protected "in appropriate circumstances." BOC's position rests on a tortured interpretation of the guidance. Specifically, BOC contends that FinCEN and the OCC "adopted the scope of the SAR privilege as set forth" in *Whitney Nat'l Bank v. Karam*, 306 F. Supp. 2d 678 (S.D. Tex. 2004); *Cotton v. Private Bank and Trust Co.*, 235 F. Supp. 2d 809 (N.D. Ill. 2002); and *Union Bank of California v. Superior Court*, 130 Cal. App. 4th 378 (2005) (Obj. at 8–9), even though there is no support for that

proposition in the OCC's and FinCEN's guidance. The agency does not state that it adopts any portion of the *Whitney*, *Cotton*, or *Union Bank* decisions, nor does it incorporate without attribution language from those decisions. The guidance does not state that those three decisions are binding on this Court on the scope of the SAR privilege (which would not be within the discretion of a regulatory agency), nor even that those decisions should be afforded greater attention by courts evaluating assertions of the SAR privilege. Rather, the guidance merely cites and quotes *Whitney*, *Cotton*, and *Union Bank* in three footnotes, each time with a "*See, e.g.*" signal. 75 F.R. 75576-01 at 75579 nn. 21, 23, 26. *See also* Nov. 5 Decision at 4 n.2 ("[T]he agency states that the cited cases merely support the interpretive language, not that they engraft onto it additional substance."). Referring to a case *in a footnote* and explicitly *as just one example* does not supplant the text of the guidance itself—which, as noted above, at its broadest suggests that the SAR privilege only covers a bank's SAR process in undefined "appropriate circumstances."

The agency guidance cited by BOC could not have "adopted" the *Whitney*, *Cotton*, and *Union Bank* decisions for the additional reason that those cases are themselves inconsistent on the scope of the SAR privilege. Judge Gorenstein correctly recognized this. *See* 10/23/14 Tr. at 15:11–13 ("for every *Union Bank* case I can provide you with a case on the opposite side, like *Cotton*"); Nov. 5 Decision at 4 n.2 ("we do not believe we can generate a rule from the cited cases"). To use Judge Gorenstein's example, although *Cotton* found that "work product or privileged communications that relate to the SAR itself are not to be produced" (235 F. Supp. at 815), *Union Bank* explicitly declined to hold that the SAR privilege covers all work product that merely *relates to* a SAR. *See Union Bank*, 130 Cal. App. 4th at 903–907 ("We do not suggest that all reports of suspicious activity are protected by the SAR privilege. . . . A Bank may not

cloak its internal reports and memoranda with a veil of confidentiality simply by claiming they concern suspicious activity or concern a transaction that resulted in the filing of a SAR.”).[6] Inconsistencies such as this make it implausible that the FinCEN and the OCC “adopted” *Whitney*, *Cotton*, and *Union Bank* together, even setting aside the obvious fact that their guidance merely refers to the cases in “*See, e.g.*” footnotes.

Finally, BOC’s tortured interpretation of FinCEN’s and the OCC’s guidance is inconsistent with the conduct of those agencies in this case, which supports the October 24 Order. As BOC notes (Objection at 10), on October 2, 2012, FinCEN sent Plaintiffs a letter “to convey FinCEN’s position” on the scope of the SAR privilege in this case. *See* 10/2/12 Ltr. from B. Bradley to L. Wolosky (Obj. Ex. N). FinCEN’s letter was sent in response to a letter from Plaintiffs explaining that in this case Plaintiffs seek “the production of information concerning SARs,” including documents such as those within the scope of the October 24 Order. *See* 9/12/12 Ltr. from L. Wolosky to FinCEN (Ex. 5). Instead of asserting that all such documents are protected by the SAR privilege or joining in BOC’s overbroad view that the privilege protects all documents used in BOC’s SAR process, FinCEN stated that the SAR privilege extends only to “any Suspicious Activity Reports (SARs), or information that may reveal that a SAR has, or has not, been filed”. 10/2/12 Ltr. from B. Bradley to L. Wolosky at 1. This is the same language as in the applicable regulations—and, as noted above, the October 24 Order is consistent with this language. Moreover, though FinCEN cited three different cases in its letter,

---

[6] BOC claims that *Union Bank* is consistent with *Cotton* and supports its position on the scope of the SAR privilege, but fails to recognize that the *Cotton* court held that bank work product may be protected if it merely “relate[s] to” a SAR (235 F. Supp. at 815), whereas the *Union Bank* court found that the SAR privilege extends only “to documents prepared by a bank ‘*for the purpose of* investigating or drafting a possible SAR.’” 130 Cal. App. 4th at 904 (emphasis added). BOC also fails to take into account the key limiting language in *Union Bank* that is quoted above.

those cases did not include the *Whitney*, *Cotton*, or *Union Bank* decisions that BOC now claims (without basis) have been "adopted" as FinCEN's guidance on the scope of the SAR privilege.

