# BOIES, SCHILLER & FLEXNER LLP

575 LEXINGTON AVENUE • 7TH FLOOR • NEW YORK, NY 10022 • PH. 212.446.2300 • FAX 212.446.2350

December 2, 2014

**BY EMAIL**
Hon. Shira A. Scheindlin, U.S.D.J.
United States District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 1620
New York, New York 10007

      Re:    *Wultz v. Bank of China Ltd.*, No. 1:11-cv-01266 (SAS) (GWG)

Dear Judge Scheindlin:

      On behalf of Plaintiffs in the above-referenced action, we write in response to the November 26, 2014 letter (Dkt. # 738) from Bank of China Ltd. ("BOC") incorrectly claiming that Plaintiffs violated the Protective Order in this case (Dkt. # 121). As explained further below, Plaintiffs are in compliance with the Protective Order, and have taken all reasonable steps to destroy each of the over 6,700 pages of documents that BOC has clawed back pursuant to the Order. Moreover, as requested by BOC, we certify that we have "f[ound] and destroy[ed]" all copies of the single page of the 51-page document, which BOC claims is privileged, that is the subject of BOC's November 26 letter—thus mooting BOC's request that Plaintiffs be ordered to do so now. Because Plaintiffs only referred to and attached that page in confidential communication with BOC in a good faith effort to meet and confer, and have destroyed all copies of the page, BOC is not entitled to attorneys' fees or any of the other relief it seeks in its November 26 letter (the "BOC Ltr.").

      [REDACTED] Plaintiffs request, pursuant to Section J.2 of the Protective Order, that BOC be ordered to produce [REDACTED]

      For the reasons explained below, Plaintiffs further request that the Court set a conference at its earliest convenience this week, during which BOC should be ordered to explain [REDACTED] Though this material contradiction is nowhere discussed in BOC's letter, it goes directly to the timing of BOC's knowledge of suspicious activity in the Shurafa accounts, and BOC has failed to offer any meaningful explanation for it.

      [REDACTED] was a single page within a 51-page document that BOC clawed back by letter dated July 5, 2013—45 days after it had produced [REDACTED] *See* Ex. A to BOC Ltr. (the

"Claw-back Letter"). BOC's Claw-back Letter did not assert any privilege over or even mention ▮▮▮, instead stating only that the 51-page document containing ▮▮▮ was "in whole or *in part*" privileged. *Id.* at 1 (emphasis added). Plaintiffs took prompt, customary steps to comply with the Claw-back Letter—as they have for all of BOC's claw-back requests in this case. Those steps included deleting all 90 documents listed in the Claw-back Letter from Plaintiffs' e-discovery platform and the secure drives on which Plaintiffs store local copies of BOC's productions, and destroying paper copies of the documents through a secure shredding process. Altogether, BOC has clawed back 6,700 pages of documents, and Plaintiffs have implemented the above-described procedures for each and every document BOC has clawed back.

Also in May 2013, the Court ruled that BOC must produce any "reference to [STR] filings in the aggregate" and any "aggregate report" of STR information concerning the Shurafa accounts. 5/1/13 Opinion & Order at 44 (Dkt. # 261); 5/30/14 Tr. at 29:20–30:23. Following those rulings, Plaintiffs served an interrogatory requesting that BOC disclose, on an annual basis, the aggregate number of STRs that it filed on each of the 15 Shurafa family members whose account records BOC has produced in this case. Ex. 1 (the "Interrogatory"). BOC refused to answer the Interrogatory, but was ordered to do so by the Court in August and September 2014. *See* 8/15/14 Tr. at 79:25–80:15; 9/22/14 Tr. at 20:22–21:13. BOC subsequently served, on October 23, 2014, an amended response to Plaintiffs' Interrogatory that provided aggregate STR information for the period January 1, 2003, through September 30, 2008 (the "Amended Interrogatory Response"). Ex. 2.

