UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| SHERYL WULTZ, et al., | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. 1:11-cv-01266 (SAS) (GWG) |
| BANK OF CHINA, LTD., | ) ) | |
| Defendant. | ) ) ) | |

RULE 72(A) OBJECTION TO THE JANUARY 21, 2015 ORDER OF
THE HONORABLE GABRIEL W. GORENSTEIN REGARDING
PLAINTIFFS' REQUESTS FOR DOCUMENTS
WITHHELD AS PROTECTED BY THE
ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT DOCTRINE

DORSEY & WHITNEY LLP
Lanier Saperstein, Esq.
Nathan T. Alexander, Esq.
Glenn M. Salvo, Esq. (*admitted pro hac vice*)
51 West 52nd Street
New York, New York 10019
Tel.:  (212) 415-9200
Fax:  (212) 953-7201

*Attorneys for Bank of China, Ltd.*

January 30, 2015

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

THE FACTUAL BACKGROUND ...............................................................................4

     I.       The Post-Demand Letter Investigation .....................................................4

     II.     The Post-Complaint Investigation. ..........................................................8

THE PROCEDURAL BACKGROUND .......................................................................9

ARGUMENT .............................................................................................................12

     I.       The Rule 72 Standard ..............................................................................12

     II.     The Court Should Set Aside Judge Gorenstein's Order Because It Fails to Protect BOC's Work Product Documents. ............................................13

            A.    BOC Established Work Product Protection. .................................13

            B.    The Order is Contrary to Law Because It Improperly Requires Additional "Evidence" to Establish Work Product. ......................15

            C.    The Cases Cited By the Order Do Not Support the Order's New Formulation of the Work Product Standard. .............................19

            D.    The Order Advances a Work Product Standard that Creates Strong Disincentives to Investigate Allegations of Wrongdoing. .........22

            E.    The Work Product Documents BOC Previously Provided to the Court for *In Camera* Review Demonstrate that the Documents Were Prepared in Anticipation of Litigation. .............................22

            F.    The Order Inappropriately Requires BOC to Produce Even Post-Complaint Documents. ..................................................................23

     III.    The Court Should Set Aside Judge Gorenstein's Order Because It Fails to Protect the Attorney-Client Privilege......................................................24

            A.    The Order Erroneously Requires that Documents Be Requested by Counsel for the Attorney-Client Privilege to Apply. ................24

            B.    The Post-Complaint Documents Also Are Protected by the Attorney-Client Privilege.........................................................27

CONCLUSION...........................................................................................................28

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allied Irish Banks v. Bank of Am., N.A.*,
    240 F.R.D. 96 (S.D.N.Y. 2007) ................................................................. *passim*

*Bilski v. Kappos*,
    561 U.S. 593 (2010) (Stevens, J., concurring in the judgment)...............................17

*Catskill Dev., L.L.C. v. Park Place Entm't Corp.*,
    206 F.R.D. 78 (S.D.N.Y. 2002) .................................................................13

*In re Cnty. of Erie*,
    473 F.3d 413 (2d Cir. 2007).......................................................................24

*Commodity Futures Trading Comm'n v. Weintraub*,
    471 U.S. 343, 105 S. Ct. 1986, 85 L. Ed. 2d 372 (1985).........................................25

*DeBeers LV Trademark Ltd. v. DeBeers Diamond Syndicate Inc.*,
    2006 WL 357825 (S.D.N.Y. Feb. 15, 2006).....................................................19

*In re General Motors Ignition Switch Litigation*,
    -- F.3d --, 2015 WL 221057 (S.D.N.Y. Jan. 15, 2015)....................................25, 26

*In re Grand Jury Proceeding*,
    79 Fed. Appx. 476, 2003 WL 22469714 (2d Cir. Oct. 31, 2003)............................13

*In re Grand Jury Subpoena*,
    599 F.2d 504 (2d Cir. 1979).......................................................................25

*Gucci Am., Inc. v. Guess?, Inc.*,
    2011 WL 9375 S.D.N.Y. Jan. 3, 2011) (Scheindlin, J.) .......................................12

*Hickman v. Taylor*,
    329 U.S. 495 (1947) (Jackson, J., concurring).................................................22

*In re John Doe Corp.*,
    675 F.2d 482 (2d Cir. 1982).......................................................................26

*In re Kellogg Brown & Root, Inc.*,
    756 F.3d 754 (D.C. Cir. 2014)....................................................................28

*In re Leslie Fay Cos., Inc. Sec. Litig.*,
    161 F.R.D. 274 (S.D.N.Y. 1995) .............................................................20, 21

*MSF Holding Ltd. v. Fiduciary Trust Co. Int'l*,
   2005 WL 3046287 (S.D.N.Y. Nov. 10, 2005) ...................................................19, 20

*Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & CIE. S.C.A., et al.*,
   258 F.R.D. 95 (S.D.N.Y. 2009) ...............................................................................13

*In re Otal Invs. Ltd. v. Capital Bank Pub. Ltd. Co.*,
   2005 WL 1473925 (S.D.N.Y. June 22, 2005) ...........................................................20

*Pall Corp. v. Entegris, Inc.*,
   655 F.Supp.2d 169 (E.D.N.Y. 2008) .................................................................12, 13

*Schaeffler v. United States*,
   No. 14-1965-cv .........................................................................................................17

*Trammel v. United States*,
   445 U.S. 40 (1980) ...................................................................................................26

*United States v. Adlman*,
   134 F.3d 1194, 1198 (2d Cir. 1998) ................................................................. *passim*

*United States v. Bilzerian*,
   926 F.2d 1285 (2d Cir. 1991) ...................................................................................26

*United States v. Mejia*,
   655 F.3d 126 (2d Cir. 2011) .....................................................................................24

*Upjohn Co. v. United States*,
   449 U.S. 383 (1981) ............................................................................................26, 28

*Vaden v. Discover Bank*,
   556 U.S. 49 (2009) ...................................................................................................17

*Verizon Directories Corp. v. Yellow Book USA, Inc.*,
   2004 WL 4054842 (E.D.N.Y. July 22, 2004) ...........................................................20

*In re Woolworth Corp. Sec. Class Action Litig.*,
   No. 94-cv-2217 (RO), 1996 WL 306576 (S.D.N.Y. June 7, 1996)............................17

**Statutes**

Alien Tort Claims Act, 28 U.S.C. § 1350 ...................................................................4

Antiterrorism Act, 18 U.S.C. § 2333(a) .....................................................................4

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, Bank of China, Ltd. ("BOC") objects to the Order and Opinion issued by The Honorable Magistrate Judge Gabriel W. Gorenstein on January 21, 2015, Dkt. No. 792 (the "Order")[1].

