UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHERYL WULTZ, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| BANK OF CHINA LTD., | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

No. 1:11-cv-01266 (SAS) (GWG)

**MEMORANDUM OF BANK OF CHINA LIMITED IN SUPPORT OF
MOTION TO QUASH PLAINTIFFS' SUBPOENA FOR THE DEPOSITION OF,
AND DOCUMENT PRODUCTION BY, NITSANA DARSHAN-LEITNER**

SQUIRE PATTON BOGGS (US) LLP

Mitchell R. Berger
Alan T. Dickey
2550 M Street, N.W.
Washington, D.C.  20037
Tel.: (202) 457-5601
Fax:  (202) 457-6315

DORSEY & WHITNEY LLP

Lanier Saperstein
51 West 52nd Street
New York, New York 10019
Tel.:  (212) 415-9200
Fax:  (212) 953-7201

*Attorneys for Bank of China Ltd.*

February 27, 2015

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*,
2002 U.S. Dist. LEXIS 22675 (S.D.N.Y. Nov. 22, 2002) ........................................................7

*Antonucci v. Morgan Stanley Dean Witter & Co.*,
2005 U.S. Dist. LEXIS 1621 (S.D.N.Y. Jan. 11, 2005),
*adopted*, 2005 U.S. Dist. LEXIS 44855 (S.D.N.Y. May 23, 2005) .........................................7

*Cury v. Philip Morris USA*,
1995 U.S. Dist. LEXIS 14798 (S.D.N.Y. Oct. 6, 1995) .........................................................8

*Kowalski v. YellowPages.com, LLC*,
2012 U.S. Dist. LEXIS 46539 (S.D.N.Y. Mar. 31, 2012) ......................................................4

*Kullman v. New York*,
2009 U.S. Dist. LEXIS 51271 (N.D.N.Y May 20, 2009) .......................................................3

*Schiller v. City of New York*,
2008 U.S. Dist. LEXIS 79620 (S.D.N.Y. Oct. 9, 2008) .........................................................8

*Simmons v. Woodycrest Ctr. for Human Dev., Inc.*,
2011 U.S. Dist. LEXIS 24513 (S.D.N.Y. Mar. 8, 2011) ........................................................8

**Other Authorities**

6-26 MOORE'S FEDERAL PRACTICE - CIVIL § 26.22 (2015) ........................................................2

5-804 WEINSTEIN'S FEDERAL EVIDENCE § 804.04[3][b] (2014) ..............................................7

Fed. R. Civ. P. 26(a) ...................................................................................................*passim*

Fed. R. Civ. P. 26(a)(1) advisory committee's note (2000) ..........................................................2

Fed. R. Civ. P. 26(e)(1)(A) ..........................................................................................4

Fed. R. Civ. P. 45 .......................................................................................................1

Bank of China Limited ("BOC") respectfully moves the Court to quash the *Wultz* plaintiffs' February 10, 2015 subpoena for deposition testimony and document production by Nitsana Darshan-Leitner, Israeli counsel for the *Moriah* plaintiffs (the "Darshan-Leitner Subpoena").[1] The *Wultz* plaintiffs recently informed the Court that they plan to use Darshan-Leitner's testimony and documents to seek case-affecting sanctions against BOC because BOC and/or the People's Republic of China ("PRC") allegedly induced the sovereign immunity claim made by the Government of Israel ("GOI") that "rendered [Uzi Shaya] unavailable" as a witness in this case.  Tr. (2/13/15) at 18:10-22.

This Court recently held that alleged PRC-GOI communications concerning Shaya's testimony—which the *Wultz* plaintiffs characterize as "obstruction" (*id.*)—would in fact be "'political acts' that implicate Israel's diplomatic relations with other nations," about which plaintiffs cannot compel discovery from GOI agents.  *See* Op. & Order dated 2/13/15 (*Moriah* Dkt. #134) at 16.  The *Wultz* plaintiffs therefore apparently hope instead to compel testimony and document production by Darshan-Leitner on that subject among others, including an alleged promise by the GOI prior to 2013 to authorize Shaya's testimony in this case concerning PRC-GOI meetings; and "any communication with any agent … of Israel, China, or BOC regarding (i)

