UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| SHERYL WULTZ, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 1:11-cv-01266 (SAS) (GWG) |
| BANK OF CHINA LTD., | ) | |
| Defendant. | ) | |

## STIPULATION OF FACTS

The Parties, in each of the Related Lawsuits (as that term is defined below), through undersigned counsel, hereby stipulate and agree to the material facts set forth in Paragraphs 4-34 below, which the Parties agree are undisputed pursuant to Federal Rule of Civil Procedure 56, S.D.N.Y. L. Civ. R. 56.1, and U.S. District Judge Shira A. Scheindlin's Individual Rules and Procedures IV.I (for each of the Federal Lawsuits) and N.Y. C.P.L.R. 3212 (for each of the New York State Lawsuits), and which are intended to be binding in any future proceedings in the Related Lawsuits or other litigation among the Parties:

## I.   THE SCOPE OF THE LITIGATION

1.   This Stipulation of Facts is entered into, and executed, on behalf of all Parties in the following actions:

A.   *Wultz v. Bank of China Ltd.*, Case No. 1:11-cv-01266 (U.S. District Court, Southern District of New York) ("*Wultz*").

B.   *Moriah v. Bank of China Ltd.*, Case No. 1:12-cv-1594 (U.S. District Court, Southern District of New York) ("*Moriah*").

C.   *Elmaliach v. Bank of China Ltd.*, Index No. 102026/09 (Supreme Court of the State of New York, County of New York) ("*Elmaliach*").

D.  *Zamalloa v. Bank of China Ltd.*, Index No. 101244/10 (Supreme Court of the State of New York, County of New York) ("*Zamalloa*").

E.  *Rot v. Bank of China Ltd., et al.*, Index No. 157475/12 (Supreme Court of the State of New York, County of New York) ("*Rot*").

F.  *Viflic v. Bank of China Ltd.*, Index No. 651294/13 (Supreme Court of the State of New York, County of New York) ("*Viflic*").

2.      The lawsuits identified in ¶¶ 1 A-B are herein sometimes referred to collectively as the "Federal Lawsuits."  The lawsuits identified in ¶¶ 1 C-F are herein sometimes referred to collectively as the "New York State Lawsuits."  Collectively, all of the lawsuits identified in ¶¶ 1 A-F are referred to as the "Related Lawsuits."  The plaintiffs in all of the Related Lawsuits are referred to collectively as "Plaintiffs."  Defendant Bank of China Limited ("BOC") and the Plaintiffs collectively are referred to herein as the "Parties."

## II.   PLAINTIFFS' CLAIMS

3.      Plaintiffs' claims against BOC in all of the Related Lawsuits (the "Claims") allege that, during at least the period from 2003 to 2008, BOC provided material support and resources to the Palestine Islamic Jihad ("PIJ") and/or Hamas by knowingly, deliberately, recklessly, or negligently providing banking services (including the receipt of wire transfers) either to a BOC accountholder, Said ZR al-Shurafa ("Shurafa") or to any other BOC accountholders with the same clan name Shurafa, including but not limited to those named in Appendix A to this Stipulation, (collectively, the "Shurafas").  Plaintiffs refer to these alleged transfers in their complaints in the Related Lawsuits alternatively as "PIJ Transfers," "Transfers," and "Wire Transfers."  The Claims further allege, either expressly or in substance, that:

> In April 2005, officials of the counterterrorism division of the Office of the Prime Minister of the State of Israel … met with officials of the PRC's Ministry of Public Security and the PRC's central bank … regarding the PIJ Transfers.  At that meeting in April 2005, the Israeli officials emphasized to the PRC officials that the PIJ Transfers were being made by the PIJ for the purpose of carrying out

terrorist attacks, and that the PIJ Transfers enhanced the PIJ's ability to plan, prepare for and carry out such attacks. At that April 2005 meeting, the Israeli officials demanded that the PRC officials take action to prevent BOC from making further such transfers. In April 2005, the PRC officials notified the BOC of the Israeli officials' statements that the PIJ Transfers were being made by the PIJ for the purpose of carrying out terrorist attacks and that the PIJ Transfers enhanced the PIJ's ability to plan, prepare for and carry out such attacks. At the same time (i.e. in April 2005) the PRC officials also notified BOC of the Israeli officials' demand the BOC halt the PIJ Transfers, but the BOC (with the approval of the PRC) ignored this demand and continued to carry out further PIJ Transfers between April 2005 and the date of the Terrorist Bombing (and subsequently).