Similarly, despite entering an appearance in this case to oppose Plaintiffs' requests for SAR-related documents (*see* Dkt. # 227), the OCC has never taken the position that BOC inaccurately claims was "adopted" by its guidance. On February 19, 2013, the OCC filed a 23-page brief in opposition to Plaintiffs' motion to compel the production of, *inter alia*, documents related to "BOC's SAR filing practices".[7] Plaintiffs explicitly sought production of certain investigative documents prepared by BOC, even if those documents were generated "in anticipation of filing a SAR" (*see* Pls. 2/1/13 Mem. at 19–21)—precisely the same type of documents that are at issue here. Like FinCEN, however, the OCC argued only that SARs and "materials that would disclose the existence of a Suspicious Activity Report" are covered by the SAR privilege. OCC Resp. at 20–22. Again, this is the same regulatory language that is consistent with the October 24 Order. The OCC also did not adopt BOC's overbroad view that the SAR privilege protects all documents used in BOC's SAR process, and it also cited cases other than *Whitney*, *Cotton*, and *Union Bank*.

BOC might argue that FinCEN and the OCC would revise their positions on the scope of the SAR privilege in light of the instant dispute, but that suggestion as to FinCEN's and the OCC's position is also meritless. Immediately after Plaintiffs first sought production of the documents at issue here, in a July 9, 2014 letter to Judge Gorenstein, BOC "made the OCC and FinCEN aware of the issues raised" in Plaintiffs' letter and requested an extended briefing schedule that would "provide sufficient time for [the OCC and FinCEN] to decide if they plan to participate". 7/14/14 Ltr. from L. Saperstein to Hon. G. Gorenstein, at 1 (Ex. 6) (Dkt. # 559).

[7] *See* Non-Party OCC's Resp. in Opp. to Pls. Mot. to Compel Production of Investigative Files and U.S. Regulatory Comms. (Dkt. # 226) ("OCC Resp."); Mem. of Law in Supp. of Pls. Mot. to Compel Production of Investigative Files and U.S. Regulatory Comms., at 2 (Dkt. # 217) ("Pls. 2/1/13 Mem.").

Judge Gorenstein granted BOC's request for extended briefing, but to date neither FinCEN nor the OCC has made *any submission* regarding these documents—let alone to support BOC's overbroad position on the scope of the SAR privilege or to endorse BOC's erroneous interpretation of those agencies' guidance.

In short, BOC cannot dispute that the October 24 Order correctly applied the applicable regulatory language; and its arguments that the October 24 Order is inconsistent with FinCEN and OCC guidance are contradicted by the guidance itself, the cases cited by the guidance, and the conduct of FinCEN and the OCC themselves in this case. At best, BOC's Objection establishes that Judge Gorenstein's rulings on the SAR privilege are inconsistent with *BOC's* own unsupported view of the applicable agency guidance. That does not approach the showing necessary for this Court to overrule the October 24 Order.

## III. THE OCTOBER 24 ORDER CORRECTLY APPLIED THE RELEVANT CASE LAW

BOC's argument that the Court should overrule Judge Gorenstein's October 24 Order because the Order "misapplies the cases upon which it claims to rely" (Objection at 14–17) also has no merit.