[redacted]

As a result of the routine and customary steps that Plaintiffs took to comply with BOC's Claw-back Letter, Plaintiffs long ago deleted all copies of the 51-page document containing the

[redacted]

Ex. F to BOC Ltr., at 2. Plaintiffs did not intend to retain a copy of ▮▮▮, and have deleted any and all surviving copies of ▮▮▮, in archived emails or otherwise.

---

[1] BOC accuses Plaintiffs of "broadly distributing" ▮▮▮ to a "large distribution list," but that list is composed entirely of BOC's counsel and one attorney for plaintiffs in the coordinated *Moriah* action, to whom BOC also produced the ▮▮▮ in May 2013, and who has since confirmed to Plaintiffs that he deleted the ▮▮▮

BOIES, SCHILLER & FLEXNER LLP

December 2, 2014        Hon. Shira A. Scheindlin        Page 3

**Plaintiffs are in compliance with the Protective Order.** Plaintiffs did not commit any "violation" of the Protective Order because the ▓▓▓ survived until discovered in counsel's archived emails. ▓▓▓ was the subject of discussion within Plaintiffs' legal team in the 45 days after it was produced but before it was clawed back. Archived emails are not readily accessible or searchable for individual pages of any specific clawed-back document—much less for all of the over 6,700 total pages that BOC has now clawed back in this case, which are resident in scores of email accounts since Plaintiffs' legal team regularly uses internal email to discuss BOC's productions. Plaintiffs only located ▓▓▓ within archived emails because, as noted above, several members of Plaintiffs' legal team recalled ▓▓▓ from the time of its production given its obvious potential significance to BOC's liability. The Protective Order does not require Plaintiffs to search the archived emails of Plaintiffs' entire litigation and support team (consisting of English and Chinese-speaking BSF partners, counsel, associates, summer associates, and paralegals) for all copies of each of the thousands of pages that BOC has clawed back, as BOC suggests,[2] nor would it be feasible to do so given the nature of modern, major litigation. Nevertheless, having discovered a copy of the page in question in our firm's email system, Plaintiffs have now destroyed those copies as well.

Nor did Plaintiffs commit any "violation" of the Protective Order by referring to ▓▓▓ in their recent correspondence with BOC and attaching a copy of the ▓▓▓ to one of those letters. Contrary to BOC's suggestion that Plaintiffs "use[d]" ▓▓▓ affirmatively in this litigation, and contrary to the case law on which BOC relies in which the conduct of sanctioned parties "posed a threat to [the] confidentiality and privacy" of protected information,[3] Plaintiffs only referred to the data in ▓▓▓ in confidential communications to BOC's counsel, and for the sole purpose of obtaining an explanation for the inconsistencies between the data and BOC's Amended Interrogatory Response. Even without ▓▓▓, Plaintiffs' counsel would have raised the same question based on their recollection of the document. In any event, Plaintiffs have now complied with BOC's request that they destroy all surviving copies of ▓▓▓ in email accounts or otherwise. To the extent BOC requests that Plaintiffs' counsel search their archived emails for all copies of each of the over 6,700 pages of documents that BOC has clawed back to date, that is unwarranted and infeasible for the reasons explained above.[4]

**BOC should be ordered to explain the contradiction between its Amended Interrogatory Response** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[2] The claw-back provisions of the Protective Order do not require searching or destroying attorney work product; they apply only to the inadvertently-produced "Discovery Material" itself. Protective Order at § J.2.

[3] BOC Ltr. at 1 (citing *Hunt v. Enzo Biochem, Inc.*, 904 F. Supp. 2d 337, 343 (S.D.N.Y. 2012)).

[4] BOC claims that Plaintiffs used "a previously clawed back document as a deposition exhibit" at the deposition of Wang Qi and attached that document as an exhibit to a filing, but that "clawed back document" is the same non-privileged November 2010 meeting minutes from which the Court "read whole sentences into th[e] record" at a July 19, 2013 conference, and relied on to make rulings at that conference. *See* 7/19/13 Tr. at 33:16–35:3 ("Once the Court relies on a document to make any ruling . . . I can't seal this record."). BOC has not objected to Plaintiffs' retention of that document, and explicitly consented to Plaintiffs' use of the document in another court filing.