## PRELIMINARY STATEMENT

The Order requires BOC to produce work product and attorney-client privileged documents prepared by BOC after receipt, and as a direct result, of a January 24, 2008 letter from plaintiffs' counsel, Robert Tolchin, to BOC, which is commonly known in this litigation as the "Demand Letter." The Order acknowledged that the Demand Letter expressly threatened litigation against BOC, and that BOC engaged in an investigation as a direct result of the Demand Letter. Indeed, the Order stated that the Court "accept[s] BOC's contention that BOC's receipt of the Demand Letter triggered the investigation and that BOC anticipated the potential for litigation as a result of the threat in the Demand Letter." (Order at 19-20.) As the documents at issue were created as a part of that investigation, the Court's work product analysis should have stopped with that factual determination. Remarkably, however, the Court not only ordered the production of BOC's post-Demand Letter privileged documents, it went a step further, by requiring BOC to produce its privileged communications and protected work product prepared while BOC was working with its then-outside U.S. counsel of record, Walter P. Loughlin of K&L Gates, to defend itself _after_ plaintiffs filed their Complaint on August 22, 2008. At that point, BOC did not merely "anticipate" litigation, reasonably or otherwise. The plaintiffs had filed their lawsuit.

The Order is contrary to law for the following reasons:

---

[1] A copy of the Order is attached as Exhibit B to the Declaration of Nathan T. Alexander (the "Alexander Decl."), submitted herewith.

First, BOC created the documents at issue because of threatened—or, after August 22, 2008, *actual*—litigation, and those documents, at a minimum, are entitled to work product protection under Federal Rule of Civil Procedure 26(b)(3) and Second Circuit precedent.  The Order, however, refused to give those documents their due protection under the law.  Rather, the Order engaged in a "counterfactual" exercise to determine whether BOC might have created those documents in essentially the same form in the absence of the Demand Letter (or, indeed, in the absence of actual litigation).  Problematically, the Order acknowledged that the challenged post-Demand Letter documents had, in fact, been created as part of the investigation "prompted" or "triggered" by the Demand Letter, but then placed on BOC what the Court viewed as a separate burden to prove that the documents would not have been created without the threat of litigation.  As the Order noted, this "'factual' determination is in reality a 'counterfactual' determination inasmuch as it requires a court to consider what 'would have' happened had some set of factual circumstances existed other than the ones that actually existed."  (Order at 20 n.10.) The Order fashioned a new rule that effectively eliminates work product protection for any party that investigates allegations of wrongdoing asserted in a litigation threat letter for purposes of mounting a litigation defense, unless the party separately proves what it would have done had there been no threat of litigation.  At that point, the party is no longer offering factual affidavits on what it did, but rather pure speculation on what it might have done in an alternative "counterfactual" situation.  Such an onerous and cumbersome rule is clearly erroneous and contrary to Rule 26(b)(3)'s protection of documents created "in anticipation of litigation," requiring reversal under Rule 72(a).[2]

---

[2]     Judge Gorenstein determined that his "counterfactual" analysis was dispositive in denying work product protection, and therefore he did not consider further arguments regarding work product protection.  (Order at 19.)  Therefore, there are no other issues

Second, the Order creates an unduly burdensome standard for establishing the attorney-client privilege.  While finding that BOC collected information with the expectation that "external counsel would use and analyze the findings for the purposes of assessing the merits of the allegations in the Demand Letter and developing a litigation strategy if necessary," (Order at 5); (*see also* Alexander Decl., Ex. A, Declaration of Geng Wei ("Geng Decl."), at ¶ 6), the Order nonetheless held that the attorney-client privilege did not apply because no U.S. attorney directed that the documents be collected.  Such a standard is contrary to law and effectively eliminates the possibility of protecting a client's efforts to gather information necessary to formulate a request to counsel for legal advice.  It is contrary to law and should be reversed.

The Court has already reviewed a sampling of documents that are covered by the work product and attorney-client doctrines.  The Court recognized that the documents reflected BOC's efforts in response to the Demand Letter:  "The first category of documents related to the bank's post demand letter internal investigation supports the bank's contention that it took great care to collect and analyze all relevant documents."  (*See* Alexander Decl., Ex. C, Jan. 8, 2015 Hr'g Tr. at 11:19-22.)  The Court declined to rule as to whether those documents should be produced because the question of work product protection was at that time before Judge Gorenstein.  (*Id.* at 12:9-12.)  BOC respectfully asks the Court to consider the Court's prior review of documents and recognize that BOC properly claimed work product protection and attorney-client privilege on those documents.[3]

---

currently before the Court on BOC's objection.  Accordingly, BOC does not address other arguments that plaintiffs raised, and reserves the right to address such issues in future motion practice as needed.

[3]  BOC recognizes that the Court, at BOC's request, returned the documents it reviewed *in camera* for the litigation hold issue.  BOC is prepared to provide those documents to the Court promptly if allowed by the Court to do so.

## THE FACTUAL BACKGROUND

**I.     The Post-Demand Letter Investigation**

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████. (Geng Decl. ¶ 3.)  The Demand Letter, "Re:

Impending Legal Action in United States Courts Against Bank of China," informed BOC that

Mr. Tolchin was going to commence a lawsuit against BOC:

> We are now preparing to file a civil action on behalf of our clients against BOC. That action will be filed in federal court within the next few weeks. The Plaintiffs who are American citizens will assert claims against BOC under the civil provisions of the Antiterrorism Act, 18 U.S.C. § 2333(a) ("ATA"). There is no question whatsoever that BOC's conduct is actionable under § 2333(a) of the ATA. The Israeli Plaintiffs will assert claims against BOC under the Alien Tort Claims Act, 28 U.S.C. § 1350 ("ATCA"). BOC's conduct is clearly actionable under the ATCA.
>
> Additionally, all the Plaintiffs will assert supplemental claims against BOC (including wrongful death, assault, battery, intentional infliction of emotional distress and civil conspiracy) under New York, Florida and Israeli law.
>
> * * *
>
> In light of the numerous precedents establishing the proper quantum of damages awarded to victims of terrorism under the ATA and ATCA, BOC faces damages liability in this case of several hundred million dollars or more.
>
> While our clients' claims are extremely strong and BOC's liability is patent, we would nevertheless consider a pre-suit settlement. Resolving this matter promptly without suit would have advantages for all parties. Indeed, given BOC's clear-cut liability and substantial damages exposure, a pre-suit settlement would certainly seem to be the prudent course for BOC.
>
> If BOC has an interest in exploring the possibility of a pre-suit settlement, please advise forthwith. Otherwise, absent immediate confirmation that

BOC is willing to enter serious settlement negotiations, we will file suit with no further notice.