---

[1] The Court conducted a pre-motion conference on February 13, 2015, and directed counsel for both the *Moriah* plaintiffs and BOC to submit motions to quash to formalize their objections to the Darshan-Leitner Subpoena.  Darshan-Leitner, through *Moriah* plaintiffs' counsel, asserts in her separate motion to quash that the Darshan-Leitner Subpoena: (i) violates the 100-mile rule of FED. R. CIV. P. 45; (ii) violates the prior notice requirement of FED. R. CIV. P. 45; (iii) violates the Discovery Coordination Order entered in the *Moriah* action; (iv) violates the issuance and signature requirements of FED. R. CIV. P. 45; (v) seeks work-product protected information, which is available from other sources; and (vi) is unenforceable absent an opinion from the Israeli government that she may comply with the subpoena without violating Israeli law.  *See Wultz* Dkt. #825.

any litigation against BOC or (ii) Uzi Shaya." *See* Tr. (2/13/15) at 18:15-18; Darshan-Leitner Subpoena (document production requests).

BOC moves to quash the Darshan-Leitner Subpoena on the following grounds, independent of those to be raised by the *Moriah* plaintiffs:

<u>First</u>, BOC's ability to defend itself against plaintiffs' threatened sanctions motion has been prejudiced by the *Wultz* plaintiffs' belated disclosure, at the very tail-end of discovery, that they plan to use Darshan-Leitner's knowledge and/or documents in support of that motion. Neither the *Wultz* nor the *Moriah* plaintiffs previously identified Darshan-Leitner in their Rule 26 Disclosures as a person whose knowledge or documents they might use to seek case-affecting sanctions against BOC. This deprived BOC of the opportunity to use the fact-discovery period to develop evidence to cross-examine Darshan-Leitner if she testifies, and to counter from other sources whatever testimony she may give or documents she may produce.

Plaintiffs' failure to disclose their intended use of Darshan-Leitner's knowledge and/or documents violated FED. R. CIV. P. 26(a)(1)(A), which broadly required the *Wultz* plaintiffs to identify all witnesses or documents that they might:

> "use" … at a pretrial conference, <u>to support a motion</u>, or at trial. The disclosure obligation is also triggered by intended use in discovery, apart from use to respond to a discovery request; use of a document to question a witness during a deposition is a common example. The disclosure obligation attaches both to witnesses and documents a party intends to use and also to witnesses and to documents the party intends to use if—in the language of Rule 26(a)(3)—"the need arises."

FED. R. CIV. P. 26(a)(1) advisory committee's note (2000) (emphasis added); *see also* 6-26 MOORE'S FEDERAL PRACTICE - CIVIL § 26.22 (2015) ("The focus is on persons who have information <u>that the disclosing party may use</u>. <u>'Use' is intended to be broadly construed,</u> <u>including use during the pretrial phase of proceedings as well as at trial</u>. For example,

submitting an affidavit from an individual on a motion would constitute 'use' of that individual's information. … The disclosing party has the obligation, under Rule 26(a)(1)(A), as amended in 2000, to disclose identifying information for all persons the party may use not just at trial, but also during discovery (other than merely to frame a response to a discovery request), at a pretrial conference, to support a motion, or if, in other circumstances, 'the need arises.'" (footnote omitted; emphasis added)).

The plain mandate of Rule 26(a)(1)(A) to disclose sanctions-related witnesses apparently was readily understood by the *Moriah* plaintiffs. Their Rule 26 Disclosures listed numerous witnesses—not including Darshan-Leitner—who allegedly have "information concerning the Chinese government asserting diplomatic pressure on Israel to obstruct Uzi Shaya from testifying." *See* Exh. 1 to the Decl. of Mitchell R. Berger (*Moriah* plaintiffs' 8/7/14 Amended Initial Disclosures & 10/21/13 Initial Disclosures). The *Moriah* plaintiffs sought the depositions of these witnesses in 2014 through a Hague Convention request that the GOI declined to execute, stating that "facilitating the requested depositions of the individuals … would be prejudicial to the sovereignty and/or security of the State of Israel." *See Moriah* Dkt. ##38-2, 42, 81. The *Wultz* plaintiffs thus cannot plausibly contend that no party understood that there was a Rule 26 requirement to disclose "obstruction" witnesses or documents.