See, e.g., Wultz, First Amended Complaint (Dkt. #12) at ¶ 77. The Claims further allege that BOC was deliberately indifferent to whether the transfers to the Shurafas' accounts were being made for illegal purposes because of certain alleged characteristics of the transfers, including: (1) most of the transfers were made in cash; (2) the Shurafas withdrew, in cash, many of the transfers shortly after they were received; (3) many of the transfers were in large, and often similar or round-number, dollar amounts, including a series of transfers in amounts of exactly $100,000 and $200,000; (4) the intervals between transfers were often short periods of time; (5) the transfers had no apparent business or lawful purpose; and (6) the pattern of transfers continued for a period of years. Id. at ¶ 78.

## III.    FACTS RELATED TO POLITICAL QUESTION DOCTRINE

Plaintiffs do not dispute the following:

4.      In the Federal Lawsuits, the Court, at the request of the parties, sought documents and testimony purportedly relevant to Plaintiffs' Claims through Hague Convention Letters of Requests ("Hague Requests") to the State of Israel ("Israel") and to the People's Republic of China ("PRC"), and through a subpoena and deposition notices directed at certain current and former employees of the Government of Israel ("GOI" or "Israel").

5.      Israel in material part declined to provide documents concerning Plaintiffs'

Claims and to compel the presence of present or former GOI officials to testify with respect to Plaintiffs' Claims, in response to the Hague Requests on the grounds that any further substantive response would (i) prejudice Israel's sovereignty and security; (ii) implicate the methods and activities used by Israel to prevent terrorism; (iii) harm Israel's national security; (iv) compromise Israel's ability to protect the lives of its citizens, residents, and tourists from terrorism and other grave threats; and (v) interfere with international cooperative efforts to prevent terrorism.

6.      The PRC either declined to respond, or did not respond, substantively to two Hague Requests for documents directed to it on the ground that "the request could not be executed according to Article 12 Para 1 Subpara. 2" of the Hague Convention.

7.      In response to a subpoena served by the *Moriah* plaintiffs on a former employee of the United States Department of Treasury seeking his testimony related to Plaintiffs' Claims, the United States government declined to permit such testimony on the ground that plaintiffs "fail[ed] to demonstrate that [the former Treasury official] possesses information that is 'relevant and material to the proceeding, [and] genuinely necessary" pursuant to 31 C.F.R. § l.ll(e)(1)(vi).

8.      The U.S. House of Representatives Office of General Counsel on September 30, 2014 filed an application seeking to quash a deposition subpoena that the *Moriah* plaintiffs served on a former member of the U.S. House of Representatives on the ground that his testimony on matters relating to Plaintiffs' Claims would be privileged under the Speech or Debate Clause of the U.S. Constitution and that there has been no showing that "the testimony [plaintiffs] seek is even relevant to [the *Moriah* plaintiffs'] remaining claims or defenses." *Moriah*, Dkt. #85. On December 17, 2014, the Court quashed the deposition subpoena on the ground that "Plaintiffs cannot demonstrate exceptional circumstances that would permit the

deposition of a former high-ranking government official." *Moriah*, Dkt. #124 at 9.

9.     The facts set forth in paragraphs 4-8 above demonstrate that there has been material evidentiary non-cooperation by the governments of the PRC, Israel, and United States concerning Plaintiffs' Claims, as a result of which Plaintiffs have been unable to obtain evidence that could be admitted or used in support of their claims against Bank of China in the Related Lawsuits, in particular their allegations: that Said ZR Al Shurafa or any of the Shurafas is or was a terrorist, was affiliated with terrorism, or financed terrorism; that Bank of China was told by any government that Said ZR Al Shurafa or any of the Shurafas was a terrorist, was affiliated with terrorism, or financed terrorism; that Bank of China ever knowingly, deliberately, recklessly, or negligently provided financial services to terrorists; or that Bank of China caused the injuries that Plaintiffs suffered in terrorist attacks.

10.    As a result of the evidentiary non-cooperation of the governments of the PRC, Israel, and United States, set forth in paragraphs 4-9 above, Plaintiffs' Claims raise "a political question with respect to evidentiary compulsion," *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 28 (D.D.C. 2010).

## IV.   FACTS RELATED TO JURISDICTION

### A.    DISCOVERY

Plaintiffs do not dispute the following:

11.    The Parties conducted extensive discovery in connection with the Related Lawsuits and the Claims.

12.    BOC produced non-privileged documents and information in its possession, custody, or control that were responsive to Plaintiffs' discovery requests or orders of the Court.