BOC is incorrect that the October 24 Order "misapplie[d]" any case. BOC first contends that Judge Gorenstein erred by "describ[ing] *Cotton* and *Union Bank* at odds." Obj. at 15–16 (citing 10/23/14 Tr. at 15:6–13). As explained above, however, Judge Gorenstein correctly observed that *Cotton* and *Union Bank* are inconsistent—and, in any event, BOC fails to explain how that one observation could render the October 24 Order clearly erroneous or contrary to law. BOC also fails to state any reason why Judge Gorenstein's mention of *Norton v. US Bank N.A.*, 324 P.3d 693 (Wash. App. 2014), at the October 23 Conference warrants overruling the October 24 Order. *See* Obj. at 16–17 (citing 10/23/14 Tr. at 95:3–7). If anything, the fact that the

October 24 Order considered and declined to follow that case illustrates the thoroughness of the Order. *See* Nov. 5 Decision at 5. BOC next claims that Judge Gorenstein "impermissibly relie[d]" on *Freedman & Gersten, LLP v. Bank of America, N.A.*, 2010 WL 5139874 (D.N.J. Dec. 8, 2010). *See* Objection at 17. That case, however, has been properly cited and followed by this Court on at least two occasions prior to the October 24 Order—one of which was the Court's April 17, 2014 Memorandum Opinion and Order in this case. 4/17/14 Mem. Op. & Order at 6 n.16; *see also S.E.C. v. Yorkville Advisors, LLC*, 2014 WL 2208009 at *14 (S.D.N.Y. May 27, 2014). Finally, BOC's assertion that it was improper for the October 24 Order to cite *Wiand v. Wells Fargo Bank, N.A.*, 981 F. Supp. 2d 1214 (M.D. Fla. 2013), and other cases because those decisions "came *before* the agencies' respective amendments to the regulations regarding the SAR privilege" is belied by the fact that each of the three cases that BOC advances as "[t]he *only* cases which should control" was also decided before those amendments in January 2011. *See* Obj. at 14–15; *Union Bank*, 130 Cal. App. 4th (2005); *Whitney*, 306 F. Supp. 2d 678 (2004); *Cotton*, 235 F. Supp. 2d 809 (2002). The January 2011 amendments do not render irrelevant all prior decisions examining the scope of the SAR privilege, as BOC selectively argues.

Moreover, even if BOC were correct that the October 24 Order somehow "misapplies" the cases identified by BOC, that would not establish that the Order is "clearly erroneous or contrary to law" under Rule 72(a), because none of the cases identified by BOC is binding on this Court. *See, e.g.*, *Advanced Analytics, Inc. v. Citigroup Global Markets, Inc.*, 301 F.R.D. 47, 53 (S.D.N.Y. 2014) (finding that Magistrate Judge's ruling was "neither clearly erroneous nor contrary to law" where the objecting party had not "identif[ied] any . . . controlling precedent that the [ruling] overlooked"). It is undisputed that there is no controlling case law defining the

scope of the SAR privilege at the level of granularity required to determine whether the privilege governs documents at issue here. Indeed, the cases that BOC contends Judge Gorenstein "misapplie[d]" are all district court or state court decisions. *See* Obj. at 15–17. Judge Gorenstein was well within his discretion to find that the few of these cases that are "arguably supportive of [BOC]'s position" are "not . . . as persuasive" as the cases supporting Plaintiffs' position, for all of the reasons he explained in issuing the October 24 Order. *See* Nov. 5 Decision at 4–5. Weighing "inconsistent case law" on the precise scope of the SAR privilege (*see* 10/23/14 Tr. at 3:3) issued by authorities not binding on this Court cannot support a finding that "the magistrate judge abused his discretion" under Rule 72(a). *Comverse Tech.*, 2006 WL 3511375, at *3.[8]

## IV. THE OCTOBER 24 ORDER IS CONSISTENT WITH THE POLICY RATIONALES FOR THE SAR PRIVILEGE

Contrary to BOC's claims (*see* Objection at 20–23), the October 24 Order is consistent with the policy rationales for the SAR privilege. Judge Gorenstein acknowledged and considered those policy rationales, and the October 24 Order includes important exceptions that Judge Gorenstein—acting within his discretion—correctly deemed sufficient to protect the rationales. FinCEN and the OCC have articulated two rationales for their regulations prohibiting the disclosure of "a SAR, or any information that would reveal the existence of a SAR" (12 C.F.R. § 21.11(k)(1); 31 C.F.R. § 1020.320(e)(1)), which are discussed in turn below.