BOIES, SCHILLER & FLEXNER LLP

December 2, 2014          Hon. Shira A. Scheindlin          Page 4

███████████████████████████████ Plaintiffs are—at minimum—entitled to a complete explanation, and request that the Court order BOC to provide that explanation.

██████████████ **is not privileged.** BOC claims that ██████████ is protected by the attorney-client and work product privileges. BOC's claims of privilege are meritless, and the Court should overrule them and order BOC to produce the document.[5]

██████████████ is not protected by the attorney-client privilege because it is not a communication "between a client and his or her attorney"; there is no evidence that it was created "for the purpose of obtaining or providing legal assistance"; and it was not "kept confidential". *Brennan Ctr. for Justice at New York Univ. Sch. of Law v. U.S. Dep't of Justice*, 697 F.3d 184, 207 (2d Cir. 2012). ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

██████████████ is also not protected by the attorney work product doctrine, because it in no way reflects "attorneys' mental impressions, opinions or legal theories concerning specific litigation." 4/9/13 Opinion & Order, at 15–16 (Dkt. # 244). Moreover, ████████████████████ and the "work product protection is not available for documents that . . . would have been created in essentially similar form irrespective of litigation." *Allied Irish Banks v. Bank of Am., N.A.*, 240 F.R.D. 96, 106 (S.D.N.Y. 2007). Even if ██████████ were protected by the attorney work product doctrine, there is substantial need for disclosure. As "purely factual information" prepared by non-lawyers, ██████████ is "entitled to only the most minimal protection." *Nat'l Cong. for Puerto Rican Rights v. City of N.Y.*, 194 F.R.D. 105, 109–110 (S.D.N.Y. 2000). ██████████████ because that data is critical to assessing whether and when BOC had knowledge of suspicious activity in the Shurafa accounts. *See* 9/22/14 Tr. at 20:22–21:13 ("Let's say that the number [of STRs] turns out to be 40. That might lead to an argument that the bank knew or should have known or it acted with deliberate indifference."). The need for disclosure of ██████████ is only amplified ████████████████████████

---

[5] Plaintiffs' motion to compel production of ██████████ is not "untimely" because the July 14, 2014 deadline to raise *then-existing* discovery disputes has passed, as BOC suggests. Plaintiffs first moved to compel production of the Chinese documents over which BOC asserts attorney-client and work product privileges on August 20, 2013, and certain of those privilege claims—including BOC's claim of privilege over the larger 51-page document containing ██████████—remain pending before Judge Gorenstein. Because BOC's Claw-Back Letter merely asserted that the 51-page document containing ██████████ was "in whole or *in part*" privileged (Ex. A to BOC Ltr., at 1), it was only on November 21, 2014, that BOC made clear that it was asserting privilege over ██████████ in particular. Moreover, the full significance ██████████████████████████████████████████ These circumstances constitute "good cause" to seek production of ██████████ now, as contemplated by the scheduling order cited by BOC. *See* Am. Sched. Order ¶ 1(e) (Dkt. # 586).

[6] Even if ██████████ were protected by the attorney-client privilege, BOC would not be relieved of its obligation ██████████ *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) ("[t]he privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts"). Similarly, as BOC itself has admitted, "[t]he work product doctrine protects *documents and tangible things*, not the underlying facts" (11/14/14 BOC Opp'n, at 28 (Dkt.# 722)).

BOIES, SCHILLER & FLEXNER LLP

December 2, 2014                Hon. Shira A. Scheindlin                Page 5

Respectfully yours,

*Lee Wolosky/ono*

Lee Wolosky

cc: All Counsel (via email)

Attachments

BOIES, SCHILLER & FLEXNER LLP