(Demand Letter at 3-5 (citations omitted).) 

. (Geng Decl. ¶ 3.)

. (Geng Decl. ¶ 4; *see also* Alexander Decl., Ex. D, Declaration of Daniel W. Beebe ("Beebe Decl."), at Ex. 12, Deposition of Wang Qi ("Wang Dep.") at 414:3-415:2.)

. (Geng Decl. ¶ 6.)

. (*Id.*)

The fact that BOC anticipated litigation following receipt of the Demand Letter, in which plaintiffs threatened litigation, should hardly be a surprise.   Indeed, this Court previously understood the fact that the Demand Letter caused BOC to reasonably anticipate litigation.  (*See* Alexander Decl., Ex. E, Dec. 4, 2014 Hr'g Tr. at 16:3-8) (Court:  "Had you already served a demand letter?  I don't mean you, but some lawyer."  Counsel:  "[Yes]."  Court:  "They certainly can say they acted in anticipation of litigation.  That much they can say").



. (Geng Decl. ¶¶ 5, 8-10, 15, 16, 19-21.)

. (Geng Decl. ¶ 6.)

The chronology of the collecting of this information is described in detail in Dr. Geng's declaration, and BOC's privilege logs catalog the resulting documents in which this information was collected, organized, and communicated to external U.S. legal counsel for the purpose of seeking legal advice.  As Your Honor described at the January 8, 2015 conference, the Court has reviewed several of these documents *in camera* in connection with the litigation hold issue.

. (Geng Decl. ¶ 12.)



---

[4]

(Geng Decl. ¶ 8 n.1.)

████████████████████████████████████████████████

██████████. (Geng Decl. ¶ 12.)

   ██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████ (Geng Decl. ¶¶ 19, 21.) ████████████████████

███████████████████████████████████████████. (*See* Beebe

Decl., Ex. 4, Nov. 7, 2013 BOC Guangdong Branch Privilege Log, at Entry No. 82 (Feb. 19,

2008)); (*see also id.* at Entry No. 199 (Mar. 19, 2008) ██████████████████████

██████████████████████████████████████ ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████. (Geng Decl. ¶

18.)

   ██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████.

(Geng Decl. ¶ 22.) ███████████████████████████████

██████████████████████. (*Id.*) █████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████.  (Geng

Decl. ¶ 23.)

In response to BOC's Proposed Statement of Material Facts, plaintiffs offered no evidence to contradict these facts, and Judge Gorenstein, in his opinion below, specifically "accept[ed] BOC's contention that BOC's receipt of the Demand Letter triggered the investigation and that BOC anticipated the potential for litigation as a result of the threat in the Demand Letter."  (Order at 20.)  As Judge Gorenstein acknowledges in his Order, by this motion plaintiffs "seek to compel the production of documents relating to investigations conducted by BOC in 2008 into Shurafa's accounts prompted by a letter sent by plaintiffs' counsel informing BOC of their intention to file suit."  (*Id.* at 1.)

## II.   The Post-Complaint Investigation.



██████████████████████████████████████████.[5]  (Def. Prop. Fact No. 29); (Geng Decl. ¶ 23.) ███████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████.  (Geng Decl. ¶ 23.) ████████████████

████████████████████████████████████  (*Id.*)

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████.  (*Id.*)

---

[5]       The Complaint was filed in Los Angeles, California, with the caption *Zahavi v. Bank of China, Limited.*

Plaintiffs, by this motion, have sought — and Judge Gorenstein has directed BOC to produce — BOC's internal communications about BOC's investigation and internal discussion of the allegations in plaintiffs' Complaint.  BOC's privilege logs identify these documents as related to BOC's investigation of the allegations in the Complaint.  (*E.g.*, Pls.' Appendix. C, p.5, Entry No. 472 ██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████ *id.* at p. 7, Entry 494 ███████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████); (*id.* at p. 9, Entry 520 ██████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████"); (*id.* at p.14, Entry 571

██████████████████████████████████████████████████████

████████████████████████████████████████████████████"); *id.* at p. 30,

Entry 698 ████████████████████████████████████████████████████

██████████████████ *id* at p. 43, Entry 571 ████████████████████████████

██████████████████████████████████████████████████████ Again,

Your Honor will recall reviewing several of these types of documents *in camera* in connection with the litigation hold issue.

## THE PROCEDURAL BACKGROUND

In plaintiffs' June 27, 2014 letter to Your Honor (Alexander Decl., Ex. F) (Dkt. No. 544), plaintiffs sought production of documents related to BOC's post-Demand Letter and post-Complaint investigations that BOC had logged as subject to the work product protection and

attorney-client privilege.  Plaintiffs challenged the sufficiency of BOC's privilege logs, whether the attorney-client privilege applied to BOC's documents, and whether BOC's assertion of work product protection "should be overridden" because plaintiffs asserted that they had a "substantial need" for BOC's protected documents.  Arguing only that the work product protection for these documents should be overridden, plaintiffs did not dispute in their June 27, 2014 letter, nor in their July 15, 2014 reply letter (Alexander Decl., Ex. G) (Dkt. No. 562) in response to BOC's July 9, 2014 opposition letter (Alexander Decl., Ex. H) (Dkt. No. 554), that BOC's post-demand letter and post-Complaint investigation documents were protected work product created "in anticipation of litigation."