The *Wultz* and *Moriah* plaintiffs' omission of Darshan-Leitner from their Rule 26 Disclosures deprived BOC of the opportunity to develop evidence to counter her testimony and/or documents. The Darshan-Leitner Subpoena accordingly should be quashed, and plaintiffs should be precluded from using her testimony or documents for any purpose. *See Kullman v. New York*, 2009 U.S. Dist. LEXIS 51271, at *18-*19 (N.D.N.Y May 20, 2009) (holding that service of a deposition notice violated the Rule 26 requirements when the witness was not

identified in Disclosures under either Rule 26(a)(1)(A) or Rule 26(e)(1)(A)); *id.* at *21 ("[T]he mere fact that plaintiffs declared an intention to depose Rudge did not suffice under Rule 26(a)(1)(A)(i) or (e)(1)(A) to give defendants notice that they might call Rudge as a witness at trial as would reasonably advise defendants of their need to depose Rudge themselves."); *Kowalski v. YellowPages.com, LLC*, 2012 U.S. Dist. LEXIS 46539, at *29 (S.D.N.Y. Mar. 31, 2012) ("The purpose of Rule 26 disclosures is to alert the opposing party that the witness may be called to support the party's claims and further, that the opposing party may need to take discovery from that named witness." (quotations and citation omitted)).

Second, and independent of their Rule 26 non-compliance, the *Wultz* plaintiffs did not disclose their planned deposition of Darshan-Leitner in their November 20, 2014 letter to Judge Gorenstein (*Wultz* Dkt. #731) (the "November 20 letter"), which became the basis for Judge Gorenstein's November 21, 2014 Scheduling Order (*Wultz* Dkt. #733) (the "November 21 Order") limiting the remaining fact-witness depositions. The November 21 Order expressly "set a schedule solely to complete outstanding discovery requests and to schedule expert discovery," noting that the "remaining depositions in this case" "consist[] of those discussed in the parties' letters of November 20, 2014." *Id.*

Contrary to their recent argument to Your Honor, *see* Tr. (2/13/15) at 18:10-22, the *Wultz* plaintiffs' November 20 letter did not expressly "carve out" the Darshan-Leitner deposition from the limited list of depositions that Judge Gorenstein incorporated into the November 21 Order. Rather, the *Wultz* plaintiffs' November 20 letter said nothing more on the subject of "obstruction"-related discovery than this:

> In 2013, Plaintiffs sought discovery of BOC's obstruction of key witness Uzi Shaya. *See* 7/19/13 Tr. (Scheindlin, J.) at 2:7-5:1. Judge Scheindlin held Plaintiffs' application in abeyance pending the Israeli government taking a position as to whether Mr. Shaya would be permitted to testify regarding key

4

meetings he attended in China beginning in 2005. *Id.* at 6:24-9:1. Should the Court grant a renewed application for obstruction-related discovery, that discovery is likely to extend into January or February.

*Wultz* Dkt. #731 at 3-4.

Nothing about the *Wultz* plaintiffs' opaque statement in their November 20 letter concerning "obstruction-related discovery" suggested that they planned to take Darshan-Leitner's deposition or would seek to compel her to produce documents. To the contrary, the referenced 2013 application for "discovery of BOC's obstruction" described only discovery that the *Wultz* plaintiffs proposed to take from BOC or the PRC. In their July 1, 2013 letter to the Court, the *Wultz* plaintiffs sought only "an order compelling BOC and its affiliates (including the Chinese Government)" "to provide deposition testimony and produce documents related to such possible obstruction." Exh. 2 to the Decl. of Mitchell R. Berger. The *Wultz* plaintiffs reiterated that BOC and the PRC government were the focus of their "obstruction-related" discovery in their July 8, 2013 letter to the Court, in which they discussed "whether Plaintiffs are entitled to discovery into efforts of BOC and the Chinese government to delay or obstruct Mr. Shaya's testimony." Exh. 3 to the Decl. of Mitchell R. Berger.