13.    Plaintiffs conducted the depositions of BOC officials and employees who

Plaintiffs contended had knowledge potentially relevant to their Claims.

14.     The Parties conducted document and deposition discovery of various non-parties that Plaintiffs or BOC contended had knowledge relevant to Plaintiffs' Claims.

15.     Plaintiffs and BOC agree that the Parties had a full and fair opportunity to obtain discovery of facts related to the jurisdiction of United States federal and state courts over BOC.

**B.     GENERAL JURISDICTION**

Plaintiffs do not dispute the following:

16.     BOC maintains two branches in the State of New York, and branches in Los Angeles and Chicago.  BOC has no other branches in the United States.

17.     BOC is incorporated and headquartered, and has its principal place of business, in China.

18.     BOC is not "at home" in New York, or in any other state or political subdivision of the United States.

19.     BOC has not consented to personal jurisdiction in New York.  BOC's New York branches are "organized under the laws of the United States," and are expressly exempt from N.Y. BANKING LAW §200.  BOC's New York branches therefore do not derive their "authority to do business in this state" from N.Y. BUS. CORP. LAW §§ 1301, 1304(a)(6). *See also See Gliklad v. Bank Hapoalim B.M.*, 2014 N.Y. Misc. LEXIS 3600, at *5-*7, 2014 N.Y. Slip Op. 32117(U) (N.Y. Sup. Ct., N.Y. Co. Aug. 4, 2014) ("[T]here is no evidence to suggest that the activity at the New York branch is substantial enough to warrant general jurisdiction in New York over Bank Hapoalim."); *Prohibitions and Restrictions on Proprietary Trading and Certain Interests in, and Relationships with, Hedge Funds and Private Equity Funds*, 79 Fed. Reg. 5,536, 5,786 (Jan. 31, 2014) (to be codified at 12 C.F.R. § 351.6(e)(5)) (a "foreign bank that operates or controls [a

U.S.] branch, … is not considered to be located in the United States solely by virtue of operating or controlling the U.S. branch.").

20.     The facts set forth in paragraphs 16-19 above demonstrate that there is no factual basis to exercise general jurisdiction over BOC in New York, or in any other state or political subdivision of the United States.

21.     BOC is not subject to general jurisdiction in New York, or in any other state or political subdivision of the United States. *See Gucci America, Inc. v. Bank of China*, 2014 U.S. App. LEXIS 17948, at *31 (2d Cir. Sept. 17, 2014), quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 761-62 (2014); *see also Goel v. Ramachandran*, 111 A.D.3d 783, 786-87, 975 N.Y.S.2d 428, 433-34 (2d Dep't 2013) (holding that N.Y. C.P.L.R. §301 is limited by constitutional due process requirements); *Putnam Leasing Co., Inc. v Pappas*, 2014 NY Slip Op 24283, at 3, 2014 N.Y. Misc. LEXIS 4220, at *6 (N.Y. Dist. Ct. Sept. 25, 2014) (same).

**C.     SPECIFIC JURISDICTION**

Plaintiffs do not dispute the following:

22.     The terrorist attacks at issue in the Related Lawsuits did not take place in the State of New York.

23.     Neither Hamas nor the PIJ is based in the State of New York.

24.     The Shurafas have not engaged in business in the State of New York.

25.     None of the Shurafas was a customer of BOC's New York branches.

26.     BOC's New York branches have never communicated with any of the Shurafas.

27.     One of BOC's New York branches acted as an intermediary bank, in a correspondent banking relationship with the antecedent intermediary banks, with respect to

certain wire transfers originated by third parties to the Shurafas at their accounts at BOC in China. All such wire transfers were originated at banks other than BOC outside of New York.

28.     The Court in one of the Federal Lawsuits has held that:   "[A]ccording to [plaintiffs'] allegations, both the decision to continue processing the [Shurafa wire] transfers and the bulk of the actual banking services occurred in China.  In contrast, only a small fraction of the relevant banking conduct occurred in New York: the wire transfers to China 'may have incidentally passed through BOC's branch in New York' and were 'executed' by BOC's branches in the United States." *Wultz v. Bank of China Ltd.*, 865 F. Supp. 2d 425, 429 (S.D.N.Y. 2012).

29.     BOC was not the originating bank of any of the Shurafas' wire transfers that were processed by its New York branch.

30.     In connection with the wire transfers to the Shurafas that were processed by BOC's New York branch, all such transfers were directed to or through New York on the instructions of originating or antecedent intermediary banks that were unaffiliated with BOC. BOC's New York branch processed those wire transfers solely in its capacity as an intermediary bank, pursuant to correspondent banking relationships with the originating or antecedent intermediary banks.