*First*, consistent with the enabling statute for these regulations, the primary purpose of the SAR privilege is to prevent a bank customer from discovering that he is the subject of an

[8] BOC claims that "the case law can be reconciled," but only by ignoring every decision that happens not to be cited in the applicable agency guidance (*i.e.*, every decision other than *Whitney*, *Cotton*, and *Union Bank*). *See* Obj. at 14–15. For the reasons explained above, however, there is no basis for BOC's interpretation of the guidance as "adopting" only these cases.

ongoing investigation by his bank or law enforcement.[9] That is hardly a risk here, given that BOC's documents are all at least six years old and would be produced subject to the protective order that is in place in this case. Moreover, the October 24 Order expressly prevents disclosure of whether any BOC customer was the subject of a SAR filing, by entitling BOC to redact from its production all references to whether a SAR was or was not filed on a customer. *See* 10/23/14 Tr. at 96:24–97:7 (noting that, with such redactions, the produced documents would at most "only reveal whether [customers were] the subject of an investigation," which is not protected information). The guidance issued by FinCEN and the OCC itself contemplates that such redactions are sufficient to uphold this policy rationale for the SAR privilege. *See* 75 F.R. 75593-01 at 75595 n. 16 (encouraging banks to be "cautious in the production of *relevant portions* of board minutes or other records to avoid the risk of potentially exposing SAR information to the subject") (emphasis added). The case law on the SAR privilege—including decisions by this Court, in this case—also establishes that redacting references to SAR filings adequately protects against the risk of disclosing that a customer was the subject of a SAR filing. *See* 4/17/13 Mem. Opinion and Order at 6–7 (Dkt. # 247) (ordering production of an investigative report on Said al-Shurafa in redacted form, because "even if BOC filed a SAR *based on* the Shurafa report, the report itself would not be privileged—to the extent that it could be produced without revealing the existence of a SAR filing").[10]

[9] *See* 31 U.S.C. § 5318(g)(2)(A)(i) ("If a financial institution . . . reports a suspicious transaction to a government agency . . . neither the financial institution, director, officer, employee, or agent of such institution . . . may notify *any person involved in the transaction* that the transaction has been reported . . . .") (emphasis added).

[10] *See also, e.g., Wiand*, 981 F. Supp. 2d 1214, at 1218 (finding that "only one portion" of a collection of a bank's "internal documents, email, reports, and other communications" was protected by the SAR privilege, and ordering production of the documents with only that portion redacted); *First Am. Title Ins. Co. v. Westbury Bank*, 2014 WL 4267450, at *3–*4 (E.D. Wis. Aug. 29, 2014) (finding that a variety of documents related to the defendant bank's fraud monitoring procedures and investigations were

*Second*, as Judge Gorenstein acknowledged, FinCEN and the OCC have advanced the SAR privilege as necessary to "the creation of an environment that encourages a bank to report suspicious activity without fear of reprisal." 7/29/14 Tr. at 34:4–13. The October 24 Order will also not interfere with this policy rationale, because, as explained in pages 4–6 above, the documents that BOC was ordered to produce were generated as part of BOC's generic, ordinary-course process for investigating suspicious activity, *not* BOC's separate SAR decision-making process. *See also* 10/23/14 Tr. at 100:24–101:12 ("the bank, as part of its ordinary course of business, has a strong interest in investigating criminal activity and . . . if there had not been a requirement for a SAR filing, this very bureaucratic requirement . . . they would have engaged in it anyway"). Given that the types of investigative documents at issue would have been produced by BOC even if it ultimately decided to file zero SARs, there is no relationship between disclosure of the documents and BOC's SAR filing incentives, and it would accordingly be impossible for the October 24 Order to have any chilling effect on SAR filing practices. The only withheld documents that *do* potentially implicate BOC's decisions whether to file SARs—*i.e.*, SARs themselves and "evaluative documents . . . involved in the final SAR decisionmaking process, that reference the SAR requirements specifically as to the particular customer or transactions involved"—are excluded from the scope of the October 24 Order. *See* November 5 Decision at 5. This outcome is consistent with protecting the status quo environment "that encourages a bank to report suspicious activity without fear of reprisal." 7/29/14 Hr'g Tr. at 34:4–13.