At the July 17, 2014 hearing on plaintiffs' motion, Judge Gorenstein, found that BOC's privilege logs adequately described the documents over which BOC claimed the protections of the work product doctrine and the attorney-client privilege.  (*See* Ex. D, Beebe Decl. Ex. 1, July 17, 2014 Hr'g Tr. at 40:3-8; 61:6-7). To finally assess plaintiffs' challenges to BOC's assertion of the attorney-client privilege with respect to BOC's post-Demand Letter and post-Complaint investigation documents, and whether plaintiffs could meet their burden of demonstrating a "substantial need" for BOC's protected work product, Judge Gorenstein requested that BOC provide an affidavit detailing "the chronology of who told what to whom and how" with respect to BOC's investigations of the allegations in plaintiffs' pre-suit Demand Letter and their subsequently-filed Complaint.  (*Id*. at 61:14-17.)

On August 5, 2014, plaintiffs submitted a Rule 72 Objection to Your Honor, arguing that Judge Gorenstein's ruling was inconsistent with Your Honor's earlier orders in this case.  At the August 11 conference, Your Honor rejected plaintiffs' argument and affirmed Judge

Gorenstein's ruling that BOC's privilege logs were sufficient.  (*See* Beebe Decl., Ex. 2, August 11, 2014 Hr'g Tr. at 4:8-9).

On August 27, 2014, BOC served plaintiffs with the August 27, 2014 Declaration of Geng Wei, providing the chronology of BOC's post-Demand Letter and post-Complaint investigation in accordance with the Court's instructions.  (*See* Geng Decl.).  Dr. Geng was then deposed by plaintiffs for two full days, on August 28 and 29, 2014.

On October 28, 2014, plaintiffs brought the present motion, seeking to challenge BOC's claims of attorney-client privilege and work product protection for documents identified in Appendices A, B, and C to plaintiffs' October 28, 2014 Letter Brief.  (*See* Alexander Decl., Ex. I, October 28, 2014 Letter Brief ("10/28/2014 Letter Brief"), at 1-2 & n.4 (Dkt. No. 697).)[6]  For the first time with respect to BOC's protected work product, they asserted that BOC's work product resulting from the post-Demand Letter and post-Complaint investigations was not protected because it was not prepared "in anticipation of litigation."   BOC responded on November 14, 2014 (Alexander Decl., Ex. J) (Dkt. No. 722).   Plaintiffs filed a reply on November 19, 2014 (Alexander Decl., Ex. K) (Dkt. No. 729), as well as a subsequent letter on the "substantial need" issue on January 12, 2015 (Dkt. No. 778), to which BOC responded on January 20, 2015 (Dkt. No. 784).

Judge Gorenstein also asked that the parties prepare statements of undisputed facts in connection with this motion, which the parties prepared and filed along with their briefs (Alexander Decl., Exs. L, M; N) (Dkt. Nos. 697-2, 722-1; 729-3.).

---

[6]     While those Appendices are labeled as BOC's privilege logs, they are not — plaintiffs have omitted from their Appendices every log entry that specifically references the participation in BOC's investigations of a U.S.-licensed lawyer — and there are many such documents — to give the misleading impression that U.S.-licensed lawyers played no role in the investigation of the allegations in plaintiffs' pre-suit Demand letter or their Complaint.

On January 21, 2015, Judge Gorenstein issued the Order (Dkt. No. 792), to which BOC now objects pursuant to Rule 72(a).  Judge Gorenstein issued a stay of the Order, to permit BOC to bring this Rule 72 Objection.

## ARGUMENT

The legal analysis starts and should stop with this "accepted," established, uncontroverted fact:  BOC created the documents in question in anticipation of litigation.  At a minimum, the documents are protected as work product.  The Order is contrary to law because, while it finds that the documents were created because of expressly threatened litigation, it nonetheless orders the production of those documents.  The Order is also contrary to law because it requires the production of documents protected by the attorney-client privilege.  In short, Judge Gorenstein has effectively created new rules for establishing work product protection and attorney-client privilege.  Judge Gorenstein's new rules prevent an organizational client like BOC from communicating with an attorney for the purpose of obtaining legal advice unless the attorney first directs the client to do so.  Routine requests for legal advice from within the company, and the documents prepared for the purpose of seeking that legal advice, are left unprotected as they pass through the company on their way to the company's outside counsel.  These new standards are contrary to controlling Second Circuit authority and must be overturned pursuant to Fed.R.Civ.P. 72(a).

## I.     The Rule 72 Standard.

"Rule 72(a) provides that a district judge in the case must consider timely objections to a nondispositive order and modify or set aside any part of the order that is clearly erroneous or contrary to law."  *Gucci Am., Inc. v. Guess?, Inc*., 2011 WL 9375, at *1 (S.D.N.Y. Jan. 3, 2011) (Scheindlin, J.).  An order is contrary to law when it fails to apply or misapplies relevant case law or rules of procedure, or runs counter to controlling authority.  *Id*.; *Pall Corp. v. Entegris,*

*Inc.*, 655 F.Supp.2d 169, 172 (E.D.N.Y. 2008); *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002).

## II.     The Court Should Set Aside Judge Gorenstein's Order Because It Fails to Protect BOC's Work Product Documents.

### A.     BOC Established Work Product Protection.

Rule 26(b)(3) (Trial Preparation: Materials) protects work product from discovery:

> (A) Documents and Tangible Things.   Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).

Fed.R.Civ.P. 26(b)(3).   As Judge Gorenstein correctly acknowledged, Rule 26(b)(3) protects the confidential work product of the parties themselves,[7] like that of their legal counsel, when prepared in anticipation of litigation or trial is protected.   (Order at 18-19.)