Similar to his November 21 Order, Judge Gorenstein's February 17, 2015 Scheduling Order provides that "the only discovery that should be occurring at this point is discovery that could not reasonably have been accomplished by the applicable deadlines contained in the Court's previous Orders." *Wultz* Dkt. #813 at 2. The *Wultz* plaintiffs can scarcely contend that they could not previously have sought Darshan-Leitner's deposition, nor disclosed their intended use of her testimony and documents, which would have put BOC on notice to take her deposition and seek production of her documents. As the *Wultz* plaintiffs knew better than anyone, Darshan-Leitner served as their Israeli counsel throughout their planning for and commencement

of the *Wultz* action, until they replaced her and their former U.S. counsel, Robert Tolchin, in June 2012.  Thus, from the inception of the *Wultz* lawsuit, the *Wultz* plaintiffs presumptively knew whatever Darshan-Leitner knew about their claims, and they could have decided to make "use" of her knowledge and documents for any purpose, including the threatened sanctions motion.  Indeed, this was underscored by the *Wultz* plaintiffs' statement during the pre-motion conference that they seek Darshan-Leitner's testimony and documents concerning her purported "80 to 100 meetings with Mr. Shaya and the government of Israel about matters relating to this case, testimony relating to this case."  Tr. (2/13/15) at 19:2-4.

Those same purported "80 to 100 meetings" had been expressly disclosed to the *Wultz* plaintiffs sixteen months earlier by the *Moriah* plaintiffs in their October 21, 2013 responses to BOC's First Set of Interrogatories.  Despite having that knowledge for 16 months, the *Wultz* plaintiffs neither pursued, nor disclosed to BOC their intent to "use," Darshan-Leitner's testimony or documents concerning those purported "80 to 100 meetings."  To the contrary, both the *Wultz* and *Moriah* plaintiffs throughout the discovery process invoked attorney work product protection and attorney-client privilege to prevent disclosure to BOC of Darshan-Leitner's knowledge and documents.[2]  Indeed, Darshan-Leitner asserts a work-product objection to the

_____

[2]  *See*, *e.g.*, Decl. of Mitchell R. Berger, Exh. 4 (*Wultz* plaintiffs' Log of Documents that Relate to Governmental Meetings, dated 6/7/13) (identifying document authored by Darshan-Leitner as withheld on work product grounds); *id.*, Exh. 5 (email from *Moriah* counsel to counsel for BOC and the *Wultz* plaintiffs, dated 3/12/14) (taking the "position that Ms. Darshan-Leitner's notes are work product"); *see also id.*, Exh. 6 at 3-4 (Ltr. from L. Saperstein to L. Wolosky, dated 11/4/13) (seeking from the *Wultz* plaintiffs, *inter alia*, "A list of each meeting between Ms. Darshan-Leitner and Israeli government officials; … A detailed description of the notes Ms. Darshan-Leitner prepared for or took at each of those meetings; … A statement of whether the notes have been destroyed; … The dates on which any such notes were destroyed; and … A detailed description of any other materials Ms. Darshan-Leitner received in connection with those meetings and whether those materials still exist or whether they have been destroyed."); *id.*, Exh. 7 (Ltr. from L. Wolosky to L. Saperstein, dated 11/12/13) (responding that BOC's requests were based on (i) "certain apparent representations made by other parties in a different suit against

information sought by the Darshan-Leitner Subpoena in her motion to quash that subpoena. *See Wultz* Dkt. #825 at 5. Those privilege assertions not only led BOC to believe that plaintiffs did not intend to use Darshan-Leitner's testimony and documents for any purpose, but also prejudiced BOC by blocking BOC's access to documents and other information that BOC would require in order to conduct a "full, substantial and meaningful" cross-examination of Darshan-Leitner, to which BOC is entitled.[3] 5-804 WEINSTEIN'S FEDERAL EVIDENCE § 804.04[3][b] (2014) (citation and quotations omitted); *see also A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, 2002 U.S. Dist. LEXIS 22675, at *2 (S.D.N.Y. Nov. 22, 2002) (same); *Antonucci v. Morgan Stanley Dean Witter & Co.*, 2005 U.S. Dist. LEXIS 1621, at *14-*16 (S.D.N.Y. Jan. 11, 2005) (excluding deposition testimony where a party belatedly produced records and refused to testify in a deposition because "Morgan Stanley clearly did not have an adequate opportunity to question Antonucci regarding several of the central factual issues in this case" and "the decision as to what type of deposition to conduct was largely taken away from Morgan Stanley as a result of Antonucci's lengthy delay in the furnishing of her authorizations"), *adopted*, 2005 U.S. Dist.

---

BOC"; and (ii) "a number of assumptions that are incorrect"; and stating that "[t]he *Wultz* plaintiffs, in any event, are under no obligation to provide BOC the information requested"); *id.*, Exh. 8 at 1-2 (Ltr. from D. Boies to Your Honor, dated 9/24/13) ("Because one of the documents [an e-mail from Darshan-Leitner] is protected by attorney-client privilege, … I thought it was appropriate to be certain that producing them would not result in a subject matter waiver argument.").