31.     The involvement of BOC's New York branch as an intermediary in processing the Shurafas' wire transfers was incidental to the underlying transaction between the Shurafas and their counterparties, and a routine aspect of international banking transactions.

32.     BOC's other U.S. branches had no connection with the Shurafas' wire transfers.

33.     Based on the facts set forth in paragraphs 22-32 above, developed during discovery in the Related Lawsuits, Plaintiffs do not dispute that there is no factual basis to

exercise specific jurisdiction over BOC with respect to Plaintiffs' Claims in New York, or in any other state or political subdivision of the United States.

34.     Based on the facts developed during discovery in the Related Lawsuits, Plaintiffs do not dispute that BOC is not subject to specific jurisdiction with respect to Plaintiffs' Claims in New York, or in any other state or political subdivision of the United States, because BOC's "use of the correspondent account" in routinely processing Shurafas' wire transfers originated by overseas banks was not "purposeful," *Licci v. Lebanese Can. Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013), and was purely incidental to the provision of otherwise entirely foreign banking services. *See Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327, 338-39, 984 N.E.2d 893 (2012); *see Wultz v. Bank of China*, 865 F. Supp. 2d 425, 429 (S.D.N.Y. 2012).

**IT IS SO STIPULATED.**

Dated:  August 27, 2015

> Plaintiffs in *Wultz v. Bank of China Ltd.*, 1:11-cv-01266 (U.S. District Court, Southern District of New York).

By _____
Boies, Schiller & Flexner LLP
Marilyn C. Kunstler
575 Lexington Avenue
New York, NY 10022
(212) 446-2300

Dated:  August 25, 2015

> Bank of China Limited as defendant in: *Wultz v. Bank of China Ltd.*, 1:11-cv-01266 (U.S. District Court, Southern District of New York.

By _____

Squire Patton Boggs (US) LLP
Mitchell R. Berger, Esq.
30 Rockefeller Plaza, 23rd Floor
New York, NY 10112
(212) 872-9800


Dated:  August 27, 2015

> Bank of China Limited as defendant in: *Wultz v. Bank of China Ltd.*, 1:11-cv-01266 (U.S. District Court, Southern District of New York).

By _____

Dorsey & Whitney LLP
Lanier Saperstein, Esq.
51 West 52nd Street
New York, NY 10019
(212) 415-9200

## APPENDIX A

The "Shurafas" include the following:

Ahmed ZR Al-Shurafa
Belal ZR Al-Shurafa
Ibrahim ZR Al-Shurafa
Jehad ZR Al-Shurafa
Mohammed ZR Al-Shurafa
Reem HR Al-Shurafa
Said ZR Al-Shurafa
Alaa KH Al-Shurafa
Allam Al Al-Shurafa
Hashem MH Al-Shurafa
Mohammed JA Al-Shurafa
Rami MM Al-Shurafa
Haytham FM Al-Shurafa
Rania JA Al-Shurafa
Ramiz JA Al-Shurafa
Zayed RH Shurafa
Mahmoud ZR Al-Shurafa
Moein ZR Al-Shurafa
Mervat ZR Al-Shurafa
Maha ZR Al-Shurafa
Maysa ZR Al-Shurafa
Manal ZR Al-Shurafa
Magda ZR Al-Shurafa
Ziad RH Al-Shurafa
Hazem ZR Al-Shurafa
Ziad HZ Al-Shurafa
Mohammed HZ Al-Shurafa
Ahmed HZ Al-Shurafa
Hazem MZ Al-Shurafa
Hanan MZ Al-Shurafa
Ezzedine MZ Al-Shurafa
Yaseen MZ Al-Shurafa
Malak ZI Al-Shurafa
Lolo ZI Al-Shurafa
Baraa IZ Al-Shurafa
Hala ZR Al-Shurafa
Alaa ZR Al-Shurafa
Amal ZR Al-Shurafa
Fatima RZ Al-Shurafa
Huda ZR Al-Shurafa
Aminah ZR Al-Shurafa
Ghada ZR Al-Shurafa

Ammar KH Al-Shorafa
Ashraf NZ Al-Shurafa
Hisham DE Al-Shorafa
Khaled ZK Al-Shurafa
Mohammed Hashem SM Al-Shurafa
Omar SS Al-Shorafa
Saadeddin MS Al-Shurafa
Suhail YA Al-Shurafa
Wael MR Al-Shorafa
Yousef MH Al-Shurafa