BOC asserts that that the "ordinary course" reasoning underlying the October 24 Order is "legally irrelevant" (Objection at 18), but it offers no support for that assertion—and there is

---

not protected by the SAR privilege, but that the bank could redact from the documents "any explicit statement as to whether or not a SAR was or was not filed").

none. Other judges have agreed with Judge Gorenstein that this reasoning is legally sound and warrants production of a bank's investigative documents notwithstanding the SAR privilege.[11]

BOC also asserts that this reasoning was "factually erroneous," because—according to BOC—there was no evidence before Judge Gorenstein showing that the investigative documents at issue here "would in fact exist in a world with no SAR regime at all." *See* Obj. at 17–20. This assertion is also meritless, and does not warrant overturning the October 24 Order. Far from being clearly erroneous, the October 24 Order's conclusion that BOC would have created the at-issue documents independent of its SAR decision-making process is supported by ample evidence in the record. BOC itself stated at the October 23 Conference that all of the at-issue documents it contends "were prepared as part of BOC's distinct process for deciding whether to file a SAR" (Objection at 19) in fact preceded the point at which BOC's own BOC's SAR Policy and Procedure Manual states that BOC "initiates" its "SAR Decision making procedure". *See* Obj. Ex. C at BOC0000082; 10/23/14 Tr. at 30:16–31:9; 59:24–60:10; 71:4–7; 77:24–78:5; 78:19–24; 86:1–13; 87:23–90:8; *supra* pp. 4–6. There was other evidence before Judge Gorenstein that BOC investigates suspicious activity for a variety of reasons other than to decide whether to file SARs, and would generate investigative documents even in the absence of a SAR filing requirement.[12] BOC even confirmed at the October 23 Conference that it went about

[11] *See Wiand*, 981 F. Supp. 2d at 1218 (finding that an investigative document was "not covered by the SAR privilege as it appears to be a report generated by the bank in the ordinary course of business in monitoring unusual activity"); *Freedman*, 2010 WL 5139874, at *3 (D.N.J. Dec. 8, 2010) (ordering "discovery related to documents and facts pertaining to the suspicious activity at issue in this matter, which were created in the ordinary course of business"); *In re Whitley*, 2011 WL 6202895, at *4 (Bankr. M.D.N.C. Dec. 13, 2011) (noting that because it is "a standard business practice for banks to investigate suspicious banking activity," "the internal bank reports or memorandum generated by the bank regarding such an investigation are not protected by SAR privilege"). *See also Gregory v. Bank One Corp. Inc.*, 200 F. Supp. 2d 1000, 1002 (S.D. Ind. 2002) (finding that the SAR privilege "requires confidentiality only of SARs and their contents, not of other reports of suspicious activity").

[12] [redacted]

substantially the same process of "detecting criminal activity" *before the SAR regime even existed*, under a prior regime that BOC's counsel referred to as "criminal referrals." 10/23/14 Tr. at 91:15–19. As Judge Gorenstein rightly observed—and BOC's Objection nowhere disputes—the existence of an analogous internal investigation process at BOC prior to the existence of the SAR regime supports a finding that BOC would have generated the generic investigative documents that it has been ordered to produce "independent of a SAR filing" requirement. *Id.* at 92:8–11. Taken together, all of this evidence establishes that Judge Gorenstein was correct that BOC would have generated the documents within the scope of the October 24 Order "anyway" (10/23/14 Tr. at 100:24–101:12), such that disclosure will not have any chilling effect on BOC's decisions to file SARs.[13]

## V. THE DOCUMENTS COVERED BY THE OCTOBER 24 ORDER ARE RELEVANT, AND BOC'S ARGUMENTS OTHERWISE ARE UNTIMELY

BOC claims in passing that its withheld documents have "no relation to plaintiffs' central allegations in this matter" (Objection at 5–6), but it is not clear that BOC is formally objecting to the October 24 Order on this basis. To the extent that BOC is objecting that the documents at

[redacted]

[13] In light of this evidence, BOC is incorrect that "the only evidence before the Court" as to whether BOC would have generated the at-issue documents independent of any SAR filing requirement is the declaration that it submitted to Judge Gorenstein (from a BOC Compliance Officer, Norberto Morrice). *See* Obj. at 18–19 (citing the Oct. 16, 2014 Decl. of Norberto Morrice, which is included in Ex. J to the Obj. (the "Morrice Declaration")). Judge Gorenstein did not abuse his discretion in finding that the above-cited evidence and the *in camera* review conducted at the October 23 Conference was more compelling as to the nature of BOC's withheld documents than the self-serving Morrice Declaration, which doesn't even "address the counter factual" of whether BOC would have created those documents absent any SAR filing requirement. 10/23/14 Tr. at 91:8–14.