In *United States v. Adlman*, the controlling Second Circuit case on work product protection, the court stated that work product protection applies if "the document can fairly be said to have been prepared or obtained <u>because of</u> the prospect of litigation."   134 F.3d 1194, 1198 (2d Cir. 1998); *see also In re Grand Jury Proceeding*, 79 Fed. Appx. 476, 2003 WL 22469714, at *2 (2d Cir. Oct. 31, 2003) (a document is prepared in anticipation of litigation when it was prepared or obtained because of the prospect of litigation) (quoting *Adlman* at 1202); *Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & CIE. S.C.A., et al.*, 258 F.R.D. 95, 102 (S.D.N.Y. 2009) ("[A] document qualifies for work-product protection if, 'in light of [its]

---

[7]     Rule 26 provides an additional, heightened layer of protection to work product revealing an attorney's mental processes to allow the lawyer to prepare and develop legal theories and strategy with an eye toward litigation "free from unnecessary intrusion by his adversaries."   *Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.*, 258 F.R.D. 95, 102 (S.D.N.Y. 2009) (citations omitted).   Materials that would reveal these mental processes "are sacrosanct, and receive heightened protection." *Id.* at 102 (*citing United States v. Nobles*, 422 U.S. 225, 238 (1975)).   This protection for attorney opinion work product is, however, a separate and additional layer of protection.

nature ... and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'") (internal quotations omitted).

The Second Circuit noted that "[n]owhere does Rule 26(b)(3) state that a document must have been prepared to aid in the conduct of litigation in order to constitute work product, much less *primarily* or *exclusively* to aid in litigation." 134 F.3d at 1198 (emphasis added).  Starting with Rule 26(b)(3) itself, *Adlman* concerned a study prepared for an attorney assessing the likely result of litigation that was expected to result if the defendant company entered into a particular business transaction.  *Id.* at 1195.  The Second Circuit found that the "primary or ultimate purpose of making the study was to assess the desirability of [the] business transaction."  *Id.* However, the court saw no basis for denying privilege "merely because the document was created for a business purpose rather than for litigation assistance."  *Id.,* 134 F.3d at 1200.  "The fact that a *document's purpose is business-related appears irrelevant* to the question whether it should be protected under Rule 26(b)(3)."  *Id.* (emphasis added).

In applying the law to this case, BOC begins with the same factual premise from which Judge Gorenstein began his work product analysis:  "To start off, we accept BOC's contention that BOC's receipt of the Demand Letter triggered the investigation and that BOC anticipated the potential for litigation as a result of the threat in the Demand Letter."  (Order at 19-20.)  The Order acknowledges that "Plaintiffs now seek to compel the production of documents relating to investigations conducted by BOC in 2008 into Shurafa's accounts *prompted by a letter sent by plaintiffs' counsel informing BOC of their intention to file suit*."  (*Id.* at 1.)  That portion of the Order is consistent with the evidence presented by BOC.  This factual premise is not disputed by

plaintiffs.[8]  This Court also noted that the Demand Letter expressly put BOC into a litigation posture.

> Court:    Had you already served a demand letter?  I don't mean you, but some lawyer."
>
> Counsel:    There had been a demand letter by that time, your Honor.
>
> Court:    They certainly can say they acted in anticipation of litigation. That much they can say.

(Ex. E, 12/4/14 Hr'g Tr. at 16:3-8.)   Those uncontroverted facts establish the work product protection under Fed.R.Civ.P 26(b)(3) and *Adlman*. ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████ (Geng Decl. ¶ 6. (emphasis added).)

Here, BOC initiated its investigation of the allegations in plaintiffs' Demand Letter precisely because plaintiffs' Demand Letter threatened litigation.  This uncontroverted evidence is dispositive of the work product issue.  All of the documents on BOC's privilege log were created *because of* the Demand Letter, and therefore, all are protected as work product.

**B.    The Order is Contrary to Law Because It Improperly Requires Additional "Evidence" to Establish Work Product.**

Despite the uncontroverted facts that BOC created the documents at issue because BOC anticipated litigation, Judge Gorenstein held that work product protection did not apply, regardless of whether the documents were created before or after the filing of plaintiffs' Complaint.  Order at 22.  This holding is based entirely on the clearly erroneous finding that BOC failed to establish that the documents would not have been created in "essentially similar

---

[8]    Plaintiffs have ***never*** disputed that the documents with respect to which BOC has asserted the work product protection were prepared in anticipation of litigation.

form irrespective of the litigation." (Order at 19 (quoting *Adlman* at 1202).) BOC provided the evidence of what actually transpired: BOC's receipt of the Demand Letter caused (in the Order's words "triggered" or "prompted") BOC to investigate its allegations for purposes of determining its litigation strategy. The logical corollary is that the investigation (and its resulting documents) was not caused by some other event. Put another way, having conclusively established that the quarter landed heads-up, it was entirely illogical and improper for Judge Gorenstein to require separate proof that the quarter landed tails-down. The Order's illogical, contrary formulation is entirely unsupported by the case law cited in the Order.

*Adlman* sets the legal standard to determine whether the documents constitute work product because they were prepared in anticipation of litigation. This "element requires a showing that 'the document can fairly be said to have been prepared or obtained <u>because of</u> the prospect of litigation." (Order at 17 (quoting *Adlman*, 134 F.3d at 1202)); (*see also Allied Irish Banks v. Bank of Am., N.A.*, 240 F.R.D. 96, 106 (S.D.N.Y. 2007) ("A document is prepared in anticipation of litigation if 'in light of the nature of the document and the factual situation in the particular case, [it] can fairly be said to have been prepared or obtained because of the prospect of litigation.'") (internal quotations omitted).) "[T]he work product protection does not apply to 'documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation …'" (Order at 17).

The Order errs, however, in formulating a "counterfactual" analysis to determine whether the same documents that were in fact prepared because of anticipated litigation, would have been created if BOC "did not foresee litigation." The Order frames the question as follows:

> We note that this hypothetical circumstance does not involve imagining what BOC would have done had no one told it that the Shurafa accounts merited scrutiny. Rather, we imagine a hypothetical situation where BOC is made aware of all facts contained in the Demand Letter but sees no

threat of actual litigation itself – for example, if BOC were to learn of the facts surrounding the Shurafa accounts from its own internal mechanisms for detecting counter-terrorism and anti-money laundering, or from an outside source unlikely to institute litigation … In other words, we look at the question as follows: had BOC been presented with the identical facts about Shurafa in circumstances in which it did not foresee litigation, would it have generated essentially the same documents sought by plaintiffs on this motion?

(Order at 20-21.)