[3] Pursuant to the Court's directions, BOC does not brief at this time its position that, if Ms. Darshan-Leitner does testify or produce documents, then BOC is entitled to disclosure of Ms. Darshan-Leitner's documents, which plaintiffs have withheld. *See supra* n.2; *see also* Tr. (2/13/15) 21:15-22:8 ("[I]f both of those two hurdles were crossed, that is the timeliness and that [Darshan-Leitner] is amenable to the [Rule] 45 service, … then it seems to me the bank certainly could brief the work product issue."). As the Court explained, "if those other two hurdles are crossed and she is willing to be deposed, then it is not fair … [to] talk about it but … not show you the documents. If she is going to come out and tell the whole story, it would seem to me that she is waiving the work product protection and would have to produce the documents if she is going to testify on the subject." *Id.* at 21:20-22:1.

7

LEXIS 44855 (S.D.N.Y. May 23, 2005); *Cury v. Philip Morris USA*, 1995 U.S. Dist. LEXIS 14798, at \*6-\*19 (S.D.N.Y. Oct. 6, 1995) (excluding deposition testimony when a party's witness refused to testify about certain areas in the case and that refusal prevented the party from "fully examining that important area of the witness's knowledge").

The *Moriah* plaintiffs' references to Darshan-Leitner in their interrogatory answers does not excuse the *Wultz* plaintiffs' failure to make a Rule 26 disclosure of their planned use of Darshan-Leitner's knowledge and documents, particularly given all plaintiffs' privilege and work product claims blocking disclosure of such knowledge and documents. Interrogatory answers by another party in a related case do not substitute for a Rule 26 Disclosure of a party's intended use of the knowledge and documents of a witness. *See Schiller v. City of New York*, 2008 U.S. Dist. LEXIS 79620, at \*14 (S.D.N.Y. Oct. 9, 2008) ("The plaintiff's knowledge of the existence of a witness does not satisfy the Rule 26(a)(1)(A) disclosure obligation; that obligation is fulfilled only if the defendant informed the plaintiff that it might call the witness in support of its claims or defenses." (quotations and alteration marks omitted)); *see also Simmons v. Woodycrest Ctr. for Human Dev., Inc.*, 2011 U.S. Dist. LEXIS 24513, at \*2 n.1 (S.D.N.Y. Mar. 8, 2011) ("[P]laintiff's counsel's failure to disclose [affiant] as a person 'likely to have discoverable information' during the course of discovery is a clear violation of Rule 26(a), and, because plaintiff's counsel offers no justification for this failure, the Court disregards her affidavit," which was filed in opposition to defendants' summary judgment motion).

Throughout the fact-discovery period in these lawsuits, plaintiffs have blocked BOC from accessing whatever knowledge or documents Darshan-Leitner may have, shielding her disclosed knowledge with privilege and work product claims, and omitting her from their Rule 26 Disclosures. The *Wultz* plaintiffs' last-minute pivot to an effort to use her knowledge and

8

documents as a sword against BOC is precisely the type of prejudicial sandbagging that Rule 26

is designed to prevent.   The Darshan-Leitner Subpoena accordingly should be quashed, and

plaintiffs should be precluded from using Darshan-Leitner's knowledge and previously withheld

documents for any purpose.

## CONCLUSION

For the foregoing reasons, BOC respectfully requests that the Court quash the Darshan-

Leitner Subpoena and preclude all plaintiffs from making use of any testimony given, or

documents produced, by Darshan-Leitner.


Respectfully submitted,


Dated:  February 27, 2015


By:  /s/ Mitchell R. Berger

SQUIRE PATTON BOGGS (US) LLP

Mitchell R. Berger (MB-4112)
Alan T. Dickey (admitted *pro hac vice*)
2550 M Street, NW
Washington, D.C.  20037
Telephone: (202) 457-5601
Facsimile: (202) 457-6315


***Counsel for Defendant Bank of China Ltd.***


**Of Counsel:**

DORSEY & WHITNEY LLP
51 West 52nd Street
New York, New York 10019
Tel.: (212) 415-9200
Fax: (212) 953-7201