issue are irrelevant, that objection was long ago waived. BOC argued at a *January 27, 2014* conference before Judge Gorenstein that the documents it had withheld pursuant to the SAR privilege were not "even relevant to [Plaintiffs'] claims." 1/27/14 Tr. (Gorenstein, J.) at 42:16–21 (excerpted as Ex. 2). Judge Gorenstein considered BOC's relevance argument at that conference in January and overruled it, reasoning that "documents that talk about . . . whether [SARs] should be filed or not be filed and that sort of thing" are relevant because Plaintiffs "are entitled to understand how this bank dealt with SARs." *Id.* at 56:13–15; 66:24–67:11 (the "January 27 Order"). BOC declined to file an objection to Judge Gorenstein's January 27 Order within the 14-day period specified by Rule 72(a), and also declined to revive its relevance argument before Judge Gorenstein at any point in the extensive briefing that led to the October 24 Order. Having failed to timely object to the January 27 Order, BOC is not entitled to dispute relevance now.[14]

In any event, Judge Gorenstein was correct that the documents at issue here are relevant. As the Court ruled on April 9, 2013, Plaintiffs are entitled to discovery related to "BOC's SAR filing practices". 4/9/13 Op. & Order at 19, 41–44 (Dkt. # 244). It remains true that documents related to BOC's investigations of suspicious banking activity at BOC in the 2003–2008 period—such as the documents listed on BOC's SAR Log—are relevant to show BOC's deliberate indifference towards terrorist financing during that period, which is the applicable state of mind requirement under the Anti-Terrorism Act. *See* 12/26/12 Hr'g Tr. (Scheindlin, J.) at 24:14–25 ("[T]he higher the standard of proof with respect to state of mind of the conduct, the more you will need to discover whether there are deficiencies in the practices of the bank.").

---

[14] *See* FED. R. CIV. P. 72(a) (providing that a party may only object to a nondispositive ruling of a Magistrate Judge "within 14 days of being served a copy," and that "[t]he district judge in the case must consider *timely* objections") (emphasis added).

The documents that BOC was directed to produce by the October 24 Order are also relevant to show that BOC had actual knowledge that Said al-Shurafa and his associates were operating a terrorist financing scheme through BOC accounts, and that BOC willingly participated in that scheme. [redacted] Plaintiffs believe that the documents that BOC has improperly withheld pursuant to the SAR privilege will show that BOC in fact routinely found that those same types of "payment patterns" were suspicious and indicative of terrorist financing (regardless of whether BOC ultimately decided to file a SAR, which is distinct information that BOC is not required to disclose under the October 24 Order). Moreover, BOC has never denied that the documents at issue here contain contemporaneous findings by BOC personnel that Said al-Shurafa, his family members, and their associates were laundering money or financing terrorism—and there is evidence that the documents do contain such findings. [redacted] Israeli court documents dating to 2003 confirm that Deraneiah's wire transfers to the Shurafas were executed at the behest of a senior Hamas leader in Syria. *See* Dec. 23, 2003 Indictment of Muhammad Abdeen (Ex. 11). BOC has not produced any documents explaining [redacted], however, and any such documents appear to fall within the universe of documents that BOC has withheld pursuant to the SAR privilege. *See, e.g.,* SAR Log at Category No. 8 (indicating that BOC has withheld all "[i]nternal

BOC emails revealing specific suspicious or unusual transactions"). Plaintiffs are entitled to discovery of such documents, which are relevant to show that Said al-Shurafa and his associates were using BOC to fund terrorism and that BOC contemporaneously detected (but continued to facilitate) that funding.

**CONCLUSION**

For the reasons set forth above, the Court should deny BOC's Objection and uphold Judge Gorenstein's October 24 Order.

Dated: New York, New York
November 21, 2014

Respectfully Submitted,

**BOIES, SCHILLER & FLEXNER LLP**

By: _/s/ Marilyn C. Kunstler________

BOIES, SCHILLER & FLEXNER LLP
Lee S. Wolosky
Marilyn C. Kunstler
Steven I. Froot
Joseph W. Dunn
575 Lexington Ave.
New York, NY 10022

*Attorneys for Plaintiffs Sheryl Wultz, Yekutiel Wultz, Amanda Wultz, and Abraham Leonard Wultz*