Although some case law engages in a "counterfactual" analysis in limited circumstances in order to assess whether documents were created because the party truly foresaw litigation, the Order's hypothetical analysis is contrary to this law. *See In re Woolworth Corp. Sec. Class Action Litig.*, No. 94-cv-2217 (RO), 1996 WL 306576, *3 (S.D.N.Y. June 7, 1996) ("[a]pplying a distinction between 'anticipation of litigation' and 'business purpose' is…artificial, unrealistic and the line between is…essentially blurred to oblivion.")[9]  The Order, for example, relies extensively on *Allied Irish Banks*, another Judge Gorenstein opinion on work product,[10] but does not apply the test articulated in *Allied Irish Banks*.  Judge Gorenstein, in *Allied Irish* Banks, held that the fact finder must first determine "whether there existed any reasons other than anticipation of litigation for generating the materials."  *Allied Irish Banks*, 240 F.R.D. at 106.  In this case, *all* of the evidence submitted by BOC establishes that the investigation was solely undertaken to assess the merits of the allegations in the Demand Letter.  Prior to receipt of the

---

[9]     The Supreme Court has criticized the use of a "counterfactual" analysis.  As Justice Stevens has observed, "counterfactuals are a dubious form of analysis." *Bilski v. Kappos*, 561 U.S. 593, 651 (2010) (Stevens, J., concurring in the judgment); *cf. Vaden v. Discover Bank*, 556 U.S. 49, 68 (2009) ("Perhaps events could have unfolded differently, but § 4 does not invite federal courts to dream up counterfactuals when actual litigation has defined the parties' controversy").

[10]    BOC notes that Judge Gorenstein's formulation of the "counterfactual" analysis for establishing work product protection is currently before the Second Circuit in *Schaeffler v. United States*, No. 14-1965-cv.

Demand Letter, there was no investigation at BOC regarding Shurafa.[11] 

(Geng Decl. ¶ 3); (*see also*

Geng Decl. ¶ 6

These circumstances stand in stark contrast to the fact pattern set forth in *Allied Irish Banks*, where the party invoking the work product protection conceded that it commissioned an investigation and report after discovering a well-known and highly publicized fraud for several reasons including "the fundamental need to understand how, why and when the losses occurred and who was responsible for helping cause or cover up the losses" and "to address the concerns of AIB's customers, shareholders, creditors, and the media …." 240 F.R.D. at 106. Plaintiffs cite to no evidence in which BOC has expressed similar business-related purposes regarding the investigation. Although plaintiffs generally allege that the investigation was conducted out of concern for BOC's reputation, the evidence demonstrates that the Bank feared reputational harm "because …[of the] potential lawsuit." (*See* 10/28/2014 Letter Brief at 11 n. 18). In other words, the entire purpose of the investigation was to assess the merits of the allegations and related litigation risks. Absent identifiable reasons other than the anticipation of litigation for

---

[11]     Indeed, plaintiffs' own Complaint alleges that BOC learned of Shurafa in 2005 (a fact which BOC denies), but allegedly "ignored" the demand that Shurafa's accounts be terminated. Complaint (Dkt. No. 12), ¶ 77. Taking plaintiffs' allegation as true, BOC did not investigate Shurafa (at least not until it received the Demand Letter and thereby faced the clear prospect of litigation).

generating the challenged documents on BOC's privilege log, the work product protection must be maintained.

### C.    The Cases Cited By the Order Do Not Support the Order's New Formulation of the Work Product Standard.

A brief summary of the case law cited in the Order demonstrates the error underlying Judge Gorenstein's analysis.  *Allied Irish Banks* involved a highly publicized trading scheme alleged to have resulted in $691 million in losses to plaintiff.  240 F.R.D. at 99.  After the fraud became clear to plaintiff, it hired an independent banking expert and law firm to investigate the scheme and make recommendations for changes.  *Id*.  Although the final report was released publicly, defendants sought documents that were created in the course of preparing the report and plaintiff unsuccessfully invoked the work product protection.  *Id*. at 102.

In *DeBeers LV Trademark Ltd. v. DeBeers Diamond Syndicate Inc.*, 2006 WL 357825, *1 (S.D.N.Y. Feb. 15, 2006), defendants sought documents containing a management consultant's recommendations regarding potential business opportunities.  Plaintiff unsuccessfully attempted to invoke the work product protection on the ground that the management consultant contemplated the possibility of litigation arising from the business opportunities considered.  *Id*.  The litigation was clearly not anticipated.  And there certainly was no threat of litigation that caused the party to create the recommendations regarding potential business opportunities.

In *MSF Holding Ltd. v. Fiduciary Trust Co. Int'l*, 2005 WL 3046287 at *2 (S.D.N.Y. Nov. 10, 2005), plaintiff informed defendant of its alleged right to enforce a letter of credit issued by defendant.  A representative of defendant subsequently sent internal emails to locate the collateral that backed the letter of credit and to determine whether an insurance policy covered the expense.  The court held that the work product protection did not apply with respect

to these emails on the ground that the emails would have been created absent the threat of litigation. The reasoning was as follows: "[w]hen presented with a letter of credit, a financial institution would normally investigate the circumstances surrounding its issuance and determine whether to honor it." *Id.*

In *In re Otal Invs. Ltd. v. Capital Bank Pub. Ltd. Co.*, 2005 WL 1473925 at *1 (S.D.N.Y. June 22, 2005), the Court held that a witness statement from the captain following the collision of a boat did not qualify for the work product protection because, regardless of potential litigation, the statement would have been taken to determine whether to discipline the captain and how to handle the vessel.

In *Verizon Directories Corp. v. Yellow Book USA, Inc.*, 2004 WL 4054842, at *2 (E.D.N.Y. July 22, 2004), an email containing information relevant to the business functions related to plaintiff's marketing activities could not be withheld on work product grounds.

Finally, in *In re Leslie Fay Cos., Inc. Sec. Litig.*, 161 F.R.D. 274, 281 (S.D.N.Y. 1995), defendant's Board of Directors directed its audit committee to commence an investigation after being informed of accounting irregularities on the company's financial statements. The documents created in the course of the investigation could not be withheld on work product grounds because the documents would have been created irrespective of litigation. *Id.* at 280.

In all of the cases above, the party unsuccessfully invoking the work product protection was aware first of underlying facts, which presented a business risk to the party. There was no clear threat of litigation.[12] Certainly none of the parties asserting work product learned of the underlying facts by means of, or as a result of, a litigation threat letter.

---

[12]    Although the plaintiff in *MSF Holdings* threatened to "proceed accordingly" if the letter of credit was not honored, *see* 2005 WL 3046287, at *1, the holding in that case does not rely upon this threat but rather reasons that, regardless of the circumstances, a financial

In not one of these cases did the court ever ask, as Judge Gorenstein did in this case, how a party would have behaved if it had no actual knowledge of the event in question.  To the contrary, the case law summarizes the unremarkable proposition that "[t]he mere contingency that litigation may result is not determinative.  *If in connection with an accident or event*, a business entity in the ordinary course of business conducts an investigation for its own purposes, the resulting investigatory report is producible in pre-trial discovery…."  *In re Leslie Fay Cos, Inc. Sec. Litig.*, 161 F.R.D. at 280 (emphasis added) (internal quotations omitted).

In this case, there was not an accident or event that triggered an internal investigation at BOC.  There is no authority for asking what BOC would have done had there been such an event because the reality is that, contrary to all of the case law cited above, there was nothing to put BOC on notice of the allegations in plaintiffs' Complaint until it received the Demand Letter.  As such, the only logical question remaining is whether the documents in question would have been created in substantially similar form in the absence of the threatened litigation.  *Allied Irish Banks*, 240 F.R.D. at 106.  The indisputable answer is no.  ██████████████████████

████████████████████████████████████████████████████.  (*See* Geng Decl. at ¶ 4.)  ████████

████████████████████████████████████████████████████████████████

██████████████████████████████████  (*See id*. at ¶¶ 4-23.)  The factual circumstances of this case and the nature of the challenged documents on BOC's privilege logs indicate that the documents were prepared *because of* the prospect of litigation, as the Order recognized.  BOC provided declarations and other evidence as requested by Judge Gorenstein to establish that its privileged documents were created in anticipation of litigation.  It is very much unclear as to

---

institution would investigate the circumstances surrounding the issuance of a letter of credit as a matter of course in determining whether to honor it.  *Id.* at *2.

what evidence could have been provided pursuant to the Order's new work product standard.[13] It is not reasonable to expect witnesses to testify to actions they would have taken if the actual scenario they faced was different than reality.  It is impossible to say how an investigation might have played out if there was no threat of litigation.

### D. The Order Advances a Work Product Standard that Creates Strong Disincentives to Investigate Allegations of Wrongdoing.

The new standard advanced by the Order is not only contrary to existing law, it effectively eliminates work product protection from any commercial enterprise, because a company could not prepare for litigation (including conducting an investigation to determine the merits of a litigation threat letter).  Companies could not investigate potential wrongdoing in order to meet the threat of litigation because all of their efforts and analysis would simply be turned over in litigation.  Such an outcome runs contrary to the policy rationale of the work product doctrine.  *See Adlman*, 134 F.3d at 1500 ("Discovery was hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary." (quoting *Hickman v. Taylor*, 329 U.S. 495, 516 (1947) (Jackson, J., concurring))).

### E. The Work Product Documents BOC Previously Provided to the Court for *In Camera* Review Demonstrate that the Documents Were Prepared in Anticipation of Litigation.

BOC submitted for *in camera* review documents that revealed BOC's efforts to preserve documents.  Many of those documents included litigation hold advice as a part of the investigation carried out following the Demand Letter.  Therefore, many of the litigation hold

---

[13]    While the Order faults BOC for not submitting sufficient "counterfactual" evidence, in the "counterfactual" world described in the Order, such "counterfactual" evidence cannot exist.  In the "counterfactual" world imagined in the Order, regardless of the threat of litigation, parties always investigate accusations of wrongdoing in the ordinary course of business.  So, the Order essentially concludes, investigative documents that were, in reality, created in anticipation of litigation are never entitled to protection because they would exist in the absence of the threat of litigation in the counterfactual world.

documents were also work product documents.  BOC encourages the Court to review those documents, which show on their face that BOC was carrying out its investigation, and creating the documents at issue here, in anticipation of litigation.

**F.      The Order Inappropriately Requires BOC to Produce Even Post-Complaint Documents.**

BOC conclusively established that it created the investigation documents in anticipation of litigation as demonstrated by the fact that the documents were created *because of* the Demand Letter.  It should have been beyond dispute that once the Complaint was filed and BOC was working with its counsel of record to defend itself in the lawsuit, BOC's internal communications about the Complaint are protected by the work product protection.  Each challenged entry on BOC's privilege logs states specifically that the document concerns BOC's investigation of allegations in the plaintiffs' Complaint.  Nevertheless, the Order erroneously denies BOC's claim of work product for post-Complaint documents.   Because these documents were created while BOC was working closely with its outside legal counsel to prepare its defense in this lawsuit, as described in the Geng Declaration and cataloged in BOC's privilege logs, these internal communications necessarily reveal the intertwined mental impressions, conclusions, opinions, lines of inquiry, areas of focus, and early theories of the case of BOC and BOC's outside legal counsel.  While BOC was not ordered to turn-over without redactions the express legal advice of K&L Gates and its other outside U.S. legal counsel or the mental impressions, conclusions, opinions, or legal theories of BOC or its outside U.S. legal counsel concerning the litigation, [14] production of the challenged post-Complaint documents in form and substance nevertheless would betray much of this core work product protection.

---

[14]      "If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."  Fed. R. Civ. P. 26(b)(3)(B).

**III.     The Court Should Set Aside Judge Gorenstein's Order Because It Fails to Protect the Attorney-Client Privilege.**

The Order erroneously denied BOC's claim of attorney-client privilege because BOC "has provided no evidence whatsoever that counsel ever directed that the information reflected in specific documents at issue here be prepared so that he could render legal advice to BOC." (Order at 14.)  This requirement has no basis in law and should be overturned.

**A.     The Order Erroneously Requires that Documents Be Requested by Counsel for the Attorney-Client Privilege to Apply.**

The scope of the attorney-client privilege is not limited to only those communications made at the direction of counsel. The Order notes that, "[t]he attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) (citing *In re Cnty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007)).  None of these three elements for attorney-client privilege impose a burden on a party to show that the communication was made only at the request of the attorney.  It is the Order that unilaterally imposes this requirement.  (*See* Order at 11-12 ("particularly where there is no proof that the attorney sought to have the individual collect the information at issue"); 13 ("BOC, however, provides no evidence — let alone evidence sufficient to meet its burden of proof — that any of the documents at issue in this motion were produced at the 'direction' of an attorney"); 14 ("BOC…has provided no evidence whatsoever that counsel ever directed that the information reflected in specific documents at issue here be prepared so that he could render legal advice to BOC"); and 15 ("[T]here is no evidence that any of the documents at issue were created at the direction of an attorney").)  Logic and the settled case law of this Circuit compels the rejection of this position.

Limiting attorney-client privilege to only those communications made at the direction of the attorney would lead to perverse results. Under this requirement, a client who describes his situation to an attorney before asking for advice would receive no protection. Yet the exact same information, from the exact same client, would receive protection if the client asked the attorney for advice before providing the information necessary for the attorney to answer. *See In re Grand Jury Subpoena*, 599 F.2d 504, 511 (2d Cir. 1979) (rejecting the use of formulaic tests to determine the applicability of privilege).

As with other applications of the attorney-client privilege, "the case of corporations … presents special problems." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348, 105 S. Ct. 1986, 1991, 85 L. Ed. 2d 372 (1985). "As an inanimate entity, a corporation must act through agents." *Id.* Just as an individual must mentally collect his or her thoughts before communicating with an attorney, so too must a corporation develop its understanding of a situation and formulate the questions it wishes to ask. No court has ever suggested that an individual can be forced to reveal his or her mental process of thinking through the known facts of a situation and deciding what questions to ask an attorney. It is equally absurd to suggest that a corporation, which can only carry out the "mental process" through its agents, must reveal the internal communications amongst a corporation's employees about what they should ask legal counsel, the functional equivalent of an individual's private contemplations. ██████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████ (Geng Decl. ¶ 6.) The investigation was clearly conducted with the intent of obtaining legal advice from U.S. counsel, and should be protected by the attorney-client privilege. *See In re General Motors Ignition Switch Litigation*, -- F.3d --, 2015 WL 221057, *8

(S.D.N.Y. Jan. 15, 2015) (holding that GM's internal investigation was protected by the attorney-client privilege because its purpose was to obtain legal advice).

A corporation's right to privately formulate the questions it must ask its attorneys and to discuss privately the answers it will provide to its attorneys serves the dual purposes of the attorney-client privilege. The privilege serves not only to ensure that clients are willing to make full disclosures, but also to prevent the ineffective advocacy that would inevitably result if clients did not fully disclose all the facts in their possession. *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). Effective advocacy cannot occur if the lawyer does not understand the client's goals for the representation. *Trammel v. United States,* 445 U.S. 40, 51 (1980) ("The lawyer–client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out"). For corporations, "it is only natural that [mid- and lower-level] employees would have the relevant information." *Upjohn Co. v. U.S.*, 449 U.S. 383, 391 (1981). Without communications "from every level of the corporate entity … lawyers would not have sufficient, accurate information to render sound and informed advice." *In re John Doe Corp.*, 675 F.2d 482, 488 (2d Cir. 1982) (internal quotations and citations omitted). It cannot be the case that effective advocacy requires an attorney to have an understanding of a client's reasons for seeking legal advice, while at the same time the client is unable to determine its own legal needs without destroying privilege. Dr. Geng's uncontroverted declaration clearly explains that the precise scenario discussed in *Upjohn* played out with BOC's investigation. (Geng. Decl. at ¶¶ 4-6.) ███████████████████████████████████████████████████████████.

*Id.* BOC then presented this information to U.S. counsel. The communications in this effort to obtain legal advice are protected by the attorney-client privilege.

**B.    The Post-Complaint Documents Also Are Protected by the Attorney-Client Privilege.**

The Order also erred in denying the protections of the attorney-client privilege to BOC's post-Complaint documents.  The basis articulated in the Order is that "there is no evidence connecting any of the documents . . . to any effort by BOC to obtain advice from Loughlin or any request by Loughlin to BOC in order to give such advice."  (Order at 14.)  The Order also erroneously states "[m]ore specifically, there is no testimony from Geng, Loughlin, or anyone else that Loughlin directed BOC to generate any of the documents sought by plaintiffs on this motion."  (Order at 14.)  This is clearly erroneous.  In describing why the challenged post-Complaint documents were created, the Dr. Geng declaration states as follows:



(Geng Decl. ¶ 23.)  At the July 17, 2014 hearing before Judge Gorenstein, BOC was directed to provide an affidavit describing "the chronology of who told what to whom and who, and how the documents got created, and it has to be tied to documents in this privilege log."  (Ex. D, Beebe Decl. Ex. 1, July 17, 2014 Hr'g Tr. at 61:14-17.)  That is exactly the information provided in Geng's declaration,[15] and there can be no question that the attorney-client privilege protects these

---

[15]    *See also* Geng. Decl. ¶ 5

, ¶ 8

."), ¶ 10

, ¶ 11                   ,

documents.  *See*, *e.g.*, *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 758 (D.C. Cir. 2014)

("[C]ommunications made by and to non-attorneys serving as agents of attorneys in internal

investigations are routinely protected by the attorney-client privilege."); *accord Upjohn Co. v.*

*United States*, 449 U.S. 383, 392-94 (1981).   These documents reveal BOC's collection of

information concerning the allegations in the Complaint for the purpose of seeking legal advice

from BOC's external U.S. counsel, BOC's collection and processing of requests for legal advice

from within BOC, as later communicated to BOC's external legal counsel, and BOC's collection

of further information at the direction of its external legal counsel for the purpose of advising

BOC in this lawsuit.  These documents are protected by the attorney-client privilege.

## CONCLUSION

For the reasons set forth in this Objection, BOC respectfully requests that this Court set

aside the January 21, 2015 order issued by Judge Gorenstein.

January 30, 2015                                Respectfully submitted,

                                                */s/ Lanier Saperstein*

                                                DORSEY & WHITNEY LLP
                                                Lanier Saperstein, Esq.
                                                Nathan T. Alexander, Esq.
                                                Glenn Salvo, Esq. (*admitted pro hac vice*)
                                                51 West 52nd Street
                                                New York, New York 10019
                                                Tel.: (212) 415-9200
                                                Fax: (212) 953-7201

                                                *Attorneys for Defendant Bank of China, Ltd.*